UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.  ) | No.   21-cr-00083 (TNM) |
| BRANDON FELLOWS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO REVOKE PRETRIAL RELEASE

Mr. Brandon Fellows, through undersigned counsel, respectfully opposes and responds to the government's motion to revoke his pretrial release. *See* ECF No. 27. The government's motion was in response to a Pretrial Services report filed on May 26, 2021 (ECF No. 26) alleging violations of Mr. Fellows's pretrial release conditions, as mandated by the U.S. Probation Office of the Northern District of New York, the office providing courtesy supervision for Mr. Fellows. However, given the violations alleged, and the history of this case, the Court should find that revocation of his release is not appropriate. Rather, this Court should add an additional condition to his release, mandating Mr. Fellows participate in mental health services.

### RELEVANT FACTS & BACKGROUND

On January 15, 2021, Mr. Fellows was charged via criminal complaint with the misdemeanors of Knowingly Entering or Remaining in Any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a), and Violent Entry or Disorderly Conduct, in violation of 40 U.S.C. § 5104(e)(2). *See* ECF No. 1. These charges stemmed from allegations that he participated in the January 6, 2021 Capitol event. Mr. Fellows was arrested on January 16, 2021, in Albany, New York, and had his initial appearance the same day. *See*

1

ECF No. 5, 14.  He was released, subject to home detention and electronic monitoring.  *See* ECF No. 5 at 21.

On February 3, 2021, Mr. Fellows had an initial appearance in the U.S. District Court for the District of Columbia.  Importantly, at that hearing, the government did not argue Mr. Fellows should be detained pending disposition of his case, either on the basis of danger to the community or at risk of flight.  *See* Minute Entry, Feb. 3, 2021.  The Court released Mr. Fellows subject to conditions, including GPS monitoring and a curfew of 9:00 p.m. to 6:00 a.m.  *See* ECF No. 9 at 2.  Meanwhile, Mr. Fellows's case in the Northern District of New York, which mandated the condition of home detention, terminated on January 19, 2021, meaning that the only pretrial conditions Mr. Fellows was subject to, were the ones mandated by the U.S. District Court for the District of Columbia.  *See United States v. Brandon Fellows*, (NDNY) Crim. No. 21-mj-00032 (DJS).  However, because of caseloads with the influx of arrests stemming from the January 6, 2021 incident, and because Mr. Fellows lived and was to be electronically monitored in New York, the U.S. Probation Office in the District of Columbia asked the Northern District of New York to provide courtesy supervision of Mr. Fellows.  On February 5, 2021, a federal grand jury indicted Mr. Fellows on four (4) misdemeanors and added a felony violation under 18 U.S.C. §§ 1512(d)(2) and 2 for Obstruction of an Official Proceeding and Aiding and Abetting the same.  *See* ECF No. 7.

On May 5, 2021, Pretrial Services filed a violation report, requesting that the Court remove Mr. Fellows from supervision.  *See* ECF No. 23.  Shortly thereafter, the government motioned to revoke his pretrial release.  *See* ECF No. 24.  On May 6, 2021, this Court held a status hearing where it heard argument on the motion to revoke.  At that hearing, this Court

admonished Mr. Fellows and increased his supervision to home detention. *See* Minute Entry (May 6, 2021).

On May 20, 2021, Pretrial Services for the District of Columbia emailed undersigned counsel, the government, and the Court, a voicemail message that Mr. Fellows left for his pretrial services officer in New York. Then, on May 25, 2021, Pretrial Services emailed counsel a document entitled "Consent to Modify Conditions of Release." *See* ECF No. 26-1 at 4. The document proposed two additional conditions to Mr. Fellows's pretrial release: that he participate in mental health services, and a requirement that he, "conduct [himself] in a respectful manner, free of expletives or foul language, when communicating with members of the United States District Court and United States Probation Office." *Id*. Pretrial Services requested that counsel sign the document and send it back. Upon receipt of the document, undersigned noted that Mr. Fellows's signature was already affixed, showing his willingness to participate in the modifications. *Id*. However, undersigned counsel communicated with Pretrial Services and the government that she was in agreement as to the modification involving mental health services, but that the requirement concerning a limit of Mr. Fellows's language appeared far-reaching and potentially, unconstitutional.

During the day of May 25, 2021 and May 26, 2021, undersigned expressed those concerns to Pretrial Services. The government and undersigned exchanged multiple emails with Pretrial Services, attempting to find a compromise. Again, Mr. Fellows, for his part, had no disagreement with the modifications. Then, without notice, on May 26, 2021, Pretrial Services for the District of Columbia submitted a report to the Court asking that Mr. Fellows be removed from supervision. *See* ECF No. 26. The government, noting the report filed by Pretrial Services, submitted a motion to revoke Mr. Fellows's bond. *See* ECF No. 27.

## ARGUMENT

The Court is empowered to revoke Mr. Fellows's pretrial release if, after a hearing, it finds that there was probable cause to believe he committed a crime while on release, or there is clear and convincing evidence that he violated a release condition and he is unlikely to abide by a condition or combination of conditions of release.  *See* 18 U.S.C. § 3148(a), (b)(1), (b).  For a variety of reasons, the Court should find that pretrial incarceration is an inappropriate remedy in this case, and instead, it should order Mr. Fellows's participation in mental health services.

First, the filing of the pretrial services report requesting that Mr. Fellows be removed from supervision was a complete shock.  Pretrial Services, neither in the District of Columbia, nor the Northern District of New York, shared with government counsel or Mr. Fellows that it intended to petition the Court for his removal from supervision.  All of the communications with counsel centered on modifying and adding conditions of supervision, never mentioning a complete removal.  It was only after undersigned counsel shared her reticence to affix her signature to the modifications, that Pretrial Services took this drastic action.  Time and time again, undersigned counsel noted that she would sign the document if the language modification was removed, agreeing that mental health services were appropriate in this case.  Importantly, for his part, and without advice from counsel, Mr. Fellows agreed to the modifications without reservation.  Had counsel known it was a "sign-or-remove-from-supervision" proposition, counsel would not even have attempted to communicate disagreement or tried to negotiate its language.  In other words, this was counsel's mistaken interpretation of the situation, not Mr. Fellows's, and Mr. Fellows should not be punished with incarceration for undersigned counsel's reluctance to sign a document.

4

Second, the allegations alleged by Pretrial Services, are, for the most part, the same allegations already heard and addressed by the Court at the last status hearing on May 6, 2021. *See* ECF No. 23. The only new allegations are that Mr. Fellows failed to call in for drug testing at times, his overall call-in rate since being released on pretrial is 55%, and he left a disturbing voicemail. However, Mr. Fellows recently informed undersigned and Pretrial Services that he suffers from Attention Deficit Disorder, a condition that manifests itself in symptoms of inattention, distractibility, and poor working memory. Remembering tasks in a timely matter, like making daily phone calls, is difficult for Mr. Fellows. However, mental health counseling and potentially, medication management, can much improve his symptoms. Additionally, while noting that Mr. Fellows's overall call-in rate since January was 55%, it does not specify his call-in rate since his last appearance on May 6. This is important, because undersigned counsel understands that Mr. Fellows's call-in rate dramatically improved since the last court hearing, showing that he is likely to continue to be compliant.

Mr. Fellows's language is certainly problematic, but listening to the voicemail and reading the emails, it is clear that Mr. Fellows has difficulty processing frustration, and at times, tries to defuse his frustration with off-color attempts at humor. Mr. Fellows undoubtedly made comments that were upsetting to Pretrial Services. His comments were impolite and crass, but importantly, not threatening or aggressive. He lacks decorum and an understanding of social norms in professional settings, issues mental health services are sure to improve. Instead of viewing his language as a willful attempt to irritate or anger Pretrial Services, undersigned implores the Court to consider it as a symptom of an underlying problem: a mental health condition in desperate need of comprehensive treatment.

Third, though Mr. Fellows can be offensive and rude, he is not, nor has the government ever alleged him to be, a danger to the safety of the community. Under 18 U.S.C. § 3142(a),(b), a judicial officer "shall order the pretrial release of the person on personal recognizance," unless there is a finding that personal recognizance will not reasonably assure the safety of the community or the appearance of him as required. Only when there is some indication that an individual is a danger or at risk of flight, may a judicial officer order release with conditions. In Mr. Fellows's case, there was never an allegation that he was a danger to the community, only that he was a risk of flight, which is why the conditions of GPS monitoring and a curfew were imposed. Importantly, the government, at his initial appearance in D.C., did not ask for detention, lending credence to the risk being slight. Further, to date, Mr. Fellows has participated in all of his court appearances, including one in-person hearing, a notable commitment considering he lives out of state and is indigent. There is simply no credible facts to conclude that Mr. Fellows, with GPS monitoring, and the new restriction of home detention, is at risk of not appearing for court. Since there is no evidence that Mr. Fellows is a danger to the safety of the community or a flight risk, the Court should find pretrial detention is inappropriate.

Fourth, it is worth revisiting the conditions that Mr. Fellows has been successful in abiding by while on release. All told, Mr. Fellows is subject to at least 12 different conditions by Pretrial Services. He is to: report as directed, stay away from Washington, D.C., not possess firearms, not obtain a passport or other international travel document, not use or illegally possess a narcotic drug or other controlled substance, submit to location monitoring, submit to testing for prohibited substances, continue living at his mother's address, maintain employment, not drink alcohol excessively, report all contact with law enforcement personnel, and be on home detention. Mr. Fellows is compliant with all those conditions, but one: the calls. However, he

6

was improving his compliance steadily since his last status date. He is not using drugs,[1] not excessively drinking alcohol, he is abiding by his home detention at his mother's address, has verified his employment, has not attempted to flee the jurisdiction or obtain travel documents, has not possessed firearms, and is doing much better with his pretrial officer check-ins.[2] Again, the condition Mr. Fellows still struggles with, remembering to call-in for drug testing every day, is a condition that with mental health treatment, can be improved, if not completely remedied.[3] Pretrial detention is only appropriate if Mr. Fellows is unlikely to abide by conditions in the future, however, in this case, the Court should not make such a finding until mental health services are ordered and are given a chance to succeed. *See* 18 U.S.C. § 3148(a), (b)(1), (b).

---

[1] Nor has there ever been an indication he has, beyond sporadic, recreational use of marijuana, which makes the requirement that he call in everyday for drug testing excessive.

[2] Pretrial services continues to document that Mr. Fellows was arrested for a petit larceny charge in April. However, the conduct that makes up the alleged offense took place prior to Mr. Fellows being placed on pretrial release. Additionally, as discussed at the last status hearing, Mr. Fellows did report his arrest within the mandated time frame, only neglecting to report his interactions with law enforcement prior to the arrest. Mr. Fellows maintains this oversight was not intentional, and has since been properly informed that going forward, any interactions with law enforcement must be reported.

[3] Further, this issue could be removed entirely if the Court were to agree that given no evidence of any drug abuse history, nor any positive drug tests, the requirement that he call in daily for drug testing is unnecessary.

**CONCLUSION**

Mr. Fellows is not a danger to the community, nor is he a flight risk. Accordingly, the Court should deny the government's motion for pretrial release revocation. Mr. Fellows's compliance with the numerous pretrial conditions ordered may be substantially, if not completely remedied, with mental health treatment. Therefore, Mr. Fellows asks this Court to continue him on his current conditions with the added condition of compliance with mental health services, and not revoke his release.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Cara Kurtz Halverson
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
cara_halverson@fd.org