UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action |
| | ) | No. 21-83 |
| vs. | ) | |
| | ) | |
| BRANDON FELLOWS, | ) | July 15, 2021 |
| | ) | 11:24 a.m. |
| Defendant. | ) | Washington, D.C. |
| | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE TREVOR M. MCFADDEN,**
**UNITED STATES DISTRICT COURT JUDGE**


**APPEARANCES**:

FOR THE UNITED STATES:   MONA FURST
                         DOJ-USAO
                         Office of the United States Attorney
                         301 North Main
                         Wichita, KS 67052
                         (316) 269-6481
                         Email: mona.furst@usdoj.gov


FOR THE DEFENDANT:       CARA HALVERSON
                         FEDERAL PUBLIC DEFENDER
                         625 Indiana Ave NW
                         Washington, DC 20004
                         (202) 208-7500
                         Email: cara_halverson@fd.org


ALSO PRESENT:            Brian McDaniel, Attorney
                         Tekeysha Robinson, U.S. Probation
                         Kendra Rennie, U.S. Probation
                         Jeannine Kiebart, U.S. Probation


Court Reporter:          Elizabeth Saint-Loth, RPR, FCRR
                         Official Court Reporter


Proceedings reported by machine shorthand, transcript
produced by computer-aided transcription.

2

1                        **P R O C E E D I N G S**

2              THE COURTROOM DEPUTY:  This is Criminal Case

3      21-83, United States of America versus Brandon Fellows.

4              Counsel, please come forward to identify

5      yourselves for the record, starting with the government.

6              MS. FURST:  Good morning, Your Honor.

7              Mona Furst, Assistant United States Attorney,

8      representing the United States.

9              THE COURT:  Good morning, Ms. Furst.

10             MS. HALVERSON:  Good morning, Judge.

11     Cara Halverson representing Mr. Fellows.

12             THE COURT:  Good morning, Ms. Halverson.

13             Good morning, Mr. Fellows.

14             All right.  We continued this detention hearing

15     after arguments from the attorneys because Ms. Halverson

16     indicated that Mr. Fellows might be interested in

17     testifying.

18             Ms. Halverson, where do things stand?

19             MS. HALVERSON:  Your Honor, at this point -- and

20     with the help of Mr. McDaniel, who graciously agreed to

21     appear today -- Mr. Fellows has decided at this point that

22     he does not want to exercise his right to testify at this

23     hearing.

24             I do believe that he wanted to address the Court

25     perhaps to apologize, but not to testify in the sense that

1    we were thinking yesterday, if the Court would allow it.

2              THE COURT:  Okay.  The apology is for yesterday,

3    or what?

4              MS. HALVERSON:  I think going towards the behavior

5    that was noted in the pretrial services report.

6              THE COURT:  Okay.  Ms. Furst, do you have any

7    concern about that?

8              MS. FURST:  Well, Your Honor, I appreciate the

9    fact that he wants to apologize.  If he gets up and says:  I

10   apologize for my behavior and sits down, I am fine with

11   that.  If he starts talking and embellishing, I would want

12   him under oath.

13             THE COURT:  Okay.

14             Well, Mr. Fellows, I am happy to hear from you.

15             THE DEFENDANT:  Good morning, Judge.

16             THE COURT:  Good morning.

17             THE DEFENDANT:  I apologize, this was written in

18   about three minutes.  I had an actual longer version of an

19   apology but with more full context to address some of the

20   things that I disagree with and other things which I have

21   been told not to bring up.

22             I just wanted to apologize.  My actions -- though

23   noted, have, in most times, not been criminal and also have

24   been continually getting better -- have definitely been

25   annoying.

1        And I could see the frustration from you and all

2    other parties and how that could be, you know, a reason to

3    not really be considering for my release.  It's also -- you

4    know, I could see it to be troubling just in respect to this

5    life.  I wouldn't want to deal with me either if I were on

6    the opposing side, so I kind of understand that.

7        I will give, you know, reasons I feel like -- you

8    know, without going into detail -- that this has been --

9    yeah -- I just want to say I feel like it has been extreme;

10    and that's all I am going to say about that.

11        I will say that I respond best to positive

12    reenforcement that I have gotten from Cara and even the

13    officers that I have had come into contact with in the jail;

14    they have been very positive in building me up.

15        Along with this, despite not getting a Bible

16    for -- I have only gotten the Bible 2 days out of the past

17    30.  I did have a chance to rekindle my relationship with my

18    God which has been helpful.

19        And I know, for instance -- for me, I think it's

20    pretty clear to see my passions for politics and my

21    disagreements with illogical situations can get the best of

22    me to the point of annoying protest through various

23    situations, though they may be unorthodox at times and hard

24    to understand.

25        So I would just like to say I would -- you know,

1    if given -- I have spent 30 days in jail.  I have spent six

2    months also in what, to me, feels like a jail; and it has

3    not been fun.  I am a free spirit.

4            If you read the fake news article, I like to drive

5    in my bus; I like to travel.  I am now stuck in what I view

6    as a cave; and, now, a cave with cages and a bunch of people

7    screaming throughout all hours of the night, and not the

8    best food.  Being a nutrition major, I am not a fan.

9            I've spent 30 days in jail.  I've learned both the

10   positive and negative reenforcement from that.  I have

11   already, before even getting taken away, gotten better.

12           I would like the chance to be given a new officer

13   who might view me and give -- not to hold these things

14   against me.  I would like to be given a better chance and

15   also, as I get better, possibly be positively rewarded for

16   my good behavior because I really -- I really love freedom.

17   You know, I love my freedom.

18           So that's it.  Thank you, Your Honor.

19           THE COURT:  All right.  Thank you, sir.

20           Sir, while you are there, we talked yesterday

21   about your possible concerns with your attorney; I think I

22   heard that largely from her.

23           I think I heard from you that you are comfortable

24   continuing on with Ms. Halverson; is that correct?

25           THE DEFENDANT:  That is correct.

1          THE COURT:  Okay.  Thank you, sir.

2          Thank you, Ms. Halverson.

3          All right.  Before the Court is the government's

4     motion to revoke detention under 18 U.S.C. 3148.  I do find

5     that there is clear and convincing evidence of violation of

6     conditions of the defendant's release.

7          I think we have seen a pattern of numerous

8     failures to call in for the drug testing program.  I note

9     the May 26th report from the probation office in which the

10    defendant had about a 55 percent call-in rate.  I'd also

11    note that on several occasions he was late for curfew;

12    April 8, 2021, and May 21st, 2021.

13         Most recently, the defendant canceled his mental

14    health evaluation saying that he couldn't sleep the night

15    before, but that he did want permission to work that same

16    day.  I also reject the suggestion that that was somehow

17    related to concerns about COVID or the defendant being ill

18    or causing other people to get ill.  I just -- I think --

19    it's pretty clear to me that the defendant is not very

20    concerned about COVID nor about getting other people ill.

21         I also find that he is unlikely to abide by any

22    condition or combination of conditions of release.  I think

23    the defendant, at least overall, has shown a pretty

24    sustained contempt for the government and the court system;

25    I use that term colloquially here and not as a legal finding

1    that the defendant is in contempt.  But I think the

2    allegation and the evidence in front of me right now -- I am

3    not making any finding beyond a reasonable doubt of course;

4    but there is certainly evidence the defendant was smoking

5    marijuana in a senator's private office.

6          As I mentioned before, the defendant was dressed

7    in sweatpants and eating breakfast during his initial Zoom

8    hearing in front of this court.

9          There are -- there is well-documented evidence of

10   the defendant sending vulgar emails about FBI agents.  I am

11   looking at a February 22nd email in which he said, "The

12   fat-necked FBI agent lied, and I have fucking proof he did";

13   and "I'll bet you that doesn't fucking matter to our corrupt

14   government."

15         The defendant also said in that email, "I can't

16   wait for these bullies to have what they are dishing out

17   come back to them," apparently referring to federal agents.

18         I think there was significant evidence in the

19   hearing yesterday of demeaning and sexist comments toward

20   the defendant's probation officers.  I'd say that the

21   defendant's compliance has been lackadaisical with his

22   conditions of release.

23         I think the mental health evaluation in

24   particular -- I think we -- probably the attorneys and I

25   agree here that there is a mental health component to this.

1    But despite our best efforts -- my best efforts -- in trying

2    to get the defendant mental health treatment, he brushed off

3    that opportunity.

4           I'd also note the intimidating phone call to the

5    probation officer's mother.  I do take into consideration

6    the New York judge's police report; I don't think that's

7    conclusive evidence.  And, frankly, there are a lot of

8    things here that -- looking at one piece in isolation --

9    certainly would not justify detention.  And I think that

10   phone call, too, is certainly -- one could imagine innocent

11   motives or explanation for it.

12          Ms. Halverson has certainly striven admirably to

13   explain away the various issues here.  I was willing to give

14   the defendant the benefit of the doubt but, as we have

15   discussed, this is kind of an extraordinary situation, for

16   me to have a third detention hearing after denying the prior

17   two government requests; but I can no longer give the

18   defendant the benefit of the doubt as to this pattern of

19   behavior.

20          I'd also note as recently as yesterday the

21   defendant was smirking and rolling his eyes throughout the

22   hearing.

23          Mr. Fellows, I think you are an intelligent man.

24   I appreciate what you've said here.  You are very capable; I

25   don't think you're irredeemable, or anything like that.

```
 1              As I've said, I don't -- I am not convinced that
 2    you are a danger to the community, but I do think you are
 3    impulsive.  I do think you are headstrong; and you're, kind
 4    of, going to do what you are going to do.  And I have tried
 5    really hard to avoid having to lock you up but, after months
 6    here, I don't think I can be at all confident that there is
 7    a condition or combination of conditions that you will
 8    adhere to.
 9              I don't think you are going to comply with my
10    orders.  I certainly don't think you are going to obey the
11    probation officers.  I don't think you are going to allow us
12    to help you.  I have tried, but we are where we are.  So I
13    am granting the government's motion for revocation of the
14    defendant's release conditions.
15              All right.  Ms. Furst, do we have a status hearing
16    coming up, or do we need to --
17              MS. FURST:  It's today, Judge.  Yesterday was our
18    status --
19              THE COURT:  Okay.  So why don't you tell me where
20    things stand.  In some ways you, kind of, have the tiger by
21    the tail now, and I am going to be very insistent that we
22    move the case along.
23              MS. FURST:  Absolutely, Your Honor.
24              And I have submitted a plea offer to
25    Ms. Halverson; I think I did it two or three weeks ago, I
```

1    can't really remember.  She has had it.  The deadline is

2    August 31st because I knew she wouldn't have a chance to

3    talk to her client until today or yesterday; so that is on

4    the table, Your Honor.

5            THE COURT:  Do you wish to put the plea offer on

6    the record?

7            MS. FURST:  I'm sorry?

8            THE COURT:  Do you wish to put the plea offer on

9    the record?

10           MS. FURST:  I can.  Sure.

11           The plea is an offer to 18 U.S.C. 1512, which is

12   the felony.  We will not make a recommendation until after

13   we see the presentence report.

14           We calculated the guidelines to be 15 to 21 months

15   with a 3-level enhancement for --

16           MS. HALVERSON:  Substantial assistance.

17           MS. FURST:  -- substantial assistance.

18           Thank you.

19           So he has a criminal history of "I," I believe.

20           THE COURT:  I beg your pardon?

21           MS. FURST:  He has a criminal history of "I"; no

22   criminal history that would count.

23           THE COURT:  That's your understanding?

24           MS. FURST:  Yes.

25           Ms. Halverson reminded me, Your Honor, that we are

1    reserving the right, I think in all of the plea agreements,

2    to ask for a terrorism enhancement.

3              THE COURT:  Okay.

4              MS. FURST:  And I think those are the major

5    points, Your Honor.  We would dismiss the misdemeanors as

6    part of that at the time of sentencing.

7              THE COURT:  Okay.  Where are you in discovery, ma'am?

8              I'm sorry.  Ms. Halverson, is there something --

9              MS. HALVERSON:  Your Honor, I just wanted to

10   put -- just to, sort of, round out the plea offer that's on

11   the table right now.

12             An upward departure for the terrorism enhancement

13   would bring Mr. Fellows' guideline range to a 32 to 36

14   automatically, which would have his guideline be much higher

15   than 18 to 21 months.

16             THE COURT:  Okay.

17             MS. FURST:  And where we are in discovery, Your

18   Honor, I have given, I think, 14 or 15 rounds of preliminary

19   discovery.  The latest discovery was just sent last week,

20   and I know that Ms. Halverson received it; it was by mail on

21   a disk, it was a large amount of data.  I sent it to her as

22   soon as I got it; and I am still looking through that data.

23             I have submitted my request for the formal

24   fast-track discovery; but to be honest with you, I have sent

25   her almost everything that we have.

```
1            THE COURT:  Okay.  So am I correct in assuming
2     that you have turned over everything you have as to the
3     defendant, that you are now kind of -- but there is all of
4     this discovery as to everyone else?
5            MS. FURST:  Your Honor, every time I look at a
6     video and I see Brandon in it, I immediately download it and
7     send it to Ms. Halverson.
8            So as far as -- as of today, I haven't found
9     anything new; that is absolutely correct.  We're always
10    finding new things.  I will tell you that we do now have a
11    contract with Deloitte -- I think as of the end of May --
12    and that the process for getting all the discovery over to
13    them in a way to provide it globally is now underway.
14           But as far as his particular case, I believe I
15    have turned over everything that I have got that is of
16    substance.  The thing is, though, it takes a lot to go
17    through some of this data.  We did search warrants for
18    social media, and that kind of thing, so that's the data
19    that Ms. Halverson and I are both at the point of going
20    through.  I normally don't provide discovery of stuff I
21    don't know what is in it, but I did this time.
22           THE COURT:  Okay.  What are you requesting, ma'am?
23           MS. FURST:  Your Honor, if we could -- I know you
24    want to move it along; but under these unusual
25    circumstances, considering yesterday and today, I would ask
```

1    for another 60 days.  And of course if we can resolve it

2    sooner we will come back to the Court.

3              But I believe with the upheaval that's happened,

4    plus the additional discovery that both parties need to go

5    through, 60 days is a reasonable amount of time, and that it

6    is in the interest of justice to do so under 18 U.S.C.

7    3161(h).

8              THE COURT:  Okay.  So you are seeking to toll?

9              MS. FURST:  Yes, Your Honor.

10             THE COURT:  Okay.  Ms. Halverson.

11             MS. HALVERSON:  Normally, Judge, when I have a

12   client that's detained I am not necessarily at liberty to

13   toll speedy trial given the detainment status.

14             But I will tell you that, in Mr. Fellows'

15   particular case, the information that is in the -- sort of

16   what's been termed as, sort of, the global discovery also

17   includes the Capitol Police body-worn camera and the

18   personnel files of the Capitol Police officers, so that

19   information could potentially be absolutely integral in

20   preparing for our defense in this case.

21             So I don't -- I reject, sort of, the assertion

22   that everything that had to do with Mr. Fellows has already

23   been given to me, that stuff has not; and I need that stuff

24   to be able to prepare effectively.  I have talked to

25   Mr. Fellows about that; he understands that, and wishes to

1    have that in our possession before we go to trial.

2            So I think, at this juncture, it does make sense

3    to toll speedy trial and set it for a new status 60 days out

4    if Your Honor is inclined to do so.  And as Ms. Furst said,

5    if there is a resolution prior to that 60 days, we would of

6    course notice the Court of that.

7            THE COURT:  All right.  How about September 7th,

8    10:30?

9            Does that work for you, Ms. Furst?

10           MS. FURST:  Yes, Your Honor.  Thank you.

11           THE COURT:  Ms. Halverson?

12           MS. HALVERSON:  You said September 2nd, Your Honor?

13           THE COURT:  The 7th.

14           MS. HALVERSON:  The 7th.

15           Indulgence.

16           THE COURT:  Day after Labor Day.

17           MS. HALVERSON:  That's fine, Your Honor.

18           THE COURT:  We'll set this for a continued status

19   conference on September 7th.

20           I will toll the speedy trial clock until then,

21   although I expect that's going to be the last time I am

22   going to do that awaiting discovery.  I think the public has

23   an interest in resolution of these cases; and I think

24   Mr. Fellows -- especially now that he is detained -- has an

25   interest in resolution of this.

1          And, Ms. Furst, I know this is not up to you, but

2     I am concerned about this kind of just continual dripping of

3     discovery that could go on eternally to defense; that's not

4     how things are supposed to operate, I think, in a criminal

5     case and certainly not in a detained case.

6          So if there is not a resolution on the 7th I

7     expect that we're going to pick a trial date.  I also expect

8     we're going to pick, sort of, a cutoff for discovery, and

9     that there can be sanctions for the government if they do

10    not have discovery to defense by that time.  We just -- this

11    is not how we're supposed to run the criminal justice

12    system.

13         So I think this is the last continuance.  Ladies,

14    please bring your trial calendars if we don't have a

15    resolution on the 7th.

16         Ms. Furst, anything further for the government?

17         MS. FURST:  Your Honor, I appreciate what you are

18    saying; and I would just note that we have tried in that

19    memorandum that we just recently filed about the discovery

20    to explain to the Court why it's taking so long.

21         As everyone knows, this is a very unusual

22    situation that's never happened before; and because of our

23    *Brady* obligations -- that's the biggest thing that we're

24    trying to abide by.  But I appreciate the Court's comments,

25    and I will take them to heart.

1          THE COURT:  And you see my concern about -- that

2     we're having new cases come in now.  I mean, the potential

3     for new discovery is just -- that's going to continue as

4     long as you continue charging people.

5          MS. FURST:  Yes.

6          THE COURT:  I am not going to keep people in jail

7     while the government hunts down every last person who was in

8     the vicinity.

9          MS. FURST:  I understand.  Thank you.

10          THE COURT:  Thank you, ma'am.

11     Ms. Halverson, anything further for the defense?

12          MS. HALVERSON:  Nothing from the defense, Your

13     Honor.  Thank you.

14          THE COURT:  Thanks, folks.

15          (Whereupon, the proceeding concludes 11:47 a.m.)

16                           **CERTIFICATE**

17          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
     certify that the foregoing constitutes a true and accurate
18     transcript of my stenographic notes, and is a full, true,
     and complete transcript of the proceedings to the best of my
19     ability.

20          This certificate shall be considered null and void
     if the transcript is disassembled and/or photocopied in any
21     manner by any party without authorization of the signatory
     below.

22

23     Dated this 22nd day of July, 2021.

24     /s/ Elizabeth Saint-Loth, RPR, FCRR
     Official Court Reporter

25