```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
  * * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,        )  Criminal Action
                                 )  No. 21-83
vs.                              )
                                 )
BRANDON FELLOWS,                 )  July 15, 2021
                                 )  11:24 a.m.
              Defendant.         )  Washington, D.C.
                                 )
  * * * * * * * * * * * * * * * *
```

## TRANSCRIPT OF PROCEEDINGS
## BEFORE THE HONORABLE TREVOR M. MCFADDEN,
## UNITED STATES DISTRICT COURT JUDGE

**APPEARANCES**:

```
FOR THE UNITED STATES:   MONA FURST
                         DOJ-USAO
                         Office of the United States Attorney
                         301 North Main
                         Wichita, KS 67052
                         (316) 269-6481
                         Email: mona.furst@usdoj.gov


FOR THE DEFENDANT:       CARA HALVERSON
                         FEDERAL PUBLIC DEFENDER
                         625 Indiana Ave NW
                         Washington, DC 20004
                         (202) 208-7500
                         Email: cara_halverson@fd.org


ALSO PRESENT:            Brian McDaniel, Attorney
                         Tekeysha Robinson, U.S. Probation
                         Kendra Rennie, U.S. Probation
                         Jeannine Kiebart, U.S. Probation


Court Reporter:          Elizabeth Saint-Loth, RPR, FCRR
                         Official Court Reporter


    Proceedings reported by machine shorthand, transcript
           produced by computer-aided transcription.
```

1                    **P R O C E E D I N G S**

2              THE COURTROOM DEPUTY:  This is Criminal Case

3    21-83, United States of America versus Brandon Fellows.

4              Counsel, please come forward to identify

5    yourselves for the record, starting with the government.

6              MS. FURST:  Good morning, Your Honor.

7              Mona Furst, Assistant United States Attorney,

8    representing the United States.

9              THE COURT:  Good morning, Ms. Furst.

10             MS. HALVERSON:  Good morning, Judge.

11   Cara Halverson representing Mr. Fellows.

12             THE COURT:  Good morning, Ms. Halverson.

13             Good morning, Mr. Fellows.

14             All right.  We continued this detention hearing

15   after arguments from the attorneys because Ms. Halverson

16   indicated that Mr. Fellows might be interested in

17   testifying.

18             Ms. Halverson, where do things stand?

19             MS. HALVERSON:  Your Honor, at this point -- and

20   with the help of Mr. McDaniel, who graciously agreed to

21   appear today -- Mr. Fellows has decided at this point that

22   he does not want to exercise his right to testify at this

23   hearing.

24             I do believe that he wanted to address the Court

25   perhaps to apologize, but not to testify in the sense that

1   we were thinking yesterday, if the Court would allow it.
2           THE COURT:  Okay.  The apology is for yesterday,
3   or what?
4           MS. HALVERSON:  I think going towards the behavior
5   that was noted in the pretrial services report.
6           THE COURT:  Okay.  Ms. Furst, do you have any
7   concern about that?
8           MS. FURST:  Well, Your Honor, I appreciate the
9   fact that he wants to apologize.  If he gets up and says:  I
10  apologize for my behavior and sits down, I am fine with
11  that.  If he starts talking and embellishing, I would want
12  him under oath.
13          THE COURT:  Okay.
14          Well, Mr. Fellows, I am happy to hear from you.
15          THE DEFENDANT:  Good morning, Judge.
16          THE COURT:  Good morning.
17          THE DEFENDANT:  I apologize, this was written in
18  about three minutes.  I had an actual longer version of an
19  apology but with more full context to address some of the
20  things that I disagree with and other things which I have
21  been told not to bring up.
22          I just wanted to apologize.  My actions -- though
23  noted, have, in most times, not been criminal and also have
24  been continually getting better -- have definitely been
25  annoying.

1    And I could see the frustration from you and all
2    other parties and how that could be, you know, a reason to
3    not really be considering for my release.  It's also -- you
4    know, I could see it to be troubling just in respect to this
5    life.  I wouldn't want to deal with me either if I were on
6    the opposing side, so I kind of understand that.
7              I will give, you know, reasons I feel like -- you
8    know, without going into detail -- that this has been --
9    yeah -- I just want to say I feel like it has been extreme;
10   and that's all I am going to say about that.
11             I will say that I respond best to positive
12   reenforcement that I have gotten from Cara and even the
13   officers that I have had come into contact with in the jail;
14   they have been very positive in building me up.
15             Along with this, despite not getting a Bible
16   for -- I have only gotten the Bible 2 days out of the past
17   30.  I did have a chance to rekindle my relationship with my
18   God which has been helpful.
19             And I know, for instance -- for me, I think it's
20   pretty clear to see my passions for politics and my
21   disagreements with illogical situations can get the best of
22   me to the point of annoying protest through various
23   situations, though they may be unorthodox at times and hard
24   to understand.
25             So I would just like to say I would -- you know,

1   if given -- I have spent 30 days in jail.  I have spent six
2   months also in what, to me, feels like a jail; and it has
3   not been fun.  I am a free spirit.
4           If you read the fake news article, I like to drive
5   in my bus; I like to travel.  I am now stuck in what I view
6   as a cave; and, now, a cave with cages and a bunch of people
7   screaming throughout all hours of the night, and not the
8   best food.  Being a nutrition major, I am not a fan.
9           I've spent 30 days in jail.  I've learned both the
10  positive and negative reenforcement from that.  I have
11  already, before even getting taken away, gotten better.
12          I would like the chance to be given a new officer
13  who might view me and give -- not to hold these things
14  against me.  I would like to be given a better chance and
15  also, as I get better, possibly be positively rewarded for
16  my good behavior because I really -- I really love freedom.
17  You know, I love my freedom.
18          So that's it.  Thank you, Your Honor.
19          THE COURT:  All right.  Thank you, sir.
20          Sir, while you are there, we talked yesterday
21  about your possible concerns with your attorney; I think I
22  heard that largely from her.
23          I think I heard from you that you are comfortable
24  continuing on with Ms. Halverson; is that correct?
25          THE DEFENDANT:  That is correct.

1           THE COURT:  Okay.  Thank you, sir.
2           Thank you, Ms. Halverson.
3           All right.  Before the Court is the government's
4    motion to revoke detention under 18 U.S.C. 3148.  I do find
5    that there is clear and convincing evidence of violation of
6    conditions of the defendant's release.
7           I think we have seen a pattern of numerous
8    failures to call in for the drug testing program.  I note
9    the May 26th report from the probation office in which the
10   defendant had about a 55 percent call-in rate.  I'd also
11   note that on several occasions he was late for curfew;
12   April 8, 2021, and May 21st, 2021.
13          Most recently, the defendant canceled his mental
14   health evaluation saying that he couldn't sleep the night
15   before, but that he did want permission to work that same
16   day.  I also reject the suggestion that that was somehow
17   related to concerns about COVID or the defendant being ill
18   or causing other people to get ill.  I just -- I think --
19   it's pretty clear to me that the defendant is not very
20   concerned about COVID nor about getting other people ill.
21          I also find that he is unlikely to abide by any
22   condition or combination of conditions of release.  I think
23   the defendant, at least overall, has shown a pretty
24   sustained contempt for the government and the court system;
25   I use that term colloquially here and not as a legal finding

1    that the defendant is in contempt.  But I think the
2    allegation and the evidence in front of me right now -- I am
3    not making any finding beyond a reasonable doubt of course;
4    but there is certainly evidence the defendant was smoking
5    marijuana in a senator's private office.
6              As I mentioned before, the defendant was dressed
7    in sweatpants and eating breakfast during his initial Zoom
8    hearing in front of this court.
9              There are -- there is well-documented evidence of
10   the defendant sending vulgar emails about FBI agents.  I am
11   looking at a February 22nd email in which he said, "The
12   fat-necked FBI agent lied, and I have fucking proof he did";
13   and "I'll bet you that doesn't fucking matter to our corrupt
14   government."
15             The defendant also said in that email, "I can't
16   wait for these bullies to have what they are dishing out
17   come back to them," apparently referring to federal agents.
18             I think there was significant evidence in the
19   hearing yesterday of demeaning and sexist comments toward
20   the defendant's probation officers.  I'd say that the
21   defendant's compliance has been lackadaisical with his
22   conditions of release.
23             I think the mental health evaluation in
24   particular -- I think we -- probably the attorneys and I
25   agree here that there is a mental health component to this.

1    But despite our best efforts -- my best efforts -- in trying
2    to get the defendant mental health treatment, he brushed off
3    that opportunity.
4           I'd also note the intimidating phone call to the
5    probation officer's mother.  I do take into consideration
6    the New York judge's police report; I don't think that's
7    conclusive evidence.  And, frankly, there are a lot of
8    things here that -- looking at one piece in isolation --
9    certainly would not justify detention.  And I think that
10   phone call, too, is certainly -- one could imagine innocent
11   motives or explanation for it.
12          Ms. Halverson has certainly striven admirably to
13   explain away the various issues here.  I was willing to give
14   the defendant the benefit of the doubt but, as we have
15   discussed, this is kind of an extraordinary situation, for
16   me to have a third detention hearing after denying the prior
17   two government requests; but I can no longer give the
18   defendant the benefit of the doubt as to this pattern of
19   behavior.
20          I'd also note as recently as yesterday the
21   defendant was smirking and rolling his eyes throughout the
22   hearing.
23          Mr. Fellows, I think you are an intelligent man.
24   I appreciate what you've said here.  You are very capable; I
25   don't think you're irredeemable, or anything like that.

1           As I've said, I don't -- I am not convinced that
2   you are a danger to the community, but I do think you are
3   impulsive.  I do think you are headstrong; and you're, kind
4   of, going to do what you are going to do.  And I have tried
5   really hard to avoid having to lock you up but, after months
6   here, I don't think I can be at all confident that there is
7   a condition or combination of conditions that you will
8   adhere to.
9           I don't think you are going to comply with my
10  orders.  I certainly don't think you are going to obey the
11  probation officers.  I don't think you are going to allow us
12  to help you.  I have tried, but we are where we are.  So I
13  am granting the government's motion for revocation of the
14  defendant's release conditions.
15          All right.  Ms. Furst, do we have a status hearing
16  coming up, or do we need to --
17          MS. FURST:  It's today, Judge.  Yesterday was our
18  status --
19          THE COURT:  Okay.  So why don't you tell me where
20  things stand.  In some ways you, kind of, have the tiger by
21  the tail now, and I am going to be very insistent that we
22  move the case along.
23          MS. FURST:  Absolutely, Your Honor.
24          And I have submitted a plea offer to
25  Ms. Halverson; I think I did it two or three weeks ago, I

1   can't really remember.  She has had it.  The deadline is
2   August 31st because I knew she wouldn't have a chance to
3   talk to her client until today or yesterday; so that is on
4   the table, Your Honor.
5               THE COURT:  Do you wish to put the plea offer on
6   the record?
7               MS. FURST:  I'm sorry?
8               THE COURT:  Do you wish to put the plea offer on
9   the record?
10              MS. FURST:  I can.  Sure.
11              The plea is an offer to 18 U.S.C. 1512, which is
12  the felony.  We will not make a recommendation until after
13  we see the presentence report.
14              We calculated the guidelines to be 15 to 21 months
15  with a 3-level enhancement for --
16              MS. HALVERSON:  Substantial assistance.
17              MS. FURST:  -- substantial assistance.
18              Thank you.
19              So he has a criminal history of "I," I believe.
20              THE COURT:  I beg your pardon?
21              MS. FURST:  He has a criminal history of "I"; no
22  criminal history that would count.
23              THE COURT:  That's your understanding?
24              MS. FURST:  Yes.
25              Ms. Halverson reminded me, Your Honor, that we are

1    reserving the right, I think in all of the plea agreements,
2    to ask for a terrorism enhancement.
3              THE COURT:  Okay.
4              MS. FURST:  And I think those are the major
5    points, Your Honor.  We would dismiss the misdemeanors as
6    part of that at the time of sentencing.
7              THE COURT:  Okay.  Where are you in discovery, ma'am?
8              I'm sorry.  Ms. Halverson, is there something --
9              MS. HALVERSON:  Your Honor, I just wanted to
10   put -- just to, sort of, round out the plea offer that's on
11   the table right now.
12             An upward departure for the terrorism enhancement
13   would bring Mr. Fellows' guideline range to a 32 to 36
14   automatically, which would have his guideline be much higher
15   than 18 to 21 months.
16             THE COURT:  Okay.
17             MS. FURST:  And where we are in discovery, Your
18   Honor, I have given, I think, 14 or 15 rounds of preliminary
19   discovery.  The latest discovery was just sent last week,
20   and I know that Ms. Halverson received it; it was by mail on
21   a disk, it was a large amount of data.  I sent it to her as
22   soon as I got it; and I am still looking through that data.
23             I have submitted my request for the formal
24   fast-track discovery; but to be honest with you, I have sent
25   her almost everything that we have.

1         THE COURT:  Okay.  So am I correct in assuming
2  that you have turned over everything you have as to the
3  defendant, that you are now kind of -- but there is all of
4  this discovery as to everyone else?
5         MS. FURST:  Your Honor, every time I look at a
6  video and I see Brandon in it, I immediately download it and
7  send it to Ms. Halverson.
8         So as far as -- as of today, I haven't found
9  anything new; that is absolutely correct.  We're always
10 finding new things.  I will tell you that we do now have a
11 contract with Deloitte -- I think as of the end of May --
12 and that the process for getting all the discovery over to
13 them in a way to provide it globally is now underway.
14        But as far as his particular case, I believe I
15 have turned over everything that I have got that is of
16 substance.  The thing is, though, it takes a lot to go
17 through some of this data.  We did search warrants for
18 social media, and that kind of thing, so that's the data
19 that Ms. Halverson and I are both at the point of going
20 through.  I normally don't provide discovery of stuff I
21 don't know what is in it, but I did this time.
22        THE COURT:  Okay.  What are you requesting, ma'am?
23        MS. FURST:  Your Honor, if we could -- I know you
24 want to move it along; but under these unusual
25 circumstances, considering yesterday and today, I would ask

1    for another 60 days.  And of course if we can resolve it
2    sooner we will come back to the Court.
3            But I believe with the upheaval that's happened,
4    plus the additional discovery that both parties need to go
5    through, 60 days is a reasonable amount of time, and that it
6    is in the interest of justice to do so under 18 U.S.C.
7    3161(h).
8            THE COURT:  Okay.  So you are seeking to toll?
9            MS. FURST:  Yes, Your Honor.
10           THE COURT:  Okay.  Ms. Halverson.
11           MS. HALVERSON:  Normally, Judge, when I have a
12   client that's detained I am not necessarily at liberty to
13   toll speedy trial given the detainment status.
14           But I will tell you that, in Mr. Fellows'
15   particular case, the information that is in the -- sort of
16   what's been termed as, sort of, the global discovery also
17   includes the Capitol Police body-worn camera and the
18   personnel files of the Capitol Police officers, so that
19   information could potentially be absolutely integral in
20   preparing for our defense in this case.
21           So I don't -- I reject, sort of, the assertion
22   that everything that had to do with Mr. Fellows has already
23   been given to me, that stuff has not; and I need that stuff
24   to be able to prepare effectively.  I have talked to
25   Mr. Fellows about that; he understands that, and wishes to

1   have that in our possession before we go to trial.
2           So I think, at this juncture, it does make sense
3   to toll speedy trial and set it for a new status 60 days out
4   if Your Honor is inclined to do so.  And as Ms. Furst said,
5   if there is a resolution prior to that 60 days, we would of
6   course notice the Court of that.
7           THE COURT:  All right.  How about September 7th,
8   10:30?
9           Does that work for you, Ms. Furst?
10          MS. FURST:  Yes, Your Honor.  Thank you.
11          THE COURT:  Ms. Halverson?
12          MS. HALVERSON:  You said September 2nd, Your Honor?
13          THE COURT:  The 7th.
14          MS. HALVERSON:  The 7th.
15          Indulgence.
16          THE COURT:  Day after Labor Day.
17          MS. HALVERSON:  That's fine, Your Honor.
18          THE COURT:  We'll set this for a continued status
19  conference on September 7th.
20          I will toll the speedy trial clock until then,
21  although I expect that's going to be the last time I am
22  going to do that awaiting discovery.  I think the public has
23  an interest in resolution of these cases; and I think
24  Mr. Fellows -- especially now that he is detained -- has an
25  interest in resolution of this.

1           And, Ms. Furst, I know this is not up to you, but
2  I am concerned about this kind of just continual dripping of
3  discovery that could go on eternally to defense; that's not
4  how things are supposed to operate, I think, in a criminal
5  case and certainly not in a detained case.
6           So if there is not a resolution on the 7th I
7  expect that we're going to pick a trial date.  I also expect
8  we're going to pick, sort of, a cutoff for discovery, and
9  that there can be sanctions for the government if they do
10 not have discovery to defense by that time.  We just -- this
11 is not how we're supposed to run the criminal justice
12 system.
13          So I think this is the last continuance.  Ladies,
14 please bring your trial calendars if we don't have a
15 resolution on the 7th.
16          Ms. Furst, anything further for the government?
17          MS. FURST:  Your Honor, I appreciate what you are
18 saying; and I would just note that we have tried in that
19 memorandum that we just recently filed about the discovery
20 to explain to the Court why it's taking so long.
21          As everyone knows, this is a very unusual
22 situation that's never happened before; and because of our
23 *Brady* obligations -- that's the biggest thing that we're
24 trying to abide by.  But I appreciate the Court's comments,
25 and I will take them to heart.

1   THE COURT: And you see my concern about -- that
2   we're having new cases come in now. I mean, the potential
3   for new discovery is just -- that's going to continue as
4   long as you continue charging people.
5   MS. FURST: Yes.
6   THE COURT: I am not going to keep people in jail
7   while the government hunts down every last person who was in
8   the vicinity.
9   MS. FURST: I understand. Thank you.
10   THE COURT: Thank you, ma'am.
11   Ms. Halverson, anything further for the defense?
12   MS. HALVERSON: Nothing from the defense, Your
13   Honor. Thank you.
14   THE COURT: Thanks, folks.
15   (Whereupon, the proceeding concludes 11:47 a.m.)

16   **CERTIFICATE**

17   I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
certify that the foregoing constitutes a true and accurate
18   transcript of my stenographic notes, and is a full, true,
and complete transcript of the proceedings to the best of my
19   ability.

20   This certificate shall be considered null and void
if the transcript is disassembled and/or photocopied in any
21   manner by any party without authorization of the signatory
below.
22

23   Dated this 22nd day of July, 2021.

24   /s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter
25