**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-CR-83 (TNM)** |
| **v.** | : | |
| | : | |
| **BRANDON FELLOWS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION TO ADMIT DEFENDANT'S DETENTION HEARING TESTIMONY AT TRIAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits that the defendant, Brandon Fellows, by testifying at the October 12, 2021 reopening of his detention/bail hearing, knowingly and intelligently waived his Fifth Amendment right against self-incrimination.[1] For the reasons set forth below, the government requests that the Court admit the defendant's testimony at trial.

## BACKGROUND

The defendant was charged by Complaint on January 15, 2021, with violating Title 18, U.S.C. § 1752(a) (knowingly entering or remaining in any restricted building or grounds without lawful authority) and Title 40, § 5104(e)(2) (violent entry or disorderly conduct), misdemeanors concerning his presence and actions during the January 6, 2021 riots at the U.S. Capitol Building. ECF Doc. 1, Complaint. The defendant was arrested on January 16, 2021, in Albany, New York. ECF Doc. 8 at 1, Returned Arrest Warrant. On January 16, 2021, defendant had a first appearance, and was released on bond in the Northern District of New York. *Id.* at 23, Order to Release; 25-26, Minute Entry. The Magistrate Judge set another hearing in order to first review a Pretrial

[1] The undersigned thanks David Kidd for his assistance in the research and preparation of this motion.

Services report to decide if the defendant was a flight risk[2] under Title18, U.S.C. § 3142(f)(2(A) *Id*. at 23, Order to Release; 25-26, Minute Entry. The Court decided to release the defendant, but ordered certain conditions including home detention and electronic monitoring. *Id*. at 21, Conditions of Release.

On February 3, 2021, the defendant appeared before Magistrate Judge Robin M. Meriweather via video and was placed on GPS monitoring and a curfew of 9:00 p.m. to 6:00 a.m. ECF Doc. 9 at 2, Order Setting Conditions of Release. Magistrate Judge Meriweather further ordered that the defendant actively seek or maintain employment and report any contact with law enforcement *Id*.

On February 5, 2021, the grand jury indicted the defendant on five counts: four misdemeanor violations of Title 18, U.S.C. §§ 1752(a)(1), (2) and Title 40, U.S.C. §§5104(e)(2)(C), (D) and a felony violation of Title 18, U.S.C. §§ 1512(d)(2) and 2 for Obstruction of an Official Proceeding and Aiding and Abetting the same. ECF Doc. 6.

On June 14, 2021 the Pretrial Service Agency (PSA) issued a violation report stating that defendant had a mental evaluation appointment for 11:00 a.m. (June 14, 2021), but called the agency and cancelled because he was not feeling well. ECF Doc. 29, Petition for Warrant. When the U.S. Probation Office ("USPO") officer talked with him he asked to be able to work, despite "not feeling great." He was told no, then asked the USPO officer "have you checked your hormones." He was called again and directed to report to the USPO officer by the supervisory USPO officer at 3:45 p.m. June 14, 2021. *Id.*

Shortly after that last call, the USPO officer learned that a man had called the USPO officer's mother, who lives in another state, and the man was asking for the USPO officer and

[2] According to the agents and reports in this case, the defendant had told the FBI he would self-surrender but failed to do so causing law enforcement to search for him by obtaining legal process for real time location information.

asked twice if that was the correct number for the USPO officer, using the full name of the officer. *Id.* The mother offered to pass a message to the USPO officer, and the caller said he would just contact the USPO officer on their "other numbers." *Id.* Caller ID identified the caller's number as the same number used by the defendant to contact U.S. Probation for official business. *Id.*

Lastly, the USPO indicated a prior instance when the defendant was allegedly harassing a former girlfriend. Ultimately, the defendant was found to be in violation of an Order of Protection. When the clerk of the court tried to call the defendant at the number he had listed as his contact on official court records, the number rang through to the Judge's wife's office. *Id.*

The Court held a hearing on the Petition for Warrant and to revoke his release on July 14-15, 2021. After a hearing over two days during which witnesses testified, the Court revoked the defendant's release. ECF Doc. 37, Trans. of 7-15-21 hrg. at 6, 8-9. On the first day of the hearing, the defendant indicated his willingness to testify, despite the Court and counsel's repeated advice against doing so. ECF Doc. 46, Trans. of 7-14-21 hrg. at 75-77. In this hearing, the defendant stated that he has "been made well aware of the risks" but was "willing to accept those risks." *Id.* at 76. The hearing was continued to a second day to ensure the defendant was aware of the risks of testifying. The defendant told the Court he had reconsidered, then apologized before the court and chose not to testify. *Id*. at 79; ECF Doc. 37 at 3-4.

On September 7, 2021, the Court held a status conference where the defendant reiterated his desire to testify in his own behalf. ECF Doc.43, Trans. of 9-7-21 hrg. at 14-15 (Attachment A). The defendant's counsel told the Court that she advised the defendant that "anything he says in open court could potentially be used against him in a further proceeding." *Id*. at 11. The defendant cited his own legal research and throughout seven (7) pages of legal discussion stated, "One of the things I've intensely studied is the many cons and few pros of self-representation." *Id*. at 13. He

advised the Court that despite reading that the Supreme Court justices found representing yourself was "akin to a defendant waiving his right to a fair trial" he was "still asserting" his "Sixth Amendment right to self-representation." *Id.* at 14 -15. The Court then set another hearing to consider the defendant's request to represent himself and his pro se motion to reopen his detention hearing. *Id*. at 22-24.

On September 23, 2021, a hearing was held to determine if the defendant would represent himself. ECF Doc.__, Trans. of 9-23-21 hrg. at 2 (Attachment B). At this hearing, the court once again walked the defendant through the seriousness of his charges and the difficulties of self-representation, which the defendant affirmatively acknowledged. The defendant stated that he understood he was charged with a series of crimes including a felony and is facing "some pretty significant liability in terms of potential incarceration and fines." *Id*. at 3. He stated he understood that if he decided to represent himself the court cannot advise him how he should try his case. *Id*. at 4. And he stated he understood that he must abide by the technical Rules of Evidence and the Federal Rules of Criminal Procedure, of which he had done some reading. *Id*.

The Court strongly urged the defendant not to represent himself and stated that in his own opinion it was unwise because the defendant was not familiar with the law, familiar with court procedure, or familiar with the Rules of Evidence. *Id*. at 5. Defendant's counsel stated that she had already "gone over the exact same questions" that the court just went over with the defendant and that "it does appear that [the defendant] is knowingly and voluntarily making a decision to represent himself." *Id*. at 6. The court asked the defendant "in light of the penalty that you might suffer if you're found guilty and in light of all the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by an attorney," and the defendant answer affirmatively with "I do." *Id*. at 5-6. The Court then found that "the defendant

has knowingly and voluntarily waived the right to counsel" and permitted the defendant to represent himself. *Id.*

On October 12, 2021, the Court held a hearing to consider reopening the defendant's detention status. ECF Doc. 55, Trans. of 10-12-21 hrg. at 1 (Attachment C). The defendant had filed a motion to reopen the detention hearing and the government responded. ECF Docs. 45, 47. The Court once again warned the defendant of the risks of testifying:

> to the extent you plan to talk about things after January 6th and compliance with your release conditions, I don't think you are opening yourself up to any Fifth Amendment challenge there in this case…" but "*if you do decide you want to talk about January 6th or matters directly relating to the charges against you, you may be opening yourself up to those being used against you in trial*, in the very least, in a cross-examination setting should you choose to take the stand I encourage you to talk with Ms. Halverson before you, kind of, get into those areas or just warn you that there are potential drawbacks to doing that. Does that make sense, sir?

Doc. 55 at 10-11 (emphasis added). The defendant acknowledged "Yes, Sir" and the court granted him an opportunity to speak. *Id*. at 11.

The defendant's testimony, under oath, related to both compliance with his release conditions and January 6th matters directly relating to the charges against him. The defendant admitted to going into the Capitol. *Id*. at 63. The defendant admitted to entering the Capitol through a broken window and standing upon a splintered and smashed desk while waving a flag. *Id*. at 65, 67-68. The defendant admitted to entering U.S. Senator Jeff Merkley's office. *Id*. at 69. And the defendant admitted to smoking marijuana inside the Capitol building and to saying the same during interviews with CNN and other news outlets. *Id.* at 63. The Court denied the defendant's request for release and ordered that he remain in custody pending trial. *Id*. at 89.

## ARGUMENT AND LAW

### I. BRANDON FELLOWS KNOWINGLY AND INTELLIGENTLY WAIVED HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION.

Defendant Brandon Fellow's testimony on October 12, 2021 should be admitted as evidence at his trial. A defendant's testimony at detention hearings is admissible at trial if they knowingly and intelligently waived their Fifth Amendment Right against self-incrimination. *United States v. Dohm*, 618 F.2d 1169, 1175 (5th Cir. 1980); *United States v. Ingraham*, 832 F.2d 229, 240 (1st Cir. 1987). *See also* *McGahee v. Massey*, 667 F.2d 1357, 1364 (11th Cir. 1982), *pet. cert. den*. 103 S. Ct. 255 (1982).

In *United States. v. Ingraham*, a magistrate judge warned a defendant in a detention hearing that he was "not required to make any statement to anybody" and that if he did make a statement, it could be used as evidence against him. 832 F.2d 229, 240 (1st Cir. 1987). Nevertheless, the defendant insisted that he be allowed to speak on his own behalf and made remarks admonishing his perceived enemies and federal officials which were later used against him at trial. *Id.* at 240. The First Circuit held that the defendant's testimony at the bond hearing was admissible at trial because when he made his statements he knowingly and willingly waived his privilege against self-incrimination. *Id*. at 239.

Similarly, the defendant herein knowingly and intelligently waived his Fifth Amendment right against self-incrimination. From July through October, the District Judge and defendant's prior counsel continually advised him of the risks of testifying. ECF Doc. 46, Trans. of 7-14-21 Hrg. at 75-77; Doc.43, Trans. of 9-7-21 hrg., Att. A at 11; Doc.__, Trans. of 9-23-21 Hrg., Att. B at 3-4; Doc. 55, Trans. of 10-12-21 hrg., Att. C at 10. The defendant told the Court time and again that he understood and personally researched these risks but proceeded with his testimony regardless. Doc. 46 at 76; Doc.43, Att. A at 14-15; Doc.__, Att. B at 3-4; Doc. 55, Att. C at 11. In

the July 14th status hearing after being advised by his counsel that personally addressing the court was not in his best interest, he requested to speak and offered to be "cross-examined" and have everything he said "initiated as facts" before the court. ECF Doc. 46 at 76. In this hearing he stated that he has "been made well aware of the risks" but was "willing to accept those risks." *Id*. His request to speak to the court was only delayed to the next day, the July 15th status hearing, so that the court could ensure that by that time he would "completely understand" what he was doing — and suggested that defendant speak with another attorney to obtain a second opinion as to the wisdom of his plan. *Id.* at 79. The next day, the defendant apparently came to terms with the seriousness of testifying, apologized to the court, and did not proceed with self-representation. ECF Doc. 37, Trans. of 7-15-21 hrg. at 3-4.

However, at the September 7th status hearing, although his counsel once again advised him that "anything he says in open court could potentially be used against him in a further proceeding," he stated that in the time since the last hearing he had "intensely studied [] the many cons and few pros of self-representation" and "now that I have researched into self-representation, it is what I want." ECF Doc. 43, Trans. of 9-7-21 hrg., Att. A at 12-14. At this status hearing, he cited his legal research, including Justice Blackmun's adage that "one who is his own lawyer has a fool for a client," but despite all of this self-proclaimed "startling information" he still chose to self-testify before the court. *Id*. at 12-14. During the September 23rd hearing, he was again reminded of the great penalty that he might suffer if found guilty and of the difficulties of representing himself, but answered affirmatively to represent himself and "give up [his] right to be represented by an attorney." ECF Doc.__, Trans. of 9-23-21 hrg., Att. B at 3- 4. And at the October 12th detention hearing, the court advised him once again that "if you do decide you want to talk about January 6th or matters directly relating to the charges against you, you may be opening yourself up to those

being used against you in trial, in the very least, in a cross-examination setting should you choose to take the stand." ECF Doc. 55, Att. C at 10-11. Although the defendant acknowledged the statement, he ultimately chose to speak about the events of January 6th and the matters directly relating to the charges against him. *Id. at* 10-11.

When a defendant knowingly makes an informed decision to testify, his statements are admissible against him. In *United States v. Dean*, the defendant, who had counsel, complained that the magistrate had not warned him that his testimony at his detention hearing could be used against him. 927 F.2d 605, 1991 WL 29197 at * 4 (6th Cir. 1991). The Sixth Circuit found such use of the testimony at trial was harmless error, but also said:

> Dean was advised of his rights on more than one occasion, and he had counsel at the bail hearing. It was his own counsel who called him to testify. At the first detention hearing, Dean elected not to testify, so he knew the choice was his. Although a court is required to tell a defendant that he need not testify, we know of no rule requiring the judicial officer to intercede when a defendant, represented by counsel, elects to testify.

Like Defendant Dean, Brandon Fellows well knew the risks of testifying but proceeded anyway. He knowingly and intelligently waived his Fifth Amendment right against self-incrimination.

Lastly, the Court's warning of the risk of testifying was neither misleading nor confusing. In *United States v. Dohm*, the court held that the defendant failed to make a knowing and intelligent waiver of his right against self-incrimination because the magistrate's statement advising the defendant was misleading and confusing. 618 F.2d 1169, 1175 (5th Cir. 1980). Although the magistrate had cautioned the defendant that "you may say something that might hurt you in the future proceedings…" he had also disclaimed "but I don't know how it can be done. Technically, they won't use it." *Id.* No such confusion occurred here. Instead, the court made every attempt to ensure that the defendant fully understood the gravity of self-representation. Even immediately before the defendant began his testimony, this Court directly reiterated that "if you do decide you

want to talk about January 6th or matters directly relating to the charges against you, you may be opening yourself up to those being used against you in trial…" ECF Doc. 55, Trans. of 10-12-21 Hrg., Att. C at 10. This admonishment was clearly understood by the defendant as he acknowledged the risk and impact of testifying on his own behalf when he responded, "I have shown that I am not afraid of sharing the truth even if it damages me because I am hoping that shows I do take ownership that, hey, I have done this." *Id*. at 82. The defendant's testimony should be admitted as evidence at his trial on the merits as he willingly and intelligently waved his Fifth Amendment right against self-incrimination.

## II. THE HOLDING IN *SIMMONS V. UNITED STATES* DOES NOT APPLY TO A DEFENDANT'S TESTIMONY AT A DETENTION HEARING

In *Simmons v. United States*, the Supreme Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt…" 390 U.S. 377, 394 (1968). The Court reasoned that suppression hearings contained an apparent conflict between a defendant's constitutional rights, and it is "intolerable that one constitutional right should have to be surrendered in order to assert another. *Id*. at 394. In a suppression hearing, this conflict is the defendant's forced choice between asserting a Fourth Amendment claim to attempt to deprive the prosecution of evidence and retaining their Fifth Amendment privilege against self-incrimination for that voiced assertion. *Id.*

Detention hearings are fundamentally different than the Fourth Amendment suppression hearings concerned in *Simmons.* The First and Fifth Circuits have held that *Simmons* does not apply to testimony given by a defendant at a detention hearing because there is not a similar conflict as in *Simmons* between the Eight Amendment right to bail and the Fifth Amendment's right against self-incrimination. *United States v. Dohm,* 618 F.2d 1169, 1173-74 (5th Cir. 1980).

*See also United States. v. Parker*, 848 F.2d 61, 62-63 (5th Cir. 1988); *United States v. Ingraham*, 832 F.2d 229, 237 (1st Cir. 1987) (defendant need not testify since evidence by hearsay or proffer is available); *United States v. Melanson,* 691 F.2d 579, 583-84 (1st Cir. 1982). A detention hearing does not require a defendant to surrender their Fifth amendment rights to assert their right to bail because a detention hearing does not compel a defendant to divulge the facts of the case to secure their release. *Id.* at 584.

By contrast, in a case involving a rebuttable presumption under the Bail Reform Act, Title 18 U.S.C. § 3142(e), the Third Circuit determined that a defendant was entitled to "use-fruits immunity" when a defendant testifies at a detention hearing to rebut a presumption of detention and of posing a serious risk of danger to the community. *United States v. Perry,* 788 F.2d 100, 115-117 (3rd Cir. 1986). The *Perry* Court noted that while other testimony could be available to rebut the presumption from co-workers, neighbors, friends, and others, it may not be enough. *Id.* at 115. Thus, a defendant is between a rock and a hard place, and should be able to testify if necessary, without giving up his right against self-incrimination to assert the right to liberty. *Id. See also United States v. Enix,* 212 F. Supp. 3d 408, 411 (W.D.N.Y. 2016) (holding inadmissible detention hearing testimony but permitting such use as impeachment evidence if necessary).

A district court in the Ninth Circuit similarly followed the holding in *Perry*. In *United States v. Medrano*, the defendant was charged with two offenses that implicated the rebuttal presumption of 18 U.S.C. § 3142(e)(3). No. 2:17-CR-00067-SMJ, 2017 WL 6878097, at *1–2 (E.D. Wash. Dec. 22, 2017). One count fell under subsection (e)(3)(A) - an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, and the other fell under subsection (e)(3)(B) - an offense under 18 U.S.C. § 924(c). *United States v. Medrano*, 2:17-cr-00067-SMJ, ECF Doc. 8, Mtn. for Detention. (E.D. Wash, May 3,

2017). The court ultimately found the reasoning of *Perry* persuasive and granted *Simmons* immunity for the defendant's testimony at a detention hearing to rebut the presumption that Medrano posed a serious danger to a person or the community if released. No. 2:17-CR-00067-SMJ, 2017 WL 6878097, at *1–2 (E.D. Wash. Dec. 22, 2017

The rationales of the holdings in *Perry*, *Enix* and *Medrano* do not apply here. The defendant is not part of a class of defendants who need to rebut one of the statutory presumptions in the Bail Reform Act. Indeed, here, there are no applicable statutory presumptions relevant to the defendant's detention hearing. In *Porretto v. Stalder*, 834 F.2d 461 (5th Cir. 1987), the Fifth Circuit held that a detention hearing does not require a defendant to surrender their Fifth Amendment rights to assert their right to bail even when a bail statute places the burden of proof on the defendant. *Id.* at 466. The defendant did not have to testify about the underlying facts of the charges against him, nor did he have to testify at all. Hearsay is admissible at a detention hearing. *United States v. Taylor*, 289 F. Supp. 3d 55, 70 (D.D.C. 2018). Therefore, a proffer or presenting other witnesses would have done the same job and without the damage the defendant inflicted upon himself. *See United States v. Parker*, 848 F.2d 61, 62-63 (5th Cir. 1988). While the D.C. Circuit has yet to opine on this issue, the 1st, 5th, and 6th Circuits have thus far supported the use of such detention hearing testimony against a defendant at a later trial. And while the Third Circuit is the only circuit to have ruled in a different way, its decision was cabined by the rebuttable presumption relevant to that defendant's testimony. As noted by the Court in *Enix* (one of the few district courts to support *Perry*'s rationale), if the defendant "was forced to decide between testifying in an effort to rebut the Bail Reform Act presumptions to vindicate his constitutional right of liberty," he would be forced into the *Simmons* constitutional quagmire. 212 F. Supp. 3d at 411.

Here, the defendant's exhaustive decision to testify to re-open his detention hearing presents none of the same issues previously addressed by courts. He was not facing a rebuttable presumption. He was not forced to testify about the events of January 6th in question. Indeed, the purpose of his limited testimony was to discuss his prior transgressions relevant to his revocation, and why the Court should reassess his ability to conform to Court order. And rather than carelessly approach the defendant's Fifth Amendment waiver, this Court, along with his prior counsel, engaged in extensive efforts to deter the defendant's self-representation. The defendant knowingly waived those rights, to include the right to have his counsel advocate on his behalf regarding a motion to re-open detention. Detention hearings – especially those without rebuttable presumptions – are "a fundamentally different breed of cat." *Ingraham*, 832 F.2d at 237. The information presented at a bail hearing is "often less central to the nub of the case, and the "needed input can usually be obtained from sources other than the suspect's own testimony." *Id.* at 237-38. This holding is persuasive, in context and should extend to the facts of this case. Thus, we seek to introduce such statements relevant to the charges underlying this indictment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By: /s/ *Mona Lee M. Furst*
MONA LEE M. FURST
Assistant United States Attorney
Federal Major Crimes
Detailee
U.S. Attorney's Office
301 N. Main, Ste 1200
Wichita, Kansas 67202
Office: 316-269-6481
Mona.Furst@usdoj.gov

**CERTIFICATE OF SERVICE**

On this 22nd day of November 2021, a copy of the foregoing was served on standby counsel of record for the defendant via the Court's Electronic Filing System and sent via USPS to the defendant Brandon Fellows Inmate #377943, D.C. Jail, Correctional Treatment Facility, 1901 E. Street S.E., Washington, DC 20003.

/s/*Mona Lee M. Furst*
Mona Lee M. Furst
Assistant United States Attorney