IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| United States of America, | ) | Criminal Action |
| | ) | No. 1:21-cr-00083-TNM-1 |
| Plaintiff, | ) | |
| | ) | **Status Conference** |
| vs. | ) | |
| | ) | |
| Brandon Fellows, | ) | Washington, D.C. |
| | ) | September 7, 2021 |
| Defendant. | ) | Time:  10:30 a.m. |

_____

Transcript of **Status Conference**
Held Before
The Honorable Trevor N. McFadden
United States District Judge

_____

A P P E A R A N C E S

For the Plaintiff:       **Mona Furst**
                         DEPARTMENT OF JUSTICE
                         OFFICE OF THE UNITED STATES ATTORNEY
                         301 North Main, Suite 1200
                         Wichita, Kansas 67052

                         **Thomas A. Gillice**
                         U.S. ATTORNEY'S OFFICE FOR THE
                         DISTRICT OF COLUMBIA
                         National Security Section
                         555 4th Street, Northwest
                         Washington, D.C. 22205

For the Defendant:       **Cara K. Halverson**
                         OFFICE OF THE FEDERAL PUBLIC DEFENDER
                         FOR THE DISTRICT OF COLUMBIA
                         625 Indiana Avenue, Northwest
                         Suite 550
                         Washington, D.C. 20004

_____

Stenographic Official Court Reporter:
                         Nancy J. Meyer
                         Registered Diplomate Reporter
                         Certified Realtime Reporter
                         333 Constitution Avenue, Northwest
                         Washington, D.C. 20001

P R O C E E D I N G S

THE COURTROOM DEPUTY:  Your Honor, this is criminal case 21-83, United States of America v. Brandon Fellows.

Counsel, please come forward to identify yourself for the record, starting with the government.

MS. FURST:  Good morning, Your Honor.  Mona Furst, Assistant United States Attorney for the record.  And I would ask -- Emily Miller wants to listen in because of some of the discovery issues, in case you have a question, and I just wanted to make sure the open public line was open.

THE COURTROOM DEPUTY:  At the moment, no.

MS. FURST:  Thank you.

THE COURT:  All right.  We will get that up.

MR. GILLICE:  Your Honor, good morning.  Tom Gillice appearing on behalf of the United States.

THE COURT:  Good morning, Mr. Gillice.

MS. HALVERSON:  Cara Halverson on behalf of Mr. Fellows.  Good morning.

THE COURT:  Good morning, Ms. Halverson, and good morning, Mr. Fellows.

All right.  Do you need a minute, Ms. Chaclan?

THE COURTROOM DEPUTY:  I do.

(Public line was opened.)

THE COURT:  All right.  Ms. Furst, where do things stand on this case?

1          MS. FURST:  Your Honor, I put a little of this in the

2    motion that I filed on Friday.  Right now we are still

3    negotiating trying to come to a resolution.  The motion that I

4    filed on Thursday -- Friday, the 3rd, indicated that we were

5    still in plea negotiations, which is true.  There's -- there

6    was a counteroffer, and I am still talking with supervisors

7    about that.  I hope to get an answer within the next couple

8    weeks.

9          Since our last hearing, July 14th, I have been

10   continuing to give discovery.  The last set of discovery I gave

11   was August 24th.  There has been, I think, 16 rounds of

12   discovery with thousands of documents, to include the iCloud

13   that we received through legal process, and the Instagram that

14   we received through legal process that was within the iCloud.

15   So I continue to find videos; some open source.  The last one I

16   sent on the 24th was an open source video that had Mr. Fellows

17   in it.

18         So I continue to give discovery like I normally do

19   anyway, and so we are continuing to do that.  As I said, we're

20   still talking about plea negotiations.

21         And the office is working towards the goal that we

22   talked about last time, which is body-worn camera, internal

23   affairs records of officers.  Those are two things that are

24   very important specifically to Mr. Fellows that Ms. Halverson

25   and I have discussed.  If you'd like, I can go into that with

1    more detail.

2          THE COURT:  I don't think that's necessary right now,

3    ma'am.

4          MS. FURST:  Okay.  And so, Your Honor, the discovery

5    continues, as is stated in the two motions that I filed on the

6    26th of August, which is the status memo, and then the

7    September 3rd motion.

8          And I -- but I have learned -- and I want the Court to

9    know this -- that the Capitol Police OPR reports should be

10   available to defense within the week and then the Metro Police

11   Department internal affairs shortly thereafter.

12         We have now contracted for a platform for defense with

13   Axon so that they'll have their own evidence.com platform, and

14   we are in the process of taking about 7,000 body-worn cameras

15   to place on that platform and then trying to tag them and

16   organize them so that the defense isn't just randomly getting a

17   dump of all these videos.  So that's what we're doing now.

18         And the platform -- the licensing, I think, was

19   approved -- I think it was Friday.  Public Defender and our

20   office are working on a protective order for the victims of the

21   assaults so that before all this goes into effect, we have that

22   protective order in place.

23         And what we're trying to do is prioritize materials that

24   the defense feels is important.  And I think that's it for now,

25   Your Honor.

1          THE COURT:  Okay.  So I think, as I mentioned at the

2     last hearing, my inclination is to go ahead and set a trial

3     date, a specific -- especially since Mr. Fellows is now

4     detained and my trial calendar is rapidly filling up.  I

5     think -- I'm looking at the week of March 21st.

6          Ms. Furst, maybe you can check your calendar.  I'm

7     willing to hear you if you think it is too soon to be setting a

8     trial date, but given that that's when I'm looking at and that

9     Mr. Fellows is detained, that's my strong inclination.

10          MS. FURST:  I understand, Your Honor.  I'm pretty

11     sure March 21st is a good date for me, but I would urge you to

12     just please hold off.  Let me renew that motion to continue

13     that I filed on Friday and ask at least for another 60 days and

14     to toll speedy trial for all the reasons that we've talked

15     about, but, more importantly, as you know, this case has got a

16     complicated history.

17          The parties are really trying hard to work together to

18     achieve a nontrial situation.  I -- I really don't know how

19     long -- I hope to get a response to the counteroffer in a week

20     or two, and then I'm sure there will be things that we'll have

21     to work out.  That's going to take a while.

22          In addition, defense has asked specifically for certain

23     files and certain camera angles.  So the body-worn camera

24     platform that was going to be very important to Mr. Fellows'

25     defense -- and I think Ms. Halverson can talk about that a

1   little bit more -- and the internal affairs docs will be

2   important because there has been a specific request about those

3   as well.

4        And so because this is not all in place yet, I really

5   would ask the Court to just set it for another status

6   conference versus a trial date and allow us that time, since

7   we're getting there, in order to give the defense what they

8   want so that later down the road, you know, if -- if they

9   didn't have exactly everything they needed, I -- you know, I

10  just don't want this to fall apart, you know, after appeal.

11       And we've done, I think, a great job, frankly, in eight

12  months getting this all put together.  It's so complicated.

13  And you know -- I know the Court knows that, and I know the

14  Court's heard other arguments, but, you know, even if it was

15  one defendant, we would still have to go through this to get

16  the evidence to the defendant that they need to mount their

17  defense, but also for the *Brady*, *Giglio* evidence as well.

18       So, Your Honor, for all those reasons and those in the

19  motions, I would ask that we -- rather than set it for trial,

20  to set it over for the 60 days.

21            THE COURT:  All right.  I mean, we are talking,

22  though, something more than six months from now at this point,

23  that -- looking at a trial date.  I'm --

24            MS. FURST:  Yes, Your Honor, but, I mean, if you

25  consider that -- again, I know you hate hearing this from me.

1     It's a global situation, and Mr. Fellows was out there a long

2     time, out and about, and it is conceivable that we will

3     continue to find either open source, other defendant videos, or

4     Metro Police videos that may affect his defense, and so -- I

5     don't know what his defense is.  Ms. Halverson obviously has

6     discussed it with her client.  But for her to get everything

7     she needs, she has requested video and OPR files and that kind

8     of thing.  So I really think it's in the best interest of all

9     parties to get the defendant what he needs.

10          THE COURT:  I -- I don't disagree with that.  I'm

11    just talking about timing here and if we wait until you're

12    confident that he has everything he needs and then we start

13    looking at a trial date, that's going to be a long time from

14    now.

15          MS. FURST:  Yes.  Well, how about this:  We set it

16    over for 60 days and then we reconsider.

17          THE COURT:  All right.

18        Let me hear from Ms. Halverson.

19        Thank you, Ms. Furst.

20          MS. FURST:  Thank you, Your Honor.

21          MS. HALVERSON:  Good morning, Your Honor.  Cara

22    Halverson for Mr. Fellows.

23        So I spoke with Mr. Fellows about setting it over again.

24    Mr. Fellows is very, very much interested in getting the

25    discovery that Ms. Furst describes, specifically the MPD videos

1    and other videos in the Capitol and the disciplinary records.

2    He told me that he is fine -- he does not want it to be set for

3    trial until he has a chance to look at that information so that

4    he has a chance to make an informed decision about what he

5    wants to do in the case.

6            So our -- we would join in the government's request to

7    not set it for a trial date, although understanding that, you

8    know, resources do get tight for the Court.  The only other

9    thing I'll -- I'll suggest, Your Honor, is that, you know, one

10   consideration in favor of -- of tolling speedy trial and

11   setting it for another status would be that if we do take that

12   March court date and neither one of the parties are actually

13   ready to go to trial by that point, we may be depriving

14   somebody else of that trial date on your schedule.  So that's

15   just something additionally that -- that you might want to

16   consider.

17           But, again, as far as Mr. Fellows is concerned, he's

18   fine to set it for another status, and he is in agreement in a

19   joint request to the government that they be able to provide

20   that information prior to a trial date being set in this

21   matter.

22               THE COURT:  Okay.  I want to make sure -- I just set

23   my last February date half an hour ago.  So coming back in

24   60 days, I mean, that means that it's going to be that much

25   further.  I want to make sure he understands the implications

1    of that.

2          Okay.  I see Mr. Fellows nodding.

3          I'm happy to set another status date, especially in

4    light of some recent motions in this case.  How about Friday,

5    November 19th at 10:00 a.m.?

6          Does that work for you, Ms. Furst?

7                MS. FURST:  Your Honor, would it be in person again?

8                THE COURT:  I think that's probably best.  We're

9    actually having difficulty now getting Zoom slots at the jail.

10   So yes.

11               MS. FURST:  Yes, Your Honor.

12               THE COURT:  Okay.  And Ms. Halverson?

13               MS. HALVERSON:  I am going to be out of the

14   jurisdiction that week.  So if we can potentially do the

15   following week or the week after that, that would work better

16   for my schedule.

17               THE COURT:  The following week is Thanksgiving and

18   I've got a trial.  Let's not do that.  But the week after, how

19   about 10:00 a.m. on November 29th?

20         Does that work for the government?

21               MS. FURST:  Yes, Your Honor.  That is Monday at

22   10:00 a.m., and it's the Monday after Thanksgiving; right?

23               THE COURT:  Yes.  Does that work --

24               MS. FURST:  Yes, it's good.  I just note there's some

25   courts that don't hold court on holidays.

 1              THE COURT:  Okay.  Not this one.

 2              MS. FURST:  Okay.

 3              THE COURT:  Justice must be done.

 4              MS. HALVERSON:  That's fine for defense, Your Honor.

 5              THE COURT:  All right.  Thank you, Ms. Halverson.

 6         We'll set this for a continued status conference at

 7    10:00 a.m. on Monday, November 29th.

 8              MS. HALVERSON:  And, Your Honor -- I'm sorry.

 9              THE COURT:  Go ahead.

10              MS. HALVERSON:  I do apologize.  I think you're about

11    to do the speedy trial tolling.  So I'll stand back.

12              THE COURT:  You --

13              MS. HALVERSON:  We have no objection to tolling

14    speedy trial between now and the next date in November.

15              THE COURT:  Okay.  I think in light of the recent

16    motions that have been filed on the docket and the issues

17    discussed in them and given the defendant's desire to get

18    specific discovery before making a decision about proceeding to

19    trial, I think it is appropriate to -- to toll the speedy trial

20    clock until Monday, November 29th, and I find that the

21    interests of justice outweigh the interests of the defendant

22    and the public in a speedy trial to the extent that we would

23    toll until then.

24         Mr. Gillice, I'm -- I think I'm aware of why you're

25    here.  I'm inclined to deal with it on the record as it stands,

1    unless there's anything further that I should hear from you on.

2              MR. GILLICE:  No, Your Honor.  Normally we would

3    expect that the Court would issue a public order as well as an

4    ex parte classified order in a situation like this.

5              So other -- if the Court has questions that I can answer

6    in an open setting, I'm -- I'm happy to oblige if I can.

7              THE COURT:  I don't think so.  Thank you, sir.

8              Ms. Furst, anything further for the government?

9              MS. FURST:  No, Your Honor.  And I apologize for not

10   coming front and forward previously, but nothing further.

11             THE COURT:  All right.  And Ms. Halverson?

12             MS. HALVERSON:  Your Honor, I have spoken with

13   Mr. Fellows.  He would like to address the Court today.  I have

14   talked to Mr. Fellows about the dangers and complications of

15   doing that.  I've advised him that anything he says in open

16   court could potentially be used against him in a further

17   proceeding.  He wants to speak in -- against my advice today,

18   and so he wanted me to ask the Court if it would be acceptable

19   for him to address the Court today?

20             THE COURT:  Okay.  That's fine with --

21             Ms. Furst, do you want to say something?

22             MS. FURST:  Yes, Your Honor.  Your Honor, as before,

23   I would ask the Court if defendant starts talking about facts,

24   I would ask that the Court put him under oath.

25             THE COURT:  Okay.  Thank you, Ms. Furst.

1          Mr. Fellows.

2               MS. HALVERSON:  Would you like him to come up to the

3     podium?

4               THE COURT:  Yeah.  Why don't you come up here, sir.

5          You've talked about what you plan to say with your

6     attorney, ma'am -- sir?

7               THE DEFENDANT:  I'm sorry.  Could you repeat that?

8               THE COURT:  Have you talked with Ms. Halverson about

9     what you intend to discuss?

10               THE DEFENDANT:  I have previously discussed it, but

11     there is some new stuff here, but I -- I do not wish to discuss

12     it.  I just wish to read what I'd like to say.  I timed it.

13     It's about in total -- of nine minutes.  I'm hoping since it's

14     my first actual time speaking, the Court would be gracious

15     enough to let me speak for that allotted time.

16               THE COURT:  Okay.  All right.  You can start.

17               THE DEFENDANT:  Okay.  Thank you.

18          I first would like to apologize -- minor things to begin

19     with -- for my hair and appearance.  The jail does not let us

20     get a haircut.

21               THE REPORTER:  I'm going to ask you if you're reading

22     from a document, if you would slow down.  Thank you.  Do you

23     want to start over?

24               THE DEFENDANT:  Sure.

25          I first would like to apologize for my hair and

1    appearance.  The jail does not let us get haircuts.  I also

2    wish I could be wearing my suit that I specifically bought for

3    this Court despite my low funds.

4         I would like to give thanks to you for offering the

5    opportunity to speak last time, despite that I was convinced I

6    should wait until today.  And I thank you for letting me speak

7    now since I have new plans.

8         I was just given a legal law library on August 24th.  So

9    I've had access for less than two weeks.  Less than two weeks

10   to study and understand things is all it took to make me aware

11   of laws, procedures, rules, rights, and motions that inspired

12   me to make a huge case and, perhaps, life-altering decision.

13        One of the things I've intensely studied is the many

14   cons and few pros of self-representation.  Last time, if the

15   Court will remember, I wanted to offer multiple objections and

16   also wanted to tell the actual still unspoken of truth to the

17   many accusations and events that have been presented before the

18   courtroom.  However, I was told that I should wait to first

19   ensure that the evidence was available for all and not just

20   some of my claims.

21        I was told that there was a double standard when it

22   comes to us asserting claims compared to when the prosecution

23   and her agencies make them.  Wait until the 7th is what I was

24   told and what I have done.  However, Ms. Halverson's mind has

25   changed.  I continually asked for this opportunity.  I was

1    promised, but Ms. Halverson stood firm and said she would not

2    allow it.  The second time I kindly asked, Ms. Halverson,

3    again, suggested to self-represent if I would like to do this,

4    which I've always denied and never shared an interest for until

5    three days ago.

6         Your Honor, you were spot on when you said the last

7    hearing that you thought I was impulsive.  Now that I have

8    researched into self-representation, it is what I want.  Now,

9    before it is falsely argued that I am not competent to make

10   such a decision so fast and on my own, let me clarify some

11   understandings of mine.  I have read Justice Blackmun quote the

12   proverb that one who is his own lawyer has a fool for a client.

13   I have read as he dissented and needled against the majority

14   when he stated, "The Court now bestows the constitutional right

15   of one to make a fool of himself," referring the right to

16   self-represent.

17        I have read all the Supreme Court justices joined in

18   agreement as they stated that as a rule, no attempts to argue

19   self-representation is wise, desirable, or efficient.  I've

20   read that some justices said it's akin to a defendant waiving

21   his right to a fair trial.  Finally, I have read the

22   supreme courts say it usually results in an unfavorable trial

23   outcome for the defendant.

24        However, despite all of this startling information, I am

25   still asserting my Sixth Amendment right to

1    self-representation.  However, in understanding criminal

2    procedures, Chapter 4, the right to counsel, subsection 4.05,

3    it states once the defendant asserts a preference to proceed

4    pro se -- I'm saying it correctly -- the trial court must steer

5    between Scylla and Charybdis of erroneously denying the

6    defendant the right to proceed pro se and erroneously

7    concluding that the defendant has effectively waived his right

8    to counsel since either error results in an automatic reversal.

9    I, for this reason, will assert I am not waiving my right to

10   counsel.

11        It is well known that trials and hearings are inevitably

12   both slowed and complicated by failures to understand or follow

13   normal procedures and that the burden grows on both the jurors

14   and the prosecutor to ensure that reversal error is avoided.

15   It is for this reason that trial courts will frequently appoint

16   standby counsel to assert -- sorry -- to assist the pro se

17   defendant.  This is the counsel I am requesting.

18        I will inform the Court that the Supreme Court stated in

19   *Faretta* that a trial court may, even over the objection of a

20   defendant, appoint standby counsel in self-representation

21   cases.  I am not objecting to this.  I am requesting this.  The

22   purpose of standby counsel is limited, to assist the defendant

23   if and when he seeks help and to take over the case if

24   self-representation must be terminated during trial.

25        A wise commander and chief listens to his generals and

1    advisers, especially in areas they are unfamiliar with or

2    unskilled in, unlike Joe Biden in Afghanistan or Obama in Iraq.

3    According to Justice Blackmun, I'm a fool for choosing to

4    self-represent, but I am nowhere close to being as big of a

5    fool as Joe Biden.

6         I recognize the courtroom is an area I lack skill and

7    understanding with.  Although I have goals of my own, I think

8    it would be wise to have an adviser help me along the way.

9    Without one, it would just hurt me, but would also be a

10   detriment -- it would not just hurt me.  It would also be a

11   detriment to the Court, similar to how Joe Biden is a detriment

12   to the country.

13        I am halfway done.  Thank you, Your Honor.

14        The Supreme Court felt this way as well.

15        Before I close this first request of mine, I'd like to

16   quickly offer additional reasoning and inspiration for my

17   choices here today.  When Justice Blackmun, Brennan, Marshall,

18   and Stevens dissented to the socialization of criminal defense

19   representation, they stated this move too easily excluded the

20   maverick and risk-taker whose approach might not fit into the

21   standard -- sorry -- into the structured environment of a

22   public defender's office or displease a judge whose preference

23   for nonconfrontational styles of advocacy might influence the

24   judge's appointment decisions.

25        Although not talking about self-representation, this

1   deeply resonated within me.  My past is riddled with

2   maverick-like decisions and choices.  My decisions and choices

3   fully characterize and calculate a risk-taker.  It's what led

4   me to become the youngest intern at a Fortune 500 company where

5   I created an infinity group for Hispanic-Latinos while entering

6   a top floor with the company's vice president of diversity and

7   inclusion at the young age of 17.

8        It's what helped me to create fitness classes for

9   multiple corporations that span across multiple states.  It's

10  what helped me to become the youngest supervisor and service

11  action manager at a major corporation at the age of 18.  And,

12  finally, it's what caused me to create a business that in under

13  one year rocked the capital region of New York's market so hard

14  that I had two offers from multimillion-dollar companies to be

15  bought out.

16       If it wasn't already risky enough, being in the most

17  published and politicized event as a main defendant in the

18  capital of the world facing against the fake news and angry

19  prosecution, a false narrative, a 98 percent conviction rate,

20  I'm adding to the risk by self-representing.  This is exactly

21  who I am, whether it is to my detriment or not.

22       My hopes are that my maverick-like choices, personality,

23  and plans will not, just as justices worried, displease this

24  Court or you, Your Honor.  This is also why I seek a standby

25  counsel.  Though successful in most endeavors, I am compared to

1    many a slow learner on many subjects, especially understanding

2    social norms and unfamiliar environments, as has been seen by

3    me eating cereal in sweatpants because I thought Zoom-call

4    court meant I could just listen with less restrictions compared

5    with a person physically in court.  An adviser could help with

6    these things.

7         I could also use help in understanding overly long

8    contracts, such as what was provided to me by the probation

9    office early on.  I have additional things I'd like the Court

10   to know and motions I'd like to make, but I'll pause here to

11   listen to the Court's response.

12        I personally would welcome Ms. Halverson for today to be

13   my standby counsel, but if she prefer not to, I, for today,

14   would waive my right to counsel so I may continue, that's if

15   the Court allows me.

16        THE COURT:  All right.  Sir, without continued

17   reading, can you just tell me where -- the additional motion

18   you wanted to file now?

19        THE DEFENDANT:  I was hoping to offer -- I believe it

20   was Rule 103 and Rule 50 of the criminal -- criminal procedures

21   or something along those lines.  It's written down, but I was

22   going to reference those and then try to offer by -- by an

23   offer of proof for why I feel like I should be able to object,

24   though I did not, you know -- I did not object the last time --

25   or did not have a chance to object the last time to my

1   revocation.

2        I feel like I've been silent and have sat without

3   producing evidence.  There's many things that have not been

4   shown, context that hasn't been shown, and I feel like there's

5   a mountain of evidence, both through testimony, physical files,

6   audio files, video, that could really bring light to a lot of

7   accusations that have been held against me, where I've been

8   pretty much silent during.  So that's my main thing.

9        THE COURT:  So if you're talking about the

10  accusations that have been brought against you, the indictment,

11  there's an opportunity for that, and that's trial, obviously.

12  That hasn't come.  But it sounds like you want to -- me to

13  reconsider your detention determination?

14       THE DEFENDANT:  Yes, Your Honor.  I feel like there's

15  been missing evidence that would, I feel, like, very -- I feel

16  very confident that it would change most people's minds.  And I

17  would also add if I were in your position hearing what I had

18  heard and seeing what I had seen without knowing the full

19  story, I definitely would have locked me up as well.  So I'm

20  not arguing that you made a mistake in judgment whatsoever

21  there.  But I would like to at least have you know the full

22  facts before deciding to keep me, especially until March or

23  longer.

24       THE COURT:  Okay.  I understand.  You can have a seat

25  for a moment, sir.  Thank you.

1          Ms. Halverson, have you had an opportunity to talk with

2     Mr. Fellows about representing himself?

3          MS. HALVERSON:  No, Your Honor.  This is the first

4     I'm hearing about self-representation.

5          THE COURT:  Okay.

6          (Cell phone ringing.)

7          MR. GILLICE:  I'm sorry, Your Honor.  I thought it

8     was turned off.

9          THE COURT:  I guess my inclination would be to give

10    you-all an opportunity to chat and to come back sooner than two

11    months from now to discuss that.

12          And, you know, Mr. Fellows, as you suggest, there is

13    a -- you do have the right to self-representation, and what

14    you've described to me, you know, I think, we may well end up

15    with what you're asking, but I want to make sure that you've

16    had an opportunity to talk with Ms. Halverson and ultimately me

17    about the pros and cons of doing that.  And I think it's

18    probably best rather than making that decision right now for

19    you to chat about it first.

20          Does that make sense to you, Ms. Halverson.

21          MS. HALVERSON:  It does, Your Honor.  The only, sort

22    of, complication with it is that -- and I think counsel in the

23    case before me alluded to this -- that the amount of video

24    slots and communication with the jail is shortly coming to a

25    close.  And so it may take a little bit -- normally I would

1   say, like, set it for next week, that I would feel confident

2   that I'm able to talk to him by next week, but I'm not sure

3   that that's the case.  So I guess I would ask for two weeks to

4   make sure I have adequate time to make sure I get a video call

5   with Mr. Fellows.

6          THE COURT:  Okay.  Does that make sense to you,

7   Ms. Furst?

8          MS. FURST:  It does, Your Honor.  I would ask if the

9   Court would consider possibly allowing me on that occasion only

10  to appear by Zoom, just because it's so close.

11         THE COURT:  I don't even know how to do Zoom here.

12  Do you feel -- very happy for you to have, like, standby

13  counsel -- somebody be here and we can put you on the line.

14         MS. FURST:  Okay.  That would be great if I could be

15  on the line.  I'll talk to my supervisors and just see.  But at

16  least if I could be on the line and talk, that would be great.

17         THE COURT:  Okay.

18         MS. FURST:  Thank you.

19         THE COURT:  So, Mr. Fellows, does that make sense to

20  you?  I know it's not ideal for you, but do you understand I

21  want to make sure you have an opportunity to talk?  Go ahead

22  with that microphone.

23         THE DEFENDANT:  Yes, I do understand that,

24  Your Honor.  Obviously the -- the main purpose of me pursuing

25  is last time I was here, I did share with the Court I was

1    seeking immediate relief.  I do believe I can provide many

2    circumstances to show that I do deserve immediate relief

3    besides the fact that there's missing evidence.  So if two

4    weeks is as soon as we can do it, then I'm totally fine waiting

5    that out.  I'm doing fine in jail.  And I thank you for letting

6    me speak.

7              THE COURT:  And just so you know, I'm not going to

8    consider an oral motion for reconsideration of the bond

9    determination right now.  And I doubt I would two weeks from

10   now either.

11        There is certainly a process for me to reconsider a bond

12   determination.  That usually starts with the defense filing a

13   motion.  So -- I mean, that's something you and/or

14   Ms. Halverson could start on today, but under no circumstances

15   are you walking out the front door today.  So you're welcome to

16   file a motion and/or ask Ms. Halverson to do that.  And that's

17   something you can start regardless.

18             MS. HALVERSON:  Your Honor, if I may, I do already

19   have a video call scheduled with Mr. Fellows on the 14th.  As

20   long as that video call actually goes through, any time after

21   the 14th would be acceptable.

22             THE COURT:  So yeah.  I was looking at Monday, the

23   20th.  How about 2:30?  Does that work for you, ma'am?

24   Ms. Furst, does that work for you?

25             MS. FURST:  Yes, Your Honor.

1          THE COURT:  Okay.  So we'll set this -- I'll call it

2     a status conference right now, but I think with the

3     understanding that we're going to discuss Mr. Fellows'

4     representation at that point.  Ms. Halverson is familiar with

5     the questions that I need to ask him and you-all can certainly

6     discuss those in preparation.

7          And, also, I believe the marshals are okay with you-all

8     speaking downstairs or out back afterwards.  So if you want to

9     do that, you might be able to avoid the potential of a video

10    call being ended.

11         But, Ms. Furst, anything further for the government?

12         MS. FURST:  Your Honor, I'll just let the Court know,

13    I'm not leaving until Thursday morning.  And if for some reason

14    the Court needs me or counsel back in, I will be here.  The

15    only other thing I have tomorrow is a plea at 3 o'clock.  So I

16    can be available if something moves faster.

17         THE COURT:  Okay.

18         MS. FURST:  I won't leave until noon on Thursday.

19         THE COURT:  All right.  Thank you.  I am going to be

20    in trial, I believe.

21         MS. FURST:  I think that's true.

22         THE COURT:  Okay.  So I understand Mr. Fellows to be

23    making a motion for self-representation.  I'm going to delay

24    that, deciding that, to give him an opportunity to talk with

25    Ms. Halverson and certainly do intend to take that up next

1     time.

2          All right.  Ms. Halverson, I forget if I asked.

3     Anything further for the defense?

4          MS. HALVERSON:  Nothing further from defense.

5          I just wanted to clarify.  It's at 2:30?

6          THE COURT:  Yes.

7          MS. HALVERSON:  Thank you.

8          THE COURT:  Thanks, folks.  See you then.

9          (The proceedings concluded at 11:12 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, Nancy J. Meyer, Registered Diplomate Reporter,

4     Certified Realtime Reporter, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of my

6     stenograph notes and is a full, true, and complete transcript

7     of the proceedings to the best of my ability.

8

9                    Dated this 8th day of September, 2021.

10

11                    /s/ Nancy J. Meyer
                     Nancy J. Meyer
12                   Official Court Reporter
                     Registered Diplomate Reporter
13                   Certified Realtime Reporter
                     333 Constitution Avenue Northwest, Room 6509
14                   Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25