Responce to lie filled Gov. Motion Concerning

Defendant's review of Sensitive and highly sensitive

Discovery Materials

- 1 table of Contents (1 page)
· 1 page index
· 28 page responce
total: 30 pages

Next

Responce to gov. Memorandum / my memorandum of
discovery as of 11/24/21

· 7 page responce
· Discovery exhibit 1 (1 page)
· Discovery exhibit 2 (1 page)

total: 9 pages

Combined total: 39 pages

| Pages | Areas of response on gov's motion papers (Pg.) | Additional Subjects talked on |
|---|---|---|
| 1 | Pg. 1, 2, 3 | Introduction, Correct Version of meeting |
| 2 | 2, 3 | Sketchy letter timing/situations, Recent Plea offer, correct version of meeting |
| 3 | | The prosecutions keep-me-in-jail "game plan" |
| 4 | 2, 3 | Similar game plans!! are working, Correct Version of meeting |
| 5 | 2, 3 | "Negotiations", Correct Version of meeting |
| 6 | 2, 3 | Monsters Inc., Supreme Court banter, Correct version of meeting |
| 7 | 2, 3 | Why we are still-stuck-here, a ____ suggest arms of telephone |
| 8 | 2, 3 | My most important issue with the contempt, Netflix & chill with my prosecutor |
| 9 | 3, 4 | "Convenient!" footnote, My favorite section (Section 3), up to = my contract |
| 10 | 3, 4 | Bipartisan negotiations (?= non-negotiator?), Why I record convos |
| 11 | | Why I record convos, Jan 6th (the day my client ELMNT died) Crisis averted! - |
| 12 | 3 | MV request for the court & its staff, creating false narratives but factual ____ |
| 13 | 4, 5 | An opportunity to save time & avoid long contempt finance, no record of ____ |
| 14 | 5 | FEC & DOJ should not hate me, FAKE News from AUSA ____ |
| 15 | 5, 6 | FAKE NEWS FROM AUSA FROST, Give not sanction (be ____ wants to ____ |
| 16 | | An alternative to sanctions that benefits all, premise fact discovery being withheld |
| 17 | 6 | Part One (all done), Part 2! reopening & ____ case law ____, M.V.'s ____ |
| 18 | 6 | U.S. V. Yonker, Comments |
| 19 | 6 | U.S. V. Yonker, Comments |
| 20 | 6 | U.S. V. Johnson, Comments, & U.S. V. Yonker comments |
| 21 | 6 | U.S. V. Johnson, comments, U.S. V. Ruth |
| 22 | 6 | U.S. V. Ruth, Comments |
| 23 | 6 | U.S. V. Ruth, Comments |
| 24 | 5, 6 | U.S. V. Bishop, Comments |
| 25 | 5, 6 | U.S. V. Bishop, Comments |
| 26 | 5, 6 | Part 3: Additional case law, U.S. V. Robinson/comments, W. ____ V. Levi/ ____ |
| 27 | | ~~____~~ Wolfish v. Levi/comments, Engen v. Dempsey/comments |
| 28 | | Engen V. Dempsey, Comments |

1

The government's motion is a further showing of what the prosecution loves doing. She loves gaslighting, changing narratives, creating narratives, refusing to accept her responsibility for her misconduct, leaving out essiential context, and of course, lying. Her motion is an attempt to steer the blame for me not having my required discovery. Perhaps she noticed in my previous motion I pointed out this misconduct and asked the court to "sanction" them as the court itself warned them months ago it could do if I didn't have my discovery by 9/7/21. Additionally, this is a showing that the prosecutor continues her lies because after all, its worked to her benifit so far, even when the court was shown her many examples of misconduct to no defence or objections on 10/12/21. Perhaps after some more proof for her continued use of lies and other mendacious tactics the court will finally detur her from doing so in the future. I hope for the sake of time, justice, and the future safety of the community, it does.

So, I'll once again correct the prosecution, present the actual arguments to be had, and give the actual story since the prosecutor has proven time and again she's incapable. First (Furst), the prosecutor gas lights, it is not I who has shown themselves to have not read or understand the contract, it is ironically the 41 year veteran of law, Ms. Furst. On page 3 of the governments motion she lies about our interaction and leaves out some much needed context. Seemingly embarressed with how she was called out on her lies and her hilarions (in a justice sort of comedy) fail at her cross examination (where her favorite quote was "umm... courts indulgence" followed by paper flipping as each planned narrative building "gotcha" question failed) Ms. Fursts walks in with a miserable aura and facial expression to privately meet with me. She was joined by Ms. Halverson and another woman. I later found out that woman is a soccer mom / school board meeting complaint investigator (FBI).

Ms. Furst and Ms. Halverson debate on who's responsibility it is to get me my discovery. Ms. Halverson won the debate and Ms. Furst conceeded "Ms. Halverson makes a good point." (Conceeding it is now Ms. Fursts responsibility to get me my discovery).

2

Ms. Furst seemed troubled and annoyed that she realized it was her responsibility and not Ms. Halverson's who then moved onto another subject. In 2 to 3 weeks I finally began getting letters notifying me my discovery was being prepared and sent, even though other Jan 6ers have their discovery at the jail and have not received it for 4 months. At this point Ms. Furst knew she messed up, which is why I find this motion to be her gas lighting me in an attempt to "save face". Her frantic multiple copies/duplicates of letters support that. I've just recently received 1 week later her gas lighting motion, the substance, claims, and timing are both pitiful and laughable. Additionally jail house guards and inmates were confused how I was given the opportunity to accept a laptop (with a random thumb drive ahead of them. These people have been waiting on that list longer than I've been at the jail, so all parties I've spoken to "smell the fish". I'll briefly note I was not given the laptop because it required I sign the contract I shared I had issues with/wished to discuss things on.

The subject Ms. Furst then moved onto was a new plea offer. She asked me if I'd like to hear her plea offer. I responded "In the Art of War, Sun Tsu (Szu?) says to always listen to what your enemy has to say, so yes." "Mr. Fellows, do you want to hear it or not?" She rebuttled. "I just answered you." I said. She finally understood and asked me if I'd be willing to accept a civil disorder charge with 0-6 months time served. She informed me this meant I could go home, which to me meant the abuse from her and this jail could stop. I found it ironic, after all, she was fresh from arguing to this court how it needed to keep me in this jail as I didn't deserve to leave and was too dangerous to be let out even on "home" confinement. Clearly she does not believe this because she just suggested if I concede to her lies and give her the win she so ravenously desires I could be free without any supervision at all, where is the consistency or logic? There is none, it's a game for her.

3

I'm too dangerous to be released because of her, the other prosecutor and pre-trial services/probations twisted stories and fabricated lies, but "sign this paper and you'll be free". Like me, does the Court question this logic? Does the court think their are other motivations at play for keeping me in jail? Personally, I think given this illogical ~~situation~~ the prosecution has in mind what is warned about in chapter 5 of understanding criminal procedure, more specifically parts of subsection 5.07.

"Not only does pretrial detention entail a complete loss of liberty for some who may not, after all, be guilty of any crime, but given the poor conditions of the jails in which detainees are held, the accused interest in her freedom is particularly acute. More over, confinement can hamper the defendants or her counsels preperation of the trial defense. For example, it may be necessary for a defendant to assist her lawyer to identify and convince alibi witnesses to testify, or to search the accuseds home for relevant evidence. Studies suggest that "some defendants unable to make bail are, for that reason alone, more likely to be convicted and, if convicted, more likely to be sentenced to jail." Futhermore, confinement can be emotionally and financially disruptive to the accused and her family. Pretrial confinement may also deny the defendant an important opportunity to demonstrate he has "reformed" (good works, continued employ ment, avoidance of arrest, etc) which could be helpful in sentancing. One would expect defendants unable to obtain pretrial release to end up with higher average sentences through the plea bargaining process than those who are at liberty pending disposition of their cases."

So, does the court see how a prosecutor desiring a win would want me in jail? My defense is hampered and I have no counsel. I can't contact some witnesses

4

or get certain evidence. I do often wish I were free and able to see family, the
sun, the gym, and work. I do wish to not be a financial detriment to my family
and the tax payer. In the case of a radicalized, politisized, subjective, bias jury, I'd
wish to show I've "reformed" prior to sentencing. Personally, I've seen and heard Jon
6ixers (are out of desperation to deals they don't agree with just to let their
family know how long they must survive alone rather than continue on in uncertainty.
Though some see me as selfish and foolish to not concede and cave to their
lies and abuse, I can't do it. I can't accept the lie, police told me I would
not be arrested for following the rules, it's in my discovery, it's on CCTV, and it
should be on body camera. Additionally I recorded other videos that act as supporting
evidence. Not to mention I'm not the only one who has made these claims, but I
am one of the few (if any) that has concrete proof. Please at the least
take these factors into consideration for bond if not a temporary release. My
denial of "becoming free" should be further evidence I'm not a flight risk or
a danger to the community. If trying to run or become dangerous, I'd accept the deal and leave.

So, back to the conversation with Ms. Furst. I denied the offer and said "I'm
not interested, but since we are alone I'd like to ask you why you have lied
about me so much, no need to worry, we aren't in the presence of a judge." She
unfortunately doesn't yet have the morals or responsibility to address her abuse, so,
like she did in the hearing when I called her out on it, she ignored my
provable allegations and moved on. She then brought up what I asked Ms. Halverson
to tell her I'd like to meet with her over, my issues and questions with the contract
that this motion revolves around. I had told Ms. Halverson I wanted the discovery
I already signed a contract on and my personal discovery while we hashed out
the new contract (I received it in September). I brought up the discovery
that was already agreed upon but Ms. Furst said I wouldn't get any of my discovery
until I signed this new contract. To my understanding, this assertion and

5

xtortion is not supported legally. I already signed and understood the terms of the other contract, therefore I can and should recieve that discovery. Theorhetical fears of the prosecutors gas lighting mind are not grounds to ignore the previously agreed upon contract or her Brady obligations. This motion is an attempt to steer the blame onto me, the victim. I'll go further into this later.

I informed Ms. Furst I did not see her assertion written any where regarding the already agreed upon discovery. I explained how me accessing it for one day prior to arrest did not support her assertion nor explain it. Finally I asserted it did not explain why I couldn't get what I was technically granted access to before. She again, just like the discussion with the plea deal ignored my words and asked "Mr. Fellows are you going to sign this contract or not?" I said "I'd like to negotiate certain things and share some concerns which is why I asked to discuss this with you." This is where most "level headed" people would ask "What are your concerns?" or "What are your questions." Instead Ms. Furst responded "The Contract is non negotianable" in a miserable catty tone with an even deeper frown now on her face.

Fortunately, I was prepared for discussions with her and had the contract in front of me with my written notes. Upon hearing her responce I turned to page 5 and pointed with my finger to the words "Modification permitted" as I corrected her and said "It says right here I can seek modification and contest certain things in this order." Perhaps not happy I yet again, proved her wrong she again ignored me as she began to stand up and head for the door. Noticing this irrational responce I asked her "who has more authority, you or the contract?" Again she ignored my rational question and said "if you change your mind about the plea deal let me know." "I won't change my mind" I responded. As she pushed the button for guards to let her out I examined her misery and the situation for picture painting purposes reminded me of my favorite disney movie, MONSTERS INC. Ms. Furst reminded me of the never happy Monster

6

Slug who ironically always demanded for Mike Wasoski's paperwork to be filed. She could care less for what else he had to say. Ironically in the end the viewers find out this monster Slug was working for the government and was investigating Mike Wasoski prior to him having an affirmative defense for the allegations.

As all 3 women were waiting for the door to be opened I asked "Why has no one come to ask me about my information on the Supreme Court bombers threats and claims, I brought this up in July and no one has come to me?" I added "This man said he had an accomplice he gave his dirty bombs to that was waiting to strike and nothing?" Ms. Halverson responded "This woman is from the FBI, so now she knows". No follow up questions, no concern, no interest in actual national security threats, but oh no! I talked to the Putin administration and asked them to advocate for our equal rights and unjust treatment RED ALERT have the NSA spy on him for months and file an ex-parte complaint against him! What a joke.

Upset by their lack of concern I asked the FBI officer "Are you embarrassed or unhappy your superiors are asking you to hunt down soccer moms instead of actual criminals?" She responded "I can't discuss an ongoing investigation." I followed up with some more attempts to get the prosecutor to realize she should be ashamed of herself for her misconduct, she was unwavering, just like her frown. When the door finally opened Ms. Halverson seemingly amused, entertained, or perhaps feeling slightly awkward with the tension Ms. Furst had & was displaying (or my roasting) smiles and asks "So we will talk next week?" "Yes, we will talk next week" I responded. So now with the actual story, and full context given, and gas lighting pointed out, I'll move on.

Now the picture should be clear why I did not "elaborate on the nature of my objections." The missing context is that Ms. Furst would not discuss it as she foolishly asserted "its non-negotiable." When I proved the 41 year law veteran wrong she stood up and changed the

⊕ subject before leaving. As I shared with Ms. Halverson, I had wished to discuss the terms after the hearing and was fully prepared with my questions. It is Ms. Fursts' fault we are still-stuck-here. It is her that did not read, understand, or ironically, respect the contract. With 41 years of experience ⊕ and taking note of her misconduct thus far in this case, I speculate it's the latter. Though perhaps like Joe Biden she is suffering from dementia, but given the presence of her continued cunning mendacious tactics, I find it to be a low chance. It is a wonder given both Ms. Fursts' and Joe Bidens blatent disregard for the law and the tax payer that they both havent been kicked out of their positions and arrested. Though most arent aware of their shady tactics since both have the terrorists in the media cover for them.

So, rather than discussing my problems and questions directly or perhaps having no patience for me or me proving her wrong, she decided the most effective way to find out my issues was to play a game of telephone. So she called my stand-by counsel. Whether that conversation is accurate or is missing parts/content as the prosecutor often does I do not know. However, I do know that was not my major issue and for months Ms. Halverson knew it, which increases my already present skepticism towards the validity of her claims.

The note taking was just a mere question amongst a much more substance filled conversation of my issues with the contract. Similar to how a much more substance filled conversation (and background) was had with Ms. Ronnie before I asked her if her hormones were okay as she was losing control over the phone with an illogical power tripping rage. In that scenerio the prosecutor left that damaging part out and twisted the story, so perhaps the court will understand my reserve. I just wanted to ensure what I could and could not take notes on (if anything).

My most important problem with this contract (besides that it

8

took 5 months (September 2nd) for me to get it) is on page "3" section "6a" titled "Additional Limitations on Dissemination." I brought this up to Ms. Halverson before November 3rd and before 10/12/21 (hearing/meeting). This is why I find it odd it was not discussed. It may be true Ms. Halverson did not bring this up, but the prosecution often edits conversations and events that have happened to more closely fit her narrative (my convos with FBI, my arrest, situations with Ms. Rennie, situations with Ms. Kiebart, the 2 times I was excusably-provably late, the problems with my phone, the conversations with Ms. Rennie's mother, the background of my ex, the allegation of my broken protection order, and the conversation I had with the guilderland court clerk) So I am uncertain. Oh! and now the twisted story of the conversation in the courtroom dungeon, yet again, we can call a witness other than myself to support my claims, no subpoena needed!

My problem was made clear to Ms. Halverson before my discovery due date of 9/7/21. Knowing how many hours of video I heard the government and others say existed, I found it ridiculous to require counsel/stand-by counsel to sit for many hours, day after day, week after week, for unknown amounts of months to examine videos with me. Additionally I'll add she's terrified to come see me in jail to collect paper work because "I'm unvaccinated and she has a young child" ignoring the fact that in court she whispers to me or the fact that according to the CDC more than triple the amount of 0-17 year olds have died in gun violence in Chicago than from 0-17 year olds that have died <u>WITH</u> (not from) Covid in the <u>ENTIRE</u> country. Given she can't come collect paper work (motions) and leave, I forsaw additional issues. This was the biggest problem I had with this contract, and Ms. Halverson had/has issues with such requests as well. Perhaps Ms. Furst would like to take Ms. Halversons place and we can grab some popcorn and watch some videos, I have butter, white cheddar, and carmel, if that doesn't interest her, I'll be so kind to offer her my moldy bologna and cheese on stale white bread as an alternative.

9

Though I'm being sarcastic, perhaps hours with me would help Ms. Furst understand I'm a human being with emotions, dreams, and aspirations which may help stop the abuse, after all, she lacks the ability to communicate properly. And what does any therapist say regarding effective communication? It's the most important thing.

I personally think the prosecution knew this was a problem of mine but wanted to make it seem like it's my fault for not sharing what my problem was. To support this speculation (besides her consistently changing the narratives and lying) I take note how now, after November 3rds discussion with Ms. Halverson my/this problem is "indirectly" addressed in a footnote on that very same page of the governments motion. On page "3" footnote "2" it now "conveniently" addresses my months long biggest problem when it says "However, the government has agreed in all Capitol ~~Breach~~ Breach cases to waive of the requirement that a defendant be supervised by a member of the legal defense team while reviewing the highly sensitive USCP CCV footage..." That's fantastic and logical news, so now they can provide me an updated contract that has section "6(a)" removed because I'm not signing a contract with the current section "6(a)" on it.

I also read page "4" of the contract under section "8" where it says "The parties shall make a good faith effort to resolve any dispute about a sensitivity designation before requesting the courts intervention." I unlike the prosecution understood and respected this which is why I sought to discuss this with them. Unfortunately for the court, the tax payer, and myself the prosecution did not even try to honor this and now we waste our time discussing things that should have been handled outside of the court. Yet in the governments motion she lies and gas lights again by trying to put the blame on me. Out of all the sections I agreed with, I agreed the most with section "8" as I'd much rather have a chance to prove the lies of the prosecution and to prove I've told the truth by calling my witness to the stand! Not waste time debating this.

10

Ms. First as noted would not even entertain my questions, concerns, or objections. Instead her "attempt" to resolve my issues was by incorrectly saying "it's non negotiable." When I sought who had more authority; her or the contract, she ignored me, stood up, and began to leave. As a free citizen, I often record all business, legal, or sketchy matters whether in person or over the phone. As noted in my response to the governments response to my pro se motion for reconsideration for my bond (I did not yet want a bond reconsideration as I noted on the very first page of that motion) it was this habitual recording that saved me from multiple lies that were aimed against me by my ex which were shown to police on scene. It has helped my over trusting gullible nature to be protected in the business world when the occasional customer or business owner tries to take advantage of me, ~~this~~ this helps me have proof for my claims. As mentioned briefly 10/12/21 I developed this habit in 2014 when I was accused of my first crime. Like all judges I ever have, ~~it~~ it was clear I was not in their good graces. I was 19, I explained my side to the judge and my lawyer early on, but both didn't believe me (much like this case began). Like this case, it caused me to grow depressed, lose a bunch of friends, and my job, even my finances were ruined. Many months later a break in the case finally came up, a man called detective Barnes of Schenectady Police department gave me a call. I still have the recorded phone call today. He shared with me he found/subpoenaed a camera ~~and~~ and that the video he observed supported my claims. He made it clear the other party had some holes in their story and seemed to want to destroy me which lead him to pursue the camera footage. He then asked me if I'd like to press charges against her, which I denied, he then suggested for my protection I ask the court for a stay away order as punishment for the lies, I accepted my charges were dropped, and I got my stay away order. Another similarity in that case is how my retaliation with my words from anger over the losses I

suffered got me in trouble with the Courts. I noticed the party who was proven
wrong in court, who also had many mutual friends with me on social media wrote
" found not guilty and justice was served " next to a cropped photo of our names on
a stay away order, most of our mutual friends were in high school or college and like
me, never saw an order of protection so our mutual friends believed her cover up.
So I took a picture of the whole order, uncropped, to show our friends the
truth. Unfortunately this put me in contempt of court (which technically I
was unknowingly guilty of) for putting her personal information (the court order online.
I got a worse punishment than her, despite all that she had done and I suffered
from. This is also why it was important for me to hunt down a charger on
January 6th and find a place/outlet to charge my phone so I could, for my
protection & history; record what was happening. The charger I bought from a
stranger before walking onto the grounds only worked up until the window. This
is when I switched from streaming to personal video to conserve battery. In Merkleys
room, a man from Kentucky heard my pleas for another charger and generously
gave it to me for free. This charger was finicky so I stayed sitting in the
room charging my phone and then began streaming again shortly after. My discovery
will show the instructions the officer gave me, and if it doesn't then I need my
phone I've been asking for months back. Thankfully, my live streaming allowed
my other videos of officers and my interactions to continue which is accessible online
instead of just inside my phone. I should not have to sign a contract to get this
phone back as Ms. Halverson has continually said is the only way I'd get it back
before trial. I formally ask the court to give my phone back, additional seperate motion to follow.

So, with my passionate, habitual, OCD-like love and desire to record
important conversations and events being known, with all the benifits now
also being known, I'd like to make a request to the court.
      I ask the court to ensure my safety in the future

12

by first, stopping Ms. Furst's "middle-man" communication with
my stand-by counsel so she has no opportunity to change the
narrative or twist stories. Second, I ask all future private
conversations between Ms. Furst and I to either be audio recorded,
or have public conversations with a stenographer present. In
addition to the second request, I just ask if its granted to
have access to the recording and or transcript if so requested.

If this court were to adopt these simple policies, it would eliminate the future
ability for the prosecution to lie, create narratives, leave out much needed context, and save
all parties times. This long motion and the governments motion is a giant waste of time. If
that meeting were recorded like I requested Ms. Halvorson to do for me then we wouldn't
have to argue about these things because the prosecutor would be certain she can't
use her normal tactics. Rather than the court having to listen to "he said, she said"
and having to potentially make an err in judgement as to who to believe, why not do
what I do when free and get rid of the uncertainty altogether? Get rid of the
opportunity for abuse. I've got nothing to hide as seen by my voluntary confessions.
I'm tired of the abuse, if the prosecutor won't stop her abusive misconduct I
ask the court to give her less opportunities and openings.

Before moving on, I'd just like to point out ~~to~~ that again the easy to know
facts were present for weeks to the prosecutor if she just used her brain to
figure it out. I believe it was purposeful or willful blindness. I say this because
yet again she creates a false background and narrative and on lines 6-9 on
page 3 she argues about this created narrative as if it's what the facts are,
or/ & and that I was arguing it. She's done this before (many times), for
example, she created the narrative I was arguing I was sick and was too
scared about getting other people sick which is why I called to reschedule
(she said cancel), my mental health evaluation I was excited for. She

[The court fell for this as I cringed in forced silence]

13

also did this in creating the narrative of how a phone sim card works and
argued like it was a fact that my phone wouldn't do such things completely
and "convienantly" leaving out 3 days earlier how I sent Kendra an email photo of
my phone having the exact problems she falsely eluded were not the issues
I could be experincing, leaving out that on low funds I bought a new
phone because of the ongoing issues (that arrived the morning after I was
arrested) and many other interesting twists, missing context, and narrative building
moments. This is another reason I have recorded probation, others, and why the
court should as well. Tired of my long (but needed) motions like I
am? Than ⊗ stop her from having the opportunity to twist things, steer/
create a narrative, and grant my request ⊗ in resence to this motion/
her past provable misconduct found at the bottom of page 11 and on page 12.
Lets not waste our time any more dealing with her mendacious tactics and
stick to both the facts, and the arghuments I'm actually presenting to this
court. Please ☺

To save time, I'll mention the discovery the prosecution says has been provided
in the next section until mid-way through page 4 I have not received, or as
the prosecutor states been "provided" because she refuses to hear my questions
and concerns.

Giving context to footnote 4 I've provided an exhibit to show the court
how the actual situation regarding discovery has been/still is at the
DoC. I'll have the court note EVERY Jan sixer had issues, but
some felt it was unwise to attach their name to somthing without talking
to their lawyer first, which I respect and understand.

Page 5 is just the government repeating what she's already said/requested
once, but now with the ironic and gas lighting title "Relief Requested".
I need relief, she needs to stop playing games and do her job, please help.

14

The continued footnote on page 5 is vague, but a letter days later is a more descriptive telling of the governments proposal, something I months ago suggested and then wrote as a motion. Just like my issues with section "6a1", my suggestion of allowing a laptop with internet is now being suggested by the government, and the probation officer told me I wouldn't be of use when I applied to the DOJ or the FBI, ha.

I'll now move onto responding to more false narrative building and lies on page 6. The government now claims I refuse to acknowledge or abide by the protective order, acting as if all negotiations of "it's non-negotiable" failing were my fault, FAKE NEWS. Next, she claims I failed to do this in a civil protection order, FAKE NEWS. First, I'm not convicted, second, I called the police, third, police arrested me due to a Glenville town court error in paper work, and finally, I haven't had a chance to submit my proof because of Covid and a short discovery delay due to not having access to an account because my ID cards were burned from the wallet that they stole. The prosecutor next cites her previously created narrative I couldn't correct until I was pro-se on 10/12/21. that I intimidated and harassed my probation officer. Even with the lies being unaddressed and much context missing, this Court did not find by clear and convincing evidence I intended to intimidate the probation officer. After 10/12/21 and the prosecution not objecting or offering a reason why she did this, (she just ignored it like every problem I point out) the court should see right through her mendacious and cunning tactics to find it's FAKE NEWS. As for the harrassing allegation, that's gas lighting as I tried reporting her multiple times for her abuse of power. However, I did "seriously annoy" her as Ms. Tekesha Robinson of Pre-trial services noted and this court said was not illegal. So, again, fake news.

1: 7/14/21 Transcript "seriously annoying" - Tekesha Robinson

15

I find it hilarious, the government points to her narrative steering CI did not yet want a bond hearing as mentioned on the front page & in other pages) motion that she wrote, which involved like this motion, her arguing with her created narratives rather than what I was arguing before attempting to insult me and claim my validity is questionable ~~based~~ based on her narrative steering assumptions.

Finally, she does one final gas light on page 6, ~~while~~ while again lying. She mentions if I would ~~abide~~ abide by my favorite section of the contract (section "6") she would attempt to resolve any specific objections I brought to her attention. Again, FAme NEWS.

Ask the prosecutor to dig her hole of lies further and ask her "Did you attempt to figure out what the defendants issues with the contract were in person? what did you ask? What was his response?". It would be interesting to hear more fictional stories from Ms. Fursto But, my alternative is to record our next interaction outside of the court so we don't further waste the courts time with frivolous made up stories and problems in an attempt to cover up her lack of respect for the courts warnings it clearly gave her on July 15th to be finished by September 7th. I was late due to my keys being locked out and (causing a 15 minute delay) and my friends car battery dying once at a restaurant, both I provided evidence for and remained accessible to ~~the~~ officers, who contacted me & I contacted. ~~&~~ Two excusable/provable ~~~~ times I was late out of 150 days on strict home confinement in an apartment that wasn't mine with my mother who ~~abused~~ used me as a child. In total I was less than 2 hours late, and I lost my freedom over it. This court warned the ~~prosecution it~~ could have ~~~~ if ~~~~ me the discovery by September 7th. It's nearly ~~~~ ~~~~ ~~~~, where is it? Sanctions are warranted, if I ~~was~~ lost my freedom over 2 excusable

16
for this

hours where no one was injured, the prosecution should be in jail. This
won't happen, so to make up for lost time ⊕ I ask rather than sanction
them, reward all the parties by allowing me to have a laptop with internet
and for the jail to allow my contacts as I requested in my previous
motions. All the benifits are listed there, it truely does benifit all parties.
I can even pay for my own laptop (thanks to my supporters/fans). Want one example of me suffering
prejudice for my discovery being withheld? My business records, tax records, customer contacts,
job photos, business recordings, and police officer (Jan.6th) are on my phone that I'm
denied from getting back or seeing my discovery from. This resulted in a customer
trying to call that phone (with the FBI) to which he got no answer. I had to
buy a new phone with little money and had a new number. I could not
contact or see anything on the customer, and he could not contact me. So
he filed a petty larceny charge on me for collecting his 600 dollars of materials
and never doing the work. Additionally I couldn't reach most of my customers,
nor could I file my taxes which resulted in me being put into collections. The petty
larceny charge resulted in me being put on full house arrest which allowed
the prosecutor to then act like at the next two revocation hearings,
that this was a pattern. It was only a pattern of her lies and misconduct hurting
me and the taxpayers.

   Finally page 7 is the governments third time requesting and gas lighting
what she's already asked 3 out of the 6 other pages.


            PART Two: Responding to Gov's Case Law Citations

   So, the prosecution lied, she did not seek to figure out my issues. She
seemingly did not read or understand the contract. She continues her selective
vindictive assault by trying to have me ⊕ be treated differently than
all the other free and incarcerated Jan sixers. by making me subject

17

to a more restrictive protective order than the others. It's not enough I'm the only one in Jeff Merkleys' room facing a 1512 charge (according to Ms. Halverson), or that I have videos posted supporting my claims police let me in. Her vindictiveness and selective prosecution goes so far to list 2 lies as her foundation, two known lies for why this ⊕ continued different treatment from others in the same and worse situations are justified. Well, its been pointed out and destroyed, hopefully the Court will grant my requests in response to prevent future ⊕ abuse and help me make up for lost time by allowing a laptop with internet or a temporary release to gather/collect evidence.

## PART TWO: Responding to Gov's case law Citations

As usual, the prosecution omits helpful context to fit her narrative in her case law references.

1.0: U.S. V. Younker: Charged with multiple counts relating to meth and heroin distribution. He also had/was being charged with firearm offenses. "The Court understands that defendants primary concern at present is his desire to be the direct recipient and keeper of the discovery materials. Unfortunately, the Court is unfamiliar with all of the many administrative rules and regulations governing mail and possession of documents in the facility where defendant is currently housed. Having Stand-by counsel act as a repository is the most practical way for the Court to ensure that the discovery materials are not lost, confiscated, or otherwise made unavailable to the defendant." On April 8th he filed a motion requesting discovery, the Court granted the motion in part and denied it in part, "permitting Defendant Younker to possess whatever discovery was permitted by Spokane County jail officials in pretrial detention ECF No. 157." In June the Court said, his counsel had to sure as an intermediary to shepard certain discovery materials to...

18

defendant Youkter could not keep in pretrial detention."5 "Additionally, it is well established that an incarcerated defendant may not meaningfully exersise his right to represent himself without access to law books, witnesses, or other tools to prepare a defence."6 citing Milton V. Morris, 767 F.2d 1443, 1446 C9th Cir. 1985). "Later after a complaint from Youkter, the USAO submitted an unprompted proposal to ensure defendant has access to discovery while in pretrial detention. Under proposed procedures, Spokane would maintain custody of discovery materials that Youker may check out and review in either a visiting booth, or at the law library, so long as the jail staff retain control over the materials."7

1.5: [Comments on footnotes]. Youkter was a drug dealer, selling drugs to ruin peoples lives which in turn hurt the community and potentialy directly or indirectly killed people. Drug dealers are a big danger to the community, so much so that the bail reform act and the sentencing reform act treat them very harshly as they should. To increase his danger he had firearms offenses. I on the other hand walked into a building with both express and implicit consent from every officer from before I entered until I voluntarily left.

(2): Unlike the court in Youkker, this court knows the administrative rules and regulations of the D.C. Jail regarding discovery. However, the government convienently" cited the early April Youkter case from April 30th, 2015. If only she went forward to the outcome in June she'd have a story that supports her attempted narrative just a little bit less. See upcoming comments on footnotes 6 and 7. For more information.

(3): The court in Youkter potentialy realized additional problems like his covery being stolen, Youkter being a illegal gun toting drug dealer was probably with other criminals like himself. In our jail before

19

I came to the "patriot pod" I saw a stabbing over a honey bun, a fight over a phone, and a white guy (not me, they liked me) get told he couldn't use the phone because he was white. Perhaps the judge ~~saw~~ saw this potential and avoided the unknown threats as he did the unknown rules and regulations. In the patriot pod, we have 2 black people, 1 mexican, 1 muslim, 1 transvestite, 1 bisexual male, poor people, middle class, and very rich people all from different states and backrounds. We pray together, cook food for eachother, and sing together every night. Guards fight to be in our peaceful fun pod because in their words "we are the safest pod to be in." No drugs, no stabbings, no fights. Even members of congress who visited us agree.

(4): His jail only allowed loose leaf paper, so at first he was limited, until him bringing this up in court at a later court date...

(5): A move not specifically targeted at Yonker, yet the prosecution specifically targets me? She has no ground to stand on, I should be treated at the minimum the same as others incarserated, but if the court would give me the evidentiary hearing I never got it would see I shouldn't even be incarserated.

(6): I wish research wise to ~~be~~ similarly situated as the prosecution would be (i.e. though she has many more advantages over me, still better law library and internet would be helpful. Private conversations with witnesses and others who can help me get the other evidence I need would be useful. "Other tools" like a laptop with internet or an electronic typewriter/file keeper would be useful.

(7): Notice Yonkers prosecutor submitted an underlined _unprompted_ proposal to the benefit of the gun toting drug dealer. They went out of their way to help him. ~~what has~~ my prosecutor done regarding my ~~discovery~~? Broke the courts orders for months; gas lit me, lied about the situation, and then try to continue to treat me with more contempt by asking the court to restrict my discovery in ways that _no other Jan 6ther is_ and citing lies she created in an attempt to persuade this court. I don't need to tell you what kind of woman she is.

20

She's made it quite clear to any objective person. Keep in mind, this footnote contains information the prosecution "conveniently" didn't cite. She instead, for whatever reason, choose to cite an April hearing instead a later hearing months after. In that hearing the ~~court~~ government sought for Jail staff to retain control over the materials; much (just like they have/ do with our laptops and harddrives (whenever they do come around). Finally I'll add this is more security than the Jan sixers who are not incarcerated undergo, it is beyond safe with a mutually agreed upon / understood protection order. Even more so than those free.

2.0: Responce to Johnson V. United States; I didn't have much on this case in the limited law library, I'm sure with Pacer I'd have more...

Johnson was on a 14 count inditement with 12 co defendants; he was the leader,[2] conspiracy to possess with intent to distribute 5 kilograms or more of cocain and 50 grams or more of ~~crack~~ crack cocaine.[3] He faced enhancements due to 2 prior drug related convictions.[4] He faced a minimum of life imprisonment on just one count.[4] Johnsons trial counsel 'concedes' that she did not provide his client with a copy of discovery to keep while he was in prison. HOWEVER, counsel simply acted pursuant to this Courts protective order, which prohibited counsel from making copies for or leaving any discovery materials with Johnson while he was incarcerated.[5] He was found guilty of all charges.

2.5: Comments on footnotes: (1): I have one arbitrarily attached, felony with no mention that is also stupidly attached as it's reffering to obstruction of Justice, not a ceremony, followed by 4 misdemeanors which the prosecutor herself has seen in my supportive evidence for my affirmative defence...

(2): I am far from the leader ( of two ) of t...

(3): Again, a community ruining drug dealer. See previous case footnote comments.

(4): I have no prior convictions.

21

(S): The reason it was found to not be improper to stop stand-by counsel from leaving discovery materials in the jail was because that was the agreed upon order for Johnson and his other defendants. What the prosecution in my case is trying to do is ask the court to treat me differently than the hundreds of other Jan Sixers even though I am in jail. This makes it way safer to review my discovery as opposed to those who are free. Why does she claim this is needed? Because she twisted the narrative/lied about the "negotiations" and then lied about me doing this in the past on a case that is pending. Perhaps the prosecutor needs help understanding the deeply rooted premise of innocent until proven guilty. Perhaps the court can conduct a colloquy to ensure Ms. Furst understands this very basic premise she seems so puzzled by.

3.0: Response to United States V. Ruth: A protective order was in place with respect to early disclosure of material governed by U.S.C. § 3500.¹ Ruth pleaded guilty to counts 1 and 4 of the indictment (conspiracy to possess with intent to distribute 28 grams of crack, and a quantity of Marijuana, and possession of firearms in futherance of drug traffcing crimes.² "It was specifically contemplated by the plea agreement that the court would need to make factual findings concerning defendants alleged involvement in the murder of Henry Ackley (witness said Jaron Ruth killed Ackley), the government contends this murder should be considered in connection with defendants sentencing..."³ On 2/15/20, Ruth filed a motion to vacate the existing protective order, Government asked for a new protective order after sentencing, and for 3,500 material to be returned after sentencing. Arguing against Ruths motion, they : "we are not aware of any witness intimidation or threats, but potential existed, citing the nature of the allegations against the Mr (involving an alleged murder, his prior criminal history involving

an incident where he allegedly shot his girlfriend in the neck while she was holding their infant son, his alleged association with the Bailey Boys gang, and the vulnerability of one of the governments witnesses who is incarcerated)...[4] Though the government expressed a willingness to continue negotiations with defence (Ruth).[5] After multiple back & forth motions and arguements, the final 2 arguements came from defence: First they sought investigators to be included in the information, and defendant sought to review civilian witness material in an unsupervised manner. With respect to sharing information with defence investigators, the court agreed so long as they agreed to abide by the protective order. "An investigator can play a critical role as part of a defense team, and to unnecessarily restrict his or her access to the information covered by the protective order is not reasonable under the circumstances."[6] With respect to the second issue, defendant argued it was burdensome to require him to be transported to a courthouse to review his material unsupervised and to require him to be supervised by counsel in the jail. Courts responce was "the parties and the court lack suffient control over the security of any material that is left with the jail."[7]

3.5: [Comments on footnotes]: (1): Ruth already agreed with the protective order, I have not, and I've tried to negotiate the terms as allowed to no avail. (4): Again a violent gun toting drug dealer, this time affiliated (potentially) in a gang, accused of murder, and a seperate shooting of his girlfriend in the neck. As mentioned with the other two drug dealers, it's quite clear why such an order is needed, especially with the way "snitches" are viewed in prison and the fact that a witness who's cooperating is in jail as well.

(3): No comment

(1): The prosecution took account of Ruths criminal past both pending and actual (gun toting drug dealer) and combined them to form a conclusion, that it is dangerous to let him view certain discovery. My prosecutor does not try to do the

24

4.0: Response to United States V. Bisong: Bisong created a giant years long "sophisticated" scheme that took advantage of 476 clients. He stole hundreds of thousands of dollars from illegals, promising them green card status in return, knowing they wouldn't go to the authorities for fear of deportation. He forged checks in their names, took money from government programs, and had a past conviction for doing the same in 1994.¹ The money was spent on another scheme, creating fake corvettes and selling them way over priced. Despite all this he was allowed out of the D.C jail to go work since he couldn't afford his attorney anymore.² However, he was rearrested for an outstanding immigration detainer and brought to southern Virginia. Bisong then chose to represent himself. At a later hearing the D.C. Judge asked "is there anything else that you want to alert the court to or request?"³ Bisong stated he still didn't have access to most of his evidence. His stand by counsel Shawn Moore advised he could retrieve documents at Bisongs request but that the boxes of evidence could not be made available to Bisong at the southern Virginia facility. So, the judge ordered Bisong back to the D.C. jail and to get all discovery to him.⁴ But he wasn't moved until the very 1st day of trial. The court gave him 6 hours to prepare/look through discovery. He committed perjury in his testimony and was found guilty on all counts. He had employees testify against him, many victims, lots of bank records, bank recordings, and proof for 476 clients being abused. Messages, phone calls etc.⁵ His enhancements were: loss of over 200K, in 50 or more victims, violation of administrative order, use of sophisticated means & occupying a leadership role in the offense.⁶ An offence level of 6 ...⁷ He received 13 years in prison for doing all this.⁸

4.5: (Response to footnotes): (1): Bisong did all this for years stealing from the poor, hurting 476 people and their families, taking advantage of government programs and over 50 banks using his 12 gas stations to lure his victims in. I spent 28 minutes inside a building police welcomed me into as seen by multiple videos

23

same, she tries to claim my alleged is a factual finding against me, while changing the narrative/lying about our "negotiations". Ruth has an intense history and even more intense allegations which lead to worry if sharing this with Ruth could put someones life in danger. Yet his prosecutor didn't go as far to try to lie and twist narratives regarding his situation. Why is this? Does the court recognize the pattern yet?

(5): Notice how Ruths prosecutor responds, "expressed a willingness to continue negotiations with defence". WOW! It seems crazy to compare! Despite the intense situations revolving around Ruth, the government is still open and willing to continue negotiations. My prosecutor hasn't even begun/allowed negotiations to happen. I don't have near the problems of receiving discovery as Ruth has. Yet for "some reason", my prosecutor felt compelled to lie and twist the situation and close out negotiations before they even began. Someone needs to control Ms. Furst's vindictiveness and misconduct...

(6): I have no investigator. even more of a reason I'd like to begin collecting my discovery.

(7): In Ruth, the Court lacked security of material that is left with the jail. In my case, there's a method that is in place that ensures incarcerated people's discovery does not leave, the court knows about it. Again this is more secure than those who are free, but me, one of the only people in jail who didn't attack officers/defend against them, and the only one with videos of officers telling me where I could and couldn't go, what I could and could not do, she claims out of the hundreds of Jan 6ners, that I need a totally seperate protective order, when I'm one of the top three who needs it the most(pro-se)!? Ridiculous and she knows it! There's no facts from her, the facts are with me. Stop this abuse! Stop rewarding her clear-AS-DAY, misconduct! Stop being/don't be blind to it anymore to my further detriment please! CONTEMPT!!

26

the vindictive prosecutor threatened to add on if I went to trial.

(8): For all this, he received 13 years in prison without my terrorism enhancements I'm facing 23 years in prison. Ridiculous. Stupid. Illogical.

## PART 3: ADDITIONAL CASE LAW

⑧ (1.0): United States V. Robinson, 913, F.2d 712, 717 (9th Cir. 1990)

The District Court restricted Robinson's access to his legal materials out of a concern about the burden ordering unlimited access ~~to his legal materials~~ would place upon prison authorities. "I want him to have a right to the things he's entitled to, but I don't think the Court should be engaged in some sort of decision that would inconvenience or make it difficult, if not impossible to manage a detention facility." The Court asked him to bring 6 boxes down to one or go to San Francisco instead of Oakland where he could have all 6. He chose to stay.

(Comments): In this case, it's ~~in~~ 1990, there are no laptops he had big bulky boxes to fit into his small cell. In my case, it's nothing new, just supply the small laptop and I'll get locked into my room & plug it into my wall, done.

⑧

(2.0): Wolfish V. Levi, 439 F.Supp. 114, 124 (1977)

With respect to pre trial detainees, the Court held that because they "are presumed to be ~~xxxx~~ innocent and held only to ensure their presence at trial, any deprivation or restriction of xxx rights beyond those which are necessary for confinement alone, must be justified by a compelling necessity."

(Comments): The prosecutor treats me like I'm guilty of not only her arbitrarily attached obstruction but also to my pending case in New York.

25

both posted and not. I have ZERO victims, stole nothing from the poor, or
the government. Unlike Bisong, I have no criminal history.
(2): Despite the damage he caused and not being able to pay bond, the D.C. Judge let him
out to work to better prepare his case (working for an attorney). I just want to
go retrieve my evidence and talk with my witnesses, I'm way less dangerous and careless
than this man was.
(3): I just liked how the Judge asked him this, I recognize it's not often the
court deals with pro-se defendants as I became aware of prior to testifying on
10/14/21, however I would really like this to be asked as I'm always
fearful I'm interrupting/don't know if I should speak up or when I should.
I'm learning, but I'd just like to be asked before we end hearings.
(4): Notice as with other cases this was a space issue, yet the D.C. Judge
like this D.C. Judge knows the D.C. Jail can technically handle my discovery. They
just need to actually get it to me and purchase more laptops.
(5): This is the much needed missing context in Bisongs case. He had all that listed
evidence against him. His discovery only hurt his attempts to claim innocence. This
is why the courts overlooked it, there's no proof of prejudice, and it would seem
with the literal mountain of evidence and witnesses/victims that he even with weeks
of access would not be able to change the outcome of the many years of
proven abuse of 476 people, banks and agencies. In my discovery I'm trying to
show every video I can find of me to show as supportive evidence for my
claims. I also want all videos showing similar police actions in my/other
areas as I've heard others say they encountered similar police actions and words.
(6): I caused zero dollars in damages, I have zero victims (in fact I helped people),
there was nothing sophisticated about my actions, and I definitly had no leadership
role.
(7): He had an offense level of 6, I'm facing 32 with the terrorism enhancements

28

the time must be diverted from other clients. "Why should a judge ask lawyers to devote less of their time to people with strong cases and more to people with weak ones? That would injur other litigants." — citing Pickett v. CTA, 930 F.3d 869, 871 (7th Cir. 2019) This is among the reasons why "Courts must be careful stewards of the limited resource of volunteer lawyers." — citing Cartwright v. Silver Cross Hospital, 962 F.3d 933, 934 (7th Cir. 2020). People who receive less attention as a result of a judges decision to recruit counsel are invisible to the court, but they are no less deserving of consideration. When we compel a judge to divert the resources of the bar to weak claims such as Eagans, we reduce the likelihood that other persons will receive adequate legal assistance.

Comments: With D.C.'s poor leadership, this city is suffering from record high crime levels, we are already higher than last years crime level. With less people attending school/college because of PC culture, crazy theories, a run-away from science, etc. now is the time to be the most conservative and smart with how to use the already scarce resource of legal representation. I'm in no way describing that I have a weak case, that isn't the argument. ~~The~~ ~~option~~ Lets say for argumentative purposes, the prosecution for once told the truth. Is it worth diverting the scarce resources of counsel to baby sit me because she thinks I will break the law? ████████████████████████████████████████████████████████

No, if I break the law then charge me. ● I am in a much more secure position than Ian Silvers who are free. However the prosecution is not telling the truth, so ● if there were a case for this restrictive measure under the assumption the prosecution told the truth at first, it's all gone. Likewise, Ms. Halverson is needed now more than ever to assist her other clients, I can safely and legally view my videos on my own, in my cell or at home.

27)

She has done her best to use her misconduct to put me into situations she feels will increase the likelyhood of her victory. She offers me 5 years and claims that's a good deal. Then she offers me 15-20 months and acts like it's a steal. Finally she offers me 0-6 months time served and tells me I can go home after minutes before arguing I don't deserve to be let out and am too dangerous to be released. ⊗ It's not enough I've suffered a constant attack on every front in my life for nearly a year, now she wants me to only view discovery with my standby counsel. Every time I would need to see my discovery I'd have to show my anus to multiple strangers, and show them beneath my balls. Ms. Furst recalls how I felt having to pee in front of "weird o's" in probation. She remembers my discomfort and distress and tried to capitalize on it. Here she is again seeking to put me through even worse circumstances with officers who have been accused of sexual harrasment. Perhaps worried I'd see the footage that supports my claims she seeks to deture me from wanting to view it, or limiting my time so I can't find it. Perhaps her continued vindictive nature just wants to continue to make me suffer until I give up. Either way what the prosecutor asks for is not justified by a compelling necissity. She has no reasons, only contempt towards me, and in this court.

(3.0): Eagon V. Dempsey, 987 F.3d 667 (7th Cir. 2021)

If legal assistance were available in unlimited quantities, I could go along with a remand. But, like every other valuable thing, legal time is scarce. When a judge persuades a lawyer to spend time on a weak case such as Eagan's, that time comes from somewhere. The "somewhere" might be golfing or watching Netflix, but more likely