THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 21-CR-83 (TNM) |
| v. | : | |
| | : | |
| BRANDON FELLOWS, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S PRO SE MOTION -ACCESS TO
COURT VIOLATIONS [ECF 58-1] AND STATUS OF DISCOVERY

The United States of America hereby responds to the *Pro Se* Motion – Access to Court Violation (ECF 58-1) (the "Motion") of the defendant, Brandon Fellows ("the defendant"). Further, the government describes the status of discovery provided to the defendant to date.

**Defendant's Motion**

In the Court's minute order of February 14, 2022, the Court directed the Government to respond to the defendant's assertions in the Motion regarding (1) the jail's grievance process; (2) the defendant's access to stamps, pens, and paper; (3) his access to church services and clergy; and (4) his access to haircuts and other grooming services at the jail.[1]  Accordingly, the government made inquiries to the Deputy Director of Administration (DDA) for the D.C. Department of Corrections (DOC) with respect to the defendant's complaints about his access to these services.[2] We also raised with the DDA the additional complaints that the defendant raised at the hearing on

---

[1] Consistent with the Court's approach at the hearing on February 11, 2022, the Court did not require the government to address the defendant's request for another bond hearing because that issue is pending before the D.C. Circuit in Case No. 21-3090.

[2] Should the Court wish to make further inquiries of the DDA, she will be available at the next hearing date, scheduled for April 14, 2022, at 2:00 p.m.

February 11, 2022, to wit: (1) his access to standby counsel and (2) the telephones not working. We describe the results of our inquiries below.

**<u>The DOC's Grievance Process.</u>**

As a preliminary matter, to familiarize the Court with the DOC's grievance process, we have attached as Exhibit A the DOC's Inmate Grievance Procedure 4030.1L (1/9/2020) ("DOC IGP").  The DOC IGP clearly sets forth the procedures and time frames for submission and resolution of inmate grievances.  Matters relating to safety, care and supervision, or inmate programs, activities and services are examples of issues for which a grievance may be filed.  Id. at sec. 10(a).  Those which are not covered under the grievance process include FOIA or HIPAA requests, inmate class action grievances, tort claims, or complaints filed on behalf of other inmates. Id. at sec. 10(b).  The DOC IGP establishes an Inmate Grievance Advisory Committee, which includes inmates and staff, to discuss general inmate concerns and grievances, and to provide recommendations to the Warden and supervision regarding conditions, and activities.  The DOC IGP is included in the inmate handbook which all inmates receive and is also accessible over educational tablets. The defendant's discussion in his Motion shows he is fully aware and knows the policy. ECF 58-1 at 16-17.

The defendant files grievances frequently.  He has been in custody at DOC since July 2, 2021.  Since August 18, 2021, he has filed approximately 23 grievances which are attached (along with responses by the jail) hereto as Exhibit B (under seal). Notwithstanding the defendant's familiarity with the DOC IGP, four (4) of his grievances were not eligible for the grievance process.  The remaining 19 grievances have dealt with access to services (stamps, pen, paper, and the law library; access to religious services and haircuts; access to health care; food) and allegations regarding his treatment by staff.  Of these 19, 13 have been resolved; three (3) have

been resent to the appropriate divisions for responses since no response was provided within the time frame set by the policy and procedures; and three (3) remain outstanding as of the filing of this Response, including two received by the jail staff on February 22, 2022.

Notably, the defendant uses racist, derogatory, and abusive language in many of the grievances, some examples of which we have highlighted for the Court in Exhibit B. His language is consistent with the harassing and abusive behaviors he exhibited while on release that resulted, in large part, in revocation of his pretrial release. This offensive language was used in the four complaints determined to be non-grievances. Each of the denials provided in response to these four grievances denoted that the grievance failed to comply with the policy procedures (Exhibit A) because the it was "not legible, understandable, presented in a courteous manner." There is every reason to believe such behaviors will continue if he is released from custody.

**Access to Writing Materials.**

Four of the defendant's grievances complained about a lack of access to writing materials. He attached the first one, dated September 28, 2021, to the Motion. ECF 58-1 at 8-9. Pursuant to the grievance process, he received envelopes, pens, and paper in the DOC's response, just two days later.[3]   On November 6, 2021, the defendant again complained that he had no writing materials. The grievance was marked by the defendant as a Communications issue rather than directed to the Law Library, and he was told to resubmit it. He did so on November 9, 2021, and was then given paper, pens, and envelopes by staff in person prior to November 29, 2021, the date the grievance was resolved. Per the resolution of the fourth grievance dated December 1, 2021, he also received pens and paper on or about December 7, 2021. It appears the defendant receives

---

[3] Because his commissary balance was over $5.00, he did not qualify for free stamps because he did not fit the criteria to be considered indigent.  Id. at 9.

writing supplies upon request. And as of March 4, 2022, no further complaints from the defendant about writing supplies has been received by DOC staff.

**Access to Religious Services, Clergy, Haircuts and Grooming Services.**

The defendant has submitted exactly one grievance about grooming services, on August 17, 2021. The defendant has not filed any grievances complaining about the lack of religious services or clergy available to him.[4]

Throughout most of the defendant's detention, the District of Columbia has experienced substantial rates of COVID-19 transmission. Accordingly, the DOC issued policies limiting access to in-person clergy and religious services and grooming services to vaccinated inmates.[5] The DOC bases its policies on guidelines issued by the Centers for Disease Control and Prevention ("CDC"). Those guidelines advise correctional facilities to keep prevention measures such as Coronavirus vaccination and boosting and limited mixing of people in place, with reference to local community trends and metrics of infections. *See* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. In short, the defendant's lack of access to in-person services during the periods complained of was a direct result of his decision to remain unvaccinated, which had to be balanced against the DOC's need to prevent Coronavirus outbreaks in its facilities.

With the recent reduction of in the rate of transmission of Coronavirus in the District of Columbia, the DOC continues to assess and modify its policies. As noted in footnote 4, religious

---

[4] Notwithstanding the defendant's complaint to the Court at hearings on January 7 and February 11, 2022, that he did not have access to clergy or religious services, his Motion concedes that some clergy access has been made available to him. In his pleading, the defendant states that DOC offered clergy who then "handed us 'The dailey call" [sic]." ECF 58-1 at 17.

[5] These services were paused for vaccinated inmates in late December 2021 because of a coronavirus outbreak. They were reinstated for vaccinated inmates on February 28, 2022. *See* Exhibit C, DOC's Modified Medical Stay-in-Place Timeline Updated as of February 14, 2022.

and grooming services that were paused based on a Coronavirus outbreak in December have already resumed for vaccinated inmates. Further, according to the DDA, barbering services resumed on March 1, 2022, for inmates with upcoming jury trials (regardless of vaccination status), and the DOC is working on updates to additional polices as they relate to services for unvaccinated residents. The DOC hopes to have the new policies for unvaccinated inmates solidified by early April.

**Access to the Law Library**

The DOC's law library is virtual, and available on the educational tablets via Fastcase, a cloud based legal research platform. If a resident would like a case printed, they send a request to the law librarian and the case will be printed and provided to the resident. The defendant complained about the law library services six (6) times. Four (4) of these were about the lack of writing materials and were resolved by the defendant receiving those materials. Two (2) were resent to the Law Library to be resolved although one complaint asked for no relief. One of these contained derogatory language about the librarian, which is highlighted in Exhibit B.

The defendant's grievances filed under seal indicate he has taken advantage of the law library services, in that he received writing materials, a case he had requested, and the laptop for discovery review. Similarly, the defendant's Motion, which cites to several cases and their holdings, indicates has had access to the law library. ECF 58-1 at 6-7.

**Standby Counsel's Ability to Contact the Defendant.**

On February 12, 2022, based on information provided by the DDA, the government emailed standby counsel contact information to resolve problems he was experiencing reaching the defendant by reaching out to doc.attorneymessaging@dc.gov.

**Telephones Were not Working.**

At the hearing on February 11, 2022, the defendant complained to the Court the telephones in the jail were not working. According to the DDA, because of issues between Comcast and the DOC's vendor, Securus Telephone system, which were out of the DOC's control, telephones on the defendant's unit were intermittently accessible for approximately two weeks. After trouble shooting a few possibilities beginning the week of January 24, 2022, when a small number of inmates complained about the telephone service, the issue was ultimately found to be a failing modem. As of Saturday, February 12, 2022, the issue was resolved, and the telephones are now working.

**Access to Discovery.[6]**

At the hearing, the defendant complained of lack of access to discovery materials. The defendant's allegations smack of gamesmanship intended to confuse this Court into believing that either the government or the DOC may be at fault. The sole reason the defendant has been delayed in reviewing any discovery is that he has repeatedly refused to take custody of a DOC laptop and discovery materials when they are presented to him. Moreover, as described below, the defendant has been provided ample discovery that he has an opportunity to review.

**Electronic Discovery**

We first address attempts to provide the defendant copious digital discovery through the DOC's e-discovery laptop program and the DOC instance of evidence.com.

The defendant told the Court on February 11, 2022, at the status conference that he had once again refused the laptop and discovery because the jail wanted him to sign "the contract." What the jail present for defendant to sign was the form to accept or refuse the laptop. *See* Exhibit

---

[6] ECF 65 and 71 delineate the discovery provided to the defendant to date, both through counsel, standby counsel and directly to defendant through the DOC Litigation Unit and the USPS.

D.  As established in prior hearings and pleadings, the "contract" referenced by the defendant is the Protective Order, which the defendant signed on Nov. 29, 2021.  ECF 66.

As a preliminary matter, the DOC has no role in ensuring that the Protective Order is signed before issuing a laptop to the defendant.  Nevertheless, the government has once again verified with the DDA that the DOC has never required the defendant to sign, or show proof of signing, the Protective Order. As has been explained to the defendant on multiple occasions in pleadings and during hearings before this Court, the only form the DOC has required him to sign before providing him a discovery laptop is a form acknowledging his acceptance or refusal of the DOC's laptop and the storage devices containing discovery materials. *See* Exhibit D—1.

**Electronic Discovery Provided to Defendant**

- Electronic discovery provided by the government to the Public Defender's office was hand delivered by the defense to the jail in October of 2021 per discussions with the defendant's then-standby attorney. This discovery was both global and case specific On November 12, 2021, the defendant refused to accept a laptop and one flash drive of discovery provided to him by the Federal Public Defender before he chose to represent himself on September 23, 2021. *See* Exhibits D, F.  At the hearing on November 29, 2021, the Court learned of the refusal, and had a detailed discussion with defendant, standby counsel, and the government. The defendant explained he refused to sign the form presented by the DOC because he thought it was the Protective Order required by the government, about which he still had questions.  The Court and the government explained that the form was unrelated to the Protective Order, that the DOC did not administer the Protective Order, and that this was a DOC form that did nothing more than acknowledge his acceptance of custody of the laptop and discovery materials.  The Court and the government also addressed the defendant's

outstanding concerns about the Protective Order. Immediately after the hearing, in the presence of standby counsel, the defendant signed the Protective Order.  *See* ECF 67, Trans. 11/29/21 hrg. at 18-32; ECF 66, Signed Attachment A. The government and his standby counsel then both requested the DOC put the defendant back on the laptop wait list.  Two weeks later, on December 13, 2021, the defendant received a laptop and a thumb drive of discovery, which he accepted and reviewed. *See* Exhibit F.

- On December 9, 2021, DOC received three thumb drives (government discovery production 1) hand delivered to the Litigation Unit by the government. *See* Exhibit E, receipt confirming delivery dated December 9, 2021. This discovery included case specific materials, such as the defendant's Tiktok, as well as materials from global discovery 2, that was not on evidence.com nor was highly sensitive.

- On December 22, 2021, DOC received a CD (government discovery production 2) hand delivered to the Litigation Unit by the government. *See* Exhibit E, receipt confirming delivery dated December 16, 2021.  This discovery included the December 13, 2021, status letter to the Court sent by the parties; the jail form to accept discovery which the defendant refused to sign November 12, 2021; and case specific FBI serial reports.

- On January 13, 2022, DOC received a CD (government discovery production 3) hand delivered to the Litigation Unit by the government.  *See* Exhibit E, email confirming delivery on January 13, 2022. This discovery includes a copy of the Attachment A defendant signed November 29, 2021, and the filed version; a copy of ECF 65, Notice of Filing Pro Se Discovery; and the Global Production 9 letter.

- On January 21, 2022, DOC records show staff attempted to deliver the defendant a laptop accompanied by four flash drives[7] (received by staff December 23, 2021) and two DVDs (received by staff December 23, 2021, and January 19, 2022) of discovery. *See* Exhibit F. The defendant refused to accept the laptop or discovery. *See* Exhibit E.  There is no valid explanation for this refusal, except to try to stoke the ire of this Court.

- On February 9, 2022, DOC received a CD (government discovery production 4) hand delivered to the Litigation Unit by the government. *See* Exhibit E, receipt of delivery dated February 9, 2022. This contained Global Production 10 letter and contents of the production.

- On February 10, 2022, DOC records show staff delivered one DVD of discovery, which the defendant was reviewing as of February 22, 2022, until it is picked up March 8, 2022. *See* Exhibit F.

- On February 11, 2022, the defendant indicated to the Court that he had access to the DOC instance of evidence.com as discussed in the Discovery Status Memorandum of February 9, 2022. ECF 70. He expressed frustration that some of the videos had no action for long periods of time (which suggests that he should use the various indexes, maps, and other tools provided by the government to help him identify relevant video), however he did not say he had issues accessing the discovery on evidence.com.

- As of March 4, 2022, the DOC DDA has indicated that the defendant is on the jail's waiting list for discovery but his cannot review it because his password for the encrypted storage devices does not work. The data was encrypted per Department of Justice requirements, but the government ensured the password worked before providing the data. Upon

---

[7] The government does not know the origin of the 4th thumb drive listed on the jail records.

information and belief, the DOC may require additional software for the password to work correctly.  On Monday, March 7, 2022, Information Technology (IT) staff at the DOC and the USAO will work together to troubleshoot this matter further.

**Paper Discovery Provided to Defendant via Certified Mail**

- On February 7, 2022, the government sent the Global Discovery Production 11, and indices of all Global discovery produced (1-11) by certified mail to the defendant (government discovery production 5).  *See* Exhibit E, certified mail receipt dated February 7, 2022. This production did not contain digital evidence and thus was mailed directly to the defendant, marked as legal mail. Tracking information shows this production was delivered to the DOC on February 16, 2022. *See* Exhibit E, certified mail receipt online tracking screen dated February 16, 2022.  According to the DOC mail logs, the defendant received discovery provided by the government on February 17, 2022. *See* Exhibit G. A copy of the letter and contents was also emailed to new standby counsel February 5, 2022. *See* Exhibit E, Document entitled US v. Brandon Fellows pro Se Discovery Production 5 - Global Discovery 11_Redacted.  The DOC has verified receipt of this mailing.

- On February 16, 2022, the government, via USAfx, produced for new standby counsel's benefit all the case-specific discovery productions referenced above (Productions made to the Defendant sent to the jail once he went pro se – entitled productions 1-5).  (Standby counsel indicated that he would take care of producing materials from global discovery, as those are or would soon be available to him in Relativity.) Also included were two interviews the defendant gave to the media as well as videos from other defendants which depicted the defendant inside the Capitol Building. *See* Exhibit E, Document entitled US v. Fellows Pro Se discovery in USAfx 2-16-22.

- DOC mail logs show the defendant received two mailing from his standby counsel on February 18, 2022. *See* Exhibit G.

- On February 20, 2022, the government supplemented the USAfx folder discovery folder made for standby counsel with footage from BWC where the defendant is briefly glimpsed outside walking in the west terrace area.

- On February 22, 2022, the government produced via certified mail (government discovery production 6) the Global Discovery 11 letter; the Motion to file Under Seal Exhibit B to the present Government's Response to the defendant and copied standby counsel; and the ECF minute entry of the Order directing the government to file a response to defendant's motion, ECF 58-1. *See* Exhibit E, certified mail receipt dated February 22, 2022. Tracking information shows this production was delivered to the DOC on February 28, 2022. *See* Exhibit E, certified mail receipt online tracking screen dated February 28, 2022. DOC mail logs show the defendant received mail from the government on Mach 2, 2022. *See* Exhibit G.

**Notices of Discovery**

On December 22, 2021, a Notice of Discovery was filed listing discovery provided since the defendant was charged up until December 16, 2021 (ECF 65).

On February 22, 2022, a Notice of Discovery was filed updating the list of discovery provided the defendant (ECF 65) since December 22, 2021. *See* ECF 71. The latest Notice of Discovery lists the discovery provided to defendant, acting pro se, on January 7, January 28, February 7, and February 22, 2022. In addition, the Notice filed February 22nd lists the discovery

provided February 16, 2022, to defendant's new standby counsel via USAfx.  Id. The discovery
provided to standby counsel in USAfx had been sent to defendant in prior productions.

**Global and Future Discovery**

The Court was initially reluctant to toll the statute of limitations at the February 11, 2022,
hearing.  However, the Court ultimately allowed tolling due to standby counsel's calendar and
availability.  The government understood this reluctance was due to the Court's concern with the
time it has taken to provide global discovery.  However, the government has made a clear and
detailed record before the Court of the efforts to provide the defendant with his discovery.  The
discovery is being provided in rolling productions, as illustrated by the letter of December 13,
2021, sent to the Court by the parties, as well as the seven (7) Status of Discovery Memorandums
filed in this case. *See* ECF 34, 39, 44, 52, 54, 69, 70.  The global discovery remains ongoing.  The
government produced its 12th production via Relativity and evidence.com beginning March 4,
2022. In this production, the following is being produced:

    a.  Over 250 Federal Bureau of Investigation ("FBI") interviews of USCP and
        Metropolitan Police Department officers, and associated exhibits (889 files total).

    b.  Three search warrants and related materials pertaining to a total of 63 Facebook
        accounts.

    c.  Two search warrants and related materials pertaining to the FBI's collection of
        Google account subscriber information and location data from the Capitol and
        restricted perimeter, i.e., the Google geofence warrants.

    d.  An application and related orders issued pursuant to 18 U.S.C. 2703(d), requiring
        twelve cell service providers to provide basic subscriber information and call records
        for devices that, according to location data obtained pursuant to the Google geofence
        warrants, were present within the U.S. Capitol on January 6, 2021.

    e.  One search warrant and related materials requiring Facebook to provide information
        for accounts associated with 2,087 advertising identifiers.

    f.  Ten search warrants and related materials pertaining to anonymized location data
        collected by ten data aggregation companies.

    g.  Six search warrants and related materials pertaining to the FBI's collection of cell
        tower data from Verizon, AT&T, and T-Mobile/Sprint.

h. A small mix of scoped devices, SCA accounts, and custodial interviews. Call it a gateway production to the bigger rollout we plan to start next week.
i. All global discovery productions (i.e., Global Production Nos. 1-11) that were previously made by USAfx.
j. Some VSP BWC footage (via evidence.com)

To date over 34,000 documents have been provided to defense in the Relativity database. This latest production as well as the Status of Discovery Memorandum of February 9, 2022 (ECF 70) and the proffers of the government on February 11, 2022, show a herculean effort to obtain, manage, redact, organize, ingest, and provide to the defense bar terabytes of material from multiple agencies and subjects.  This is being done so that defendant counsel in all the Capitol siege cases can access the global discovery that may relate directly to their defendant or their defense in a reasonable and sensible manner.

**Conclusion**

In this specific case, matters are complicated in part because the defendant's own actions have hampered his ability to review specific discovery provided by the government. The defendant has twice refused to accept the laptop and discovery that was offered to him by the DOC Litigation unit for no good reason. The USAO office is now working with the DOC to address the accessing of encrypted materials by residents in the jail. Importantly, the defendant has also indicated he is not ready to set a trial date and wants to review the discovery first.  Given that the defendant's continual refusals to review discovery materials are preventing him from adequately preparing his own defense, we request the Court grant his requests to toll the passage of time the Speedy Trial Act notwithstanding the Court's frustrations with the pace at which the government has produced global discovery.  Even if the government had provided all the discovery as of today, the defendant would have been unable to review it, having refused to take custody of a laptop or discovery materials.

For the reasons cited above, the government respectfully submits that continued tolling of the speedy trial is reasonable and within the interests of the justice and the public.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     /s/ *Mona Lee M. Furst*
MONA LEE M. FURST
Assistant United States Attorney
Federal Major Crimes
Detailee
U.S. Attorney's Office
301 N. Main, Ste 1200
Wichita, Kansas 67202
Office: 316-269-6481
Mona.Furst@usdoj.gov

## CERTIFICATE OF SERVICE

On this 7th day of March, 2022, a copy of the foregoing was served on standby counsel of record for the defendant via the Court's Electronic Filing System and sent via USPS to the defendant Brandon Fellows Inmate #377943, D.C. Jail, Correctional Treatment Facility, 1901 E. Street S.E., Washington, DC 20003.

/s/*Mona Lee M. Furst*
Mona Lee M. Furst
Assistant United States Attorney