UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

* * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action |
| | ) | No. 21-CR-83 (TNM) |
| vs. | ) | 21-80M |
| | ) | |
| BRANDON FELLOWS, | ) | February 3, 2021 |
| | ) | 1:50 p.m. |
| Defendant. | ) | Washington, D.C. |

* * * * * * * * * * * * * * *

**TRANSCRIPT OF INITIAL APPEARANCE
BEFORE THE HONORABLE ROBIN M. MERIWEATHER,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE**

*(All parties appearing via videoconference and/or by telephone.)*

<u>**APPEARANCES**</u>:

FOR THE UNITED STATES:
                        KELLY SMITH
                        U.S. Attorney's Office
                        for the District of Columbia
                        555 4th Street, NW
                        Washington, DC 20530
                        (202) 252-7786

FOR THE DEFENDANT:  CARA KURTZ HALVERSON
                        Federal Public Defender
                        for the District of Columbia
                        625 Indiana Ave NW
                        Washington, DC 20004
                        (202) 208-7500

ALSO PRESENT:  SHAY HOLMAN, Pretrial Officer
                 GENE PRIMOMO, FPD, Northern District of New York

*This hearing was held via videoconference and/or
telephonically and is, therefore, subject to the limitations
associated with the use of technology, static interference, etc.*

**Proceedings recorded by FTR Gold Electronic Recording Software.
Transcribed by stenographer via machine shorthand.
Transcript produced by computer-aided transcription.**

Transcriber:           Elizabeth Saint-Loth, RPR, FCRR
                       Official Court Reporter

1                    **P R O C E E D I N G S**

2              THE COURTROOM DEPUTY:  All right.  Your Honor, now

3    I'm going to call all of the initial appearance cases

4    together.

5              THE COURT:  Thank you.

6              THE COURTROOM DEPUTY:  Magistrate Case

7    No. 2021-74M, the United States of America versus Felipe

8    Marquez.  Kelly Smith, standing in for Jeffrey Nestler, as

9    government counsel.  Cara Halverson is defense counsel.  The

10   defendant is appearing by video.  This case is being called

11   for an initial appearance.

12             Magistrate Case No. 2021-80M, the United States of

13   America versus Brandon Fellows.  Kelly Smith standing in for

14   Melissa Jackson as government counsel.  Cara Halverson is

15   defense counsel.  The defendant is appearing by video; his

16   case is called for an initial appearance.

17             Magistrate Case No. 21-84M, the United States of

18   America versus Nicholas Anthony Moncada.  Kelly Smith,

19   standing in for Emory Cole, as government counsel.  Kira

20   Anne West is defense counsel.  Also Mario F. Gallucci is

21   counsel for the defendant as well.  The defendant is

22   appearing by video.  This case is called for an initial

23   appearance.

24             Criminal Case No. 2021-67, the United States of

25   America versus Mark Simon.  Kelly Smith, standing in for

1    Brenda Johnson, as government counsel.  Cara Halverson is

2    defense counsel.  The defendant is appearing by video.

3    Mr. Simon's case is called for an initial appearance and an

4    arraignment.

5              The pretrial services officer is Shay Holman.

6              THE COURT:  Thank you.

7              Just for all of the counsel and the defendants'

8    awareness, let me briefly tell you how today's hearings will

9    go.

10             We have just called all of these cases for the

11   initial appearance.  Given that there are a lot of things

12   that I need to say that apply to all of you, I will do those

13   at the beginning while we're all -- all of the cases have

14   been called; that will include telling you about some

15   general warnings about release conditions, giving your

16   counsel some guidance on what will happen next.

17             Then, I will individually call the cases one by

18   one, and at that time we will go over your release

19   conditions.  We will go over -- make sure that you have

20   lawyers to represent you.  If I need to determine your

21   financial eligibility to have a court-appointed lawyer, I

22   will resolve that when I call your case one by one, and then

23   we will also set a next court date for your case.

24             So that is how today will be structured.  We've

25   found that that is the most efficient way to move through

1    these cases given the number of people who are here for

2    similar type of proceedings.

3            So a few things.  When I do call the cases one by

4    one, I will just ask that defense counsel state your name,

5    who you represent, and whether your client reserves --

6    waives the right to appear in person and is agreeing to

7    appear by video in the Zoom hearing today and, also, whether

8    you need to be appointed or whether you are retained

9    counsel.

10           Now, just a few things to say to all of the

11   defendants.  Let's see.  I believe that, for all of you,

12   your most serious offense is a Class A misdemeanor.  Because

13   you were charged with a misdemeanor, you have the right to

14   have your trial and any sentencing -- any judgment -- before

15   a district judge, those are Article III judges.

16           I am a magistrate judge, an Article I judge.  You

17   do have the option for Class A misdemeanors to consent to

18   have a magistrate judge handle your case.

19           If an information is filed in your case by the

20   prosecution, a district judge will be randomly assigned, and

21   you can then opt to consent to have a magistrate judge

22   preside instead; a magistrate judge will be randomly

23   assigned at that time.

24           I anticipate that, in these cases, the

25   United States will not be asking that you be held in jail

1    while you are waiting for trial and, instead, will be

2    recommending some type of release conditions.

3           I will hear and resolve any objection from your

4    counsel when we call your case one by one to any conditions

5    that are being requested.  Those conditions may differ from

6    any conditions that the court in your home jurisdiction

7    where you were arrested may have set.

8           I will just advise defense counsel that if there

9    are -- if there is an order from another court that sets

10   different conditions than what I set, you may need to follow

11   up with that court and somehow have those conditions vacated

12   so your client is not subjected to two competing release

13   orders.

14          Also, if I do order that you be released, as

15   defendants while you are waiting for your trial, I do want

16   to make sure you understand a few things.

17          First of all, those conditions will be binding on

18   you.  If you violate the -- and when you are called -- your

19   case is called one by one -- my courtroom deputy will have

20   you swear that you agree to follow those conditions.

21   Because you are appearing virtually I can't give you a piece

22   of paper today to sign, but we will make sure -- I will list

23   what all the conditions are orally.  And we will get the

24   paperwork to your lawyer after the hearing and send it

25   electronically so that you have a document that tells you

1    what your release conditions are.

2         If you violate your release conditions that can

3    lead to serious consequences, including finding yourself

4    arrested.  I can be asked to issue a warrant for your

5    arrest; your release can be revoked.  I can get a request

6    that you be held in custody while you are waiting for trial

7    instead of being out in the community or residing at home.

8    You could also be held in contempt of court.  So it is very

9    serious to -- release conditions are a serious thing, and it

10   is critical that you follow them.

11        If you commit any crime while you are on pretrial

12   release, that could also have serious consequences -- again,

13   including being arrested, having your release revoked.  You

14   could also face an additional prison sentence for having

15   committed this crime while on release; that will be in

16   addition to any sentence for the crime.

17        Finally, you are required to appear at all court

18   proceedings while you are on release.  And if you fail to

19   appear, that would also be a violation that could lead to

20   contempt proceedings, a warrant for your arrest, the

21   revocation of your release.

22        I anticipate, at least for most of the judges on

23   this court in the near term, future hearings will be

24   telephonic or video in the near future, particularly if --

25   for those of you who reside outside of the D.C. area.  That

1    should facilitate your ability to participate in the

2    hearings; but if you have any conflicts, really, you must

3    notify your counsel.  Also, they can try to have things

4    rescheduled so you do not find yourself in this contempt

5    situation that I have described.

6          I would also ask that -- hopefully this has

7    already happened; but defense counsel and the prosecution

8    should confer about possible next dates so that, when I get

9    to your case individually, we can promptly get the next

10   dates set.  If the case already has a district judge

11   assigned, we may have information from that judge about when

12   your next court date will be.

13         Finally, I would just like to remind the

14   United States of your obligations under Rule 5(f) to provide

15   *Brady* material, and that there can be adverse consequences

16   if you fail to do so.

17         THE COURTROOM DEPUTY:  Your Honor, this is -- go

18   ahead.  You finish, and then I have something to say.  Go

19   ahead.

20         THE COURT:  Okay.

21         And then one last thing is:  When I am setting the

22   next court dates, if we're setting it before the criminal

23   duty magistrate judge, we will be setting it for 1 p.m. on

24   whichever date that has been proposed so that it can be

25   handled along with any other Capitol cases that we have

1    coming in.

2            Also, just a housekeeping matter.  For future

3    hearings, if you are anticipating that you would like to

4    seek a continuance, we would ask that you file a motion in

5    advance of the hearing instead of connecting to the video

6    and being on the hearings simply orally asking for

7    continuances; it's a lot more efficient for the Court to

8    deal with the scheduling matters through motions.

9            Yes, Ms. Kay.

10           THE COURTROOM DEPUTY:  Thank you, Your Honor.

11           Would the defendant who I can see -- I am not -- I

12   can't remember your name.  I see you eating on camera.

13   Could you raise your hand, please?

14           Sir, if you don't mind, so we don't see you eating

15   on camera, you can turn off your camera and, when you need

16   to speak, turn it on.  But, right now, we really should not

17   see you eating while the judge is addressing you.

18           Thank you very much.

19           THE COURT:  Thank you, Ms. Kay.

20           Okay.  At this time we will start calling the

21   cases individually.  I would ask that once -- if your case

22   is not the case being called, please turn off your camera

23   and remain in mute so that way we can focus on the parties

24   who are appearing before us.  And when you hear your case

25   called, please turn your camera back on.

```
 1              Ms. Kay, who will we call next?

 2              THE COURTROOM DEPUTY:  Your Honor, I am going to

 3     call Felipe Marquez in just a second.

 4              THE COURT:  Thank you.

 5              (Whereupon, other matters were addressed from 2:01

 6     to 2:58 p.m.)

 7              THE COURTROOM DEPUTY:  Mr. Sharp, are you still on

 8     our video?  I see "iPhone" listed.  Is that you?

 9              MR. PRIMOMO:  It may be me.

10              THE COURTROOM DEPUTY:  Who is "me"?

11              MR. PRIMOMO:  This is Gene Primomo.

12              Are you referring to my iPhone, 369-913 --

13              THE COURTROOM DEPUTY:  Yes.  Well, it just says --

14     it just says "iPhone."

15              MR. PRIMOMO:  Okay.  Well, that's my phone number.

16     And who I am is -- I was appointed by -- to represent

17     Mr. Fellows and his removal out of the Northern District of

18     New York.  So I am just monitoring the hearing with Cara

19     Halverson.  Okay?

20              THE COURTROOM DEPUTY:  Okay.  Thank you for that

21     clarification.

22              MR. PRIMOMO:  You are going to mute me again,

23     correct, because I was on mute -- I intended -- this entire

24     time.

25              THE COURTROOM DEPUTY:  Yeah.  You can mute
```

1    yourself.  I can't actually -- well, I can mute people but I

2    can't unmute them.

3              MR. PRIMOMO:  Okay.

4              THE COURTROOM DEPUTY:  Ms. Smith, are you ready?

5              MS. SMITH:  Yes, I am, Ms. Kay.

6              THE COURTROOM DEPUTY:  Okay.  Your Honor.

7              Okay.  Re-calling Magistrate Case No. 2021-80M,

8    the United States of America versus Brandon Fellows.

9              Shay Holman is the pretrial services officer.

10             The defendant is appearing -- I see Mr. -- okay, I

11   see Mr. Fellows now.  The defendant is appearing by video.

12             This case is called for an initial appearance.

13             Counsel, would you please state your names for the

14   record.

15             MS. SMITH:  Kelly Smith, on behalf of the

16   United States.

17             MS. HALVERSON:  Cara Halverson, on behalf of

18   Mr. Fellows.

19             THE COURTROOM DEPUTY:  Mr. Fellows, would you

20   please raise your right hand.

21             Do you solemnly swear that you will well and truly

22   answer the questions propounded to you by the Court, so help

23   you God?

24             I think you might be on mute.

25             THE DEFENDANT:  Thanks.  I do.

```
1              THE COURTROOM DEPUTY:  Thank you very much.
2         You can put your hand down.  Thank you.
3              THE COURT:  Thank you.
4         Thank you.  Ms. Smith already stated her
5    appearance for the record; and Ms. Halverson did as well.
6              Ms. Halverson, could you address the CARES Act and
7    any appointment of counsel issues, please.
8              MS. HALVERSON:  Yes, Your Honor.
9              So I have gone over the fact that there is a
10   pandemic going on and, as authorized under the CARES Act, we
11   would participate with his initial appearance via video.  I
12   believe that Mr. Fellows is in agreement with that.
13             As far as the appointment of counsel, my
14   understanding is that an affidavit was submitted by
15   Ms. Peterson to the Court, and that he does qualify for
16   services; but please let me know if you do not have that.
17             THE COURT:  Let me check one other location.
18             My notes indicate that it was filed but that it
19   didn't make its way to me but that I think he was found
20   eligible in New York.
21             Let me just check one other network location to
22   see if it might have come in.
23             Yes.  I have it.
24             Okay.  Based on the information in the financial
25   affidavit, which I will docket under seal, I will -- I find
```

 1      that Mr. Fellows is eligible for court-appointed counsel;

 2      and I will appoint Ms. Halverson as counsel for Mr. Fellows

 3      in this case.  Thank you.

 4              It looks like we're still proceeding on a criminal

 5      complaint in this case.

 6              Is that correct, Ms. Smith?

 7              MS. SMITH:  That is correct, Your Honor.

 8              THE COURT:  Okay.  Thank you.

 9              Is the United States seeking detention or any

10      particular release conditions?

11              MS. SMITH:  Your Honor, the government is not

12      seeking defendant's detention in this case; however, we are

13      seeking far more stringent conditions that we have -- than

14      we have in other cases.

15              The government sent along to Your Honor, as well

16      as defense counsel -- and I believe it's been circulated in

17      other ways as well -- Mr. Fellows's release conditions,

18      which were out of the Northern District of New York; and I

19      am happy to read those onto the record now.  The government

20      is requesting an extension of those conditions for this case

21      and to be imposed in the D.C. case.

22              THE COURT:  Would that include the bond that was

23      set in the Northern District of New York?

24              MS. SMITH:  I apologize, Your Honor.

25              The government would not be seeking to extend the

 1    bond in this case.  We believe that based on the home

 2    detention and GPS monitoring device that that will

 3    sufficiently ensure Mr. Fellows's participation in the next

 4    court proceedings and throughout the pendency of the case.

 5              And just to note for the record, Your Honor, the

 6    government is seeking -- based on the conditions we're

 7    seeking, we are requesting courtesy supervision by the

 8    Northern District of New York.

 9              THE COURT:  Does the defense object to the

10    government's proposal to continue the conditions that were

11    set by the Northern District of New York?

12              MS. HALVERSON:  Yes, Your Honor; and we're

13    prepared to make argument whenever you're ready.

14              THE COURT:  I'm sorry.  I am not sure -- maybe --

15    Mr. Fellows, could you try muting yourself.  I am getting

16    some background noise.

17              I think that did it.

18              Okay.  Ms. Halverson, could you repeat yourself

19    please.

20              MS. HALVERSON:  Yes.  We are objecting to the

21    conditions as proffered by the government; and we're ready

22    to make argument whenever Your Honor --

23              THE COURT:  Okay.  I am prepared to hear it.

24              Thank you.  You can proceed.

25              MS. HALVERSON:  Thank you, Your Honor.

1          So I believe -- I don't want to steal the thunder

2     from Ms. Smith; but I believe sort of the basis for these

3     more stringent conditions is the allegation that Mr. Fellows

4     wasn't completely cooperative with FBI agents when they told

5     him that they had an arrest warrant.

6          However, after speaking with Mr. Fellows, he

7     informed me -- and I understand -- that the FBI agents that

8     contacted him originally in this case did not tell him that

9     they had a warrant for his arrest; he was unaware he had a

10    warrant for his arrest.  The FBI agents just stated that

11    they would like to speak with him.  He declined speaking

12    with them on advice of counsel -- not me, but another

13    attorney -- and was not aware that they were seeking to

14    arrest him pursuant to an arrest warrant; and that was the

15    reason why he did not -- he was not cooperative with the FBI

16    agents and did not meet with them.

17         Mr. Fellows contends that had he known that there

18    was an active arrest warrant for him he would have turned

19    himself in, but that the FBI agents that contacted him did

20    not tell him that.

21         And so, for those reasons -- you know, I don't

22    believe he really has any substantial criminal history; they

23    are misdemeanor cases, again.  Mr. Fellows is the owner of

24    his own business.  He needs to be able to have freedom to

25    move about and not be confined.

1          There is also a bit of an issue with the

2   particular address that he has been confined to, which is

3   his mother's address.  I don't know that his mother is

4   willing to continue to house him at that location; so that's

5   another -- sort of -- complication with having him on those

6   home confinement conditions.

7          MS. SMITH:  Your Honor, may I respond?

8          THE COURT:  Yes.

9          MS. SMITH:  Thank you, Your Honor.

10          The government would argue that Mr. Fellows's

11   behavior in this case belies representations with respect to

12   his -- that had he known that there was a warrant for his

13   arrest that he would have complied with it.

14          Instead, it's the understanding of the government

15   that the defendant repeatedly attempted to evade law

16   enforcement once being alerted that they had a warrant for

17   his arrest -- indicating that he would be home at a certain

18   time or generally stating he was in Pennsylvania, but

19   refusing to provide any additional information.

20          Moreover, when speaking with FBI agents who, as I

21   understand it, specifically stated that they did have a

22   warrant for his arrest and agreed to turn himself in, he

23   ended up being found at a random hotel near a shopping mall.

24   And, in addition, they had found his phone wrapped in tin

25   foil which allegedly had been hid near a candy dispenser at

1    the hotel.

2            It's also the government's understanding that the

3    defendant ditched his vehicle the day that he was arrested

4    or the day he was to be arrested.  And the government has

5    since learned that the defendant remotely had erased the

6    contents -- contents of his phone after it was seized by law

7    enforcement.  For those reasons, we strongly contend

8    specifically in this case that the defendant should be on

9    home detention and home monitoring.

10           Should the issue arise with respect to his mother

11   not allowing him to stay at her home, I think that can be

12   addressed then but, at least from my reading from the

13   pretrial services report, it doesn't seem to suggest he has

14   been ousted, for lack of a better term, from his mother's

15   house yet.  It does sound like she does not want him to stay

16   longer than two weeks but, at the present time, that is an

17   approved address.  And he should remain on home detention as

18   previously ordered by the Northern District of New York.

19           THE COURT:  Thank you.

20           Ms. Halverson, do you want to speak with your

21   client in a breakout room?  It looks like he's trying to

22   raise his hand.

23           MS. HALVERSON:  Sure, Your Honor.  That would be

24   helpful.  Thank you.

25           THE COURT:  Thank you.

```
 1              THE DEFENDANT:  Do I take this -- how do I go into
 2      the breakout room?
 3              THE COURT:  You should get a prompt from our
 4      system; it may just take a minute.
 5              THE COURTROOM DEPUTY:  Yeah.  Give me one moment.
 6      I have to set it up.
 7              THE DEFENDANT:  Okay.  Gotcha.
 8              THE COURTROOM DEPUTY:  Mr. Fellows, how are you
 9      identified so I know who to click on?
10              THE DEFENDANT:  Moto e6.
11              THE COURTROOM DEPUTY:  Gotcha.  Thank you.
12              THE COURT:  I am going to turn off my camera so
13      that I can open something on another screen, but I will
14      still be connected.
15              (Whereupon, counsel and the defendant confer from
16      3:09 to 3:14 p.m.)
17              MS. HALVERSON:  This is Cara Halverson.
18              I believe I've finished my conversation with
19      Mr. Fellows if the Court is ready to hear some supplement.
20              THE COURT:  Yes.  Thank you.
21              MS. HALVERSON:  And thank you, Your Honor, for the
22      opportunity to speak with Mr. Fellows privately, and for
23      Ms. Kay for setting that up.
24              So I just wanted to make the additional
25      representations.
```

1          From my understanding, my client wants me to

2     inform the Court that he has many witnesses that will be

3     able to attest that the FBI agent never said that they had a

4     warrant for his arrest and that the request was simply for

5     him to come down and talk to the FBI.

6          He also wanted me to make the -- attest to the

7     judge that he made multiple attempts to accommodate the FBI

8     agent but that he was, sort of, stranded at the time on a

9     mountain pass with his vehicle and so he wasn't able to get

10    to (indiscernible) fast enough.

11         And he wanted me to represent to the Court that he

12    did not ditch his bus as the government claimed but,

13    instead, he took it to his mother's house for safekeeping.

14         And, additionally, he wanted me to represent to

15    the Court that the agent that ended up arresting him for

16    these offenses told him that his bus and the phone were

17    being confiscated purely as punishment for him not agreeing

18    to talk to them earlier.

19         So those are the representations that my client

20    has made to me, and I will pass those on to the Court.

21              THE COURT:  Okay.  Thank you.

22         Did pretrial wish to be heard at all on the

23    release conditions?

24              MS. HOLMAN:  Your Honor, as Ms. Smith stated,

25    pretrial's concern is with the defendant's current and

1    future living addresses.

2         It is our understanding that he lives in the

3    mobile bus and travels throughout the New York area and

4    other jurisdictions, so we're just concerned about him

5    having a stable address.  But we do -- our recommendation

6    stands as is.

7         MS. SMITH:  Your Honor, may I address a few

8    points?

9         THE COURT:  Yes.

10        MS. SMITH:  Thank you.

11        The government also would note that because the

12   government is not seeking to extend the bond in this case,

13   that is part and parcel to why the government is requesting

14   GPS, particularly with respect to this defendant.

15        He has shown a penchant for trying to evade law

16   enforcement in the government's view.  And because that bond

17   will no longer be in place, we believe that home confinement

18   and GPS will be the only means and the least restrictive

19   means at this point to ensuring his compliant -- his

20   compliance with the Court's orders, as well as to ensure

21   that he participates in all future court proceedings as

22   directed.

23        And I would just again underscore the fact that

24   it's the government's understanding that after his phone was

25   seized by law enforcement that he did remotely attempt to

1    wipe it.

2          While I heard the representation that the agents

3    allegedly said that the phone and car were taken as

4    punishment -- of course, as the Court well knows, it's very

5    commonplace for vehicles to be seized as well as phones to

6    be seized, especially in the course of these cases.  The

7    government is under absolutely -- there is no reason to

8    believe here that the agents took these items as punishment.

9    Instead, of course, the defendant was arrested in this case.

10   And, of course, after the government's belief that he was

11   evading the law enforcement.

12          Thank you.

13          MS. HOLMAN:  Your Honor, and if Ms. Halverson -- I

14   mean, if pretrial can inquire of Ms. Halverson if she's

15   discussed with the defendant any housing plans past the next

16   two weeks?

17          MS. HALVERSON:  I did discuss housing plans if his

18   mother no longer wished to have him at the house.

19          There is an alternative address, but I don't know

20   if it can be verified by pretrial services; and I wasn't

21   sure if it would be pretrial services in D.C. or pretrial

22   services in the Northern District of New York that would

23   take care of that.  But I think that there potentially

24   could -- there is another address, I am just not sure about

25   verifying it.

```
 1              MS. HOLMAN:  Okay.  If the Court grants the
 2    government's request for courtesy supervision, then the
 3    address can be given to us.  And when we make the formal
 4    request for courtesy supervision, we can provide the address
 5    to them.
 6              MS. HALVERSON:  Okay.  Yeah.  I can get that
 7    address from Mr. Fellows and pass it on to you, Ms. Holman.
 8              THE COURT:  Okay.  It looks like Mr. Fellows is
 9    raising his hand again.
10              Did you want -- did you need another breakout
11    session?
12              It looks like he's nodding his head.  He would
13    like to talk to you.
14              MS. HALVERSON:  I think that's right.
15              THE DEFENDANT:  Yes.
16              THE COURT:  Okay.  Thank you.
17              Ms. Kay, could you set up another breakout room
18    for Mr. Fellows and his attorney, please.
19              Thank you.
20              (Whereupon, counsel and the defendant confer from
21    3:20 to 3:23 p.m.)
22              MS. HALVERSON:  Your Honor, this is Cara
23    Halverson.  I'll just wait for Mr. Fellows to come back from
24    the breakout room.
25              THE COURT:  Okay.  It looks like Mr. Fellows is
```

1    back.

2         MS. HALVERSON:  All right.  Thank you.

3         And, again, I appreciate the indulgence of your

4    patience with this.

5         So one thing that I think might be a good

6    compromise that Mr. Fellows brought to my attention is that

7    there -- you know, I think Mr. Fellows would be okay with

8    the condition of GPS monitoring.

9         I think the difficult thing for him is to be

10   confined in a particular location.  So he, I think, would

11   agree to be on GPS monitoring.  I think he would agree to

12   stay within the district of -- the Northern District of

13   New York, unless he got permission otherwise.  But we do

14   feel that the additional condition of home confinement is

15   just too stringent based on the charges that he's charged

16   with (indiscernible), Your Honor.

17        I understand the government's representation about

18   why they feel he was being evasive with law enforcement.

19   Without having that FBI agent here, you know, Mr. Fellows

20   has a completely different side of the story; so it's very

21   difficult to try and get a handle on -- you know, maybe

22   there is a little bit of gray, maybe there is a little bit

23   of truth to both sides.  But I think, without really knowing

24   and having personal knowledge of what happened between

25   Mr. Fellows and the FBI agent, it's very difficult for us to

1     ascertain exactly what the FBI agent told him.

2              I would just renew my request to have the standard

3     conditions imposed on him.  But if Your Honor believes that

4     more stringent conditions are necessary, we would ask for

5     the GPS monitoring.  And we would be fine with courtesy

6     supervision in the Northern District of New York, but we

7     would ask that he not be confined to any one location.

8              THE COURT:  So I guess this is probably a

9     logistics -- when you say not confined, do you mean he would

10    have an address but it would be GPS without home confinement

11    or, I guess, home detention?

12             MS. HALVERSON:  Correct.  Correct.

13             MS. HOLMAN:  Your Honor, this is Ms. Holman.

14             That would be -- and I believe Ms. Kay I think you

15    need to mute -- so that would be -- if she's asking for GPS

16    with no standard address, then that would be GPS only with

17    no curfew.

18             MS. HALVERSON:  That would be what we're asking

19    for.

20             MS. HOLMAN:  Because if he doesn't have an

21    address, a stable address, then there is not an address that

22    we can attach a curfew to.  So if Your Honor grants that,

23    then it would be GPS only.

24             THE COURT:  That's what I was going to ask you,

25    Ms. Holman.

1          My understanding was:  For the curfew there needs

2    to be an address that it's tied to so that pretrial can tell

3    whether a person has come back to that address in time.

4          MS. HOLMAN:  Correct, Your Honor.

5          MS. SMITH:  And, Your Honor, for all of the

6    reasons previously stated -- with respect to Mr. Fellows'

7    evasiveness as represented by the government, as well as his

8    general conduct in this matter -- the government vehemently

9    opposes that and would, again, request home confinement with

10    the GPS.

11          Thank you.

12          THE COURT:  Ms. Holman, is GPS only even possible

13    with supervision from New York?

14          MS. HOLMAN:  This is the Northern District of

15    New York.  Your Honor, we have worked with them before.

16    I don't think GPS only would be an issue, but I would have

17    to, you know, speak with them directly.  But it should not

18    be an issue; they have done GPS for us before.

19          THE COURT:  Okay.  Thank you.

20          Just for clarification, Ms. Halverson, does that

21    mean you were asking that he not be required to live with

22    his mother?

23          MS. HALVERSON:  That is correct.

24          MS. HOLMAN:  And, Your Honor, just for

25    clarification -- because of the static issues, I couldn't

1    hear everything Ms. Halverson said.

2           Was that just he agreed to GPS and that that be

3    the Northern District, or are there other districts that

4    she's asking he be permitted to travel to?

5           MS. HALVERSON:  Ms. Holman, this is Cara

6    Halverson.  I am not sure if you can hear me now.

7           But my original request to the magistrate was to

8    keep him confined to the Northern District of New York --

9           MS. HOLMAN:  Okay.

10          MS. HALVERSON:  -- unless (indiscernible) pretrial

11   otherwise --

12          MS. HOLMAN:  Okay.  That's fine.  I just didn't

13   hear that part.  That's fine.

14          THE COURT:  Okay.  Thank you.

15          I heard argument from the government, the defense,

16   as well as input from pretrial as to what the release

17   conditions for Mr. Fellows should be.

18          The United States is asking that I extend the

19   conditions except for the bond that was set by the Northern

20   District of New York.  The defense is asking that I impose

21   less stringent conditions -- and particularly objects to the

22   condition that that court set of home detention, as well as

23   objects to the requirement that he reside with his mother.

24          Having considered all of the representations by

25   the counsel, as well as having looked at the record,

1    including the fairly detailed report from pretrial services

2    in the Northern District of New York, I am going to largely

3    grant the government's request but not in its entirety

4    regarding release conditions as an overview; and then I will

5    go through the specific conditions because there seem to be

6    quite a few from the other jurisdiction.

7              I will require Mr. Fellows to continue to reside

8    with his mother.  He will provide an option that he obtain

9    pretrial approval of any change in address because I am

10   sensitive to these representations and the report from that

11   court that his mother may have some issues with him being

12   able to live with her long term; so I don't want to set a

13   condition that cannot be followed or that can only -- that

14   has a short shelf life.

15             Also, on the question of GPS monitoring, I am

16   going to do GPS monitoring with a curfew.  I am not going to

17   grant the government's request for GPS monitoring with home

18   detention and a curfew; so the home detention part is the

19   piece that I am not granting.

20             I don't want to take the time to repeat everything

21   that's been said on the record, but I do think there are

22   definitely concerns here that warrant more stringent

23   conditions than those we have imposed in a lot of these

24   other cases with people facing similar charges; but I think

25   that a curfew and a stable address and GPS monitoring will

1    be sufficient without the additional requirement of home

2    detention.

3            So I will order that Mr. Fellows be released with

4    no bond -- the (indiscernible) bond; that he be subject to

5    courtesy supervision by pretrial in the Northern District of

6    New York; that he report to that pretrial services as

7    directed; that he maintain any employment.

8            Their report indicates that he did not have a

9    passport, so it will be that he not obtain any new passport

10   and travel documents; that his travel is restricted to the

11   Northern District of New York unless approved by pretrial

12   services or the Court; that he reside with his mother at the

13   address provided to pretrial; that he obtain advanced

14   approval from pretrial before changing any -- changing the

15   residence; that he refrain from excessive use of alcohol;

16   that he not possess, use, distribute, or import controlled

17   substances except as properly prescribed by a licensed

18   medical practitioner; that if pretrial services in that

19   jurisdiction decides that substance abuse testing is

20   necessary, that he comply with any testing requirements that

21   they impose; that he -- likewise, if pretrial deems that any

22   substance abuse treatment or counseling is necessary, that

23   he comply with that requirement; he not obstruct or attempt

24   to obstruct or tamper with any electronic monitoring device

25   or substance abuse testing; that he be restricted to his

1     residence between 10:00 p.m. and 6 a.m. as a curfew; that he

2     be subject to GPS monitoring -- GPS location monitoring;

3     that he report to pretrial at a court within 72 hours of any

4     arrest, traffic stop; that he not commit any state or

5     federal crimes.

6              I believe that covers what I see in the release

7     order from the other jurisdiction -- the parts that I am

8     carrying forward.

9              Ms. Smith, was there anything else that you think

10    I didn't say I was expressly rejecting that I may have

11    overlooked?

12             MS. SMITH:  No, Your Honor.

13             The government would just alternatively -- based

14    on Your Honor's imposition of these supervision

15    requirements -- would just request that the curfew actually

16    be from 6:00 p.m. to 6 a.m. rather than 10:00 p.m. to 6 a.m.

17             THE COURT:  Ms. Halverson, is there any objection

18    to that?

19             MS. HALVERSON:  Yes, Your Honor.

20             I think given Mr. Fellows' job -- I don't think

21    that his job is really something that can be scheduled from

22    9 to 5.  He meets the people and other consultants at a

23    variety of different times that meets their schedules, so I

24    think that would be unduly burdensome.  10:00 p.m. is

25    sufficient -- through 6 a.m. would be sufficient.

1          THE COURT:  Would 9:00 p.m. -- if I moved it up to

2     9:00 p.m. would that interfere with his job, 9:00 p.m. to 6

3     a.m.?

4          MS. HALVERSON:  He's giving me a wonky wave, so I

5     think he might be agreeable to the 9:00 p.m., Your Honor.

6          THE COURT:  Okay.  I will partially modify the

7     curfew to be 9 p.m. -- 9 p.m. to 6 a.m.

8          MS. HALVERSON:  And this is Ms. Halverson.

9          If I could just ask something of Ms. Holman while

10    I have her on the phone, if the parties don't mind.

11          If he wants to adjust his address at a later date,

12    that would be through the Northern District of New York.  So

13    he would need to contact the pretrial services' office in

14    the Northern District of New York, and they would verify the

15    address; is that correct.

16          MS. HOLMAN:  That's correct.

17          MS. HALVERSON:  Do you understand that,

18    Mr. Fellows?

19          MS. HOLMAN:  Your Honor, did you state the

20    firearms condition?

21          THE COURT:  I think so.

22          MS. HOLMAN:  Was that:  Do not possess firearms or

23    illegal firearms?

24          THE DEFENDANT:  I -- can you --

25          THE COURT:  Hold on.  Let me go back to the

1    conditions from the other jurisdiction.

2         I think it was -- wait.  Hold on.

3         Maybe it's not in here.  Let me see.

4         I don't think there was a firearm condition in the

5    other jurisdiction's conditions, so I will make that not

6    possess any illegal firearms.

7         MS. SMITH:  We would just ask, Your Honor, that it

8    be not possess any firearms altogether given that the

9    national standard, as far as I understand it, is not possess

10   any firearms -- especially given that the Northern District

11   of New York will be the agency that will be monitoring him.

12   And to the extent that they need to make home visits or

13   anything with respect to that, we just would want to impose

14   I think what has become our standard, which is:  Do not

15   possess any illegal firearms, but -- I would defer actually

16   to pretrial on that; but the government would be requesting

17   no firearms altogether.

18        MS. HOLMAN:  That's correct, Your Honor.

19        We would be requesting no firearms in courtesy

20   supervision cases to secure the -- for the safety of the

21   other jurisdiction.

22        THE COURT:  And I now see it's -- their form is a

23   little bit different than ours, so it actually falls onto

24   another one; so I think I just didn't read that piece of it.

25   But their condition did say:  Refrain from possessing a

 1    firearm, destructive device, or other dangerous weapon; that

 2    is 7A on their release conditions, just at the end of 7A.

 3              So I will -- since my plan was to carry forward

 4    their conditions since we are asking for courtesy

 5    supervision, I will impose the requirement that he not

 6    possess any firearm.

 7              Thank you, Ms. Holman, for asking.

 8              Okay.  Ms. Halverson, are there any of these

 9    conditions that you need me to further explain?

10              You're not listed as muted, but we can't hear you

11    at all.

12              MS. HALVERSON:  Can you hear me now?

13              THE COURT:  Yes.

14              MS. HALVERSON:  Okay.

15              Just to clarify with Mr. Fellows, you understand

16    that you have to live with your mom.  But that if there is

17    an alternative address that you can get pretrial services in

18    the Northern District of New York -- to verify that; but you

19    cannot leave your mom's address until they verify the new

20    address.

21              Do you understand that?

22              THE DEFENDANT:  Yes.

23              MS. HALVERSON:  Okay.  All right.  That was the

24    only thing I just wanted to clarify.  Thank you.

25              THE COURT:  Okay.  Thank you.

```
 1                    Ms. Kay, could you please swear Mr. Fellows to
 2          these conditions?
 3                    THE COURTROOM DEPUTY:  Mr. Fellows, would you
 4          please raise your right hand.
 5                    (Whereupon, the defendant was sworn to the
 6          conditions of release.)
 7                    THE DEFENDANT:  I do.
 8                    THE COURTROOM DEPUTY:  Thank you.
 9                    THE COURT:  Thank you.
10                    And then, Mr. Fellows, could you just confirm that
11          you heard and understood the conditions you just agreed to
12          follow?
13                    THE DEFENDANT:  I understood, and agree to the
14          conditions.
15                    THE COURT:  Thank you.
16                    THE DEFENDANT:  Do we happen to know when our next
17          court date is?
18                    THE COURT:  Did we set our next court date?
19                    THE DEFENDANT:  Yes.
20                    MS. HALVERSON:  Your Honor, I believe -- since
21          he's charged in the criminal complaint at this time, he does
22          reserve the right to have a preliminary hearing.  We would
23          request that it be set on the same date as the other one,
24          which was February 24th.
25                    And I spoke with Ms. Smith about that date prior.
```

1           THE COURT:  Okay.  I will set a preliminary

2     hearing for February 24th at 1 p.m.

3           If this hearing goes forward, we may need to make

4     some adjustments on the calendar since that is the time we

5     will be hearing any initial appearances for Capitol cases as

6     well.

7           Is there a speedy trial request?

8           MS. SMITH:  Yes, Your Honor.

9           The parties have agreed to toll speedy trial in

10    the interim given the voluminous discovery in these cases,

11    as well as to allow for the parties to speak further about

12    this specific case.  We believe it is in the interest of

13    justice to do so.

14          MS. HALVERSON:  That's correct, Your Honor.

15          THE COURT:  Okay.  Thank you.

16          I will toll the time between today and

17    February 24th, 2021, exclude it from any speedy trial

18    calculations.

19          I find based on the representations of the

20    parties that this exclusion of time best serves the interest

21    of justice, outweigh the interests of the defendant and the

22    public in a speedy trial as it will provide time for the

23    parties to review and discuss the voluminous discovery in

24    this case.

25          Are there any -- I should note -- I am not going

1      to repeat them in the interest of time; but I did give

2      warnings at the very beginning of these hearings today about

3      the consequences for failing to follow release conditions;

4      that will also be repeated in the written release conditions

5      which we will sign and send to defense counsel so that a

6      copy can be provided to Mr. Fellows.

7              Are there any other issues that need to be

8      presented to me before we adjourn?

9              MS. SMITH:  Nothing from the government, Your

10     Honor.

11             MS. HALVERSON:  Or the defense, Your Honor.

12             Thank you.

13             THE COURT:  Okay.  Thank you.

14             That concludes this matter.  That concludes these

15     initial appearances.

16             Ms. Kay, I will connect again at four o'clock for

17     that hearing.

18             MS. HOLMAN:  I am sorry, Your Honor.

19             Can you repeat the court date for pretrial?

20             THE COURT:  Yes.  February the 24th, at 1 p.m.

21             MS. HOLMAN:  Okay.  Thank you.

22             THE COURT:  Okay.  Thank you.

23             MS. SMITH:  And, Your Honor, just quickly, I have

24     one housekeeping thing that does not require anything --

25     with respect to tomorrow, I just wanted to make Your Honor

1    aware.

2              THE COURT:  Okay.  So should we have other people

3    disconnect, and then you can --

4              MS. SMITH:  Yes.  And Ms. Halverson can stay if

5    she'd like.

6              THE COURT:  Okay.  Thank you.

7              Thank you.  You are free to go, Mr. Fellows.

8              (Whereupon, the proceeding concludes, 3:44 p.m.)

9                          *  *  *  *  *

10                          CERTIFICATE

11

12              I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

13    certify that the foregoing constitutes a true and accurate

14    transcript of the FTR Gold software proceedings, and is a

15    full, true, and complete transcript of the proceedings

16    transcribed to the best of my ability.

17

18              This certificate shall be considered null and void

19    if the transcript is disassembled and/or photocopied in any

20    manner by any party without authorization of the signatory

21    below.

22

23         Dated this 18th day of April, 2022.

24         /s/ Elizabeth Saint-Loth, RPR, FCRR
           Official Court Reporter

25