UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No.: 21-CR-083 (TNM) |
| v. : | |
| : | |
| BRANDON FELLOWS, : | |
| : | |
| Defendant. : | |
| : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
### *IN LIMINE* AS TO WITNESS NARRATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully responds in opposition to "Defendant Brandon Fellows Motion *in limine* No. 1 – Witness Narration of Video and Documentary Evidence" [ECF No. 108] by requesting that the same be denied as without merit for the reasons set forth below.

### MEMORANDUM

### Background

This case arises from the January 6, 2021 riot at the United States Capitol. On February 5, 2021, the grand jury indicted the defendant on five counts: four misdemeanor violations for violations of Title 18, U.S.C. §§ 1752(a)(1), (2) and Title 40, U.S.C. §§5104(e)(2)(C), (D) and a felony violation of Title 18, U.S.C. §§ 1512(d)(2) and 2 for Obstruction of an Official Proceeding and Aiding and Abetting the same. ECF Doc. 6. The defendant now moves this Court to preclude any United States witness from "offering testimony in the form of a narration of events depicted on any video footage or documents offered into evidence." [ECF No. 108 (hereinafter, "Motion") at p. 2]. He further seeks to preclude agents from being able to "read[ ] aloud the text of documentary

1

evidence." [Motion at p. 5]

## Argument

The defendant seeks to impose an unnecessary and overly broad limitations on the Case Agent's testimony that would improperly prevent him from providing relevant and helpful testimony at trial.[1]

Video narration, which is not a stand-alone category of evidence, falls at the intersection of the federal evidentiary rules governing relevance, personal knowledge of a witness, lay opinion testimony, expert testimony, and authenticity. Fed. R. Evid. 401 (Relevance); 602 (Need for Personal Knowledge); 701 (Lay Opinion Testimony); 702 (Expert Witnesses); 703 (Bases of Expert). Just as every other type of evidence must be analyzed in accordance with these rules, so must video narration. The defendant's overly broad motion seeking to exclude all testimony in the form of narration ignores the admissibility of relevant and helpful testimony that the Case Agent can offer and that other courts have permitted. Accordingly, the United States respectfully requests that the Court deny the defendant's motion and resolve specific objections to the Case Agent's testimony during trial.

It cannot be disputed that, generally speaking, the agents assigned to work January 6th investigations have personal familiarity resulting from extensive study of hundreds of videos and other depictions of the events of that day. They have seen the same events involving the same conduct and the same people from multiple angles. Thanks to this level of familiarity, they are able to notice and recognize actors or features or relevant locations in scenes that are crowded and often

---

[1] To be clear, the United States also intends to call law enforcement officers to testify regarding their firsthand experiences and observations in connection with the defendant's conduct on January 6th.

2

chaotic, or in video footage that is lacking in quality. Some degree of video narration is helpful – if not *necessary* – to help the jury process and make sense of what it is that they are seeing in the video footage. See F.R.E. 701. It is important to remember that, unlike the lawyers in this case, members of the jury may be seeing depictions of the chaotic scenes and locations of January 6th for the very first time. It is also important to recall that a Case Agent will often have personal knowledge of the defendant's appearance from having seen him in person (pursuant to an arrest or interview) and in depictions unrelated to January 6th obtained for identification purposes.

Indeed, courts routinely admit video narration by law enforcement witnesses with firsthand knowledge of individuals portrayed in the video for identification purposes or where the law enforcement witness has developed a familiarity with the footage from repeated viewings that is useful to jurors. *See, e.g.*, *United States v. Torralba-Mendia*, 784 F.3d 652 (9th Cir. 2015) (affirming trial court's admission of video narration by officer offering lay testimony where the officer had viewed the video numerous times and provided details helpful to the jury); *United States v. Begay,* 42 F.3d 486 (9th Cir.1994) (finding no error in the admissibly of officer's lay opinion testimony under Rule 701 narrating a video of a riot involving 200-300 people where officer had watched video over 100 times and testimony would be helpful to jury);[2]

---

[2] *See also United States v. Garcia-Zarante*, 419 F. Supp. 3d 1176 (N.D. Cal. 2020) ("Witnesses may narrate and describe events in a video based on their perceptions. They may not speculate as to the intention of other actors captured in the video, nor may they describe the shooting as a murder."); *Humphries v. Brewer*, 2019 WL 3943074 (E.D. Michigan, Southern Div., August 21, 2019) (denying ineffective assistance habeas claims where law enforcement and civilian witnesses narrated apartment surveillance video, had personal knowledge of the physical location in which the video was taken, and the testimony was helpful to the jury); *Hunt v. Davis*, Civ. No. SA-17-CA-0986-XR, 2018 WL 2306900 (W.D. Texas, May 21, 2018) (unpublished opinion) (denying ineffective assistance habeas claim where counsel had "no valid reason" to object to officer's narration of store surveillance video where officers was present during recording and personally witnessed recorded events); *Allen v. Klee*, Case No. 14-cv-13409, 2016 WL 5791189 (E.D. Michigan, Northern Division,

*Torralba-Mendia* is particularly instructive here, where video exhibits are expected to be offered into evidence and narrated by a variety of law enforcement witnesses.[3] There, the Ninth Circuit affirmed the defendant's convictions where a law enforcement officer provided extensive narration of video as a lay witness. *Torralba-Mendia*, 784 F.3d at 666. At that human smuggling trial, the United States called the Case Agent, Agent Frazier, to offer both expert and lay witness testimony. *Id.* at 657-58. Frazier provided expert testimony about the standard practices of alien smuggling organizations. He then testified as a lay witness and narrated surveillance videos that showed cars driving to and from a specific company believed to be involved in the smuggling conspiracy. *Id.* at 657-58. During his narration, Agent Frazier specifically explained to the jury time lapses in the videos, specific identifying marks on vehicles, how the vehicles related to various conspirators, and the number of people exiting and entering those vehicles. *Id.* at 659-60. Finding that the Frazier's testimony was proper lay testimony, the Court explained:

> Frazier testified that he had watched each video roughly fifty times, and that he would often watch the video feed live while it was being recorded. The narratives helped the jury understand what they were seeing. For example, Frazier provided the length of time lapses between video clips. He pointed out unique characteristics of the vehicles—like their makes, models, and whether any bodywork had been done to them—that helped the jury identify the same cars in subsequent videos. He linked the different cars to specific conspirators. He counted the number of passengers exiting or entering the vehicles (a difficult task because the video's angle obscured the view).

---

Oct. 4, 2016) (denying ineffective assistance habeas claims where non-expert officer narrated video and his opinions were helpful to the jury where he "had the benefit of reviewing the video numerous times, giving him the opportunity to comprehend the events that were transpiring on the video and to determine the identity of the participants."); *James v. People of the Virgin Islands*, 60 V.I. 311, 2013 WL 6585638 (S. Ct. of Virgin Islands, Dec. 12, 2013) (finding no abuse of discretion where surveillance video was admitted and detective with firsthand knowledge of the events narrated video for the jury, although "better practice" for purposes of authenticating the video would have been to have a different detective testify video's accuracy).

[3] The United States has not noted an expert in this case and does not intend to call any expert to narrate any videos during trial.

4

> And he pointed out the particular clothing of certain passengers, to show that a person dropped off in one video was the same person picked up in a later video. Frazier's narratives were based on his repeated viewing of the recordings, and helped the jury understand the import of the videos.

*Id.* at 659-60. The Ninth Circuit found Frazier's lay testimony video narration to be proper and helpful to the jury.[4] The *Torralba-Mendia* court therefore held that "an officer who has extensively reviewed a video may offer a narration, pointing out particulars that a casual observer might not see." *Torralba-Mendia*, 784 F.3d at 659, *citing Begay,* 42 F.3d at 502-03.

The holding in *Torralba-Mendia* rested in part on the Circuit's prior decision in *Begay*, which is similarly relevant to the question of video narration here. There, the Circuit admitted the testimony of an officer as he narrated video that he had viewed numerous times on the basis that his testimony would be helpful to the jury as lay opinion testimony under Rule 701. *Begay,* 42 F.3d at 502. In *Begay*, appellants were among 32 individuals charged with multiple counts – including conspiracy, robbery, assault, burglary, and kidnapping – related to a riot involving 200-300 individuals who violently sought to take over the Navajo Nation Administration and Finance Building in Window Rock, Arizona on July 20, 1989. *Id.* at 489, 502.

At trial, Officer Stewart Calnimptewa narrated events depicted in a video, even though he did not have first-hand knowledge of the events in question. *Id.* at 502. Calnimptewa testified that he had viewed the original videotape ("Exhibit 1) "over 100 times" with the aid of a magnifying glass. *Id.* He then "had portions of the videotape copied in slow motion and their quality enhanced to help his identification of the demonstrators and their actions during the incident." *Id.* This altered version

---

[4] Unrelated to the issue here, the Ninth Circuit found error in the district court's failure to instruct the jury about Frazier's different roles when offering expert and lay testimony but concluded that error was harmless. *Torralba-Mendia*, 784 F.3d at 661.

5

of the video was admitted as "Exhibit 105" at trial, over a defense objection. *Id.* Calnimptewa then narrated the video, including explaining the alterations that he had made to the original.

On appeal, the defendant challenged the video narration because Calnimptewa was not qualified as an expert and the testimony was improper under Rule 602 because "Calnimptewa lacked personal knowledge of the events depicted in the videotape." *Id.* at 502. The court rejected the arguments, holding that Calnimptewa's testimony was properly admitted as opinion testimony by a lay witness under Rule 701, where the testimony was "rationally based on [Calnimptewa's] own perceptions and that the testimony would be helpful to the jury." *Id.* at 502. With respect to the witness's perception of the events, the court specifically explained that, under Rule 701,

> Calnimptewa's perceptions need not be based on the "live" events of July 20th because he was not testifying to his eyewitness account of those events. Calnimptewa's testimony concerned only the scenes depicted in Exhibit 105 as extracted from Exhibit 1, the original videotape. Thus, Calnimptewa need only have perceived the events depicted in Exhibit 1.

*Id.* at 502. With respect to whether his testimony regarding the altered video tape would be helpful to the jury, the court emphasized that Calnimptewa's repeated viewing of a video that captured over 200 people simultaneously would be helpful to a jury, even where the jury had the original unaltered video tape as evidence. The court reasoned that:

> Calnimptewa's testimony about Exhibit 105 was likely to have been helpful to the jury in evaluating Exhibit 1. Although the jury viewed Exhibit 1 in its entirety, it is reasonable to assume that one viewing a videotape of a demonstration involving over 200 people would likely not see certain details, given the tremendous array of events all occurring simultaneously. Officer Calnimptewa spent over 100 hours viewing Exhibit 1. To have the jury do likewise would be an extremely inefficient use of the jury's and the court's time. Therefore, Calnimptewa's testimony concerning which persons were engaged in what conduct at any given moment could help the jury discern correctly and efficiently the events depicted in the videotape.

*Id.* at 503. As with *Torralba-Mendia,* the *Begay* court looked to the relevant evidentiary rules in

determining whether the video narration was admissible in the specific context of the trial.

A judge of this Court endorsed the same approach in *Buruca v. District of Columbia et al.*, 902 F. Supp. 2d 75 (D.D.C. 2012) (Contreras, J.). There Judge Contreras granted the District of Columbia's summary judgment motion where the plaintiff submitted only a single affidavit in which she described the contents of video surveillance that was never submitted to the court as evidence. *Id.* at 82-83. In determining that the plaintiff should not be permitted to describe the video without providing the video as evidence, Judge Contreras explained that the "best evidence rule," Fed. R. Evid. 1002, required the video to be submitted. He noted that the plaintiff never claimed she had

> . . . some unique knowledge that would be helpful to the jury's understanding of the video. *See* Fed. R. Evid. 701(b) (requiring testimony to be "helpful to clearly understanding ... a fact in issue").

*Id.* at 83. In a footnote, Judge Contreras further clarified that "helpful" information could include identifying a person in the video which, as the next of kin to the deceased, the plaintiff was "in a better position than the jury" to do. *Id.* at 83, n. 5.

As support for his argument, the defendant cites *United States v. Shabazz*, 564 F.3d 280 (3rd Cir. 2009), and suggests that *Shabazz* stands for the proposition that a witness should be outright prohibited from narrating video evidence unless the witness was an eyewitness to the recorded events. [Motion at p. 2] This is not an appropriate reading of *Shabazz*. There, the defendant's appeal challenged a witness's *identification* of the defendant and was not focused on the overall *narration* that the witness offered at trial. *See Shabazz*, 564 F.3d at 286-87. In upholding the trial court's approach to this testimony, the *Shabazz* court considered the witness's testimony in light of Rule 701 and confirmed that the identification of the defendant in the video, which was based upon the co-conspirator's personal knowledge of the defendant, was proper and helpful to the jury. *Id.* The court

7

further held that the remainder of the witness's testimony – which included narration of portions of the surveillance video – was "admissible as ordinary fact testimony." *Id.* True, the trial court limited the witness's testimony to only portions of the video in which that witness had taken part, but the Third Circuit's opinion should not be read to suggest that first-person perception is necessarily required. Though the Third Circuit approved of the trial court's approach, it did not go so far as to suggest the trial court's approach was the *only* appropriate treatment of witness narration of video evidence. *See id.*

Here, the United States urges the Court to reject the defendant's overly broad request to exclude all video narration by the case agent and, instead, to adopt the same rule-based approach used in *Torralba-Mendia*, *Begay*, and *Buruca*, keeping in mind the potential usefulness of agent testimony. Doing so would permit the Case Agent to testify to video evidence for routine and valid purposes. These purposes include authentication, defendant identification, explanation of relevant portions of the Case Agent's investigation into the defendant's criminal conduct, and assisting the jury in understanding the video depictions. Though the Case Agent was not present in D.C. for the events of January 6th, he has reviewed the video evidence in this case countless times, as in *Torralba-Mendia*, and has therefore developed personal knowledge of and familiarity with the contents of these video recordings. Moreover, his testimony will be helpful to the jury in drawing attention to details in the videos depicting the tumultuous and violent interactions between police and civilians, including the defendant, on Capitol Grounds on January 6th.

In addition to testimony in the form of narration of videos, the defendant also seeks to preclude any Federal agent witness from "reading aloud the text of documentary exhibits." [Motion at p. 5] His issue is that the Case Agent would have no first-hand knowledge of the content of the

8

exhibit he is reading. But the defendant presumes too much. The exhibit in question may be, for example, a social media post that the Case Agent found on the defendant's phone or on-line social media account. That does involve personal knowledge. See F.R.E. 701. Moreover, it is not clear from the defendant's argument is why the simple reading or summarization of a documentary exhibit would necessarily involve "views on the meaning" of the text, testimony about "what the text means," the "intent of the writer," or the "impact of the document on any reader." [Motion at p. 5] The defendant fails to explain why there would be anything prejudicial about an agent reading aloud (without commentary or speculation) the text of an exhibit. Therefore, his Motion is unfounded. Reading the exhibits aloud assists the jury with comprehension because they are simultaneously hearing and seeing the text. Again, any objections to such testimony should be addressed on the basis of each specific objection in light of the Rules.

## CONCLUSION

The defendant fails to show why video narration or the reading aloud of exhibits should be categorically prohibited, or is otherwise presumptively prejudicial. His Motion is without merit. Therefore, the United States respectfully submits that the defendant's Motion *in limine* should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ David J. Perri*
David J. Perri
WV Bar Number: 9219
Assistant United States Attorney Detailee
United States Attorney's Office
Northern District of West Virginia
1125 Chapline St., Suite 3000
Wheeling, WV 26003
David.Perri@usdoj.gov
(304) 234-0100

By: */s/ Carolina Nevin*
CAROLINA NEVIN
Assistant United States Attorney
New York Bar No. 5226121
601 D Street, NW
Washington, DC 20001
carolina.nevin@usdoj.gov
(202) 803-1612