```
 1                UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2
      * * * * * * * * * * * * * * *   )
 3    UNITED STATES OF AMERICA,       )    Criminal Action
                                      )     No. 21-00083
 4                    Plaintiff,      )
                                      )
 5       vs.                          )
                                      )
 6    BRANDON FELLOWS,                )    Washington, D.C.
                                      )    July 21, 2022
 7                    Defendant.      )    10:15 a.m.
                                      )
 8    * * * * * * * * * * * * * * *   )

 9
                 TRANSCRIPT OF PRETRIAL CONFERENCE
10         BEFORE THE HONORABLE TREVOR N. McFADDEN,
                 UNITED STATES DISTRICT JUDGE
11


12
      APPEARANCES:
13
      FOR THE GOVERNMENT:    CAROLINA NEVIN, ESQ.
14                           UNITED STATES ATTORNEY'S OFFICE
                             Criminal Section
15                           601 D Street, Northwest
                             Washington, D.C. 20001
16
                             DAVID PERRI, ESQ.
17                           UNITED STATES ATTORNEY'S OFFICE
                             Federal Building United States
18                             Courthouse
                             1125 Chapline Street
19                           Suite 3000
                             Wheeling, West Virginia 26003
20

21    FOR THE DEFENDANT:     WILLIAM L. SHIPLEY, ESQ.
        (as standby counsel) LAW OFFICES OF WILLIAM L. SHIPLEY
22                           Post Office Box 745
                             Kailua, Hawaii 96734
23

24    FOR D.C. DEPARTMENT    ANDREW MAZZUCHELLI, ESQ.
      OF CORRECTIONS:
25
```

```
 1      REPORTED BY:              LISA EDWARDS, RDR, CRR
                                  Official Court Reporter
 2                                United States District Court for the
                                    District of Columbia
 3                                333 Constitution Avenue, Northwest
                                  Room 6706
 4                                Washington, D.C. 20001
                                  (202) 354-3269
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURTROOM DEPUTY:  Your Honor, we're in
 2    Criminal Action 21-83, the United States of America versus
 3    Brandon Fellows.
 4              If I can have counsel please approach the podium
 5    and state your names for the record, starting with the
 6    United States.
 7              MS. NEVIN:  Good morning, your Honor.  Carolina
 8    Nevin and David Perri for the United States.  We're joined
 9    at counsel table with paralegal Noah Weko.
10              THE COURT:  Good morning, folks.
11              MR. SHIPLEY:  Good morning, your Honor.  William
12    Shipley, standby counsel for Defendant Brandon Fellows, who
13    represents himself.  He's present.
14              THE COURT:  Good morning, Mr. Shipley.
15              And good morning, Mr. Fellows.
16              I want to discuss first the Defendant's motion to
17    continue trial.  I have reviewed his motion and the
18    Government's opposition.
19              Mr. Fellows, I'll give you an opportunity to make
20    any further argument in light of the Government's opposition
21    if you wish.  Would you like to say anything or would you
22    like Mr. Shipley to speak on your behalf?
23              THE DEFENDANT:  I just saw the motion a couple
24    minutes ago.  So I'd kind of like to see how things go and
25    then, you know, answer any --
```

 1              THE COURT:  So this is your opportunity.  If you

 2     want to -- I'm going to rule on it in a couple minutes.  But

 3     I will give you an opportunity to -- this is your last

 4     opportunity to speak to me about this if you'd like to be

 5     heard on it.

 6              THE DEFENDANT:  Okay.

 7              THE COURT:  So approach the podium, sir.

 8              THE DEFENDANT:  All right.  Can you hear me okay?

 9     All right.

10              So I was hoping -- you know, I wrote up a personal

11     detailed account of everything that has happened to slow me

12     down since arriving in jail over two years ago.

13              Unfortunately, as my lawyers can attest, they said

14     we've somehow lost communications the past few days.  I was

15     hoping to send that to them.

16              As far as this, I just got to read a couple of the

17     things.  So I just wanted to say, you know, mine is a very

18     detailed account; and I think the jail -- or the Court would

19     be making a decision a little early if it is looking to deny

20     my motion today.  I think it should be able to see all my

21     complaints.  But I can bring up a couple of the things that

22     are more recent or the major ones.

23              Ten jails in over 24 months.  I've been moved an

24     average of 2.4 months during that time.  And out of all

25     those times, I have continuously been stopped from bringing

1    my preparations with me.  I've brought this up to the Court

2    many times.

3            The most recent time, I was finally allowed to

4    bring my preparations with me from Lewisburg Jail to the

5    D.C. Jail on June 14, 2023.  Unfortunately, even that time,

6    though, due to the short amount of time that I was given, I

7    was unable to bring the electronic files with me.  The

8    reason I had electronic files is because my handwriting is

9    atrocious; and I tried for the Court's benefit and my

10   benefit, since documents typically have not been scanned

11   properly with the pens or pencils I've been given, to type

12   up my motions for the Court.  So a lot was left behind

13   there.

14           As I've continuously brought up, the biggest

15   violation out of all the ten of those moves for my stuff, my

16   preparations being taken, was the 10 or 11 months of

17   preparing while I was in the D.C. Jail.  I've brought up

18   continuously how I wanted those papers back.

19           This Court has acknowledged that; and I believe it

20   said something along the lines of, because I gave some of my

21   paperwork to another inmate, that it saw that as not, you

22   know, a reason to delay it.  But because of the retaliation

23   that I continually brought up, you know, with getting

24   investigations into the jail, the videos, and getting --

25   helping to get the DDA administration subpoenaed, they were

1    retaliating against me.

2          And I thought it would be wise to diversify what

3    was valuable to me.  I kept some with me, some with another

4    person, some electronic files, two out of three of which I

5    have not yet received.  And the one that I did receive was

6    the stuff that I gave to a friend.  So that actually turned

7    out to be a wise decision on my part.

8          A lot of that was pretrial motions.  I had studied

9    an entire lawbook, and it told me all the motions that I --

10   well, I took note of all the motions I should be preparing.

11   If we continue on, the biggest reason that I have -- you

12   know, why that's most important is because, you know, during

13   that time I got my discovery and until -- even up to now, I

14   haven't gotten full access to discovery.  I'm sure the

15   Government will like to, you know, debate me on that or

16   disagree.

17         But, you know, I've brought up the continuous

18   discovery issues.  It has been a disaster.  I wanted to

19   figure out, where are my witness lists?  What are their

20   numbers?  What do -- I want these people to be called in.

21   You know, I can't remember all the motions that I wrote in

22   preparation for trial.

23         And let me see here.  Global discovery:

24   Obviously, I was looking to have access to that.  I brought

25   up their exhibits which were attested by 17 -- the facts

1    were attested to by 17 other people of the issues.

2            You know, I know the lawbooks do say that I really

3    should not be getting a needle-in-a-haystack sort of

4    discovery dump.

5            And I'm grateful that I got some access again as

6    of July 2nd of 2023.  But obviously, that's past the time

7    or -- you know, where they say it would take over a year and

8    a half for one person to view it for me to feel like I have

9    meaningful access to that.

10           But recently they've sent -- you know, to the

11   discovery issue that I brought up to this Court in -- well,

12   at Lewisburg again, I had -- I shared with the Court -- I

13   had a detailed account of all the issues that I was

14   encountering with the files not opening due to the outdated

15   jail applications.  I offered to send it to this Court.  And

16   unfortunately, this Court said I should try to deal with it

17   through the jail's end.

18           I did try to do that, and the most that happened

19   was a PowerPoint application was installed.  But all the

20   other video file and a lot of the, you know, Excel or

21   Microsoft Word things wouldn't open.

22           And even recently from that, this second -- the

23   little -- as I was leaving the unit, I was given new

24   discovery, which I have not been able to view.  I was within

25   48 hours given an -- offered a laptop from the D.C. Jail so

1    I could start to view that and a more recent disc of

2    discovery.  I don't know if all the applications will work

3    on this.

4              THE COURT:  So, Mr. Fellows, let me ask you, you

5    probably saw in the opposition that one point the D.C. Jail

6    has made is you had previously refused to take the laptop

7    they offered you.  Is that correct?

8              THE DEFENDANT:  This most recent -- may I address

9    the most recent time?

10             THE COURT:  Well, let me just -- so we're on the

11   same page, you've been at the D.C. Jail for about a month

12   now.  Is that correct?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And is it correct that you refused a

15   laptop they offered you?

16             THE DEFENDANT:  Within the past 48 hours, I did

17   want it.  Yes.  And I signed to accept it.  And they told me

18   that I would have to follow this one paragraph.

19             But I knew if I came into a courtroom like your

20   court or in some other court and was seeking to hold them

21   responsible for them destroying my discovery preparations in

22   the past, I did not like the wording in that paragraph.  It

23   said I was releasing them of -- to my memory.  I've asked

24   for a copy of it.  I didn't get it.  I was hoping to show it

25   to you today.  I'm sure they have it.  But yeah.  It said I

 1    was releasing them of all responsibilities.

 2            And I most definitely do not wish to do that.  I

 3    think they should, you know, deal with losing highly

 4    sensitive and sensitive discovery, which has been, you know,

 5    said to be a possible threat to our national security along

 6    with my personal preparations, you know, which wasn't the

 7    first time.

 8            THE COURT:  So if I'm understanding this

 9    correctly, you refused it because you did not agree with the

10    waiver?

11            THE DEFENDANT:  Yes.  And if you saw the

12    document -- I did sign it.  I wrote up there.  And they

13    said, All right.  Well, because you wrote that you don't

14    agree with this part, we can't give it to you.

15            So --

16            THE COURT:  Obviously, I've not seen this.  But it

17    strikes me that this -- you're concerned more about a kind

18    of malfunction on the computer, which you probably know is

19    not terribly unusual.

20            MR. SHIPLEY:  That's not it, your Honor.  There's

21    a waiver of liability that he can't sue DOC, the District of

22    Columbia.  It's a two-page agreement with this crazy waiver

23    of any claim for any purpose that he might have.

24            You have to sign that and agree to it for them to

25    give him a computer.

```
 1              THE COURT:  Go ahead.
 2              THE DEFENDANT:  Okay.  So obviously, also, a lot
 3    of times I've brought up -- I really would like the Court to
 4    be able to -- I have it all completed.  It's all
 5    spell-checked.  I really do think maybe, you know, as we did
 6    in the past, if you're erring [sic] on the side of saying
 7    no, I'd really like you to see the entirely documented
 8    version.  I've only got to read about three or four of my
 9    standby counsel's version.
10              There's a whole lot.  And -- but I mean, I want to
11    be able to show up for trial.  This is why I've denied
12    time-served plea deals.  You know, I guarantee I would do --
13    like to do a lot of other things besides sitting in the D.C.
14    Jail and all the other nine jails that I've been to in the
15    past two years.  And the reason I've held out is because the
16    truth matters to me.
17              And a lot of the people that you're going to be
18    seeing in these January 6th cases aren't going to be the
19    people like me that felt like they were fooled into thinking
20    they were allowed in the building.  You're going to be
21    having people, you know, of different charges.
22              Everybody else along my camp seems to have been
23    taking plea deals, which of course it is very, you know,
24    tempting to take.  But I want to present the truth.  I want
25    to get my evidence organized for trial.  I just recently saw
```

1    the Government's argument for entrapment -- you know,

2    stopping me from entrapment by estoppel.  I do think I

3    recall I have to file notices on that.  Obviously, I've been

4    trying to play a game of catchup and figure out where things

5    are.  I mean, I just -- you know, I want to be able to

6    prepare.

7            And I know that I've brought up to the Court, you

8    know, the Government and the jails together have not been

9    able to bring me up to that, you know, standard of being

10   able to prepare and even have gone -- what I have

11   continuously called in committing Sixth Amendment violations

12   with taking my preparations, which no other -- you know, I

13   guarantee if we had trial -- not that I would do this, but

14   I'm saying if I walked up to the Government and took their

15   papers, I guarantee you I would definitely get in trouble,

16   let alone nine times.

17           So I just really want some more time.  As a -- you

18   know, I can bring up more if you're erring on the side of

19   no.

20           But as a final thing, just to kind of see maybe

21   where the Court's at, which I think it might want to just

22   even offer a temporary continuance to see the full document

23   list before making a decision based off of limited -- you

24   know, what I can just come up with, you know, off the top of

25   my head.

1          But yeah.  Excuse me.  I've got a little sleep,

2     too.  I never sleep well before court.

3          I just -- I really do think if you want to advance

4     the truth-seeking process, if you want to advance justice, I

5     understand we've been two years.  But a continuance is the

6     lightest option.  And if you're not looking to go down the

7     route of a continuance, I've asked and I don't know if

8     you've received the five FBI documents showing the

9     Government lied in order to get me on the Bail Reform Act

10    factors.

11         And also, the transcript evidence that I didn't

12    have prior showing that I actually -- that unfortunately

13    this Court was fooled into thinking that I broke certain

14    things, which is why it's held me for two years.  I've

15    wanted these things for a while.  I think that could make a

16    good argument for me to actually prepare and not have to

17    rely on the Government or the jails to get me what it wants.

18    I don't know if the Court's received that.

19         THE COURT:  No, I've not.

20         THE DEFENDANT:  That's exactly -- that's the kind

21    of thing that I've, you know, kind of continually been

22    dealing with, trying to get things into this court or trying

23    to get things to me.

24         THE COURT:  So, Mr. Fellows, I feel like we've

25    been over and over this on your bail status.

1        I've denied multiple motions for reconsideration.

2   The Court of Appeals has affirmed me.  I just -- part of my

3   concern all along is that you've been -- rather than

4   preparing for trial, we're kind of continuing to fight the

5   last battle that has ended.

6        THE DEFENDANT:  I will note that they did not see

7   the reply, which was when I finally got some discovery that

8   I was looking for.  So they did not -- they only saw me

9   ranting and rambling, which obviously, as the lawbooks say,

10  a criminal defendant's testimony is pretty -- you know, it's

11  like the least valuable.  But I got some transcript evidence

12  in there and the FBI documents.

13       So unfortunately, it wasn't sent in time due to my

14  standby counsel Ryan Marshall saying he filed an extension

15  and it ended up not going through.  But, you know, I've

16  asked for basically that to be sent here.

17       So I will argue that, yes, of course I have argued

18  for my bond.  But the reason that I -- during this time.

19  But the lawbooks say that I should.  It said that as time

20  goes on, especially if you're encountering issues that you

21  can't resolve, which nobody can argue based both in court

22  appearances and also my motions that I have not continuously

23  and probably, you know, to the point of, you know, annoyance

24  continually brought up that I'm facing issues.

25       It's not that I've only sought bond.  I've sought

1   relief, contempt charges.  I've sought the court -- court

2   orders.  I have sought other methods besides just bond.  I

3   just know that that obviously is -- you know, the lawbooks

4   share that's the best way to gather things.  That's how I

5   can find these witnesses.  That's how I can prepare without

6   having to rely on others.

7          So that's why I've occasionally brought -- and

8   because of the fact that I'm very irritated, you know.  I

9   wanted to be -- when I was younger, I wanted to be a police

10  officer.  And I care a lot -- you know, I did have a lot of

11  respect for the justice system.  I feel very wronged that

12  I've been in here and that the Government has not corrected

13  a lot of the things that they've put on the record.

14          THE COURT:  I hear that.

15          If I deny your motion, what do you need that you

16  are not getting now to prepare for trial?

17          THE DEFENDANT:  Well, there's a lot of discovery

18  in this of which I think it would be improper to -- you

19  know, I don't want to deal with another trial.  I don't

20  think, you know, it would be proper for the people to have

21  to pay for another trial.  So I would, you know, really

22  strongly go against that.

23          But if you were to deny it, I'm not going to be

24  prepared in time.  But what would help is, I mean, a lot of

25  the stuff that I've been asking for, I need access to my

1  discovery.  I don't need these -- you know, them trying to

2  slip me, you know, these forms that they're going to, you

3  know, release them of, you know, their liability, you know,

4  what they've done to me.

5       I need to be able to organize the files by name.

6  That would be nice.  There's a lot of video files that I

7  want to introduce.

8       If I was able to get that stuff -- because when I

9  did have it this most recent time in Lewisburg, some files

10 opened up but I couldn't rename them, so -- or organize

11 them, which I had done previously before they stole it in

12 the original USB.  And I had organized it.  I was -- you

13 know, because I want to be very efficient come trial.  I

14 want to show these people --

15       THE COURT:  I really don't think I'm going to be

16 able to find your own files.

17       THE DEFENDANT:  Yes.  I just meant, like, I would

18 need a way to organize the USB files.

19       I most definitely would argue -- I mean, I want to

20 be able to bring witnesses.  And I don't have access to a

21 lot of this stuff in here.  You know, I've asked for my

22 discovery.  I've brought up the discovery issues.

23       And, you know, the only person that I really had

24 been able to reach currently is my mother, which that's

25 going to be -- you know, that's my mother.  It's not the

1     greatest witness that I'm looking to bring.

2          And it's going to be very disorganized.  I fear

3     that it'll be just like the 10/12/21 hearing in which, you

4     know, it was just me saying, Hey, I didn't do this.

5          THE COURT:  I'm not hearing things that I can help

6     you with here.

7          THE DEFENDANT:  I mean, I just don't see, you

8     know -- I don't think I should be punished for continuously

9     trying to seek relief in getting the things that I need and

10    constantly having them taken, you know.  I'm not going to be

11    prepared for trial, you know.  For instance, even the

12    notice.

13         You know, I read in the most recent article, you

14    know, their motion.  And they said, Hey, he hasn't filed a

15    notice for the defense that I've waited a long time to be

16    able to present.  And I've got to seemingly make a motion

17    out of that.  I just saw that within the past four days.

18    I've got to -- instead of trying to race to prepare for

19    trial, I've got to focus on these motions.

20         I mean, it's my life in here, Judge.  And if I'm

21    looking to, you know -- if I'm in jail and I'm just like,

22    Hey, I'd rather get the truth out the first time efficiently

23    rather than waste the taxpayers' dollars potentially on a

24    second trial, I think that's a lot safer option, especially

25    considering the well-documented issues.

 1          THE COURT:  Thank you, Mr. Fellows.

 2          Deputy Brown, can I ask you to summarize?  I think

 3    one of the things that Mr. Fellows raises is his rather

 4    frequent changes of residence, including one pretty

 5    recently.  So maybe you can just put on the record why that

 6    has been --

 7          DEPUTY BROWN:  Thank you.  My name is Leodus

 8    Brown, L-E-O-D-U-S Brown.  I'm a supervisor with the United

 9    States Marshals Service.

10          Mr. Fellows has been moved within the last two

11    years to about -- it looks like about five facilities, one

12    being court ordered.

13          The reasons for his movement -- I'll go back to

14    about 2021 right now.  It appears that he was at the D.C.

15    Jail almost a year.  From there, he was transferred to

16    Northern Neck in preparation for being relocated to a

17    court-ordered move to Fort Worth.

18          After that, during that time he was in transit, so

19    there were a couple holdover facilities that he probably was

20    at.  It appears he was at them for minimum days, seven to

21    ten days, depending.

22          THE COURT:  This was for the competency review?

23          DEPUTY BROWN:  Correct.

24          From there, he returned back to Northern Neck.

25    And from Northern Neck, he was there over 100 days.

```
 1          And then from there, he was transferred to
 2   Lewisburg.  The relocation from Northern Neck was because
 3   of -- the regional board no longer wanted to house certain
 4   defendants.  And so they were -- they had to be removed --
 5   moved from Northern Neck to Lewisburg.
 6          THE COURT:  Am I correct in remembering he was
 7   moved from the D.C. Jail originally because of violations
 8   there?  I think he might have been livestreaming from his
 9   jail cell.
10          DEPUTY BROWN:  Yes.  He was moved.  There was some
11   issues.  I don't have specifics right now.  But there were
12   some issues regarding some type of -- D.C. Jail asks for
13   defendants to be moved.  They do that all the time and
14   without IGAs.  We try to agree to that and move them as soon
15   as we can.
16          THE COURT:  And why was he moved most recently
17   from Lewisburg?
18          DEPUTY BROWN:  Lewisburg?  We are moving all our
19   prisoners who are housed in -- all U.S. Marshals Service
20   prisoners who are housed in Lewisburg are being relocated
21   back to the D.C. area.
22          The reason is, with the expiration of the CARES
23   Act, they're not able to do video.  A lot of judges or the
24   Court has gone from the video hearings to in-person.  We're
25   not able to accommodate last-minute hearings from Lewisburg.
```

1    In other words, we can't go there in one day.  If we get a

2    come-up one day, we can't travel three or four hours just to

3    get a defendant and bring him here.

4            THE COURT:  Is there any reason to think the

5    Defendant would be moving again prior to trial this month?

6            DEPUTY BROWN:  No.  There's no plans to move the

7    Defendant at all from the D.C. Jail.  There are not even

8    facilities that will probably house him in this area at the

9    time but the D.C. Jail.

10           Not only the D.C. Jail has the best -- as far as

11   electronic discovery, they have the best access for

12   defendants in this area.

13           THE COURT:  Am I correct that you brought a

14   colleague from the D.C. Jail here?

15           DEPUTY BROWN:  Yes.  The general counsel.  The

16   attorney with the Office of General Counsel.

17           THE COURT:  Sir, would you mind approaching?

18           MR. MAZZUCHELLI:  Yes, sir.  Good morning, your

19   Honor.  I'm Andrew Mazzuchelli, M-A-Z-Z-U-C-H-E-L-L-I, with

20   the D.C. Department of Corrections.

21           THE COURT:  Sir, can you summarize the Defendant's

22   access to discovery at this point?

23           MR. MAZZUCHELLI:  Yes, sir, your Honor.

24           I spoke with the individuals who handle the

25   electronic discovery program over at the D.C. Jail.  And

1    during these conversations we've had, they had let me know

2    that they received discovery on June 27th and July 17th.

3    These would be two discovery flash drives.

4            During this time, they have been able -- there's

5    no conceivable reason as to why, you know, he shouldn't have

6    access to discovery.

7            I will say that pursuant to our discovery program,

8    without the laptop they are not able to provide him with the

9    two flash drives because without the laptop two flash drives

10   in and of themselves are considered jail contraband.  So

11   with that being said, he can't have the physical flash

12   drives without having an issued computer as well.

13           THE COURT:  But when he has the computer, he's

14   also given the flash drives.  Is that correct?

15           MR. MAZZUCHELLI:  Yes, your Honor.

16           THE COURT:  And does he have his written materials

17   there in his cell with him?

18           MR. MAZZUCHELLI:  They're allowed up to two of the

19   banker's boxes of hard-copy discovery.  I don't know if he

20   has access to that now.  But he certainly -- there's no

21   conceivable reason why he can't have access to that.  Even

22   if he was on some sort of probation or punishment or loss of

23   privilege, they're always entitled to have two hard-copy big

24   boxes of discovery.

25           THE COURT:  All right.  Are these laptops -- do

 1    they belong to the D.C. Jail --

 2                MR. MAZZUCHELLI:  Yes.

 3                THE COURT:  -- or the FPD?  They're D.C. Jail's?

 4                MR. MAZZUCHELLI:  Yes.

 5                THE COURT:  Can you tell me a bit about this

 6    waiver?

 7                MR. MAZZUCHELLI:  Yes, your Honor.

 8                This is a waiver that has been in place since the

 9    electronic discovery program was initiated, which is back in

10    2021.

11                You know, since then, we've had no issues with

12    anyone sort of refusing to comply with these -- with the

13    terms of the acknowledgement form.

14                With regard to the Defendant's participation in

15    the past, he's agreed to, you know, be held to the same

16    terms as the form stated just a few days ago in the past.

17                So --

18                THE COURT:  Sorry.  Help me understand that.

19    You're saying he had signed, but now he's revoked?

20                MR. MAZZUCHELLI:  Previously.  So every time

21    you're issued the laptop, you have to resign the form.  It's

22    the same form -- the form hasn't changed, your Honor, to my

23    knowledge.

24                THE COURT:  Okay.  And I understand from the

25    Government that you all have bumped him to the top of the

 1    list since he's *pro se* and awaiting trial.  Is that correct?

 2              MR. MAZZUCHELLI:  Yes, your Honor.

 3              Prior to Wednesday the 19th, I believe, he had 14

 4    individuals ahead of him on the electronic review sheet.

 5    There's a very small amount of computers that we have to

 6    issue.  I think there's only 16 to 18.  And because they're

 7    so -- because they're used so frequently, a lot of them fall

 8    into states of disrepair that need to be fixed.  Right now,

 9    we're probably at 12 to 14 at this point.

10              And he was bumped ahead of 14 individuals to get

11    access to these -- this laptop and his discovery.

12              THE COURT:  I appreciate that.

13              What are his -- what are inmates' access options?

14    I mean, is this kind of two hours twice a week?  Or how

15    frequently?

16              MR. MAZZUCHELLI:  So once they get access to the

17    laptop, they have access to it to two weeks.  And, you know,

18    it's not like time per day.  Obviously, if it needs to be

19    charged, they have to take it to a charging officer.  He

20    charges it and then they -- they're free to take it back

21    after it gets charged for the two-week duration.

22              THE COURT:  So it stays in his cell during those

23    two weeks?

24              MR. MAZZUCHELLI:  Absent it having to be charged,

25    yes.

1          And they have to view it in their cell.  They

2     can't view it in a common area or anything like that.

3          THE COURT:  In light of his *pro se* status and the

4     upcoming trial, can I ask you to make sure that he stays on

5     the top of the list?

6          MR. MAZZUCHELLI:  Absolutely.

7          THE COURT:  Thank you.

8          Anything else for the jail, sir?

9          MR. MAZZUCHELLI:  No, your Honor.  Thank you.

10          THE COURT:  I appreciate your presence here.

11          MR. MAZZUCHELLI:  Thank you, your Honor.

12          THE COURT:  There are three pending motions before

13     the Court.  The first is the Defendant's motion to continue

14     the trial, ECF No. 122.

15          The second is the Defendant's motion *in limine* to

16     limit witness narration, a video and documentary evidence.

17     That's ECF No. 108.

18          And the third is the Defendant's motion *in limine*

19     to limit the Government's use of inflammatory words and

20     phrases.

21          I'm going to deny the Defendant's motion to

22     continue the trial for the following reasons:  The Defendant

23     argues that he struggled to receive and review discovery

24     while incarcerated, particularly video evidence, plus he was

25     recently transferred to the D.C. Jail, which he says has

1    further hampered his abilities to prepare for trial.

2           He also says that he's been unable to respond to

3    pretrial motions and that he has had only intermittent

4    contact with standby counsel.

5           As the D.C. Circuit held in *United States versus*

6    *Burton*, 584 F.2d 485, 490 to 91, when considering a motion

7    to continue a trial, courts should consider the following

8    factors where applicable:  First, the length of the

9    requested delay; second, whether other continuances have

10   been requested and granted; third, the balance, convenience

11   or inconvenience to the litigants, witnesses, counsel and

12   the Court; fourth, whether the requested delay is for

13   legitimate reasons or whether it is dilatory, purposeful or

14   contrived; fifth, whether the Defendant contributed to the

15   circumstance which gave rise to the request for a

16   continuance; sixth, whether the Defendant has other

17   competent counsel prepared to try the case, including

18   consideration of whether the other counsel was retained as

19   lead or associate counsel; and, finally, whether

20   continuing -- denying the continuance will result in

21   identifiable prejudice to the Defendant's case and, if so,

22   whether this prejudice is of a material or substantial

23   nature.

24          I find these factors counsel against continuing

25   the trial here.

1          First, I note that the trial has already been

2     continued twice in this case, both times at the Defendant's

3     request and both, frankly, for very similar reasons.  Trial

4     was originally set for February 13th of this year.  Then at

5     the Defendant's request, it was moved to May 22nd.  And then

6     it was moved again at the Defendant's request to August

7     22nd.

8          Because of this, I'm frankly concerned that the

9     Defendant is trying to delay his trial, perhaps hoping that

10    a change in presidential administration would work in his

11    favor.

12         I hear the Defendant saying that it's his life and

13    he should be able to take the time that he needs to prepare.

14    But frankly, it's not at all unusual for defendants, even

15    incarcerated defendants, to believe that it is in their

16    interest to push off trial as long as possible.

17         And Courts need to guard against that, recognizing

18    that the public has an interest in a speedy trial.  And

19    also, there are prejudices to the Government and to the

20    Court, frankly, by continuing the trial dates.  I have a

21    busy trial schedule.  By blocking out weeks for trial, this

22    is bumping other defendants who may desire a speedy trial

23    back, and it wreaks havoc on the Court's trial schedule.

24    But really much more importantly, it is prejudicial to the

25    interests of the public in a speedy trial.

1          As I say, I think there's particularly concerns in

2     a January 6th case like this that a defendant might be

3     looking to drag his feet for strategic reasons.  That

4     concern is heightened by the Court's skepticism of the

5     Defendant's claim now that he's being denied discovery.

6          I find that the Government has gone to great

7     lengths to provide it to him.  The Government began

8     providing the Defendant discovery in March of 2021 after the

9     Defendant stated that he had not been able to bring his

10    legal materials from one prison to another.

11         The Government produced four batches of

12    case-specific discovery to the Defendant's last location on

13    April 6, April 7, May 11 and June 12th.  Each mailing was

14    confirmed by that prison's supervising attorney.

15         More, that attorney assured the Court that the

16    Defendant had access to a laptop.

17         We had a specific status conference on ensuring

18    the Defendant had access to discovery there; and frankly, I

19    was quite impressed by the degree of access the Defendant

20    had at Lewisburg to electronic discovery.

21         When the Defendant was transferred to the D.C.

22    Jail this June, the supervising attorney confirmed that the

23    Defendant had been able to bring his legal materials with

24    him.

25         I do not credit the Defendant's claims to the

 1    contrary.

 2              Since his last transfer, the Government has

 3    provided two additional batches of discovery to the D.C.

 4    Jail.  And the D.C. Jail has taken extraordinary efforts to

 5    accommodate him by bumping him to the top of the list and

 6    giving him basically continuous access to a jail laptop,

 7    even though the Defendant has sometimes refused that access.

 8              I do want to talk about the D.C. Jail policy.  As

 9    I've said, I think in other circumstances, the laptop policy

10    that the D.C. Jail has created frankly for January 6th

11    Defendants and in the wake of the pandemic is to my

12    knowledge extraordinary and pretty unique, the efforts that

13    the D.C. Jail has gone to to ensure that January 6th

14    Defendants have access to electronic discovery.  I've had a

15    number of Defendants who have been at the D.C. Jail over the

16    last few years who have been able to take advantage of that

17    access with little to no difficulties.

18              I understand the Defendant's frustration with the

19    waiver.  But frankly, I think the D.C. Jail is accommodating

20    them in a way that -- they're not required to do so, that

21    they have not done in the past and jails typically do not

22    do.  And I don't think it is illegitimate for the D.C. Jail

23    to seek to insulate itself from liability through providing

24    this extraordinary accommodation.

25              I find the D.C. Jail has agreed to continue to

1   extend that accommodation by providing the Defendant access

2   to a laptop if he wishes through trial.  I think that factor

3   also argues against another continuance.

4          I also find the Defendant has contributed to the

5   circumstances which give rise to the request for his

6   continuance.  I've repeatedly warned the Defendant it is

7   difficult to represent oneself, period, especially

8   incarcerated.  It is inevitable that, being incarcerated, he

9   lacks the same access to a computer and control over his

10  time that he'd have if he were not incarcerated.  And I've

11  also warned him that I cannot micromanage the Marshals

12  Service or the Bureau of Prisons or interfere with prison

13  protocols.

14         Nonetheless, the Defendant really in many ways

15  only has himself to blame.  I did everything I could to

16  avoid locking the Defendant up originally.  I have never had

17  a probation service have to ask me three times to revoke

18  somebody.

19         The Defendant had a pretty egregious track record

20  while on supervised release.  And I'm certainly not

21  reconsidering that now.  But that was very much a situation

22  of his own making.

23         Second, the Defendant has complained that his

24  transfers between prisons have made preparing for trial

25  difficult.  I can understand that.  But at least a few of

1    these transfers were at his -- were also caused by him.

2              As I said, I remember distinctly the Defendant's

3    first move from the D.C. Jail was because of a pretty

4    egregious breach of protocols there.  Also, the defense

5    requested a competency examination, which of course required

6    his move again.  That's not his fault, but that certainly

7    was a move made at the defense request.

8              Third, a further delay will inconvenience the

9    Government, which has already had to switch prosecutors on

10   and off this case over the past two and a half years.  I've

11   had different prosecutors join and leave the case during

12   that time.  I think further continuances are just going to

13   make it more difficult for the Government to prosecute the

14   case.  It is a truism in trials that memories do not improve

15   over time and that it is difficult for the Government to --

16   it becomes increasingly difficult for the Government to

17   prosecute a case the longer it lingers.

18             Fourth, the Defendant has twice had competent

19   counsel ready to represent him, and yet he's fired both.

20   That's not only delayed the proceedings, but it has of

21   course led to the situation where he is in the inconvenient

22   circumstance of representing himself, which he explicitly

23   chose despite my repeated warnings against the wisdom of

24   that approach.

25             I recognize the Defendant might be better prepared

1    for trial if trial were pushed back.  And I do recognize

2    that there's voluminous discovery in this case.  But that

3    hardly puts him in a unique circumstance, particularly given

4    that most January 6th cases contain large amounts of

5    discovery that I very much doubt any attorney is personally

6    going through fully in any case.

7          Again, at least some of that lack of preparation

8    is the Defendant's fault.  And I can no longer protect him

9    from the results of his own choices.

10          So the Court denies the defense motion to

11    continue.

12          Next I look to the defense motion to preclude any

13    Government witness from offering narrative testimony about

14    the events depicted in video or documentary footage unless

15    that witness has personal knowledge about the event.

16          The Court denies this motion without prejudice to

17    specific objections raised during trial for substantially

18    the same reasons given by the Ninth Circuit in *United States*

19    *versus Torralba-Mendia*, 784 F.3d 652, Pages 659 to 660, from

20    2015, and *United States versus Begay*, 42 F.3d 486, Pages 502

21    and 503, from 1994.

22          Finally, the defense seeks to bar the Government

23    from using any particular phrases when the Government

24    references defendants or January 6th in general.

25          The defense suggests these phrases and words are

1    unnecessarily inflammatory and likely to appeal to jurors'

2    emotions.

3             The Court denies these in large part at this

4    pretrial stage.  Rule 403 states that even, quote, "relevant

5    evidence may be excluded if its probative value is

6    substantially outweighed by the risk of unfair prejudice,

7    confusion of the issues or misleading the jury," closed

8    quote.

9             To my mind, phrases like "attack on Congress" or

10   "attack on the Capitol" are fair descriptors of the

11   Government's evidence.  The Court denies the motion as to

12   those terms.

13            Terms like "insurrection," "treason," "attack on

14   democracy" and "terrorism" are not, however, fair game here.

15   I think that -- I note insurrection and treason are actually

16   federal crimes.  The Government has charged over 1,000

17   people relating to the January 6th breach, and yet none of

18   them have been charged for either of these crimes.

19            "Attack on democracy" and "terrorism" is also

20   purple language and likely prejudicial to the jury.

21            I haven't heard the Government use any of these

22   terms in any of its trials, and I doubt it would do so here.

23   But I will prohibit it from using those terms.

24            I've now addressed all of the outstanding motions.

25   I want to go ahead and talk with the parties about how we'll

 1    handle voir dire.

 2            First, let's talk about the process.

 3            Thank you, Deputy Brown and Mr. Mazzuchelli.

 4    You're free to go.  I appreciate your presence here today.

 5            MR. SHIPLEY:  Your Honor, since -- I don't think

 6    it's the Court's intention or my plan at this point to be

 7    here for trial.  If you're going to get into trial

 8    procedures, I have something else I'd like to do today.

 9            THE COURT:  Understood.

10            I take it, Mr. Fellows, you've not reached an

11    agreement with Mr. Shipley?  You still intend to represent

12    yourself at trial?

13            THE DEFENDANT:  Correct.

14            THE COURT:  Mr. Shipley, I appreciate your

15    presence here today.  You're free go.

16            MR. SHIPLEY:  Thank you.  We'll continue to work

17    with Mr. Fellows to help him in any way we can leading up to

18    the trial.

19            THE COURT:  Thank you.  I hope your clothes arrive

20    soon.

21            MR. SHIPLEY:  I'll look for my luggage now.

22            THE COURT:  So let's talk about voir dire.

23            Mr. Fellows, we're going to have, I think, 70 or

24    so potential jurors here in the morning for jury selection.

25    I'm going to go through with them a series of questions.

1          The first group of questions are what I call

2    public questions.  They're questions that to my mind are

3    unlikely to raise any private information or anything that

4    could be prejudicial.  So for those, if anybody has a "yes"

5    answer to one of those questions, they'll just raise their

6    hand.  We'll give them a microphone and I'll have them

7    answer the question there in public.

8          If there's any followup that I think needs to be

9    done, I'll either do it in the open or, if I think there is

10   something that might become sensitive, what I'll do is I'll

11   have the juror approach the podium.  We're going to have

12   telephones, one on each counsel table or multiple ones, one

13   at the lectern and one for me.  I'll turn on the husher.

14   And we'll discuss -- I'll take that question privately, so

15   you all can obviously hear.

16         Once we go through the public questions, we'll get

17   to the private questions.  What I've had jurors do is write

18   down the number of any "yes" answer on a note card; and

19   after we've gone through all the private questions, I have

20   the jurors come up one at a time to the podium.

21         At the podium, again, we'll have the husher on.  I

22   will do most of the interaction with the juror.  If I think

23   the juror is raising something that may be potentially

24   relevant to a strike for cause, I'll give the parties an

25   opportunity to ask followup questions to that juror.  You'll

 1      have the opportunity to use the telephone to ask the

 2      questions to that juror.

 3              This is important:  Once the juror leaves that

 4      podium and before the next juror comes up, that is your

 5      opportunity to argue to me via telephone that that juror

 6      should be struck for cause.

 7              If I don't hear you make a motion to strike for

 8      cause at that time, that juror will be presumptively

 9      qualified to serve.

10              There are occasions where somebody will answer

11      "yes" to a bunch of questions and it looks to me like this

12      is probably not an appropriate juror for us.  I will often

13      go to the last catch-all question and try to ask the juror

14      about that question.  If, again, it's looking to me like

15      this is somebody who is probably not going to be -- should

16      not be a member of our jury, I will just say:  Any

17      objection?  And that is my indicator to you that I think

18      this person should be struck for cause.  If you want to

19      rehabilitate that person, that's your opportunity to ask

20      that person other questions.  Otherwise, you can assume that

21      I'm going to excuse that juror.

22              Once we've qualified a sufficient number of

23      jurors -- I think it's 33 or so -- we will go into the

24      second round of voir dire.  That is where you will -- each

25      side will get a sheet, a jury strike sheet.

1          Mr. Fellows, you get ten strikes, and the

2     Government gets six strikes.  You will fill out that sheet

3     simultaneously with any jurors you wish to strike for any

4     reason, any constitutional reason.

5          After you've done that, I'll collect those sheets

6     from you.  I'll take a look at them.  We will have a final

7     round where we will have the alternate strikes.

8          I'm expecting that we'd have two alternates which

9     we'll select here in a minute.  So after we have determined

10    who the jurors are, you'll have one opportunity to strike a

11    potential alternate.  And if you do, then we'd go down the

12    list to figure out who those two alternates are.

13         Let's go ahead and pick alternate seats.  Juror

14    No. 1 is in the seat closest to me.  Juror No. 7 is in the

15    seat at the far end there.  Juror No. 8 is the seat at the

16    back row closest to me.  And Juror No. 14 is all the way in

17    the back.

18         Mr. Fellows, would you like to pick an alternate

19    number?

20         THE DEFENDANT:  No.  I mean, I don't really care.

21    No.

22         THE COURT:  We'll say Juror No. 14.

23         Ms. Nevin, do you wish to pick an alternate

24    number?

25         MR. PERRI:  13.

 1            THE COURT:  So 13 and 14.  Again, those are the
 2     last two seats in the back, are the two alternates.
 3            I've provided the parties with a list of my
 4     proposed voir dire questions.  I think I had suggested I'd
 5     look for your responses later.  But given that Mr. Fellows
 6     is *pro se*, I think I'd like to try to do this today.
 7            Mr. Fellows, do you have a list of the voir dire
 8     questions?
 9            THE DEFENDANT:  I don't.  And that's another
10     reason I'd object.  We keep making decisions prior to
11     hearing -- you know, me having time to see these motions and
12     respond to them efficiently.
13            THE COURT:  Mr. Hopkins, can I ask you to give the
14     Defendant a copy.
15            THE COURTROOM DEPUTY:  Absolutely, your Honor.
16            (Tenders document to the Defendant.)
17            THE COURT:  Those are the draft questions.  We'll
18     recess in a minute and you can go back and have an
19     opportunity to look at those.
20            Ms. Nevin, has the Government considered those
21     questions?
22            MS. NEVIN:  We have, your Honor.  Yes.
23            THE COURT:  And does the Government have any
24     proposed changes to them?
25            MR. PERRI:  Yes, your Honor.  We like your list of

1    questions.  The only one that we would like to bring up for

2    possible reconsideration is No. 15, your Honor.

3            It says:  Have you ever watched video of what

4    happened at the U.S. Capitol on January 6th, 2021, or on the

5    news -- on the news or on the internet?

6            So we're wondering if perhaps that could be

7    rephrased because, as written, it would appear to apply to

8    just about everyone.

9            THE COURT:  I agree.  What do you suggest?

10           MR. PERRI:  Maybe perhaps:  Have you made a point

11    of seeking out and viewing a considerable amount of video?

12           I'm not -- I'm not even sure what the question is

13    designed to ferret out in terms of bias.  So it's kind of

14    hard for me to suggest an alternate.  I assume that maybe --

15           THE COURT:  Are you suggesting we just strike it

16    altogether?

17           MR. PERRI:  I would prefer that, actually, your

18    Honor.

19           THE COURT:  Mr. Fellows, what do you think about

20    that?  We've got -- the question right afterwards, which

21    says, "Will you have difficulty putting aside what you've

22    heard or seen about events at the U.S. Capitol and your

23    opinions about those events to decide this case in a fair

24    and impartial manner based only on the evidence you received

25    in court," do you think that covers it?  Or are you also

1   seeking 15?

2          THE DEFENDANT:  I mean, I would like to know, you

3   know.  Yeah.  I'd like to keep it.  But again, I just don't

4   think it's proper to have me decide these things on the

5   spot.

6          But yeah.  I'd like to keep it.  The best I have

7   within ten seconds to give a response to you.

8          THE COURT:  So to be clear, I think we provided

9   these to the parties last month, so this is not on the spot.

10  But I will give you additional time today to think about

11  that.

12         So that's the only one the Government is objecting

13  to?

14         MR. PERRI:  Correct, your Honor.

15         THE COURT:  Are you seeking any additions?

16         MR. PERRI:  No.  I don't think so, your Honor.

17         THE COURT:  So, Mr. Fellows, I'm not going to make

18  you answer right now.  But we'll take a break and I want you

19  to think -- read through this carefully.  If you have any

20  proposed additions or changes, I'm happy to hear from you.

21  But I think it makes sense for us to try to deal with this

22  now.

23         THE DEFENDANT:  My proposed additions just came

24  in, you know, that I had in my papers.  I just got -- some

25  of which got given back.  And I was in the process of typing

1    those up.  I worked as fast as I could.  But I mean, I'd

2    like you to extend that a little longer to be able to see,

3    you know, my requests.

4              THE COURT:  How many do you have?

5              THE DEFENDANT:  I think it comes to a total of

6    about six handwritten pages of requests.  There are options.

7    Obviously, I don't -- given the way the Court has ruled, I

8    don't expect it to pass, honestly, any of them.  But I'd

9    like the Court to at least see them, you know.  I feel like

10   I'm not having a voice.

11             THE COURT:  Well, that's why I'm trying to give

12   you a voice.  But six handwritten pages are not going to

13   work.  So --

14             THE DEFENDANT:  Which are being typed up.

15             THE COURT:  Even six typed-up pages.

16             So what I'm suggesting you do, we'll take a break

17   in a few minutes here.  And you can suggest a few

18   alternates.  I want you to have a voice here.  But as you

19   can see, I'm not giving the Government a lot of say over

20   this.  Voir dire is kind of my process.  I welcome your

21   limited input.  But this is not an opportunity for the

22   parties to just kind of start from scratch from how I

23   typically handle these.  So we'll deal with that in just a

24   minute.

25             Witness lists:  I'll direct both parties to

1    provide witness lists on the day of trial.

2            Mr. Fellows, you can just bring in something

3    handwritten.  That's just fine.  It doesn't need to be typed

4    up.  But I did need a list of any witnesses that you may be

5    calling, and that would be on the morning of trial.

6            THE DEFENDANT:  How would you propose -- say I get

7    discovery and I get some contact information for some of

8    these witnesses.  Am I going to be also, you know, excluded

9    from asking the Court to -- I mean, I feel like it's already

10   too short of a time.  But for subpoenaing certain people.

11   Are we going to be past that point, it seems?

12           THE COURT:  You can request help for subpoena

13   service.  But there is a process for that, and you should do

14   that quickly.  The marshals -- it takes the marshals some

15   time on that.  But *pro se* or indigent Defendants do have the

16   right to seek help from the Court on that.

17           I don't know -- it sounds like you're still

18   talking with Mr. Marshall and Mr. Shipley.  I'd encourage

19   you to prioritize that.

20           I'm also going to require the parties to provide

21   an exhibit list, again, on the morning of trial.  You need

22   to have an exhibit list of any potential exhibits.  I'd

23   certainly expect the Government's to be premarked and to be

24   very clear.  I've had several -- most of my recent trials,

25   we've ended up having last-minute changes and seeking to

1    introduce evidence that is not on the list, and that slows

2    it down and makes it a lot more difficult for the court

3    reporter and the courtroom deputy.  So I'll just ask you all

4    to make sure you've reviewed that and are comfortable on it.

5            So, Mr. Fellows, it's not really my place to give

6    you legal advice from here on out.  But after we pick the

7    jury, I'd expect to start with opening statements.  You're

8    not required to give an opening statement, but you have the

9    opportunity to give an opening statement after the

10   Government gives theirs.

11           I've not done a *pro se* trial before, so I'm a

12   little unsure on how long jury selection is going to take in

13   these circumstances.  But the Government should have at

14   least one witness ready to go on the first day and certainly

15   be prepared to do opening statements on the first day.

16           I'm trying to think if there's anything else we

17   should be discussing now.

18           Ms. Nevin, any questions about my approach for

19   voir dire or other things we should be discussing at this

20   point?

21           MS. NEVIN:  Two things, your Honor.

22           What is our *Jencks* deadline?

23           THE COURT:  The *Jencks* deadline is the morning of

24   trial.

25           I'll require the Government to make sure you're

1    comfortable with the technology and have met with the IT

2    staff beforehand so you know how to use all the technology

3    here in the courtroom.

4         MS. NEVIN:  Understood.

5         And Mr. Perri has one other thing to ask your

6    Honor.

7         THE COURT:  Okay.

8         MR. PERRI:  Your Honor, with respect to opening

9    and closing statements, in a *pro se* trial, that implicates

10   some interesting concerns.

11        And that is that we don't know whether the

12   Defendant is going to be testifying or not testifying.  If

13   he chooses not to testify, it becomes a little bit

14   problematic as to what he says in opening and closing such

15   that he is not essentially testifying and taking that

16   opportunity to basically have his cake and eat it, too.

17        And so we would ask that the Court -- I know

18   you've done this a little bit already -- but explain to the

19   Defendant the purpose of those two parts of the trial and

20   their nature, like what you typically see in terms of an

21   opening statement and the purpose it serves and what he'd be

22   allowed to do and not allowed to do in an opening and

23   closing statement.

24        Now, if the Defendant does tend -- decide to

25   testify, your Honor, that also brings up an interesting

1    consideration as to what the Court is comfortable with in

2    terms of how the Court will allow him to testify.

3            I've had a *pro se* trial before.  And I can tell

4    you it's different.  And in that case, the Defendant

5    actually asked himself and answered questions while on the

6    stand.

7            The other option is of course to allow the

8    Defendant to narrate.  But that makes it a little bit tricky

9    as far as objections go when they're just narrating.  I

10   guess it can be done, but I guess I'm just asking the Court

11   to give some thought to that and to maybe talk about that a

12   little bit today.

13           THE COURT:  So I appreciate you flagging those

14   issues.

15           Mr. Fellows, the purpose of opening statement is

16   to state what you believe the evidence will show.  And it is

17   not an opportunity to make legal arguments.

18           You need to have a good-faith basis to state what

19   you think the evidence will show in your opening statement.

20           Having said that, I intend to give the Defendant

21   some leeway on that.  It would certainly not be the first

22   case where a defense opening was not necessarily proved up

23   at trial.  So I understand the Government's point, and I

24   think it may well be appropriate for the Government to point

25   out at closing things that you have suggested that were

1    going to be proven up that are not, including by failing to

2    testify.

3            They would not comment on your failing to testify;

4    but if you don't choose to testify, it may make it difficult

5    for you to prove up the things that you are claiming in your

6    opening.

7            Does that make sense, Mr. Fellows?

8            THE DEFENDANT:  Yes, it does.

9            THE COURT:  If you choose to testify -- and of

10   course, that is entirely your choice.  If you choose to

11   testify, I would allow you to take either of those options,

12   either speaking in the narrative format, just explaining

13   your version of events, or you could ask yourself questions

14   if you wanted.

15           THE DEFENDANT:  I don't think that would play out

16   well.

17           THE COURT:  I have a hard time imagining that,

18   too.  I think the narration is probably the way to do it.

19           Obviously, the Government would have the right to

20   object.  If the Government objects, you need to stop and let

21   me handle it.  But again, I think I would be inclined -- if

22   you choose to testify, you would have the right to give your

23   version of events on that day.  I certainly welcome you

24   doing that.

25           Thanks for raising those issues, Mr. Perri.

1          Did I address everything you raised?

2          MR. PERRI:  Except for closing argument.

3          THE COURT:  Oh, yes.

4          So closing is -- that is an opportunity to make

5     legal argument.  But again, it is based -- you are

6     discussing the evidence in front of the jury.  It's not an

7     opportunity to talk about things that didn't go into

8     evidence.  It's not an opportunity to give your version of

9     events to the extent that there's no evidence supporting

10    your version of events, which would mean including -- just

11    to use a hypothetical, you couldn't talk about how you were

12    in Pennsylvania at the time on January 6th if there was no

13    evidence that you were in Pennsylvania at the time either

14    admitted through the Government's evidence or through your

15    own.

16          Now, if you had taken the stand and testified that

17    you were in Pennsylvania at the time, you could certainly

18    discuss that in closing.

19          But if there was no evidence that you were in

20    Pennsylvania at the time, it would not be appropriate for

21    you to close suggesting that.  In other words, that's your

22    opportunity to talk about how the facts prove or do not

23    prove the charges that you're facing.

24          Does that all make sense, Mr. Fellows?

25          THE DEFENDANT:  Yes, sir.

```
 1              THE COURT:  So I'll also ask the Government to

 2    have proposed jury instructions on the first day of trial.

 3              Mr. Fellows, you're certainly welcome to have

 4    proposed jury instructions then as well.  What I'd propose,

 5    though, is that you and I both look at what the Government

 6    has provided and we would have an opportunity to discuss

 7    those sometime before closing arguments.  But those jury

 8    instructions are my legal instructions to the jury about how

 9    the case would operate.

10              Let me ask you all to be back at 1:15.  And in

11    that interim, what I want -- I want the Government to work

12    on a statement of the case that I would be reading at the

13    outset.

14              Mr. Fellows, you can -- that's your opportunity to

15    think about any changes to this draft voir dire.

16              We're also going to provide the parties our kind

17    of draft preliminary jury instructions that we would expect

18    to read.  We'll see if we can make progress on that in the

19    interim.

20              Anything before we take a break, Ms. Nevin?

21              MS. NEVIN:  No, your Honor.

22              THE COURT:  And Mr. Fellows?

23              THE DEFENDANT:  Yes.  I think I might need an

24    order for -- to be able to have a pen while I'm downstairs.

25    Yeah.
```

```
 1                  THE COURT:  Deputy, can we make sure he's got
 2          something to write with?
 3                  THE U.S. MARSHAL:  Yeah.  We're going to work
 4          something out with our cell block so we can have time to
 5          provide papers and everything.
 6                  THE COURT:  Great.  I think we'll also -- I'm
 7          going to try to get a copy of the preliminary instructions
 8          that I'd like him to be able to see.
 9                  Can we just -- what's the best way for my law
10          clerk to get that to you?
11                  THE U.S. MARSHAL:  If you guys can print them out,
12          I can take them down with us now or if you want to send it
13          down to the block.
14                  THE COURT:  It's going to take us a few minutes,
15          so someone will go down there.
16                  Thanks, folks.  See you at 1:15.
17                  (Thereupon a recess was taken, after which the
18          following proceedings were had:)
19                  THE COURT:  We're back on the record here.
20                  Mr. Fellows, did you have any proposed tweaks to
21          the voir dire questions?
22                  THE DEFENDANT:  Did I have the what?
23                  THE COURT:  Any proposed tweaks to the voir dire
24          questions.
25                  THE DEFENDANT:  Yes.  Just give me a moment.  I
```

1    just need to organize papers.

2          Okay.  You want me to just go ahead?

3          THE COURT:  Yes.  If you could approach the

4    podium.

5          THE DEFENDANT:  Okay.  First thing, I'd like to go

6    down the first page where it says the purpose of jury

7    selection is to select jurors.  That sentence there.

8          THE COURT:  Okay.

9          THE DEFENDANT:  And -- sorry.  I need to grab a

10    paper.  Can I grab another one?

11          THE COURT:  Sure.

12          THE DEFENDANT:  So I would motion to get that

13    sentence taken out because I think it helps a juror with bad

14    intentions like, for instance, Trump derangement syndrome or

15    desire for revenge on January 6th Defendants to know what

16    they must convey to the Court in order to increase their

17    chances for selection on the jury.

18          I do see this not just as a random thought but as

19    a potential danger because as an example, in Guy Reffitt's

20    case, a January 6th Defendant, he had a juror shortly after

21    the trial share with NPR news that he hopes this conviction

22    sends a warning to all other January 6th Defendants.

23          Another quick example is in the case of Jeffrey

24    Brown, also a January 6th Defendant.  In his trial, a juror

25    was shown to have falsely tried to allege that Peter

1    Schwartz was sticking his middle finger up at her and was

2    giving her nasty looks.

3            Obviously, this is -- you know, a lot of people

4    feel like, as studies have been conducted, that some

5    January 6th Defendants were targeting them personally.  Some

6    even believe it was based off of race that some people were

7    there.  And this is just, you know, a highly emotional case.

8    And the city that -- as the judges have said, you know -- I

9    think it was Judge Mehta that said that D.C. is the victim

10   here.

11           I think we should try to maybe eliminate a

12   potential like, Hey, here's the road to follow if you'd like

13   to enter onto the jury.  I don't think it would be that

14   prejudicial to take that part out.

15           THE COURT:  I understand your concern.

16           I give this explanation to everyone.  I'm going to

17   do that here.  But if you have specific questions that you

18   think we should add or subtract to get to that concern, I'm

19   happy to consider that.

20           THE DEFENDANT:  Yes.  That was the first thing.

21           The -- you said I could motion to add something

22   in?

23           THE COURT:  Yes.

24           THE DEFENDANT:  Okay.  So obviously, we're -- you

25   know, I --

1          THE COURT:  Just tell me what you're thinking and
2     I'll tell you if I need an explanation.
3          THE DEFENDANT:  Given the complexity of the
4     defense that I am seeking to push of entrapment by estoppel,
5     I think it would be good to test -- I've read in the
6     lawbooks --
7          THE COURT:  What's the question, Mr. Fellows?
8          THE DEFENDANT:  I ask the Court to test that the
9     jurors understand the entrapment by estoppel defense.  For
10     instance, as an example, you know, by helping them
11     understand, given all the evidence and testimony, that at
12     the end of it they have to view whether it's more likely or
13     not that I was under the impression that I was allowed to go
14     in based off of officers' actions, words or inactions, which
15     the D.C. Circuit does recognize inactions and implied
16     entrapment.
17          THE COURT:  I'm not going to give that question.
18          But if entrapment is properly before the jury, I'm
19     happy to give an appropriate jury instruction.
20          THE DEFENDANT:  Okay.  I would just say, you know,
21     it is a complex defense.  I think it would be good to test
22     to see if they understand the concept of it.  But I'll move
23     on.
24          For No. 4, I was hoping we could add in, where it
25     says "Does anybody in that group," right after that word

1    "group," I'd like to request to have "personally or know

2    someone who works for or has worked for," basically just to

3    open up -- you know, maybe they have a spouse that, you

4    know, was working in these areas.

5            THE COURT:  So the spouse would be covered.

6            THE DEFENDANT:  Is the spouse covered?

7            THE COURT:  Yes.  That's part of the group.

8            THE DEFENDANT:  Or perhaps friends, you know,

9    people --

10            THE COURT:  Close personal friends were also

11    covered.

12            THE DEFENDANT:  Yes.

13            Additionally, towards the end of it, instead of

14    just focusing on the law enforcement agencies, I'd like to

15    motion to put in if they work for any news agencies, Biden

16    or Trump Administration or political organizations.

17            THE COURT:  I think it would be a separate

18    question.  It would be something along the lines of, Do you

19    or someone close to you work for a member of a news

20    organization?

21            THE DEFENDANT:  Yes.  Or political organizations.

22            THE COURT:  Political organization.  Is that the

23    language you want?

24            THE DEFENDANT:  Do you have any other suggestions?

25            THE COURT:  Are you looking for political

1    appointees?

2             THE DEFENDANT:  It could be political appointees;

3    it could be -- I'm forgetting the word.  I know --

4    lobbyists, right, they work for maybe, you know?  Some sort

5    of lobbyist group or something along those lines.

6             THE COURT:  "Are you or someone in this group now

7    working for or ever worked for a lobbyist or" --

8             THE DEFENDANT:  Political organizations.  Maybe

9    they could just simply share.  I'm sure we could -- they

10   could offer why they're still to be trusted.

11            THE COURT:  Well, I'm concerned that "political

12   organization" isn't really getting to what I take to be your

13   concern.

14            Is your concern about politicians or like --

15            THE DEFENDANT:  It could be.  But I think because

16   of the political nature of this case and because of the --

17   as people have -- political analysts and politicians have

18   brought up that this is the most -- you know, this is a --

19   arose from the most divided -- a time when our country was

20   most divided since the Civil War.  I think it would be

21   proper to see maybe if they might have, you know, certain

22   passions that may get in the way of them judging fairly.

23            THE COURT:  I hear your concern.  I'm trying to

24   get language.  Most people in this town work for the federal

25   government.

```
1              THE DEFENDANT:  Yes.

2              THE COURT:  So I'm not asking for that question.

3    I'm trying to get to something that's more targeted.

4              THE DEFENDANT:  It could be maybe, for instance,

5    the DNC, Democratic National Convention [sic], perhaps,

6    lobbyists.  Basically I'm just open to --

7              THE COURT:  Lobbyists/political party?

8              THE DEFENDANT:  Yes.  Lobbyists, political

9    parties.

10             THE COURT:  Anything else?

11             THE DEFENDANT:  Senators or congressmen.

12             THE COURT:  A politician?

13             THE DEFENDANT:  Yes.

14             THE COURT:  So it would be something like, "Does

15   anyone in that group now work for or has anyone in that

16   group ever worked for a lobbyist, a political party or a

17   politician?"

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Any objection to that question?

20             MS. NEVIN:  No objection, your Honor.

21             THE COURT:  And any objection to, "Does anyone in

22   this group now work for or has anyone in that group ever

23   worked for a news organization?"

24             MS. NEVIN:  No objection.

25             THE COURT:  I'll ask both of those.
```

1          Go ahead.

2          THE DEFENDANT:  Continuing on to No. 7, I'd like

3     to add in, "Was anyone personally affected -- personally or

4     that you know affected negatively as a result of January 6th

5     or by the reaction to January 6th?"  For an example, you

6     know, the gates being set up, the military being present,

7     checkpoints or possibly their businesses being harmed as a

8     result of maybe less tourism or curfew that day.  I don't

9     know.

10          THE COURT:  So let's start with your first -- the

11    first part of that.  Say that first part again.

12          THE DEFENDANT:  Yes.  So "Was anyone personally or

13    that you know -- was anyone that you know or were you

14    personally affected negatively as a result of January 6th?"

15    If you'd like me to continue to the second part.

16          THE COURT:  Go ahead.

17          THE DEFENDANT:  "Or by the reaction to

18    January 6th, for example, the gates being set up, the

19    military being present, checkpoints or loss of business

20    or" -- I don't know -- "fun, you know, for being shut down."

21          THE COURT:  I'm not inclined to give that second

22    part.  I am inclined to give that first part.

23          Any objection from the Government?

24          MS. NEVIN:  No objection.

25          THE COURT:  So what I'm going to ask is, "Was

1   anyone in this group negatively affected by the January 6th

2   riot?"

3            THE DEFENDANT:  Okay.  Then these are just

4   add-ins.  Do you believe -- I believe I have three add-ins.

5   First, "Do you believe that the people present at that

6   protest are guilty of a crime?"  And if I may give a reason

7   why.

8            THE COURT:  Sorry.  So this is just a new

9   question?

10            THE DEFENDANT:  Yes.

11            THE COURT:  Say that one more time.

12            THE DEFENDANT:  "Do you believe that the people

13   present at that protest are guilty of a crime?"

14            And the reason that I would ask that is because

15   the study that was conducted in this area and compared to

16   Atlanta, Georgia, another Democrat stronghold, is 54 percent

17   of the people in Atlanta said they found -- thought that we

18   were guilty before even, you know, hearing about our

19   individual cases.  And they did the study on D.C., and 84

20   percent of respondents to that survey said they thought that

21   January 6th Defendants were guilty of a crime.  I don't have

22   the statistic in front of me, but it was conducted by a

23   Treniss Evans.

24            THE COURT:  I'm trying to think about a way to put

25   this.  How about, "Do you believe that all people present at

1      the Stop the Steal Rally and subsequent protests were guilty

2      of a crime?"

3              Are you comfortable with that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Any objection from the Government?

6              MR. PERRI:  No, your Honor.

7              THE COURT:  Let me just write that down.

8              Okay.

9              THE DEFENDANT:  The second one is, "Do you believe

10     that the people at the protest were there for racist

11     purposes or were overwhelmingly racist?"  Again, that's

12     based off the question --

13             THE COURT:  I don't need to --

14             THE DEFENDANT:  Sorry.

15             THE COURT:  Any objection to that question?

16             MR. PERRI:  We would object, your Honor.  I don't

17     think this case has anything to do with racial accusations.

18     I don't think that's a good fit because the crimes in

19     question don't have any element that deal with racial

20     motivations.  So therefore, you're asking about something

21     that has nothing to do with the case, essentially.  Yeah.

22             THE DEFENDANT:  I would --

23             THE COURT:  I don't need to hear from you,

24     Mr. Fellows.

25             I'm going to allow the question.  I am going to

1    put, "Do you believe all the people present were there for

2    racist purposes?"

3              THE DEFENDANT:  Thank you, Judge.

4              THE COURT:  You've got about one or two more.

5              THE DEFENDANT:  Okay.  "Do you believe the

6    majority of people at the protest intended to overthrow the

7    government or kill members of Congress?"  These all stem

8    from the research that was conducted in the area.  So I just

9    want to make sure that I'm not going in there with these

10   people thinking I was there to kill anybody.

11             THE COURT:  What's the Government's response?

12             MS. NEVIN:  Judge, again, it's our position that

13   this is not getting to the crimes charged or showing -- I

14   just don't think these are relevant questions to ask the

15   venire.

16             THE COURT:  I think that question is subsumed

17   within the one I've already allowed:  "Do you believe all

18   the people present at the Stop the Steal Rally and

19   subsequent protests were guilty of a crime?"  So I'm not

20   going to give that question.

21             THE DEFENDANT:  Okay.  I see three more.  Can I

22   request three more?

23             THE COURT:  Quickly.

24             THE DEFENDANT:  Yeah.  Thank you.

25             This one's a short one.  "Do you have any negative

1    feelings" -- actually, I may have -- let me know if you

2    think this is kind of a repeat, please:  "Do you have any

3    negative feelings towards the people who were present on

4    January 6th?"  It was written last second, so I apologize if

5    it may be a repeat.

6              THE COURT:  I feel like that's pretty similar to

7    No. 16:  "Will you have difficulty putting aside what you've

8    heard or seen about the events and your opinions about those

9    events to decide this case in a fair and impartial manner?"

10             So I'm not going to give that one.

11             THE DEFENDANT:  Gotcha.

12             Second out of the last two:  "What news agencies

13   do you watch?  Where and how do you get your news?"  I've

14   seen them allow this in other January 6th cases.

15             THE COURT:  How is that relevant, sir?

16             THE DEFENDANT:  Obviously, depending on what news

17   station you watch, you may have gotten an entirely different

18   idea of -- or notion of what happened that day.  It may have

19   cause for preconceived notions or beliefs.

20             THE COURT:  What did you think about the

21   Government's change to No. 15?

22             THE DEFENDANT:  The "Do you believe that people

23   present there are guilty of a crime?"

24             THE COURT:  No. 15.

25             Can you remind me, Mr. Perri, what you're

1    proposing on 15?

2         MR. PERRI:  I thought we were just going to take

3    that out.  But I did have a suggestion, perhaps.  We could

4    say, "Has anyone made a point of seeking out and watching a

5    lot of video footage related to January 6th?"

6         THE COURT:  So what do you think about -- I don't

7    think I'm going to say a lot.  But "Have you made a point of

8    seeking out and watching news or video footage related to

9    January 6th?"

10        THE DEFENDANT:  I really would like the element to

11   just be present of if they've seen it and, if so, where

12   from?  How often?  Versus, you know -- I think it negates a

13   lot of potential answers for a positive or an affirmation if

14   we just go by, "Have you made it a point to search?"  I feel

15   like a lot of people didn't have to make it a point to

16   search these things out.  I feel like it was bombarded on

17   bus banners and news agencies.

18        THE COURT:  So I think that's part of the

19   Government's concern.  I'm not looking for questions that

20   everybody's going to say yes to.  Those are not helpful.

21        THE DEFENDANT:  Okay.  I guess I would go with

22   that, then.

23        THE COURT:  So what I think I'm going to do is

24   change 15 along those lines.  And for people who say yes to

25   that, you or I can ask a followup question at the bench

1    about where they're getting their news.  But I think I want

2    to hear from that subset rather than ask everybody about

3    their news.

4              THE DEFENDANT:  Very good.

5              THE COURT:  Okay?

6              THE DEFENDANT:  And --

7              THE COURT:  Hold on just a second, sir.

8              Mr. Perri, you said, "Have you made a point" --

9              MR. PERRI:  Of seeking out.

10             THE COURT:  Well, let's say, "Have you sought out

11   news or videos of what happened at the Capitol on

12   January 6th?"

13             So that's going to be my Question 15.  And then

14   the parties can ask followups to that subset who say yes

15   about how often and what they watched, if you wish.

16             THE DEFENDANT:  Very good.

17             This last one.  This -- if I could just share a

18   sentence prior to sharing it.

19             THE COURT:  Okay.

20             THE DEFENDANT:  Thank you.

21             This comes from even my family members, you know.

22   They do not like Donald Trump.  I've seen it evoke a strong

23   emotional response.  Those are with my family members.  So

24   this question comes from that, and speaking to others:  "Do

25   you have any negative feelings of Donald Trump or those who

1   support him?"  Some people, you know, like my family

2   members, they don't allow me to even mention his name.

3        THE COURT:  How about if we say, "Do you have

4   negative feelings about those who support Donald Trump?"

5        THE DEFENDANT:  That seems good.  Yes.

6        THE COURT:  Any concern about that?

7        MR. PERRI:  I think there are different kinds of

8   support, your Honor.  I think routine support in terms of,

9   "Yes, we like this candidate"; and then there's support that

10  leads to violence on January 6th.  So I don't know how that

11  question would distinguish between normal support and

12  radical support.

13       THE COURT:  How about "all those who support

14  Donald Trump"?

15       THE DEFENDANT:  I suppose so.

16       THE COURT:  I'm going to give that question.

17  "Support" or I'll say "supported."  I'll give both ways.

18       Is that it, sir?

19       THE DEFENDANT:  For the voir dire, yes.

20       I have more in writing that I'd like to try to

21  submit to the Court.  But for here, yes.  That's all I have.

22       THE COURT:  I think you should -- I will tell you,

23  I have made more changes here than I have for just about any

24  other defendant I can remember.  So I'm bending over

25  backwards to accommodate you.  But I think -- and I

1    recognize there are sensitivities with January 6th case that

2    are not present with the mine-run of --

3              THE DEFENDANT:  I feel that you've been impartial.

4    So thank you.

5              THE COURT:  Thank you.

6              You may have a seat.

7              MR. PERRI:  Judge, could we get back to No. 7 for

8    a second?  And would you be able to read the language that

9    you settled on for 7?

10             THE COURT:  So the written 7 I didn't think we'd

11   changed.  Tell me what you're referring to.

12             MR. PERRI:  The one that the Defendant proposed

13   about being affected as a result of January 6th.

14             THE COURT:  "Was anyone in that group negatively

15   affected by the January 6th riot?"

16             MR. PERRI:  So I just have a little bit of a

17   concern about that.  I'm worried that someone might take

18   that as, Well, were you upset by what you saw?

19             THE COURT:  How about "negatively impacted"?

20             MR. PERRI:  I think that would be good, Judge.

21             THE COURT:  We'll do "impacted" instead.  So we're

22   got our voir dire questions.

23             I see the Government's proposed statement of the

24   case.  Had you gotten a chance to see that, Mr. Fellows?

25             THE DEFENDANT:  The proposed what?

1    THE COURT:  Statement of the case.

2    THE DEFENDANT:  I don't believe I have.

3    THE COURT:  So the Government's proposed statement

4    of the case is:  This is a criminal case.  The United States

5    has accused Brandon Fellows of five federal crimes related

6    to his conduct in and around the United States Capitol on

7    January 6th, 2021:  first, obstruction of an official

8    proceeding, specifically Congress's certification of the

9    Electoral College vote related to the 2020 presidential

10    election; second, entering or remaining in a restricted

11    building or grounds; third, disorderly or disruptive conduct

12    in a restricted building or grounds; fourth, entering and

13    remaining in certain rooms in the Capitol Building,

14    specifically, Senator Merkley's hideaway office; and, fifth,

15    disorderly conduct in a Capitol building.

16    Mr. Fellows has pled not guilty to each charge and

17    he is presumed innocent of each of these charges.

18    Do you have any concerns with that?

19    THE DEFENDANT:  Forgive me.  I believe that seems

20    very similar to the preliminary jury instructions, the paper

21    that I have here.  That wasn't what we were reading, though,

22    was it?  Because I don't remember seeing anything on Jeff

23    Merkley.

24    THE COURT:  No, it's not.  I think you're right

25    that there are similarities.

         1              THE DEFENDANT:  If so, I do have some add-ons on

         2     that, just small add-ons.

         3              THE COURT:  Hold on just a second.  I need to get

         4     a copy of those that we gave you all.

         5              But any concerns with this proposed statement of

         6     the case?

         7              THE DEFENDANT:  Would it trouble the Court to read

         8     it once more?

         9              THE COURT:  Here.  Can you just give that to the

        10     Defendant?

        11              THE COURTROOM DEPUTY:  Sure.

        12              (Tenders document to the Defendant.)

        13              THE DEFENDANT:  Thank you.

        14              I see basically it's similar language to what I

        15     just wanted to add a couple changes to.

        16              THE COURT:  So I'll take that back.

        17              Thank you, Deputy.

        18              I'm going to give that as the proposed statement

        19     of the case.

        20              THE DEFENDANT:  Could I at least put on the record

        21     what I'd like to add?

        22              THE COURT:  You're going to get an opportunity

        23     to -- it's the Government's statement of the case here.  So

        24     if you have an objection to this, I'm happy to hear from

        25     you.

```
 1              THE DEFENDANT:  I would just object and simply ask
 2    just for trespassing charges and the obstruction that we
 3    include the element of knowingly.
 4              THE COURT:  So I'm not giving the elements right
 5    now.
 6              THE DEFENDANT:  Okay.
 7              THE COURT:  So I'm not giving that.  I'm not
 8    making that change.  But there may be a time for that later.
 9              I've got the preliminary jury instructions now in
10    front of me.  Did the Government have any concerns about the
11    preliminary jury instructions that I circulated?
12              MS. NEVIN:  We did not, your Honor.
13              THE COURT:  As you point out, Mr. Fellows, this
14    Preliminary Instruction 1.102 goes through the different
15    counts.  I'm going to strike that language altogether, since
16    I just gave an abbreviated version of it in the Government's
17    statement of the case.
18              Did you have any other changes you wanted to
19    suggest to my preliminary jury instructions?
20              THE DEFENDANT:  That I'm aware of now, just a few.
21    Would you like me to approach?
22              THE COURT:  Yes.
23              THE DEFENDANT:  Okay.  Obviously, we haven't ruled
24    on it yet, but obviously I'd like an entrapment by estoppel
25    jury instruction.
```

1          THE COURT:  I'm not doing final jury instructions,

2     so that wouldn't be in here anyway.  But we will talk about

3     entrapment in just a moment.

4          But keep going.

5          THE DEFENDANT:  Let's see.  I was hoping that

6     perhaps the Court could explain beyond a reasonable doubt in

7     terms of a percentage.  I found it very helpful and found

8     that a lot of people that I've spoken to have never even

9     heard of the percentage that was given.  I think it was,

10    like, 95 or 99 percent for that.  Obviously, clear and

11    convincing, 80.  I think it helps not make the language so

12    vague.  I think people may have different understandings of

13    what beyond a reasonable doubt is.

14         THE COURT:  So that's a final jury instruction

15    matter as well.

16         To be clear, this is just what I read before the

17    trial begins.  There's going to be much longer instructions,

18    including going through all the elements, at the end.

19         THE DEFENDANT:  Yeah.  I just was also moving to

20    try to put it on there to begin with maybe to have it set in

21    their minds.  That way, maybe as they're seeing evidence

22    they have that in their minds that, Oh, it has to meet this

23    threshold.

24         THE COURT:  I understand.  I'm denying your

25    request.

 1          THE DEFENDANT:  Okay.  Let me just take a look.

 2          At the moment, without my notes on this that I

 3     just got back, that's pretty much all I have.

 4          THE COURT:  What do you mean, without your notes?

 5     I just handed this --

 6          THE DEFENDANT:  No.  I know.  For, you know, jury

 7     instructions and related stuff to jury instructions

 8     requests.  I just got those which I wrote up from the D.C.

 9     Jail over a year ago.  So I'm trying to type those up.

10          THE COURT:  Okay.

11          THE DEFENDANT:  But in the moment, this is

12     basically all I got.

13          THE COURT:  So I'll expect to give these

14     instructions; the preliminary jury instructions, as I said,

15     before.  For final jury instructions, I'm going to direct

16     the Government to provide both of us a copy with their

17     proposed final jury instructions on the first day of trial.

18          If you have any -- if you think entrapment, which

19     we'll discuss in a moment -- but you can certainly provide

20     those.  You'll also have an opportunity to comment on and

21     edit the Government's over the course of the trial.

22          You may have a seat, sir.

23          Ms. Nevin, what's the Government's position on the

24     Defendant's ability to raise an entrapment defense at this

25     point?

1          MS. NEVIN:  Your Honor, it's our position that

2     this Court has already ruled that that motion was denied

3     based on the fact that the Defendant did not respond to our

4     motion *in limine* to preclude the defense.

5          THE COURT:  So, Mr. Fellows, I'm happy to hear

6     from you on this.  But as Ms. Nevin points out, they had

7     filed a motion *in limine*.  There's frankly, I think, earlier

8     deadlines anyway for noticing an entrapment defense.  In any

9     event, the Government has filed a motion to preclude you

10    from being able to make an entrapment defense, which you did

11    not respond to.

12         So I'm happy to hear from you now.  But I think

13    the Government is likely right that that opportunity has

14    passed.

15         THE DEFENDANT:  Well, obviously, you know, that

16    was what I mainly argued about earlier.  Obviously, I object

17    to a lot of the conclusions that the Court came to earlier

18    before, prior to our recess, that I was, you know,

19    allowed -- you know, I had enough time, you know, had the

20    motions that I needed, the discovery that I needed.

21         I saw they cited since March.  That's just not

22    true.  You know, lawyers may have had it, but I did not have

23    it and still do not have complete access to discovery and to

24    some of the motions that I haven't seen.

25         But if I could argue it kind of here --

1            THE COURT:  Yes.

2            THE DEFENDANT:  -- without my notes.

3            I recognize that they cited Chief -- well, I don't

4    know if she's still Chief -- Judge Howell's argument against

5    entrapment by estoppel.  That was from *Chrestman versus*

6    *United States*.  That, as they point out, was based off the

7    Defendant William Chrestman pushing a defense that he felt

8    that he was allowed to go into the Capitol and do all that

9    he allegedly did based off of Donald Trump's implied and/or

10   in his view express permission to do so.

11           Chief Judge Howell said not only did he not have

12   the authority to do that, but that he didn't expressly or

13   imply that in any manner.

14           However, Chief Judge Howell later on -- I forget

15   what case this was, but I've seen other cases; I believe

16   there was a *Carpenter* and an *Ekur* [phonetic], something with

17   an E.  Regardless, if you type in "entrapment by estoppel"

18   in the case law library, you'll see that the judges,

19   including Chief Judge Howell, have allowed the jury to

20   decide that come trial.  And all you have to do is proffer a

21   bit of evidence, which is available even to the media.  I

22   have the officers giving implied entrapment in a lot of

23   videos that I released prior to even knowing I would be

24   arrested or that I had committed a crime.

25           And also I remember reading somewhere in here

1      that -- will you forgive me if I read?

2                 THE COURT:  Sure.

3                 THE DEFENDANT:  Thank you.

4            So the argument of inaction on police, they've

5      argued multiple times throughout this motion that I've read

6      recently that inaction is not a recognizable form of

7      entrapment by estoppel when those very judges have

8      recognized that inaction is -- it is -- it meets the element

9      of entrapment by estoppel.  There's express and implied.

10           And we've even seen that as high as the D.C.

11     Circuit.  Granted, they didn't call it necessarily

12     entrapment by estoppel, but I believe the two -- two or

13     three cases that I have in mind are *Dellums* -- I believe

14     that was *versus United States*, but it may have not been.

15     But it was related to a Vietnam protest at the Capitol.

16           Capitol Police tried to order a -- well, first,

17     they allowed the protesters in and then they changed their

18     minds.  But the protesters did not hear them and they did

19     not follow the Capitol Police manuals for dealing with civil

20     disorders and protests in which they were supposed to not

21     only give warnings to protesters, but they were supposed to

22     ensure they heard them.

23           This is back in 1979 or 1981.  And even then, they

24     had major sound systems that could be blasted to tons of

25     protesters.

 1          So I see this motion *in limine* kind of trying to

 2    pivot the blame on to me when it's been clearly established

 3    and that case law has even been cited recently, I believe,

 4    in *Barham* -- no; sorry -- *Carr*.  It was a 2004 protest and a

 5    2008 case with the George W. Bush inauguration, where people

 6    were arrested through a protective sweep.  Even the MPD have

 7    similar rules where they're supposed to order dispersals and

 8    warn protesters that what they are doing is illegal and can

 9    be arrested if they do not listen.

10          When the D.C. appellate court saw that these

11    police officers, both Metro and Capitol, both in *Dellums*,

12    *Carr* and *Barham v. Ramsey* -- that's the full case, I

13    remember, *Barham versus Ramsey* -- when the police officers

14    did not do this, regardless of agency, they reversed the

15    conviction because they said that the police officers failed

16    to do their duty.

17          So inaction is recognized.  Even the more recent

18    cases of *Carpenter* and I forget the other cases offhand, but

19    I do have them -- I do have notes on them at my -- in my

20    jail cell.

21          THE COURT:  So, Mr. Fellows, tell me, how would

22    you show entrapment here?

23          THE DEFENDANT:  Well, I would like to be able to

24    maybe bring a USB device in with my discovery, maybe present

25    it through proffer to the Court.  I have -- granted, they

 1   took my video that I've asked for with the express

 2   permission that police officers gave inside.

 3          But specifically when I was in, there was no order

 4   of dispersal.

 5          They also cite -- I would be happy for them to

 6   claim because, remember, the burden is on them to prove

 7   it -- they reference here police barricades, police

 8   dispersal orders and signs, all three of which were not

 9   present when I was there.  They cannot prove that.  I'm

10   confident in that.

11          But not only that; I have tons of officers I'm

12   giving thumbs-up to, smiling at, waving and talking to as

13   other people are doing even more intense stuff than I am,

14   not where I saw assaulting them when I was inside the

15   building, but even smoking weed next to officers.  I

16   witnessed all of this.

17          And even -- I also have additional evidence -- I

18   do need to note this, please:  They also -- I wanted to

19   disagree with their specific thing -- well, first -- sorry.

20   I guess I'm all over the place.

21          Would the Court maybe allow something like that to

22   where I can bring in those video files?  Because the law

23   says it's just a proffer.  I don't need to prove it.  I just

24   need to show an indication that there was an element of

25   entrapment there.

1              THE COURT:  So I want to make sure I understand.

2      You would be relying on your not seeing barricades, not

3      hearing dispersal orders, that type of thing, and your

4      thumbs-up to police officers and them not stopping you.  Is

5      that correct?

6              THE DEFENDANT:  Along with also two other main

7      things, the first being the evidence that I do have in my

8      possession, which is when I was told by a previous officer

9      that I could go as far as the statues.  I didn't know where

10     that was.  I now know that to be the Crypt.

11             I asked for directions and where it was.  He did

12     not only give that to me on recording, which I've shared to

13     the media prior to being arrested, but he even gave me some

14     history lessons on where it was.  I'd be happy to provide

15     that.

16             He did not do his duty to tell me that I was

17     breaking the law and inform me.  I know that the Government

18     argues that I should have known because I walked in through

19     a broken window.

20             Can I -- okay.

21             THE COURT:  I just want to make sure I understand

22     what you believe this video would show.  It would show you

23     interacting with an officer and what?

24             THE DEFENDANT:  The Capitol Police officer is

25     standing guard in an area.  The previous officer gave me a

1     list of instructions which I shared at my 10-12-21

2     testimony.  There were six rules.  And I wanted to ensure

3     that I was abiding by those rules, so I asked him on

4     camera -- and you can see his face and everything -- "Sir, I

5     want to know, you know, where the statues -- I was told that

6     there were cool statues that go down here."  I think that's

7     an exact quote.

8         And he said, "The statues?"  Well, first, he

9     invited me to come closer.  And I came closer and repeated

10     the question.

11         And he told me -- he pointed me in the direction

12     to the Crypt and then told me what each statue represents

13     and then wished me a good day.

14         And I would say that's a lighter version of

15     express permission and even, you know, forms of implied.

16         And could I address also their argument for the

17     window?

18         THE COURT:  I want to understand those -- I hear

19     three bases for entrapment here:  the lack of warnings ahead

20     of time and officers giving you thumbs-up and then this

21     discussion -- you asking for directions and an officer

22     pointing you the way.

23         THE DEFENDANT:  Yes.  And without those

24     instructions, the D.C. appellate court has recognized that

25     enough to be able to overturn convictions with those things.

1    That was in *Dellums* and *Barham v. Ramsey*, both separate

2    agencies, Metropolitan Police Departments and Capitol.  That

3    is because people recognize that D.C. has the most protests,

4    more than any other city.

5             THE COURT:  Okay.  I was looking to make sure I

6    understood the facts.

7             You wanted to respond to the broken window?

8             THE DEFENDANT:  Yes.

9             So as the lawbooks I've read say, trespassing,

10   which is where they allege that I trespassed into the

11   building, is not just in D.C. but in lots of states.

12   They've included language such as "knowingly" because lots

13   of times people do not know that they are trespassing.  It's

14   typically an essential element of trespassing.

15            And that's even in -- the lawbooks say it's even

16   more so on government property.

17            And I would proffer that there's no other building

18   that would be more confusing to someone than a place that's

19   coined and nicknamed "the people's house."  People all

20   around me were shouting, "It's our house."  And given the

21   way that our country, unlike any other country has been --

22   was founded, I thought that we were allowed to protest as we

23   were able to do.

24            I did think that I had a right to be in there.

25   And I would give kind of an example of, you know, when I was

1    at my college suite, I would imagine if I saw my broken --

2    my window broken, rather than walking over to the door that

3    I saw open, which I did see open at the Capitol -- the

4    Government even shares that the door was open and people

5    were going in there -- there was already ways in.

6           So I saw it kind of as like -- I've been at 60

7    concerts.  I saw it as, Hey, I want the best seat in the

8    house, our house.  I thought I had a legal right to be

9    there.

10          I was raised outside -- I'd never been to D.C.

11   before.  And I was raised, you know, in middle school by

12   history teachers to believe that D.C. was a unique

13   kingdom-like state where there's tons of weird laws and

14   things that are typically not allowed to do.

15          And, you know, if they have trouble understanding

16   that, they can look to the plentiful amounts of case law and

17   reasons why the Capitol Police and even D.C. Circuits have

18   pushed and said, Hey, these people -- not only are people

19   from this country so confused about the Capitol and even the

20   streets in the capital, but, you know, they're so confused

21   on it that we need to make it a point to warn them that,

22   Hey, this is not a First Amendment issue.  You're not

23   allowed to do this.  If you continue to do this, you will be

24   arrested under whatever statute.

25          Anytime they failed to do that, that has been

1    overturned by the appellate courts.

2              THE COURT:  Okay.  Thank you.

3              Does the Government wish to be heard on this?

4              MR. PERRI:  Yes, your Honor.

5              THE COURT:  You can just approach the podium,

6    Mr. Perri.

7              MR. PERRI:  Thank you.

8              So knowingly is an element of these offenses.  If

9    the Defendant feels like we haven't met our burden as to

10   that element, he can certainly argue that we haven't put in

11   enough proof of knowingly.

12             That doesn't mean he's entitled to the very

13   specific defense, affirmative defense, of entrapment by

14   estoppel, which has elements that must be met.

15             And the case law is pretty clear about that.  And

16   of course the judge -- the Court knows that we cited the

17   *Chrestman* case in our motion *in limine*.

18             These elements have to be met.  And our position

19   is there's no way that that offense [sic] can be established

20   in this case.

21             THE COURT:  Why not on entering and remaining in a

22   restricted building or grounds?

23             MR. PERRI:  Based on what the Defendant said

24   today, given the fact that he seems to be saying that his

25   friendly interaction with an officer, the fact that an

1    officer was friendly with him, if that's what happened, or

2    that officer talked to him or that officer motioned him in a

3    certain direction, it doesn't follow from that that he had

4    approval.  It simply doesn't.

5              THE COURT:  Well, he is suggesting an officer gave

6    him directions to where to go in the building.

7              MR. PERRI:  But he's already in the building at

8    that point.  He's already trespassed at this point.

9              THE COURT:  But isn't remaining -- are you not

10   relying on the remaining in a Capitol ground?

11             MR. PERRI:  Yes, we are, your Honor.  We are

12   relying on that.

13             It doesn't follow that he had permission to go

14   wherever he wanted through the Capitol.  It simply doesn't.

15             In essence, he's trying -- he says that the United

16   States is trying to, you know, put the blame on him.  But

17   what I'm hearing from him is that he's trying to turn that

18   around and put it on the police.  And that's not what

19   entrapment by estoppel is.

20             We addressed the inaction argument as well.  I

21   think he's conflating the two.  They're two different

22   things.

23             And we would ask the Court to stand firm on the

24   denial of the motion *in limine* and further ask the

25   Defendant -- actually, order the Defendant not to talk about

1    entrapment by estoppel in his opening statement.

2              THE COURT:  So, Mr. Perri, I mean, this comes

3    up -- this is basically whether or not he gets a jury

4    instruction.  Am I correct that that is how you see this

5    playing out?

6              MR. PERRI:  I think -- I'm trying to remember what

7    language -- what exactly we asked for in the motion *in*

8    *limine*.  But I think it's both.

9              THE COURT:  Both jury instruction and --

10             MR. PERRI:  And opening statement, that he be

11   precluded from bringing it up, arguing about it, presenting

12   argument about it during the trial, and also with respect to

13   jury instructions.

14             THE COURT:  Thank you, sir.

15             THE DEFENDANT:  May I counter?

16             THE COURT:  No.

17             So, Mr. Fellows, this is what I'm going to say:

18   Based on what you've told me, it sounds to me that that

19   would not be -- you've not given a complete defense as to

20   most of the charges, including the felony here, the lead

21   felony, obstruction of an official proceeding.

22             I think it's conceivable that you have -- you

23   would be able to show enough to get an entrapment

24   instruction as to at least one of the misdemeanors.

25             What I'm going to tell you is all of that

 1    information you just described to me I think would almost

 2    certainly be admissible regardless of whether there's an

 3    entrapment defense.  I agree with the Government that would

 4    certainly go to your knowing involvement here.

 5          So you should certainly plan to find a way to

 6    admit that evidence if you would like.

 7          And I'm going to direct you not to discuss

 8    entrapment as a legal matter in your opening.  That strikes

 9    me as again kind of more of a legal argument anyway,

10    something that may be relevant at closing.  I'm happy to

11    reconsider this before closing arguments when we have our

12    final jury instructions colloquy.

13          So I'd encourage you to have what you believe is

14    an appropriate entrapment defense instruction for me at the

15    beginning of trial, and look to introduce any evidence that

16    you think would bolster your entrapment defense.  The things

17    you've described to me I think would almost certainly be

18    admissible, regardless of the entrapment defense.

19          And we can talk at the end about what, if

20    anything, you can argue on entrapment at closing.

21          Does that make sense to you?

22          THE DEFENDANT:  It does.  Can I share my

23    objection, please?

24          THE COURT:  I'm not ruling against you right now.

25    I'm taking this under advisement.  So I really don't need to

1    hear.

2              THE DEFENDANT:  Can I offer one thing for the

3    Court to consider, please?

4              THE COURT:  Okay.

5              THE DEFENDANT:  I'm not arguing entrapment by

6    estoppel defense for the felony.  I'm arguing it for the

7    misdemeanors, which I'm glad you said you recognize that it

8    would be more for that.

9              I'm advocating that I didn't know, you know.  The

10   knowing of the proceeding was not -- I did not know the

11   proceeding was still going on.

12             So I'm saying not guilty just, you know, and

13   entrapment by estoppel for the misdemeanors, which is why I

14   held out and have not accepted their time-served plea deals,

15   because I wanted to fight and promote the truth even on the

16   misdemeanors.

17             THE COURT:  Well, it sounds like we're all on the

18   same page that you would not have an entrapment defense as

19   to the lead count.  So we can talk about whether it would be

20   appropriate for any of them after I see the evidence.

21             Ms. Nevin, anything further for the Government

22   here?

23             MS. NEVIN:  No, your Honor.

24             THE COURT:  And, Mr. Fellows, for defense?

25             THE DEFENDANT:  I just want to point out that I'll

1    be, you know, trying to submit a lot of the stuff that was

2    taken from me.  And I would really like the Court to

3    consider it, please, when it does get sent in.

4              THE COURT:  What are you --

5              THE DEFENDANT:  Previous motions that have been

6    taken from me, you know.  I just want to at least put it on

7    the record if you're got going to consider it at least for

8    an appellate court to see that I did have these requests in.

9    I know I brought this up earlier prior to recess.

10             THE COURT:  I mean, the deadline for motions has

11   well since passed.  You're certainly welcome to file things.

12   I'm not sure that they would be timely at this point.

13             But let me just urge you, sir, if I were you, I

14   would focus on preparing for trial.  That's what you should

15   be doing.  Legal arguments about your bond status or other

16   motions really should be secondary to you preparing for

17   trial.

18             All right, folks.  I'll see you next month for our

19   jury trial.  Thank you.

20             Well, actually, there was a reporter here earlier.

21   I'm a little concerned about the alternates now being public

22   record.

23             Do we want to reconsider what the alternates are?

24             MS. NEVIN:  No. 6.

25             THE COURT:  All right.  And Mr. Fellows?

1              THE DEFENDANT:  No. 2.

2              THE COURT:  Okay.  So our two alternates will be

3      No. 2 and No. 6.

4              See you then.

5              (Proceedings concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4       certify that the foregoing constitutes a true and accurate

5       transcript of my stenographic notes, and is a full, true,

6       and complete transcript of the proceedings produced to the

7       best of my ability.

8

9

10                   Dated this 27th day of July, 2023.

11

12                   <u>/s/ Lisa Edwards, RDR, CRR</u>
                     Official Court Reporter
13                   United States District Court for the
                       District of Columbia
14                   333 Constitution Avenue, Northwest
                     Washington, D.C. 20001
15                   (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 84:12

## 1

**1** [1] - 35:14
**1,000** [1] - 31:16
**1.102** [1] - 65:14
**10** [1] - 5:16
**10-12-21** [1] - 74:1
**10/12/21** [1] - 16:3
**100** [1] - 17:25
**108** [1] - 23:17
**10:15** [1] - 1:7
**11** [2] - 5:16, 26:13
**1125** [1] - 1:18
**12** [1] - 22:9
**122** [1] - 23:14
**12th** [1] - 26:13
**13** [2] - 35:25, 36:1
**13th** [1] - 25:4
**14** [7] - 5:5, 22:3,
22:9, 22:10, 35:16,
35:22, 36:1
**15** [7] - 37:2, 38:1,
58:21, 58:24, 59:1,
59:24, 60:13
**16** [2] - 22:6, 58:7
**17** [2] - 6:25, 7:1
**17th** [1] - 20:2
**18** [1] - 22:6
**1979** [1] - 70:23
**1981** [1] - 70:23
**1994** [1] - 30:21
**19th** [1] - 22:3
**1:15** [2] - 46:10,
47:16

## 2

**2** [2] - 83:1, 83:3
**2.4** [1] - 4:24
**20001** [3] - 1:15, 2:4,
84:14
**2004** [1] - 71:4
**2008** [1] - 71:5
**2015** [1] - 30:20
**202** [2] - 2:4, 84:15
**2020** [1] - 63:9
**2021** [5] - 17:14,
21:10, 26:8, 37:4,
63:7
**2022** [1] - 1:6
**2023** [3] - 5:5, 7:6,
84:10
**21** [1] - 1:6

**21-00083** [1] - 1:3
**21-83** [1] - 3:2
**22nd** [2] - 25:5, 25:7
**24** [1] - 4:23
**26003** [1] - 1:19
**27th** [2] - 20:2, 84:10
**2nd** [1] - 7:6

## 3

**3000** [1] - 1:19
**33** [1] - 34:23
**333** [2] - 2:3, 84:14
**354-3269** [2] - 2:4,
84:15

## 4

**4** [1] - 50:24
**403** [1] - 31:4
**42** [1] - 30:20
**48** [2] - 7:25, 8:16
**485** [1] - 24:6
**486** [1] - 30:20
**490** [1] - 24:6

## 5

**502** [1] - 30:20
**503** [1] - 30:21
**54** [1] - 55:16
**584** [1] - 24:6

## 6

**6** [3] - 26:13, 82:24,
83:3
**60** [1] - 76:6
**601** [1] - 1:15
**652** [1] - 30:19
**659** [1] - 30:19
**660** [1] - 30:19
**6706** [1] - 2:3
**6th** [30] - 10:18, 26:2,
27:10, 27:13, 30:4,
30:24, 31:17, 37:4,
45:12, 48:15, 48:20,
48:22, 48:24, 49:5,
54:4, 54:5, 54:14,
54:18, 55:1, 55:21,
58:4, 58:14, 59:5,
59:9, 60:12, 61:10,
62:1, 62:13, 62:15,
63:7

## 7

**7** [6] - 26:13, 35:14,
54:2, 62:7, 62:9,
62:10
**70** [1] - 32:23
**745** [1] - 1:22
**784** [1] - 30:19

## 8

**8** [1] - 35:15
**80** [1] - 66:11
**84** [1] - 55:19

## 9

**91** [1] - 24:6
**95** [1] - 66:10
**96734** [1] - 1:22
**99** [1] - 66:10

## A

**a.m** [1] - 1:7
**abbreviated** [1] -
65:16
**abiding** [1] - 74:3
**abilities** [1] - 24:1
**ability** [2] - 67:24,
84:7
**able** [30] - 4:20, 7:24,
10:4, 10:11, 11:5,
11:9, 11:10, 15:5,
15:8, 15:16, 15:20,
15:24, 16:16, 18:23,
18:25, 20:4, 20:8,
25:13, 26:9, 26:23,
27:16, 39:2, 46:24,
47:8, 62:8, 68:10,
71:23, 74:25, 75:23,
79:23
**absent** [1] - 22:24
**absolutely** [2] - 23:6,
36:15
**accept** [1] - 8:17
**accepted** [1] - 81:14
**access** [25] - 6:14,
6:24, 7:5, 7:9, 14:25,
15:20, 19:11, 19:22,
20:6, 20:20, 20:21,
22:11, 22:13, 22:16,
22:17, 26:16, 26:18,
26:19, 27:6, 27:7,
27:14, 27:17, 28:1,
28:9, 68:23
**accommodate** [3] -

18:25, 27:5, 61:25
**accommodating** [1]
- 27:19
**accommodation** [2]
- 27:24, 28:1
**account** [3] - 4:11,
4:18, 7:13
**accurate** [1] - 84:4
**accusations** [1] -
56:17
**accused** [1] - 63:5
**acknowledged** [1] -
5:19
**acknowledgement**
[1] - 21:13
**Act** [2] - 12:9, 18:23
**Action** [2] - 1:3, 3:2
**actions** [1] - 50:14
**add** [10] - 49:18,
49:21, 50:24, 54:3,
55:4, 64:1, 64:2,
64:15, 64:21
**add-ins** [1] - 55:4
**add-ons** [2] - 64:1,
64:2
**additional** [3] - 27:3,
38:10, 72:17
**additionally** [1] -
51:13
**additions** [3] - 38:15,
38:20, 38:23
**address** [3] - 8:8,
45:1, 74:16
**addressed** [2] -
31:24, 78:20
**administration** [2] -
5:25, 25:10
**Administration** [1] -
51:16
**admissible** [2] -
80:2, 80:18
**admit** [1] - 80:6
**admitted** [1] - 45:14
**advance** [2] - 12:3,
12:4
**advantage** [1] -
27:16
**advice** [1] - 41:6
**advisement** [1] -
80:25
**advocating** [1] - 81:9
**affected** [6] - 54:3,
54:4, 54:14, 55:1,
62:13, 62:15
**affirmation** [1] -
59:13
**affirmed** [1] - 13:2
**afterwards** [1] -
37:20
**agencies** [5] - 51:14,

51:15, 58:12, 59:17,
75:2
**agency** [1] - 71:14
**ago** [4] - 3:24, 4:12,
21:16, 67:9
**agree** [6] - 9:9, 9:14,
9:24, 18:14, 37:9,
80:3
**agreed** [2] - 21:15,
27:25
**agreement** [2] - 9:22,
32:11
**ahead** [9] - 10:1,
22:4, 22:10, 31:25,
35:13, 48:2, 54:1,
54:16, 74:19
**allege** [1] - 48:25,
75:10
**allegedly** [1] - 69:9
**allow** [7] - 43:2, 43:7,
44:11, 56:25, 58:14,
61:2, 72:21
**allowed** [14] - 5:3,
10:20, 20:18, 42:22,
50:13, 57:17, 68:19,
69:8, 69:19, 70:17,
75:22, 76:14, 76:23
**almost** [2] - 17:15,
80:1, 80:17
**alone** [1] - 11:16
**alternate** [6] - 35:7,
35:11, 35:13, 35:18,
35:23, 37:14
**alternates** [7] - 35:8,
35:12, 36:2, 39:18,
82:21, 82:23, 83:2
**altogether** [2] -
37:16, 65:15
**Amendment** [2] -
11:11, 76:22
**AMERICA** [1] - 1:3
**America** [1] - 3:2
**amount** [3] - 5:6,
22:5, 37:11
**amounts** [2] - 30:4,
76:16
**analysts** [1] - 52:17
**ANDREW** [1] - 1:24
**Andrew** [1] - 19:19
**annoyance** [1] -
13:23
**answer** [6] - 3:25,
33:5, 33:7, 33:18,
34:10, 38:18
**answered** [1] - 43:5
**answers** [1] - 59:13
**anytime** [1] - 76:25
**anyway** [3] - 66:2,
68:8, 80:9
**apologize** [1] - 58:4

**appeal** [1] - 31:1
**Appeals** [1] - 13:2
**appear** - 37:7
**appearances** [2] -
1:12, 13:22
**appellate** [4] - 71:10,
74:24, 77:1, 82:8
**applicable** [1] - 24:8
**application** [1] - 7:19
**applications** [2] -
7:15, 8:2
**apply** - 37:7
**appointees** [2] -
52:1, 52:2
**appreciate** [5] -
22:12, 23:10, 32:4,
32:14, 43:13
**approach** [8] - 3:4,
4:7, 29:24, 33:11,
41:18, 48:3, 65:21,
77:5
**approaching** [1] -
19:17
**appropriate** [6] -
34:12, 43:24, 45:20,
50:19, 80:14, 81:20
**approval** [1] - 78:4
**April** [2] - 26:13
**area** [7] - 18:21,
19:8, 19:12, 23:2,
55:15, 57:8, 73:25
**areas** [1] - 51:4
**argue** [7] - 13:17,
13:21, 15:19, 34:5,
68:25, 77:10, 80:20
**argued** [3] - 13:17,
68:16, 70:5
**argues** [3] - 23:23,
28:3, 73:18
**arguing** [3] - 79:11,
81:5, 81:6
**argument** [11] - 3:20,
11:1, 12:16, 45:2,
45:5, 69:4, 70:4,
74:16, 78:20, 79:12,
80:9
**arguments** [4] -
43:17, 46:7, 80:11,
82:15
**arose** [1] - 52:19
**arrested** [5] - 69:24,
71:6, 71:9, 73:13,
76:24
**arrive** [1] - 32:19
**arriving** [1] - 4:12
**article** [1] - 16:13
**aside** [2] - 37:21,
58:7
**assaulting** [1] -
72:14

**associate** [1] - 24:19
**assume** [2] - 34:20,
37:14
**assured** [1] - 26:15
**Atlanta** [2] - 55:16,
55:17
**atrocious** [1] - 5:9
**attack** [4] - 31:9,
31:10, 31:13, 31:19
**attest** [1] - 4:13
**attested** [2] - 6:25,
7:1
**attorney** [5] - 19:16,
26:14, 26:15, 26:22,
30:5
**ATTORNEY'S** [2] -
1:14, 1:17
**August** [1] - 25:6
**authority** [1] - 69:12
**available** [1] - 69:21
**Avenue** [2] - 2:3,
84:14
**average** [1] - 4:24
**avoid** [1] - 28:16
**awaiting** [1] - 22:1
**aware** [1] - 65:20

**B**

**backwards** [1] -
61:25
**bad** [1] - 48:13
**Bail** [1] - 12:9
**bail** [1] - 12:25
**balance** [1] - 24:10
**banker's** [1] - 20:19
**banners** [1] - 59:17
**bar** [1] - 30:22
**Barham** [4] - 71:4,
71:12, 71:13, 75:1
**barricades** [2] - 72:7,
73:2
**based** [12] - 11:23,
13:21, 37:24, 45:5,
49:6, 50:14, 56:12,
68:3, 69:6, 69:9,
77:23, 79:18
**bases** [1] - 74:19
**basis** [1] - 43:18
**batches** [2] - 26:11,
27:3
**battle** [1] - 13:5
**become** [1] - 33:10
**becomes** [2] - 29:16,
42:13
**BEFORE** [1] - 1:10
**beforehand** [1] -
42:2
**began** [1] - 26:7

**Begay** [1] - 30:20
**begin** [1] - 66:20
**beginning** [1] - 80:15
**begins** [1] - 66:17
**behalf** [1] - 3:22
**behind** [1] - 5:12
**beliefs** [1] - 58:19
**belong** [1] - 21:1
**bench** [1] - 59:25
**bending** [1] - 61:24
**benefit** [2] - 5:9, 5:10
**best** [7] - 14:4,
19:10, 19:11, 38:6,
47:9, 76:7, 84:7
**better** [1] - 29:25
**between** [2] - 28:24,
61:11
**beyond** [2] - 66:6,
66:13
**bias** [1] - 37:13
**Biden** [1] - 51:15
**big** [1] - 20:23
**biggest** [2] - 5:14,
6:11
**bit** [7] - 21:5, 42:13,
42:18, 43:8, 43:12,
62:16, 69:21
**blame** [3] - 28:15,
71:2, 78:16
**blasted** [1] - 70:24
**block** [2] - 47:4,
47:13
**blocking** [1] - 25:21
**board** [1] - 18:3
**bolster** [1] - 80:16
**bombarded** [1] -
59:16
**bond** [4] - 13:18,
13:25, 14:2, 82:15
**Box** [1] - 1:22
**boxes** [2] - 20:19,
20:24
**Brandon** [3] - 3:3,
3:12, 63:5
**BRANDON** [1] - 1:6
**breach** [2] - 29:4,
31:17
**break** [3] - 38:18,
39:16, 46:20
**breaking** [1] - 73:17
**bring** [14] - 4:21, 5:4,
5:7, 11:9, 11:18,
15:20, 16:1, 19:3,
26:9, 26:23, 37:1,
40:2, 71:24, 72:22
**bringing** [2] - 4:25,
79:11
**brings** [1] - 42:25
**broke** [1] - 12:13
**broken** [4] - 73:19,

75:7, 76:1, 76:2
**brought** [15] - 5:1,
5:14, 5:17, 5:23, 6:17,
6:24, 7:11, 10:3, 11:7,
13:24, 14:7, 15:22,
19:13, 52:18, 82:9
**Brown** [5] - 17:2,
17:8, 32:3, 48:24
**BROWN** [6] - 17:7,
17:23, 18:10, 18:18,
19:6, 19:15
**Building** [2] - 1:17,
63:13
**building** [10] - 10:20,
63:11, 63:12, 63:15,
72:15, 75:11, 75:17,
77:22, 78:6, 78:7
**bumped** [2] - 21:25,
22:10
**bumping** [2] - 25:22,
27:5
**bunch** [1] - 34:11
**burden** [2] - 72:6,
77:9
**Bureau** [1] - 28:12
**Burton** [1] - 24:6
**bus** [1] - 59:17
**bush** [1] - 71:5
**business** [1] - 54:19
**businesses** [1] -
54:7
**busy** [1] - 25:21
**BY** [1] - 2:1

**C**

**cake** [1] - 42:16
**camera** [1] - 74:4
**camp** [1] - 10:22
**candidate** [2] - 61:9
**cannot** [2] - 28:11,
72:9
**capital** [1] - 76:20
**Capitol** [19] - 31:10,
37:4, 37:22, 60:11,
63:6, 63:13, 63:15,
69:8, 70:15, 70:16,
70:19, 71:11, 73:24,
75:2, 76:3, 76:17,
76:19, 78:10, 78:14
**card** [1] - 33:18
**care** [2] - 14:10,
35:20
**carefully** [1] - 38:19
**CARES** [1] - 18:22
**Carolina** [1] - 3:7
**CAROLINA** [1] - 1:13
**Carpenter** [2] -
69:16, 71:18

**Carr** [2] - 71:4, 71:12
**case** [41] - 24:17,
24:21, 25:2, 26:2,
26:12, 29:10, 29:11,
29:14, 29:17, 30:2,
30:6, 37:23, 43:4,
43:22, 46:9, 46:12,
48:20, 48:23, 49:7,
52:16, 56:17, 56:21,
58:9, 62:1, 62:24,
63:1, 63:4, 64:6,
64:19, 64:23, 65:17,
69:15, 69:18, 71:3,
71:5, 71:12, 76:16,
77:15, 77:17, 77:20
**case-specific** [1] -
26:12
**cases** [8] - 10:18,
30:4, 55:19, 58:14,
69:15, 70:13, 71:18
**catch** [1] - 34:13
**catch-all** [1] - 34:13
**catchup** [1] - 11:4
**caused** [1] - 29:1
**cell** [6] - 18:9, 20:17,
22:22, 23:1, 47:4,
71:20
**certain** [6] - 12:13,
18:3, 40:10, 52:21,
63:13, 78:3
**certainly** [16] - 20:20,
28:20, 29:6, 40:23,
41:14, 43:21, 44:23,
45:17, 46:3, 67:19,
77:10, 80:2, 80:4,
80:5, 80:17, 82:11
**CERTIFICATE** [1] -
84:1
**certification** [1] -
63:8
**certify** [1] - 84:4
**chance** [1] - 62:24
**chances** [1] - 48:17
**change** [4] - 25:10,
58:21, 59:24, 65:8
**changed** [3] - 21:22,
62:11, 70:17
**changes** [8] - 17:4,
36:24, 38:20, 40:25,
46:15, 61:23, 64:15,
65:18
**Chapline** [1] - 1:18
**charge** [1] - 63:16
**charged** [6] - 22:19,
22:21, 22:24, 31:16,
31:18, 57:13
**charges** [7] - 10:21,
14:1, 22:20, 45:23,
63:17, 65:2, 79:20
**charging** [1] - 22:19

**checked** [1] - 10:5
**checkpoints** [2] -
54:7, 54:19
**Chief** [5] - 69:3, 69:4,
69:11, 69:14, 69:19
**choice** [1] - 44:10
**choices** [1] - 30:9
**choose** [4] - 44:4,
44:9, 44:10, 44:22
**chooses** [1] - 42:13
**chose** [1] - 29:23
**Chrestman** [3] -
69:5, 69:7, 77:17
**Circuit** [4] - 24:5,
30:18, 50:15, 70:11
**Circuits** [1] - 76:17
**circulated** [1] - 65:11
**circumstance** [3] -
24:15, 29:22, 30:3
**circumstances** [3] -
27:9, 28:5, 41:13
**cite** [1] - 72:5
**cited** [4] - 68:21,
69:3, 71:3, 77:16
**city** [2] - 49:8, 75:4
**Civil** [1] - 52:20
**civil** [1] - 70:19
**claim** [3] - 9:23, 26:5,
72:6
**claiming** [1] - 44:5
**claims** [1] - 26:25
**clear** [5] - 38:8,
40:24, 66:10, 66:16,
77:15
**clearly** [1] - 71:2
**clerk** [1] - 47:10
**close** [3] - 45:21,
51:10, 51:19
**closed** [1] - 31:7
**closer** [2] - 74:9
**closest** [2] - 35:14,
35:16
**closing** [11] - 42:9,
42:14, 42:23, 43:25,
45:2, 45:4, 45:18,
46:7, 80:10, 80:11,
80:20
**clothes** [1] - 32:19
**coined** [1] - 75:19
**colleague** [1] - 19:14
**collect** [1] - 35:5
**college** [1] - 76:1
**College** [1] - 63:9
**colloquy** [1] - 80:12
**Columbia** [3] - 2:2,
9:22, 84:13
**COLUMBIA** [1] - 1:1
**come-up** [1] - 19:2
**comfortable** [4] -

41:4, 42:1, 43:1, 56:3
**comment** [2] - 44:3,
67:20
**committed** [1] -
69:24
**committing** [1] -
11:11
**common** [1] - 23:2
**communications** [1]
- 4:14
**compared** [1] - 55:15
**competency** [2] -
17:22, 29:5
**competent** [2] -
24:17, 29:18
**complained** [1] -
28:23
**complaints** [1] - 4:21
**complete** [1] - 68:23,
79:19, 84:6
**completed** [1] - 10:4
**complex** [1] - 50:21
**complexity** [1] - 50:3
**comply** [1] - 21:12
**computer** [5] - 9:18,
9:25, 20:12, 20:13,
28:9
**computers** [1] - 22:5
**conceivable** [3] -
20:5, 20:21, 79:22
**concept** [1] - 50:22
**concern** [10] - 13:3,
26:4, 49:15, 49:18,
52:13, 52:14, 52:23,
59:19, 61:6, 62:17
**concerned** [4] - 9:17,
25:8, 52:11, 82:21
**concerns** [5] - 26:1,
42:10, 63:18, 64:5,
65:10
**concerts** [1] - 76:7
**concluded** [1] - 83:5
**conclusions** [1] -
68:17
**conduct** [3] - 63:6,
63:11, 63:15
**conducted** [4] - 49:4,
55:15, 55:22, 57:8
**CONFERENCE** [1] -
1:9
**conference** [1] -
26:17
**confident** [1] - 72:10
**confirmed** [2] -
26:14, 26:22
**conflating** [1] - 78:21
**confused** [2] - 76:19,
76:20
**confusing** [1] - 75:18
**confusion** [1] - 31:7

**Congress** [2] - 31:9,
57:7
**Congress's** [1] -
63:8
**congressmen** [1] -
53:11
**consider** [5] - 24:7,
49:19, 81:3, 82:3,
82:7
**considerable** [1] -
37:11
**consideration** [2] -
24:18, 43:1
**considered** [2] -
20:10, 36:20
**considering** [2] -
16:25, 24:6
**constantly** [1] -
16:10
**constitutes** [1] - 84:4
**Constitution** [2] -
2:3, 84:14
**constitutional** [1] -
35:4
**contact** [2] - 24:4,
40:7
**contain** [1] - 30:4
**contempt** [1] - 14:1
**continually** [3] -
5:23, 12:21, 13:24
**continuance** [7] -
11:22, 12:5, 12:7,
24:16, 24:20, 28:3,
28:6
**continuances** [2] -
24:9, 29:12
**continue** [10] - 3:17,
6:11, 23:13, 23:22,
24:7, 27:25, 30:11,
32:16, 54:15, 76:23
**continued** [1] - 25:2
**continuing** [5] -
13:4, 24:20, 24:24,
25:20, 54:2
**continuous** [2] -
6:17, 27:6
**continuously** [6] -
4:25, 5:14, 5:18,
11:11, 13:22, 16:8
**contraband** [1] -
20:10
**contrary** [1] - 27:1
**contributed** [2] -
24:14, 28:4
**contrived** [1] - 24:14
**control** [1] - 28:9
**convenience** [1] -
24:10
**Convention** [1] -
53:5

**conversations** [1] -
20:1
**convey** [1] - 48:16
**conviction** [2] -
48:21, 71:15
**convictions** [1] -
74:25
**convincing** [1] -
66:11
**cool** [1] - 74:6
**copy** [7] - 8:24,
20:19, 20:23, 36:14,
47:7, 64:4, 67:16
**correct** [12] - 8:7,
8:12, 8:14, 17:23,
18:6, 19:13, 20:14,
22:1, 32:13, 38:14,
73:5, 79:4
**corrected** [1] - 14:12
**CORRECTIONS** [1] -
1:24
**Corrections** [1] -
19:20
**correctly** [1] - 9:9
**counsel** [14] - 1:21,
3:4, 3:9, 3:12, 13:14,
19:15, 24:4, 24:11,
24:17, 24:18, 24:19,
24:24, 29:19, 33:12
**Counsel** [1] - 19:16
**counsel's** [1] - 10:9
**count** [1] - 81:19
**counter** [1] - 79:15
**country** [4] - 52:19,
75:21, 76:19
**counts** [1] - 65:15
**couple** [6] - 3:23,
4:2, 4:16, 4:21, 17:19,
64:15
**course** [8] - 10:23,
13:17, 29:5, 29:21,
43:7, 44:10, 67:21,
77:16
**Court** [46] - 2:1, 2:2,
4:18, 5:1, 5:12, 5:19,
7:11, 7:12, 7:15, 7:16,
10:3, 11:7, 12:13,
13:2, 18:24, 23:13,
24:12, 25:20, 26:15,
30:10, 30:16, 31:3,
31:11, 39:7, 39:9,
40:9, 40:16, 42:17,
43:1, 43:2, 43:10,
48:16, 50:8, 61:21,
64:7, 66:6, 68:2,
68:17, 71:25, 72:21,
77:16, 78:23, 81:3,
82:2, 84:12, 84:13
**court** [14] - 8:20,
12:2, 12:22, 13:21,

14:1, 17:12, 17:17,
37:25, 41:2, 71:10,
74:24, 82:8
**COURT** [173] - 1:1,
3:10, 3:14, 4:1, 4:7,
8:4, 8:10, 8:14, 9:8,
9:16, 10:1, 12:19,
12:24, 14:14, 15:15,
16:5, 17:1, 17:22,
18:6, 18:16, 19:4,
19:13, 19:17, 19:21,
20:13, 20:16, 20:25,
21:3, 21:5, 21:18,
21:24, 22:12, 22:22,
23:3, 23:7, 23:10,
23:12, 32:9, 32:14,
32:19, 32:22, 35:22,
36:1, 36:13, 36:17,
36:23, 37:9, 37:15,
37:19, 38:8, 38:15,
38:17, 39:4, 39:11,
39:15, 40:12, 41:23,
42:7, 43:13, 44:9,
44:17, 45:3, 46:1,
46:22, 47:1, 47:6,
47:14, 47:19, 47:23,
48:3, 48:8, 48:11,
49:15, 49:23, 50:1,
50:7, 50:17, 51:5,
51:7, 51:10, 51:17,
51:22, 51:25, 52:6,
52:11, 52:23, 53:2,
53:7, 53:10, 53:12,
53:14, 53:19, 53:21,
53:25, 54:10, 54:16,
54:21, 54:25, 55:8,
55:11, 55:24, 56:5,
56:7, 56:13, 56:15,
56:23, 57:4, 57:11,
57:16, 57:23, 58:6,
58:15, 58:20, 58:24,
59:6, 59:18, 59:23,
60:5, 60:7, 60:10,
60:19, 61:3, 61:6,
61:13, 61:16, 61:22,
62:5, 62:10, 62:14,
62:19, 62:21, 63:1,
63:3, 63:24, 64:3,
64:9, 64:16, 64:22,
65:4, 65:7, 65:13,
65:22, 66:1, 66:14,
66:24, 67:4, 67:10,
67:13, 68:5, 69:1,
70:2, 71:21, 73:1,
73:21, 74:18, 75:5,
77:2, 77:5, 77:21,
78:5, 78:9, 79:2, 79:9,
79:14, 79:16, 80:24,
81:4, 81:17, 81:24,
82:4, 82:10, 82:25,
83:2

**Court's** [6] - 5:9, 11:21, 12:18, 25:23, 26:4, 32:6
  **court-ordered** [1] - 17:17
  **Courthouse** [1] - 1:18
  **COURTROOM** [3] - 3:1, 36:15, 64:11
  **courtroom** [3] - 8:19, 41:3, 42:3
  **courts** [2] - 24:7, 77:1
  **Courts** [1] - 25:17
  **covered** [3] - 51:5, 51:6, 51:11
  **covers** [1] - 37:25
  **crazy** [1] - 9:22
  **created** [1] - 27:10
  **credit** [1] - 26:25
  **crime** [7] - 55:6, 55:13, 55:21, 56:2, 57:19, 58:23, 69:24
  **crimes** [5] - 31:16, 31:18, 56:18, 57:13, 63:5
  **criminal** [2] - 13:10, 63:4
  **Criminal** [3] - 1:3, 1:14, 3:2
  **CRR** [3] - 2:1, 84:3, 84:12
  **Crypt** [2] - 73:10, 74:12
  **curfew** [1] - 54:8

**D**

**D.C** [48] - 1:6, 1:15, 1:24, 2:4, 5:5, 5:17, 7:25, 8:5, 8:11, 10:13, 17:14, 18:7, 18:12, 18:21, 19:7, 19:9, 19:10, 19:14, 19:20, 19:25, 21:1, 21:3, 23:25, 24:5, 26:21, 27:3, 27:4, 27:8, 27:10, 27:13, 27:15, 27:19, 27:22, 27:25, 29:3, 49:9, 50:15, 55:19, 67:8, 70:10, 71:10, 74:24, 75:3, 75:11, 76:10, 76:12, 76:17, 84:14
  **danger** [1] - 48:19
  **Dated** [1] - 84:10
  **dates** [1] - 25:20
  **David** [1] - 3:8
  **DAVID** [1] - 1:16

**days** [6] - 4:14, 16:17, 17:20, 17:21, 17:25, 21:16
  **DDA** [1] - 5:25
  **deadline** [3] - 41:22, 41:23, 82:10
  **deadlines** [1] - 68:8
  **deal** [6] - 7:16, 9:3, 14:19, 38:21, 39:23, 56:19
  **dealing** [2] - 12:22, 70:19
  **deals** [3] - 10:12, 10:23, 81:14
  **debate** [1] - 6:15
  **decide** [3] - 37:23, 38:4, 42:24, 58:9, 69:20
  **decision** [3] - 4:19, 6:7, 11:23
  **decisions** [1] - 36:10
  **Defendant** [45] - 1:7, 3:12, 19:5, 19:7, 23:22, 24:14, 24:16, 25:9, 25:12, 26:8, 26:9, 26:16, 26:18, 26:19, 26:21, 26:23, 27:7, 28:1, 28:4, 28:6, 28:14, 28:16, 28:19, 28:23, 29:18, 29:25, 36:14, 36:16, 42:12, 42:19, 42:24, 43:4, 43:8, 43:20, 48:20, 48:24, 62:12, 64:10, 64:12, 68:3, 69:7, 77:9, 77:23, 78:25
  **defendant** [3] - 19:3, 26:2, 61:24
  **DEFENDANT** [108] - 1:21, 3:23, 4:6, 4:8, 8:8, 8:13, 8:16, 9:11, 10:2, 12:20, 13:6, 14:17, 15:17, 16:7, 32:13, 35:20, 36:9, 38:2, 38:23, 39:5, 39:14, 40:6, 44:8, 44:15, 45:25, 46:23, 47:22, 47:25, 48:5, 48:9, 48:12, 49:20, 49:24, 50:3, 50:8, 50:20, 51:6, 51:8, 51:12, 51:21, 51:24, 52:2, 52:8, 52:15, 53:1, 53:4, 53:8, 53:11, 53:13, 53:18, 54:2, 54:12, 54:17, 55:3, 55:10, 55:12, 56:4, 56:9, 56:14, 56:22, 57:3, 57:5, 57:21, 57:24, 58:11,

58:16, 58:22, 59:10, 59:21, 60:4, 60:6, 60:16, 60:20, 61:5, 61:15, 61:19, 62:3, 62:25, 63:2, 63:19, 64:1, 64:7, 64:13, 64:20, 65:1, 65:6, 65:20, 65:23, 66:5, 66:19, 67:1, 67:6, 67:11, 68:15, 69:2, 70:3, 71:23, 73:6, 73:24, 74:23, 75:8, 79:15, 80:22, 81:2, 81:5, 81:25, 82:5, 83:1
  **defendant's** [1] - 13:10
  **Defendant's** [18] - 3:16, 19:21, 21:14, 23:13, 23:15, 23:18, 23:21, 24:21, 25:2, 25:5, 25:6, 26:5, 26:12, 26:25, 27:18, 29:2, 30:8, 67:24
  **defendants** [7] - 18:4, 18:13, 19:12, 25:14, 25:15, 25:22, 30:24
  **Defendants** [8] - 27:11, 27:14, 27:15, 40:15, 48:15, 48:22, 49:5, 55:21
  **defense** [26] - 16:15, 29:4, 29:7, 30:10, 30:12, 30:22, 30:25, 43:22, 50:4, 50:9, 50:21, 67:24, 68:4, 68:8, 68:10, 69:7, 77:13, 79:19, 80:3, 80:14, 80:16, 80:18, 81:6, 81:18, 81:24
  **definitely** [3] - 9:2, 11:15, 15:19
  **degree** [1] - 26:19
  **delay** [5] - 5:22, 24:9, 24:12, 25:9, 29:8
  **delayed** [1] - 29:20
  **Dellums** [3] - 70:13, 71:11, 75:1
  **democracy** [2] - 31:14, 31:19
  **Democrat** [1] - 55:16
  **Democratic** [1] - 53:5
  **denial** [1] - 78:24
  **denied** [4] - 10:11, 13:1, 26:5, 68:2
  **denies** [4] - 30:10, 30:16, 31:3, 31:11
  **deny** [4] - 4:19,

14:15, 14:23, 23:21
  **denying** [2] - 24:20, 66:24
  **DEPARTMENT** [1] - 1:24
  **Department** [1] - 19:20
  **Departments** [1] - 75:2
  **depicted** [1] - 30:14
  **deputy** [2] - 41:3, 47:1
  **Deputy** [3] - 17:2, 32:3, 64:17
  **DEPUTY** [9] - 3:1, 17:7, 17:23, 18:10, 18:18, 19:6, 19:15, 36:15, 64:11
  **derangement** [1] - 48:14
  **described** [2] - 80:1, 80:17
  **descriptors** [1] - 31:10
  **designed** [1] - 37:13
  **desire** [2] - 25:22, 48:15
  **despite** [1] - 29:23
  **destroying** [1] - 8:21
  **detailed** [3] - 4:11, 4:18, 7:13
  **determined** [1] - 35:9
  **device** [1] - 71:24
  **different** [8] - 10:21, 29:11, 43:4, 58:17, 61:7, 65:14, 66:12, 78:21
  **difficult** [7] - 28:7, 28:25, 29:13, 29:15, 29:16, 41:2, 44:4
  **difficulties** [1] - 27:17
  **difficulty** [2] - 37:21, 58:7
  **dilatory** [1] - 24:13
  **dire** [12] - 32:1, 32:22, 34:24, 36:4, 36:7, 39:20, 41:19, 46:15, 47:21, 47:23, 61:19, 62:22
  **direct** [3] - 39:25, 67:15, 80:7
  **direction** [2] - 74:11, 78:3
  **directions** [3] - 73:11, 74:21, 78:6
  **disagree** [2] - 6:16, 72:19
  **disaster** [1] - 6:18

**disc** [1] - 8:1
  **discovery** [40] - 6:13, 6:14, 6:18, 6:23, 7:4, 7:11, 7:24, 8:2, 8:21, 9:4, 13:7, 14:17, 15:1, 15:22, 19:11, 19:22, 19:25, 20:2, 20:3, 20:6, 20:7, 20:19, 20:24, 21:9, 22:11, 23:23, 26:5, 26:8, 26:12, 26:18, 26:20, 27:3, 27:14, 30:2, 30:5, 40:7, 68:20, 68:23, 71:24
  **discuss** [6] - 3:16, 33:14, 45:18, 46:6, 67:19, 80:7
  **discussing** [3] - 41:17, 41:19, 45:6
  **discussion** [1] - 74:21
  **disorderly** [2] - 63:11, 63:15
  **disorders** [1] - 70:20
  **disorganized** [1] - 16:2
  **dispersal** [3] - 72:4, 72:8, 73:1
  **dispersals** [1] - 71:7
  **disrepair** [1] - 22:8
  **disruptive** [1] - 63:11
  **distinctly** [1] - 29:2
  **distinguish** [1] - 61:11
  **DISTRICT** [3] - 1:1, 1:1, 1:10
  **District** [4] - 2:2, 2:2, 9:21, 84:13
  **district** [1] - 84:13
  **diversify** [1] - 6:2
  **divided** [2] - 52:19, 52:20
  **DNC** [1] - 53:5
  **DOC** [1] - 9:21
  **document** [4] - 9:12, 11:22, 36:16, 64:12
  **documentary** [2] - 23:16, 30:14
  **documented** [2] - 10:7, 16:25
  **documents** [3] - 5:10, 12:8, 13:12
  **dollars** [1] - 16:23
  **Donald** [5] - 60:22, 60:25, 61:4, 61:14, 69:9
  **done** [8] - 15:4, 15:11, 27:21, 33:9, 35:5, 41:11, 42:18, 43:10

**door** [2] - 76:2, 76:4
**doubt** [4] - 30:5, 31:22, 66:6, 66:13
**down** [12] - 4:12, 12:6, 33:18, 35:11, 41:2, 47:12, 47:13, 47:15, 48:6, 54:20, 56:7, 74:6
**downstairs** [1] - 46:24
**draft** [3] - 36:17, 46:15, 46:17
**drag** [1] - 26:3
**drives** [5] - 20:3, 20:9, 20:12, 20:14
**due** [3] - 5:6, 7:14, 13:13
**dump** [1] - 7:4
**duration** [1] - 22:21
**during** [10] - 4:24, 6:12, 13:18, 17:18, 20:1, 20:4, 22:22, 29:11, 30:17, 79:12
**duty** [2] - 71:16, 73:16

## E

**early** [1] - 4:19
**eat** [1] - 42:16
**ECF** [2] - 23:14, 23:17
**edit** [1] - 67:21
**EDWARDS** [2] - 2:1, 84:3
**Edwards** [1] - 84:12
**efficient** [1] - 15:13
**efficiently** [2] - 16:22, 36:12
**efforts** [2] - 27:4, 27:12
**egregious** [2] - 28:19, 29:4
**either** [5] - 31:18, 33:9, 44:11, 44:12, 45:13
**Ekur** [1] - 69:16
**election** [1] - 63:10
**Electoral** [1] - 63:9
**electronic** [9] - 5:7, 5:8, 6:4, 19:11, 19:25, 21:9, 22:4, 26:20, 27:14
**element** [8] - 56:19, 59:10, 65:3, 70:8, 72:24, 75:14, 77:8, 77:10
**elements** [4] - 65:4, 66:18, 77:14, 77:18

**eliminate** [1] - 49:11
**emotional** [2] - 49:7, 60:23
**emotions** [1] - 31:2
**encountering** [2] - 7:14, 13:20
**encourage** [2] - 40:18, 80:13
**end** [6] - 7:17, 35:15, 50:12, 51:13, 66:18, 80:19
**ended** [3] - 13:5, 13:15, 40:25
**enforcement** [1] - 51:14
**ensure** [3] - 27:13, 70:22, 74:2
**ensuring** [1] - 26:17
**enter** [1] - 49:13
**entering** [3] - 63:10, 63:12, 77:21
**entire** [1] - 6:9
**entirely** [3] - 10:7, 44:10, 58:17
**entitled** [2] - 20:23, 77:12
**entrapment** [34] - 11:1, 11:2, 50:4, 50:9, 50:16, 50:18, 65:24, 66:3, 67:18, 67:24, 68:8, 68:10, 69:5, 69:17, 69:22, 70:7, 70:9, 70:12, 71:22, 72:25, 74:19, 77:13, 78:19, 79:1, 79:23, 80:3, 80:8, 80:14, 80:16, 80:18, 80:20, 81:5, 81:13, 81:18
**erring** [2] - 10:6, 11:18
**especially** [3] - 13:20, 16:24, 28:7
**ESQ** [4] - 1:13, 1:16, 1:21, 1:24
**essence** [1] - 78:15
**essential** [1] - 75:14
**essentially** [2] - 42:15, 56:21
**established** [2] - 71:2, 77:19
**estoppel** [14] - 11:2, 50:4, 50:9, 65:24, 69:5, 69:17, 70:7, 70:9, 70:12, 77:14, 78:19, 79:1, 81:6, 81:13
**Evans** [1] - 55:23
**event** [2] - 30:15, 68:9
**events** [9] - 30:14,

37:22, 37:23, 44:13, 44:23, 45:9, 45:10, 58:8, 58:9
**evidence** [25] - 10:25, 12:11, 13:11, 23:16, 23:24, 31:5, 31:11, 37:24, 41:1, 43:16, 43:19, 45:6, 45:8, 45:9, 45:13, 45:14, 45:19, 50:11, 66:21, 69:21, 72:17, 73:7, 80:6, 80:15, 81:20
**evoke** [1] - 60:22
**exact** [1] - 74:7
**exactly** [2] - 12:20, 79:7
**examination** [1] - 29:5
**example** [6] - 48:19, 48:23, 50:10, 54:5, 54:18, 75:25
**Excel** [1] - 74:22
**except** [1] - 45:2
**excluded** [2] - 31:5, 40:8
**excuse** [2] - 12:1, 34:21
**exhibit** [2] - 40:21, 40:22
**exhibits** [2] - 6:25, 40:22
**expect** [5] - 39:8, 40:23, 41:7, 46:17, 67:13
**expecting** [1] - 35:8
**expiration** [1] - 18:22
**explain** [2] - 42:18, 66:6
**explaining** [1] - 44:12
**explanation** [2] - 49:16, 50:2
**explicitly** [1] - 29:22
**express** [4] - 69:10, 70:9, 72:1, 74:15
**expressly** [1] - 69:12
**extend** [2] - 28:1, 39:2
**extension** [1] - 13:14
**extent** [1] - 45:9
**extraordinary** [3] - 27:4, 27:12, 27:24

## F

**F.2d** [1] - 24:6
**F.3d** [2] - 30:19, 30:20

**face** [1] - 74:4
**facilities** [3] - 17:11, 17:19, 19:8
**facing** [2] - 13:24, 45:23
**fact** [4] - 14:8, 68:3, 77:24, 77:25
**factor** [1] - 28:2
**factors** [3] - 12:10, 24:8, 24:24
**facts** [3] - 6:25, 45:22, 75:6
**failed** [2] - 71:15, 76:25
**failing** [2] - 44:1, 44:3
**fair** [4] - 31:10, 31:14, 37:23, 58:9
**fairly** [1] - 52:22
**faith** [1] - 43:18
**fall** [1] - 22:7
**falsely** [1] - 48:25
**family** [3] - 60:21, 60:23, 61:1
**far** [5] - 4:16, 19:10, 35:15, 43:9, 73:9
**fast** [1] - 39:1
**fault** [2] - 29:6, 30:8
**favor** [1] - 25:11
**FBI** [2] - 12:8, 13:12
**fear** [1] - 16:2
**February** [1] - 25:4
**Federal** [1] - 1:17
**federal** [3] - 31:16, 52:24, 63:5
**feelings** [4] - 58:1, 58:3, 60:25, 61:4
**feet** [1] - 26:3
**Fellows** [38] - 3:3, 3:12, 3:15, 3:19, 8:4, 12:24, 17:1, 17:3, 17:10, 32:10, 32:17, 32:23, 35:1, 35:18, 36:5, 36:7, 37:19, 38:17, 40:2, 41:5, 43:15, 44:7, 45:24, 46:3, 46:14, 46:22, 47:20, 50:7, 56:24, 62:24, 63:5, 63:16, 65:13, 68:5, 71:21, 79:17, 81:24, 82:25
**FELLOWS** [1] - 1:6
**felony** [3] - 79:20, 79:21, 81:6
**felt** [2] - 10:19, 69:7
**ferret** [1] - 37:13
**few** [8] - 4:14, 21:16, 27:16, 28:25, 39:17, 47:14, 65:20
**fifth** [2] - 24:14,

63:14
**fight** [2] - 13:4, 81:15
**figure** [3] - 6:19, 11:4, 35:12
**file** [3] - 7:20, 11:3, 82:11
**filed** [4] - 13:14, 16:14, 68:7, 68:9
**files** [10] - 5:7, 5:8, 6:4, 7:14, 15:5, 15:6, 15:9, 15:16, 15:18, 72:22
**fill** [1] - 35:2
**final** [7] - 11:20, 35:6, 66:1, 66:14, 67:15, 67:17, 80:12
**finally** [4] - 5:3, 13:7, 24:19, 30:22
**fine** [1] - 40:3
**finger** [1] - 49:1
**fired** [1] - 29:19
**firm** [1] - 78:23
**First** [1] - 76:22
**first** [27] - 3:16, 9:7, 16:22, 23:13, 24:8, 25:1, 29:3, 32:2, 33:1, 41:14, 41:15, 43:21, 46:2, 48:5, 48:6, 49:20, 54:10, 54:11, 54:22, 55:5, 63:7, 67:17, 70:16, 72:19, 73:7, 74:8
**fit** [1] - 56:18
**five** [3] - 12:8, 17:11, 63:5
**fixed** [1] - 22:8
**flagging** [1] - 43:13
**flash** [5] - 20:3, 20:9, 20:11, 20:14
**focus** [2] - 16:19, 82:14
**focusing** [1] - 51:14
**folks** [3] - 3:10, 47:16, 82:18
**follow** [5] - 8:18, 49:12, 70:19, 78:3, 78:13
**following** [3] - 23:22, 24:7, 47:18
**followup** [3] - 33:8, 33:25, 59:25
**followups** [1] - 60:14
**fooled** [2] - 10:19, 12:13
**footage** [3] - 30:14, 59:5, 59:8
**FOR** [4] - 1:1, 1:13, 1:21, 1:24
**foregoing** [1] - 84:4
**forget** [2] - 69:14,

71:18

**forgetting** [1] - 52:3
**forgive** [2] - 63:19, 70:1
**form** [6] - 21:13, 21:16, 21:21, 21:22, 70:6
**format** [1] - 44:12
**forms** [2] - 15:2, 74:15
**Fort** [1] - 17:17
**founded** [1] - 75:22
**four** [4] - 10:8, 16:17, 19:2, 26:11
**fourth** [3] - 24:12, 29:18, 63:12
**FPD** [1] - 21:3
**frankly** [8] - 25:3, 25:8, 25:14, 25:20, 26:18, 27:10, 27:19, 68:7
**free** [3] - 22:20, 32:4, 32:15
**frequent** [1] - 17:4
**frequently** [2] - 22:7, 22:15
**friend** [1] - 6:6
**friendly** [2] - 77:25, 78:1
**friends** [2] - 51:8, 51:10
**front** [3] - 45:6, 55:22, 65:10
**frustration** [1] - 27:18
**full** [4] - 6:14, 11:22, 71:12, 84:5
**fully** [1] - 30:6
**fun** [1] - 54:20

# G

**game** [2] - 11:4, 31:14
**gates** [2] - 54:6, 54:18
**gather** [1] - 14:4
**general** [2] - 19:15, 30:24
**General** [1] - 19:16
**George** [1] - 71:5
**Georgia** [1] - 55:16
**given** [16] - 5:6, 5:11, 7:23, 7:25, 20:14, 30:3, 30:18, 36:5, 38:25, 39:7, 50:3, 50:11, 66:9, 75:20, 77:24, 79:19
**glad** [1] - 81:7

**global** [1] - 6:23
**good-faith** [1] - 43:18
**gotcha** [1] - 58:11
**government** [3] - 52:25, 57:7, 75:16
**GOVERNMENT** [1] - 1:13
**Government** [46] - 6:15, 11:8, 11:14, 12:9, 12:17, 14:12, 21:25, 25:19, 26:6, 26:7, 26:11, 27:2, 29:9, 29:13, 29:15, 29:16, 30:13, 30:22, 30:23, 31:16, 31:21, 35:2, 36:20, 36:23, 38:12, 39:19, 41:10, 41:13, 41:25, 43:24, 44:19, 44:20, 46:1, 46:5, 46:11, 54:23, 56:5, 65:10, 67:16, 68:9, 68:13, 73:17, 76:4, 77:3, 80:3, 81:21
**Government's** [17] - 3:18, 3:20, 11:1, 23:19, 31:11, 40:23, 43:23, 45:14, 57:11, 58:21, 59:19, 62:23, 63:3, 64:23, 65:16, 67:21, 67:23
**grab** [2] - 48:9, 48:10
**granted** [3] - 24:10, 70:11, 71:25
**grateful** [1] - 7:5
**great** [2] - 26:6, 47:6
**greatest** [1] - 16:1
**ground** [1] - 78:10
**grounds** [3] - 63:11, 63:12, 77:22
**group** [12] - 33:1, 50:25, 51:1, 51:7, 52:5, 52:6, 53:15, 53:16, 53:22, 55:1, 62:14
**guarantee** [3] - 10:12, 11:13, 11:15
**guard** [2] - 25:17, 73:25
**guess** [4] - 43:10, 59:21, 72:20
**guilty** [9] - 55:6, 55:13, 55:18, 55:21, 56:1, 57:19, 58:23, 63:16, 81:12
**Guy** [1] - 48:19
**guys** [1] - 47:11

# H

**half** [2] - 7:8, 29:10
**hampered** [1] - 24:1
**hand** [1] - 33:6
**handed** [1] - 67:5
**handle** [4] - 19:24, 32:1, 39:23, 44:21
**handwriting** [1] - 5:8
**handwritten** [3] - 39:6, 39:12, 40:3
**happy** [9] - 38:20, 49:19, 50:19, 64:24, 68:5, 68:12, 72:5, 73:14, 80:10
**hard** [4] - 20:19, 20:23, 37:14, 44:17
**hard-copy** [2] - 20:19, 20:23
**hardly** [1] - 30:3
**harmed** [1] - 54:7
**havoc** [1] - 25:23
**Hawaii** [1] - 1:22
**haystack** [1] - 7:3
**head** [1] - 11:25
**hear** [15] - 4:8, 14:14, 25:12, 33:15, 34:7, 38:20, 52:23, 56:23, 60:2, 64:24, 68:5, 68:12, 70:18, 74:18, 81:1
**heard** [7] - 4:5, 31:21, 37:22, 58:8, 66:9, 70:22, 77:3
**hearing** [6] - 16:3, 16:5, 36:11, 55:18, 73:3, 78:17
**hearings** [2] - 18:24, 18:25
**heightened** [1] - 26:4
**held** [5] - 10:15, 12:14, 21:15, 24:5, 81:14
**help** [6] - 14:24, 16:5, 21:18, 32:17, 40:12, 40:16
**helpful** [1] - 59:20, 66:7
**helping** [2] - 5:25, 50:10
**helps** [2] - 48:13, 66:11
**hereby** [1] - 84:3
**hideaway** [1] - 63:14
**high** [1] - 70:10
**highly** [2] - 9:3, 49:7
**himself** [4] - 3:13, 28:15, 29:22, 43:5
**history** [2] - 73:14,

76:12

**hold** [3] - 8:20, 60:7, 64:3
**holdover** [1] - 17:19
**honestly** [1] - 39:8
**Honor** [34] - 3:1, 3:7, 3:11, 9:20, 19:19, 19:23, 20:15, 21:7, 21:22, 22:2, 23:9, 23:11, 32:5, 36:15, 36:22, 36:25, 37:2, 37:18, 38:14, 38:16, 41:21, 42:6, 42:8, 42:25, 46:21, 53:20, 56:6, 56:16, 61:8, 65:12, 68:1, 77:4, 78:11, 81:23
**HONORABLE** [1] - 1:10
**hope** [1] - 32:19
**hopes** [1] - 48:21
**hoping** [6] - 4:10, 4:15, 8:24, 25:9, 50:24, 66:5
**Hopkins** [1] - 36:13
**hours** [4] - 7:25, 8:16, 19:2, 22:14
**house** [6] - 18:3, 19:8, 75:19, 75:20, 76:8
**housed** [2] - 18:19, 18:20
**Howell** [3] - 69:11, 69:14, 69:19
**Howell's** [1] - 69:4
**husher** [2] - 33:13, 33:21
**hypothetical** [1] - 45:11

# I

**idea** [1] - 58:18
**identifiable** [1] - 24:21
**IGAs** [1] - 18:14
**illegal** [1] - 71:8
**illegitimate** [1] - 27:22
**imagine** [1] - 76:1
**imagining** [1] - 44:17
**impacted** [2] - 62:19, 62:21
**impartial** [3] - 37:24, 58:9, 62:3
**implicates** [1] - 42:9
**implied** [5] - 50:15, 69:9, 69:22, 70:9, 74:15

**imply** [1] - 69:13
**important** [2] - 6:12, 34:3
**importantly** [1] - 25:24
**impressed** [1] - 26:19
**impression** [1] - 50:13
**improper** [1] - 14:18
**improve** [1] - 29:14
**in-person** [1] - 18:24
**inaction** [5] - 70:4, 70:6, 70:8, 71:17, 78:20
**inactions** [2] - 50:14, 50:15
**inauguration** [1] - 71:5
**incarcerated** [5] - 23:24, 25:15, 28:8, 28:10
**inclined** [3] - 44:21, 54:21, 54:22
**include** [1] - 65:3
**included** [1] - 75:12
**including** [7] - 17:4, 24:17, 44:1, 45:10, 66:18, 69:19, 79:20
**inconvenience** [2] - 24:11, 29:8
**inconvenient** [1] - 29:21
**increase** [1] - 48:16
**increasingly** [1] - 29:16
**indication** [1] - 72:24
**indicator** [1] - 34:17
**indigent** [1] - 40:15
**individual** [1] - 55:19
**individuals** [3] - 19:24, 22:4, 22:10
**inevitable** [1] - 28:8
**inflammatory** [2] - 23:19, 31:1
**inform** [1] - 73:17
**information** [3] - 33:3, 40:7, 80:1
**initiated** [1] - 21:9
**inmate** [1] - 5:21
**inmates** [1] - 22:13
**innocent** [1] - 63:17
**input** [1] - 39:21
**inside** [2] - 72:2, 72:14
**installed** [1] - 7:19
**instance** [4] - 16:11, 48:14, 50:10, 53:4
**instead** [3] - 16:18, 51:13, 62:21

instruction [7] - 50:19, 65:25, 66:14, 79:4, 79:9, 79:24, 80:14
Instruction [1] - 65:14
instructions [22] - 46:2, 46:4, 46:8, 46:17, 47:7, 63:20, 65:9, 65:11, 65:19, 66:1, 66:17, 67:7, 67:14, 67:15, 67:17, 74:1, 74:24, 79:13, 80:12
insulate [1] - 27:23
insurrection [2] - 31:13, 31:15
intend [2] - 32:11, 43:20
intended [1] - 57:6
intense [1] - 72:13
intention [1] - 32:6
intentions [1] - 48:14
interacting [1] - 73:23
interaction [2] - 33:22, 77:25
interest [2] - 25:16, 25:18
interesting [2] - 42:10, 42:25
interests [1] - 25:25
interfere [1] - 28:12
interim [2] - 46:11, 46:19
intermittent [1] - 24:3
internet [1] - 37:5
introduce [3] - 15:7, 41:1, 80:15
investigations [1] - 5:24
invited [1] - 74:9
involvement [1] - 80:4
irritated [1] - 14:8
issue [3] - 7:11, 22:6, 76:22
issued [2] - 20:12, 21:21
issues [13] - 6:18, 7:1, 7:13, 13:20, 13:24, 15:22, 16:25, 18:11, 18:12, 21:11, 31:7, 43:14, 44:25
IT [1] - 42:1
it'll [1] - 16:3
itself [1] - 27:23

**J**

Jail [29] - 5:4, 5:5, 5:17, 7:25, 8:5, 8:11, 10:14, 17:15, 18:7, 18:12, 19:7, 19:9, 19:10, 19:14, 19:25, 21:1, 23:25, 26:22, 27:4, 27:8, 27:10, 27:13, 27:15, 27:19, 27:22, 27:25, 29:3, 67:9
jail [10] - 4:12, 4:18, 5:24, 7:15, 16:21, 18:9, 20:10, 23:8, 27:6, 71:20
Jail's [1] - 21:3
jail's [1] - 7:17
jails [5] - 4:23, 10:14, 11:8, 12:17, 27:21
January [30] - 10:18, 26:2, 27:10, 27:13, 30:4, 30:24, 31:17, 37:4, 45:12, 48:15, 48:20, 48:22, 48:24, 49:5, 54:4, 54:5, 54:14, 54:18, 55:1, 55:21, 58:4, 58:14, 59:5, 59:9, 60:12, 61:10, 62:1, 62:13, 62:15, 63:7
Jeff [1] - 63:22
Jeffrey [1] - 48:23
Jencks [2] - 41:22, 41:23
join [1] - 29:11
joined [1] - 3:8
JUDGE [1] - 1:10
Judge [8] - 16:20, 49:9, 57:3, 62:20, 69:4, 69:11, 69:14, 69:19
judge [3] - 57:12, 62:7, 77:16
judges [4] - 18:23, 49:8, 69:18, 70:7
judging [1] - 52:22
July [4] - 1:6, 7:6, 20:2, 84:10
June [4] - 5:5, 20:2, 26:13, 26:22
juror [15] - 33:11, 33:22, 33:23, 33:25, 34:2, 34:3, 34:4, 34:5, 34:8, 34:12, 34:13, 34:21, 48:13, 48:20, 48:24
Juror [5] - 35:13, 35:14, 35:15, 35:16,

35:22
jurors [8] - 32:24, 33:17, 33:20, 34:23, 35:3, 35:10, 48:7, 50:9
jurors' [1] - 31:1
jury [36] - 31:7, 31:20, 32:24, 34:16, 34:25, 41:7, 41:12, 45:6, 46:2, 46:4, 46:7, 46:16, 46:17, 48:6, 48:17, 49:13, 50:18, 50:19, 63:20, 65:9, 65:11, 65:19, 65:25, 66:1, 66:14, 67:6, 67:7, 67:14, 67:15, 67:17, 69:19, 79:3, 79:9, 79:13, 80:12, 82:19
justice [2] - 12:4, 14:11

**K**

kailua [1] - 1:22
keep [4] - 36:10, 38:3, 38:6, 66:4
kept [1] - 6:3
kill [2] - 57:7, 57:10
kind [17] - 3:24, 9:17, 11:20, 12:20, 12:21, 13:4, 22:14, 37:13, 39:20, 39:22, 46:16, 58:2, 68:25, 71:1, 75:25, 76:6, 80:9
kinds [1] - 61:7
kingdom [1] - 76:13
kingdom-like [1] - 76:13
knowing [1] - 69:23, 80:4, 81:10
knowingly [4] - 65:3, 75:12, 77:8, 77:11
knowledge [1] - 21:23, 27:12, 30:15
known [1] - 73:18
knows [1] - 77:16

**L**

lack [2] - 30:7, 74:19
lacks [1] - 28:9
language [9] - 31:20, 51:23, 52:24, 62:8, 64:14, 65:15, 66:11, 75:12, 79:7
laptop [12] - 7:25, 8:6, 8:15, 20:8, 20:9, 21:21, 22:11, 22:17,

26:16, 27:6, 27:9, 28:2
laptops [1] - 20:25
large [2] - 30:4, 31:3
last [14] - 4:3, 13:5, 17:10, 18:25, 26:12, 27:2, 27:16, 34:13, 36:2, 38:9, 40:25, 58:4, 58:12, 60:17
last-minute [2] - 18:25, 40:25
law [8] - 47:9, 51:14, 69:18, 71:3, 72:22, 73:17, 76:16, 77:15
LAW [1] - 1:21
lawbook [1] - 6:9
lawbooks [7] - 7:2, 13:9, 13:19, 14:3, 50:6, 75:9, 75:15
laws [1] - 76:13
lawyers [2] - 4:13, 68:22
lead [3] - 24:19, 79:20, 81:19
leading [1] - 32:17
leads [1] - 61:10
least [9] - 13:11, 28:25, 30:7, 39:9, 41:14, 64:20, 79:24, 82:6, 82:7
leave [1] - 29:11
leaves [1] - 34:3
leaving [1] - 7:23
lectern [1] - 33:13
led [1] - 29:21
leeway [1] - 43:21
left [1] - 5:12
legal [10] - 26:10, 26:23, 41:6, 43:17, 45:5, 46:8, 76:8, 80:8, 80:9, 82:15
legitimate [1] - 24:13
length [1] - 24:8
lengths [1] - 26:7
Leodus [1] - 17:7
LEODUS [1] - 17:8
less - 54:8
lessons [1] - 73:14
Lewisburg [10] - 5:4, 7:12, 15:9, 18:2, 18:5, 18:17, 18:18, 18:20, 18:25, 26:20
liability [3] - 9:21, 15:3, 27:23
library [1] - 69:18
lied [1] - 17:17
life [2] - 16:20, 25:12
light [2] - 3:20, 23:3
lighter [1] - 74:14
lightest [1] - 12:6

likely [4] - 31:1, 31:20, 50:12, 68:13
limine [1] - 23:15, 23:18, 68:4, 68:7, 71:1, 77:17, 78:24, 79:8
limit [2] - 23:16, 23:19
limited [2] - 11:23, 39:21
lines [1] - 5:20, 51:18, 52:5, 59:24
lingers [1] - 29:17
Lisa [1] - 84:12
LISA [2] - 2:1, 84:3
list [13] - 11:23, 22:1, 23:5, 27:5, 35:12, 36:3, 36:7, 36:25, 40:4, 40:21, 40:22, 41:1, 74:1
listen [1] - 71:9
lists [3] - 6:19, 39:25, 40:1
litigants [1] - 24:11
livestreaming [1] - 18:8
lobbyist [3] - 52:5, 52:7, 53:16
lobbyists [3] - 52:4, 53:6, 53:8
lobbyists/political [1] - 53:7
location [1] - 26:12
locking [1] - 28:16
look [9] - 30:12, 32:21, 35:6, 36:5, 36:19, 46:5, 67:1, 76:16, 80:15
looking [4] - 4:19, 6:24, 12:6, 13:8, 16:1, 16:21, 26:3, 34:14, 51:25, 59:19, 75:5
looks [3] - 17:11, 34:11, 49:2
losing [1] - 9:3
loss [2] - 20:22, 54:19
lost [1] - 4:14
luggage [1] - 32:21

**M**

mailing [1] - 26:13
main [1] - 73:6
major [2] - 4:22, 70:24
majority [1] - 57:6
malfunction [1] - 9:18

**manner** [3] - 37:24, 58:9, 69:13
**manuals** [1] - 70:19
**March** [2] - 26:8, 68:21
**MARSHAL** [2] - 47:3, 47:11
**marshall** [1] - 40:18
**Marshall** [1] - 13:14
**Marshals** [3] - 17:9, 18:19, 28:11
**marshals** [2] - 40:14
**material** [1] - 24:22
**materials** [3] - 20:16, 26:10, 26:23
**matter** [2] - 66:15, 80:8
**matters** [1] - 10:16
**MAZZUCHELLI** [16] - 1:24, 19:18, 19:19, 19:23, 20:15, 20:18, 21:2, 21:4, 21:7, 21:20, 22:2, 22:16, 22:24, 23:6, 23:9, 23:11
**Mazzuchelli** [2] - 19:19, 32:3
**McFADDEN** [1] - 1:10
**mean** [16] - 10:10, 11:5, 14:24, 15:19, 16:7, 16:20, 22:14, 35:20, 38:2, 39:1, 40:9, 45:10, 67:4, 77:12, 79:2, 82:10
**meaningful** [1] - 7:9
**meant** [1] - 15:17
**media** [2] - 69:21, 73:13
**meet** [1] - 66:22
**meets** [1] - 70:8
**Mehta** [1] - 49:9
**member** [2] - 34:16, 51:19
**members** [4] - 57:7, 60:21, 60:23, 61:2
**memories** [1] - 29:14
**memory** [1] - 8:23
**Mendia** [1] - 30:19
**mention** [1] - 61:2
**Merkley** [1] - 63:23
**Merkley's** [1] - 63:14
**met** [4] - 42:1, 77:9, 77:14, 77:18
**methods** [1] - 14:2
**Metro** [1] - 71:11
**Metropolitan** [1] - 75:2
**micromanage** [1] - 28:11

**microphone** [1] - 33:6
**Microsoft** [1] - 7:21
**middle** [2] - 49:1, 76:11
**might** [9] - 9:23, 11:21, 18:8, 26:2, 29:25, 33:10, 46:23, 52:21, 62:17
**military** [2] - 54:6, 54:19
**mind** [4] - 19:17, 31:9, 33:2, 70:13
**minds** [3] - 66:21, 66:22, 70:18
**mine** [2] - 4:17, 62:2
**mine-run** [1] - 62:2
**minimum** [1] - 17:20
**minute** [5] - 18:25, 35:9, 36:18, 39:24, 40:25
**minutes** [4] - 3:24, 4:2, 39:17, 47:14
**misdemeanors** [4] - 79:24, 81:7, 81:13, 81:16
**misleading** [1] - 31:7
**moment** [5] - 47:25, 66:3, 67:2, 67:11, 67:19
**month** [4] - 8:11, 19:5, 38:9, 82:18
**months** [3] - 4:23, 4:24, 5:16
**morning** [10] - 3:7, 3:10, 3:11, 3:14, 3:15, 19:18, 32:24, 40:5, 40:21, 41:23
**most** [19] - 5:3, 6:12, 7:18, 8:8, 8:9, 9:2, 15:9, 15:19, 16:13, 18:16, 30:4, 33:22, 40:24, 52:18, 52:19, 52:20, 52:24, 75:3, 79:20
**mother** [2] - 15:24, 15:25
**motion** [29] - 3:16, 3:17, 3:23, 4:20, 14:15, 16:14, 16:16, 23:13, 23:15, 23:18, 23:21, 24:6, 30:10, 30:12, 30:16, 31:11, 34:7, 48:12, 49:21, 51:15, 68:2, 68:4, 68:7, 68:9, 70:5, 71:1, 77:17, 78:24, 79:7
**motioned** [1] - 78:2
**motions** [17] - 5:12, 6:8, 6:9, 6:10, 6:21,

13:1, 13:22, 16:19, 23:12, 24:3, 31:24, 36:11, 68:20, 68:24, 82:5, 82:10, 82:16
**motivations** [1] - 56:20
**move** [7] - 17:17, 18:14, 19:6, 29:3, 29:6, 29:7, 50:22
**moved** [9] - 4:23, 17:10, 18:5, 18:7, 18:10, 18:13, 18:16, 25:5, 25:6
**movement** [1] - 17:13
**moves** [1] - 5:15
**moving** [3] - 18:18, 19:5, 66:19
**MPD** [1] - 71:6
**MR** [43] - 3:11, 9:20, 19:18, 19:23, 20:15, 20:18, 21:2, 21:4, 21:7, 21:20, 22:2, 22:16, 22:24, 23:6, 23:9, 23:11, 32:5, 32:16, 32:21, 35:25, 36:25, 37:10, 37:17, 38:14, 38:16, 42:8, 45:2, 56:6, 56:16, 59:2, 60:9, 61:7, 62:7, 62:12, 62:16, 62:20, 77:4, 77:7, 77:23, 78:7, 78:11, 79:6, 79:10
**MS** [13] - 3:7, 36:22, 41:21, 42:4, 46:21, 53:20, 53:24, 54:24, 57:12, 65:12, 68:1, 81:23, 82:24
**multiple** [3] - 13:1, 33:12, 70:5
**must** [2] - 48:16, 77:14

**N**

**name** [3] - 15:5, 17:7, 61:2
**names** [1] - 3:5
**narrate** [1] - 43:8
**narrating** [1] - 43:9
**narration** [2] - 23:16, 44:18
**narrative** [2] - 30:13, 44:12
**nasty** [1] - 49:2
**national** [1] - 9:5
**National** [1] - 53:5
**nature** [3] - 24:23,

42:20, 52:16
**necessarily** [2] - 43:22, 70:11
**Neck** [5] - 17:16, 17:24, 17:25, 18:2, 18:5
**need** [25] - 14:15, 14:25, 15:1, 15:5, 15:18, 16:9, 22:8, 25:17, 40:3, 40:4, 40:21, 43:18, 44:20, 46:23, 48:1, 48:9, 50:2, 56:13, 56:23, 64:3, 72:18, 72:23, 72:24, 76:21, 80:25
**needed** [2] - 68:20
**needle** [1] - 7:3
**needle-in-a-haystack** [1] - 7:3
**needs** [3] - 22:18, 25:13, 33:8
**negates** [1] - 59:12
**negative** [4] - 57:25, 58:3, 60:25, 61:4
**negatively** [5] - 54:4, 54:14, 55:1, 62:14, 62:19
**never** [4] - 12:2, 28:16, 66:8, 76:10
**NEVIN** [14] - 1:13, 3:7, 36:22, 41:21, 42:4, 46:21, 53:20, 53:24, 54:24, 57:12, 65:12, 68:1, 81:23, 82:24
**Nevin** [8] - 3:8, 35:23, 36:20, 41:18, 46:20, 67:23, 68:6, 81:21
**new** [2] - 7:23, 55:8
**news** [14] - 37:5, 48:21, 51:15, 51:19, 53:23, 58:12, 58:13, 58:16, 59:8, 59:17, 60:1, 60:3, 60:11
**next** [4] - 30:12, 34:4, 72:15, 82:18
**nice** [1] - 15:6
**nicknamed** [1] - 75:19
**nine** [2] - 10:14, 11:16
**Ninth** [1] - 30:18
**Noah** [1] - 3:9
**nobody** [1] - 13:21
**none** [1] - 31:17
**nonetheless** [1] - 28:14
**normal** [1] - 61:11
**Northern** [5] - 17:16,

17:24, 17:25, 18:2, 18:5
**Northwest** [3] - 1:15, 2:3, 84:14
**note** [6] - 6:10, 13:6, 25:1, 31:15, 33:18, 72:18
**notes** [5] - 67:2, 67:4, 69:2, 71:19, 84:5
**nothing** [1] - 56:21
**notice** [2] - 16:12, 16:15
**notices** [1] - 11:3
**noticing** [1] - 68:8
**notion** [1] - 58:18
**notions** [1] - 58:19
**NPR** [1] - 48:21
**number** [5] - 27:15, 33:18, 34:22, 35:19, 35:24
**numbers** [1] - 6:20

**O**

**object** [5] - 36:10, 44:20, 56:16, 65:1, 68:16
**objecting** [1] - 38:12
**objection** [11] - 34:17, 53:19, 53:20, 53:21, 53:24, 54:23, 54:24, 56:5, 56:15, 64:24, 80:23
**objections** [2] - 30:17, 43:9
**objects** [1] - 44:20
**obstruction** [3] - 63:7, 65:2, 79:21
**obviously** [19] - 6:24, 7:6, 9:16, 10:2, 11:3, 13:9, 14:3, 22:18, 33:15, 39:7, 44:19, 49:3, 49:24, 58:16, 65:23, 65:24, 66:10, 68:15, 68:16
**occasionally** [1] - 14:7
**occasions** [1] - 34:10
**OF** [5] - 1:1, 1:3, 1:9, 1:21, 1:24
**offense** [1] - 77:19
**offenses** [1] - 77:8
**offer** [3] - 11:22, 52:10, 81:2
**offered** [4] - 7:15, 7:25, 8:7, 8:15
**offering** [1] - 30:13

**offhand** [1] - 71:18
**office** [1] - 63:14
**Office** [2] - 1:22, 19:16
**OFFICE** [2] - 1:14, 1:17
**officer** [12] - 14:10, 22:19, 73:8, 73:23, 73:24, 73:25, 74:21, 77:25, 78:1, 78:2, 78:5
**officers** [9] - 69:22, 71:11, 71:13, 71:15, 72:2, 72:11, 72:15, 73:4, 74:20
**officers'** [1] - 50:14
**OFFICES** [1] - 1:21
**official** [3] - 63:7, 79:21, 84:12
**Official** [1] - 2:1
**often** [3] - 34:12, 59:12, 60:15
**once** [5] - 22:16, 33:16, 34:3, 34:22, 64:8
**one** [31] - 6:5, 7:8, 8:5, 8:18, 17:3, 17:4, 17:11, 19:1, 19:2, 26:10, 33:5, 33:12, 33:13, 33:20, 35:10, 37:1, 38:12, 41:14, 42:5, 48:10, 55:11, 56:9, 57:4, 57:17, 57:25, 58:10, 60:17, 62:12, 79:24, 81:2
**one's** [1] - 57:25
**ones** [2] - 4:22, 33:12
**oneself** [1] - 28:7
**ons** [2] - 64:1, 64:2
**open** [7] - 7:21, 33:9, 51:3, 53:6, 76:3, 76:4
**opened** [1] - 15:10
**opening** [16] - 7:14, 41:7, 41:8, 41:9, 41:15, 42:8, 42:14, 42:21, 42:22, 43:15, 43:19, 43:22, 44:6, 79:1, 79:10, 80:8
**operate** [1] - 46:9
**opinions** [2] - 37:23, 58:8
**opportunity** [23] - 3:19, 4:1, 4:3, 4:4, 33:25, 34:1, 34:5, 34:19, 35:10, 36:19, 39:21, 41:9, 42:16, 43:17, 45:4, 45:7, 45:8, 45:22, 46:6, 46:14, 64:22, 67:20,

68:13
**opposition** [3] - 3:18, 3:20, 8:5
**option** [3] - 12:6, 16:24, 43:7
**options** [3] - 22:13, 39:6, 44:11
**order** [7] - 12:9, 46:24, 48:16, 70:16, 71:7, 72:3, 78:25
**ordered** [2] - 17:12, 17:17
**orders** [1] - 14:2, 72:8, 73:3
**organization** [4] - 51:20, 51:22, 52:12, 53:23
**organizations** [3] - 51:16, 51:21, 52:8
**organize** [4] - 15:5, 15:10, 15:18, 48:1
**organized** [2] - 10:25, 15:12
**original** [1] - 15:12
**originally** [3] - 18:7, 25:4, 28:16
**otherwise** [1] - 34:20
**outdated** [1] - 7:14
**outset** [1] - 46:13
**outside** [1] - 76:10
**outstanding** [1] - 31:24
**outweighed** [1] - 31:6
**overthrow** [1] - 57:6
**overturn** [1] - 74:25
**overturned** [1] - 77:1
**overwhelmingly** [1] - 56:11
**own** [4] - 15:16, 28:22, 30:9, 45:15

**P**

**page** [4] - 8:11, 9:22, 48:6, 81:18
**Pages** [2] - 30:19, 30:20
**pages** [3] - 39:6, 39:12, 39:15
**pandemic** [1] - 27:11
**paper** [2] - 48:10, 63:20
**papers** [5] - 5:18, 11:15, 38:24, 47:5, 48:1
**paperwork** [1] - 5:21
**paragraph** [2] - 8:18, 8:22

**paralegal** [1] - 3:9
**part** [12] - 6:7, 9:14, 13:2, 31:3, 49:14, 51:7, 54:11, 54:15, 54:22, 59:18
**participation** [1] - 21:14
**particular** [1] - 30:23
**particularly** [3] - 23:24, 26:1, 30:3
**parties** [10] - 31:25, 33:24, 36:3, 38:9, 39:22, 39:25, 40:20, 46:16, 53:9, 60:14
**parts** [1] - 42:19
**party** [2] - 53:7, 53:16
**pass** [1] - 39:8
**passed** [2] - 68:14, 82:11
**passions** [1] - 52:22
**past** [12] - 4:14, 7:6, 8:16, 8:22, 10:6, 10:15, 16:17, 21:15, 21:16, 27:21, 29:10, 40:11
**pay** [1] - 14:21
**pen** [1] - 46:24
**pencils** [1] - 5:11
**pending** [1] - 23:12
**Pennsylvania** [4] - 45:12, 45:13, 45:17, 45:20
**pens** [1] - 5:11
**people** [38] - 6:20, 7:1, 10:17, 10:19, 10:21, 14:20, 15:14, 31:17, 40:10, 49:3, 49:6, 51:9, 52:17, 52:24, 55:5, 55:12, 55:17, 55:25, 56:10, 57:1, 57:6, 57:10, 57:18, 58:3, 58:22, 59:15, 59:24, 61:1, 66:8, 66:12, 71:5, 72:13, 75:3, 75:13, 75:19, 76:4, 76:18
**people's** [1] - 75:19
**per** [2] - 22:18
**percent** [3] - 55:16, 55:20, 66:10
**percentage** [2] - 66:7, 66:9
**perhaps** [7] - 25:9, 37:6, 37:10, 51:8, 53:5, 59:3, 66:6
**period** [1] - 28:7
**permission** [4] - 69:10, 72:2, 74:15, 78:13

**PERRI** [25] - 1:16, 35:25, 36:25, 37:10, 37:17, 38:14, 38:16, 42:8, 45:2, 56:6, 56:16, 59:2, 60:9, 61:7, 62:7, 62:12, 62:16, 62:20, 77:4, 77:7, 77:23, 78:7, 78:11, 79:6, 79:10
**Perri** [7] - 3:8, 42:5, 44:25, 58:25, 60:8, 77:6, 79:2
**person** [7] - 6:4, 7:8, 15:23, 18:24, 34:18, 34:19, 34:20
**personal** [4] - 4:10, 9:6, 30:15, 51:10
**personally** [7] - 30:5, 49:5, 51:1, 54:3, 54:12, 54:14
**Peter** [1] - 48:25
**phonetic** [1] - 69:16
**phrases** [4] - 23:20, 30:23, 30:25, 31:9
**physical** [1] - 20:11
**pick** [4] - 35:13, 35:18, 35:23, 41:6
**pivot** [1] - 71:2
**place** [4] - 21:8, 41:5, 72:20, 75:18
**Plaintiff** [1] - 1:4
**plan** [2] - 32:6, 80:5
**plans** [1] - 19:6
**play** [2] - 11:4, 44:15
**playing** [1] - 79:5
**plea** [3] - 10:12, 10:23, 81:14
**pled** [1] - 63:16
**plentiful** [1] - 76:16
**plus** [1] - 23:24
**podium** [4] - 3:4, 4:7, 33:11, 33:20, 33:21, 34:4, 48:4, 77:5
**point** [23] - 8:5, 13:23, 19:22, 22:9, 32:6, 37:10, 40:11, 41:20, 43:23, 43:24, 59:4, 59:7, 59:14, 59:15, 60:8, 65:13, 67:25, 69:6, 76:21, 78:8, 81:25, 82:12
**pointed** [1] - 74:11
**pointing** [1] - 74:22
**points** [1] - 68:6
**police** [10] - 14:9, 70:4, 71:11, 71:13, 71:15, 72:2, 72:7, 73:4, 78:18
**Police** [5] - 70:16, 70:19, 73:24, 75:2,

76:17
**policy** [2] - 27:8, 27:9
**political** [11] - 51:16, 51:21, 51:22, 51:25, 52:2, 52:8, 52:11, 52:16, 52:17, 53:8, 53:16
**politician** [2] - 53:12, 53:17
**politicians** [2] - 52:14, 52:17
**position** [4] - 57:12, 67:23, 68:1, 77:18
**positive** [1] - 59:13
**possession** [1] - 73:8
**possible** [3] - 9:5, 25:16, 37:2
**possibly** [1] - 54:7
**Post** [1] - 1:22
**potential** [6] - 32:24, 35:11, 40:22, 48:19, 49:12, 59:13
**potentially** [2] - 16:23, 33:23
**PowerPoint** [1] - 7:19
**preclude** [3] - 30:12, 68:4, 68:9
**precluded** [1] - 79:11
**preconceived** [1] - 58:19
**prefer** [1] - 37:17
**prejudice** [4] - 24:21, 24:22, 30:16, 31:6
**prejudices** [1] - 25:19
**prejudicial** [4] - 25:24, 31:20, 33:4, 49:14
**Preliminary** [1] - 65:14
**preliminary** [7] - 46:17, 47:7, 63:20, 65:9, 65:11, 65:19, 67:14
**premarked** [1] - 40:23
**preparation** [3] - 6:22, 17:16, 30:7
**preparations** [6] - 5:1, 5:4, 5:16, 8:21, 9:6, 11:12
**prepare** [8] - 11:6, 11:10, 12:16, 14:5, 14:16, 16:18, 24:1, 25:13
**prepared** [5] - 14:24, 16:11, 24:17, 29:25,

41:15
  **preparing** [6] - 5:17,
6:10, 13:4, 28:24,
82:14, 82:16
  **presence** [3] - 23:10,
32:4, 32:15
  **present** [16] - 3:13,
10:24, 16:16, 54:6,
54:19, 55:5, 55:13,
55:25, 57:1, 57:18,
58:3, 58:23, 59:11,
62:2, 71:24, 72:9
  **presenting** [1] -
79:11
  **presidential** [2] -
25:10, 63:9
  **presumed** [1] - 63:17
  **presumptively** [1] -
34:8
  **pretrial** [3] - 6:8,
24:3, 31:4
  **PRETRIAL** [1] - 1:9
  **pretty** [8] - 13:10,
17:4, 27:12, 28:19,
29:3, 58:6, 67:3,
77:15
  **previous** [3] - 73:8,
73:25, 82:5
  **previously** [3] - 8:6,
15:11, 21:20
  **print** [1] - 47:11
  **prioritize** [1] - 40:19
  **prison** [2] - 26:10,
28:12
  **prison's** [1] - 26:14
  **prisoners** [2] -
18:19, 18:20
  **Prisons** [1] - 28:12
  **prisons** [1] - 28:24
  **private** [3] - 33:3,
33:17, 33:19
  **privately** [1] - 33:14
  **privilege** [1] - 20:23
  **pro** [7] - 22:1, 23:3,
36:6, 40:15, 41:11,
42:9, 43:3
  **probation** [2] -
20:22, 28:17
  **probative** [1] - 31:5
  **problematic** [1] -
42:14
  **procedures** [1] -
32:8
  **proceeding** [4] -
63:8, 79:21, 81:10,
81:11
  **proceedings** [3] -
29:20, 47:18, 84:6
  **Proceedings** [1] -
83:5

**process** [5] - 12:4,
32:2, 38:25, 39:20,
40:13
  **produced** [2] -
26:11, 84:6
  **proffer** [4] - 69:20,
71:25, 72:23, 75:17
  **program** [3] - 19:25,
20:7, 21:9
  **progress** [1] - 46:18
  **prohibit** [1] - 31:23
  **promote** [1] - 81:15
  **proof** [1] - 77:11
  **proper** [3] - 14:20,
38:4, 52:21
  **properly** [2] - 5:11,
50:18
  **property** [1] - 75:16
  **propose** [2] - 40:6,
46:4
  **proposed** [15] - 36:4,
36:24, 38:20, 38:23,
46:2, 46:4, 47:20,
47:23, 62:12, 62:23,
62:25, 63:3, 64:5,
64:18, 67:17
  **proposing** [1] - 59:1
  **prosecute** [2] -
29:13, 29:17
  **prosecutors** [2] -
29:9, 29:11
  **protect** [1] - 30:8
  **protective** [1] - 71:6
  **protest** [7] - 55:6,
55:13, 56:10, 57:6,
70:15, 71:4, 75:22
  **protesters** [5] -
70:17, 70:18, 70:21,
70:25, 71:8
  **protests** [4] - 56:1,
57:19, 70:20, 75:3
  **protocols** [2] -
28:13, 29:4
  **prove** [6] - 44:5,
45:22, 45:23, 72:6,
72:9, 72:23
  **proved** [1] - 43:22
  **proven** [1] - 44:1
  **provide** [9] - 20:8,
26:7, 40:1, 40:20,
46:16, 47:5, 67:16,
67:19, 73:14
  **provided** [4] - 27:3,
36:3, 38:8, 46:6
  **providing** [3] - 26:8,
27:23, 28:1
  **public** [6] - 25:18,
25:25, 33:2, 33:7,
33:16, 82:21
  **punished** [1] - 16:8

**punishment** [1] -
20:22
  **purple** [1] - 31:20
  **purpose** [5] - 9:23,
42:19, 42:21, 43:15,
48:6
  **purposeful** [1] -
24:13
  **purposes** [2] - 56:11,
57:2
  **pursuant** [1] - 20:7
  **push** [2] - 25:16,
50:4
  **pushed** [2] - 30:1,
76:18
  **pushing** [1] - 69:7
  **put** [11] - 14:13, 17:5,
51:15, 55:24, 57:1,
64:20, 66:20, 77:10,
78:16, 78:18, 82:6
  **puts** [1] - 30:3
  **putting** [2] - 37:21,
58:7

## Q

  **qualified** [2] - 34:9,
34:22
  **questions** [26] -
32:25, 33:1, 33:2,
33:5, 33:16, 33:17,
33:19, 33:25, 34:2,
34:11, 34:20, 36:4,
36:8, 36:17, 36:21,
37:1, 41:18, 43:5,
44:13, 47:21, 47:24,
49:17, 57:14, 59:19,
62:22
  **quick** [1] - 48:23
  **quickly** [2] - 40:14,
57:23
  **quite** [1] - 26:19
  **quote** [3] - 31:4,
31:8, 74:7

## R

  **race** [2] - 16:18, 49:6
  **racial** [2] - 56:17,
56:19
  **racist** [3] - 56:10,
56:11, 57:2
  **radical** [1] - 61:12
  **raise** [3] - 33:3, 33:5,
67:24
  **raised** [4] - 30:17,
45:1, 76:10, 76:11
  **raises** [1] - 17:3
  **raising** [2] - 33:23,

44:25
  **Rally** [2] - 56:1,
57:18
  **rambling** [1] - 13:9
  **Ramsey** [3] - 71:12,
71:13, 75:1
  **random** [1] - 48:18
  **ranting** [1] - 13:9
  **rather** [6] - 13:3,
16:22, 16:23, 17:3,
60:2, 76:2
  **RDR** [2] - 2:1, 84:3,
84:12
  **reach** [1] - 15:24
  **reached** [1] - 32:10
  **reaction** [2] - 54:5,
54:17
  **read** [12] - 4:16, 10:8,
16:13, 38:19, 46:18,
50:5, 62:8, 64:7,
66:16, 70:1, 70:5,
75:9
  **reading** [4] - 46:12,
63:21, 69:25
  **ready** [2] - 29:19,
41:14
  **really** [18] - 7:2, 10:3,
10:5, 10:7, 11:17,
12:3, 14:21, 15:15,
15:23, 25:24, 28:14,
35:20, 41:5, 52:12,
59:10, 80:25, 82:2,
82:16
  **reason** [14] - 5:8,
5:22, 6:11, 10:15,
13:18, 18:22, 19:4,
20:5, 20:21, 35:4,
36:10, 55:6, 55:14
  **reasonable** [2] -
66:6, 66:13
  **reasons** [7] - 17:13,
23:22, 24:13, 25:3,
26:3, 30:18, 76:17
  **receive** [2] - 6:5,
23:23
  **received** [5] - 6:5,
12:8, 12:18, 20:2,
37:24
  **recent** [9] - 4:22, 5:3,
8:1, 8:8, 8:9, 15:9,
16:13, 40:24, 71:17
  **recently** [8] - 7:10,
7:22, 10:25, 17:5,
18:16, 23:25, 70:6,
71:3
  **recess** [4] - 36:18,
47:17, 68:18, 82:9
  **recognizable** [1] -
70:6
  **recognize** [7] -

29:25, 30:1, 50:15,
62:1, 69:3, 75:3, 81:7
  **recognized** [3] -
70:8, 71:17, 74:24
  **recognizing** [1] -
25:17
  **reconsider** [2] -
80:11, 82:23
  **reconsideration** [2] -
13:1, 37:2
  **reconsidering** [1] -
28:21
  **record** [8] - 3:5,
14:13, 17:5, 28:19,
47:19, 64:20, 82:7,
82:22
  **recording** [1] - 73:12
  **reference** [1] - 72:7
  **references** [1] -
30:24
  **referring** [1] - 62:11
  **Reffitt's** [1] - 48:19
  **Reform** [1] - 12:9
  **refused** [4] - 8:6,
8:14, 9:9, 27:7
  **refusing** [1] - 21:12
  **regard** [1] - 21:14
  **regarding** [1] - 18:12
  **regardless** [4] -
69:17, 71:14, 80:2,
80:18
  **regional** [1] - 18:3
  **rehabilitate** [1] -
34:19
  **related** [6] - 59:5,
59:8, 63:5, 63:9, 67:7,
70:15
  **relating** [1] - 31:17
  **release** [2] - 15:3,
28:20
  **released** [1] - 69:23
  **releasing** [2] - 8:23,
9:1
  **relevant** [5] - 31:4,
33:24, 57:14, 58:15,
80:10
  **relief** [2] - 14:1, 16:9
  **relocated** [2] - 17:16,
18:20
  **relocation** [1] - 18:2
  **rely** [2] - 12:17, 14:6
  **relying** [3] - 73:2,
78:10, 78:12
  **remaining** [5] -
63:10, 63:13, 77:21,
78:9, 78:10
  **remember** [8] - 6:21,
29:2, 61:24, 63:22,
69:25, 71:13, 72:6,
79:6

**remembering** [1] - 18:6
**remind** [1] - 58:25
**removed** [1] - 18:4
**rename** [1] - 15:10
**repeat** [2] - 58:2, 58:5
**repeated** [2] - 29:23, 74:9
**repeatedly** [1] - 28:6
**rephrased** [1] - 37:7
**reply** [1] - 13:7
**REPORTED** [1] - 2:1
**reporter** [2] - 41:3, 82:20
**Reporter** [2] - 2:1, 84:12
**represent** [3] - 28:7, 29:19, 32:11
**representing** [1] - 29:22
**represents** [2] - 3:13, 74:12
**request** [10] - 24:15, 25:3, 25:5, 25:6, 28:5, 29:7, 40:12, 51:1, 57:22, 66:25
**requested** [4] - 24:9, 24:10, 24:12, 29:5
**requests** [4] - 39:3, 39:6, 67:8, 82:8
**require** [2] - 40:20, 41:25
**required** [3] - 27:20, 29:5, 41:8
**research** [1] - 57:8
**residence** [1] - 17:4
**resign** [1] - 21:21
**resolve** [1] - 13:21
**respect** [3] - 14:11, 42:8, 79:12
**respond** [5] - 24:2, 36:12, 68:3, 68:11, 75:7
**respondents** [1] - 55:20
**response** [3] - 38:7, 57:11, 60:23
**responses** [1] - 36:5
**responsibilities** [1] - 9:1
**responsible** [1] - 8:21
**restricted** [3] - 63:10, 63:12, 77:22
**result** [5] - 24:20, 54:4, 54:8, 54:14, 62:13
**results** [1] - 30:9
**retained** [1] - 24:18

**retaliating** [1] - 6:1
**retaliation** [1] - 5:22
**returned** [1] - 17:24
**revenge** [1] - 48:15
**reversed** [1] - 71:14
**review** [3] - 17:22, 22:4, 23:23
**reviewed** [2] - 3:17, 41:4
**revoke** [1] - 28:17
**revoked** [1] - 21:19
**riot** [2] - 55:2, 62:15
**rise** [2] - 24:15, 28:5
**risk** [1] - 31:6
**road** [1] - 49:12
**Room** [1] - 2:3
**rooms** [1] - 63:13
**round** [2] - 34:24, 35:7
**route** [1] - 12:7
**routine** [1] - 61:8
**row** [1] - 35:16
**rule** [1] - 4:2
**Rule** [1] - 31:4
**ruled** [3] - 39:7, 65:23, 68:2
**rules** [3] - 71:7, 74:2, 74:3
**ruling** [1] - 80:24
**run** [1] - 62:2
**Ryan** [1] - 13:14

## S

**safer** [1] - 16:24
**saw** [15] - 3:23, 5:21, 8:5, 9:11, 10:25, 13:8, 16:17, 62:18, 68:21, 71:10, 72:14, 76:1, 76:3, 76:6, 76:7
**scanned** [1] - 5:10
**schedule** [2] - 25:21, 25:23
**school** [1] - 76:11
**Schwartz** [1] - 49:1
**scratch** [1] - 39:22
**se** [7] - 22:1, 23:3, 36:6, 40:15, 41:11, 42:9, 43:3
**search** [2] - 59:14, 59:16
**seat** [6] - 35:14, 35:15, 62:6, 67:22, 76:7
**seats** [2] - 35:13, 36:2
**second** [15] - 7:22, 16:24, 23:15, 24:9, 28:23, 34:24, 54:15,

54:21, 56:9, 58:4, 58:12, 60:7, 62:8, 63:10, 64:3
**secondary** [1] - 82:16
**seconds** [1] - 38:7
**Section** [1] - 1:14
**security** [1] - 9:5
**see** [33] - 3:24, 4:20, 6:23, 10:7, 11:20, 11:22, 13:6, 16:7, 36:11, 39:2, 39:9, 39:19, 42:20, 46:18, 47:8, 47:16, 48:18, 50:22, 52:21, 57:21, 62:23, 62:24, 64:14, 66:5, 69:18, 71:1, 74:4, 76:3, 79:4, 81:20, 82:8, 82:18, 83:4
**seeing** [4] - 10:18, 63:22, 66:21, 73:2
**seek** [3] - 16:9, 27:23, 40:16
**seeking** [10] - 8:20, 12:4, 37:11, 38:1, 38:15, 40:25, 50:4, 59:4, 59:8, 60:9
**seeks** [1] - 30:22
**seemingly** [1] - 16:16
**select** [2] - 35:9, 48:7
**selection** [4] - 32:24, 41:12, 48:7, 48:17
**Senator** [1] - 63:14
**senators** [1] - 53:11
**send** [3] - 4:15, 7:15, 47:12
**sends** [1] - 48:22
**sense** [4] - 38:21, 44:7, 45:24, 80:21
**sensitive** [3] - 9:4, 33:10
**sensitivities** [1] - 62:1
**sent** [4] - 7:10, 13:13, 13:16, 82:3
**sentence** [3] - 48:7, 48:13, 60:18
**separate** [2] - 51:17, 75:1
**series** [1] - 32:25
**serve** [1] - 34:9
**served** [2] - 10:12, 81:14
**serves** [1] - 42:21
**service** [2] - 28:17, 40:13
**Service** [3] - 17:9, 18:19, 28:12

**set** [4] - 25:4, 54:6, 54:18, 66:20
**settled** [1] - 62:9
**seven** [1] - 17:20
**several** [1] - 40:24
**share** [5] - 14:4, 48:21, 52:9, 60:17, 80:22
**shared** [3] - 7:12, 73:12, 74:1
**shares** [1] - 76:4
**sharing** [1] - 60:18
**sheet** [4] - 22:4, 34:25, 35:2
**sheets** [1] - 35:5
**Shipley** [6] - 3:12, 3:14, 3:22, 32:11, 32:14, 40:18
**SHIPLEY** [7] - 1:21, 1:21, 3:11, 9:20, 32:5, 32:16, 32:21
**short** [3] - 5:6, 40:10, 57:25
**shortly** [1] - 48:20
**shouting** [1] - 75:20
**show** [10] - 8:24, 10:11, 15:14, 43:16, 43:19, 71:22, 72:24, 73:22, 79:23
**showing** [3] - 12:8, 12:12, 57:13
**shown** [1] - 48:25
**shut** [1] - 54:20
**sic** [3] - 10:6, 53:5, 77:19
**side** [3] - 10:6, 11:18, 34:25
**sign** [2] - 9:12, 9:24
**signed** [2] - 8:17, 21:19
**signs** [1] - 72:8
**similar** [5] - 25:3, 58:6, 63:20, 64:14, 71:7
**similarities** [1] - 63:25
**simply** [4] - 52:9, 65:1, 78:4, 78:14
**simultaneously** [1] - 35:3
**sitting** [1] - 10:13
**situation** [2] - 28:21, 29:21
**six** [5] - 35:2, 39:6, 39:12, 39:15, 74:2
**sixth** [1] - 24:16
**Sixth** [1] - 11:11
**skepticism** [1] - 26:4
**sleep** [2] - 12:1, 12:2
**slip** [1] - 15:2

**slow** [1] - 4:11
**slows** [1] - 41:1
**small** [2] - 22:5, 64:2
**smiling** [1] - 72:12
**smoking** [1] - 72:15
**someone** [6] - 47:15, 51:2, 51:19, 52:6, 62:17, 75:18
**sometime** [1] - 46:7
**sometimes** [1] - 27:7
**somewhere** [1] - 69:25
**soon** [2] - 18:14, 32:20
**sorry** [6] - 21:18, 48:9, 55:8, 56:14, 71:4, 72:19
**sort** [4] - 7:3, 20:22, 21:12, 52:4
**sought** [5] - 13:25, 14:1, 14:2, 60:10
**sound** [1] - 70:24
**sounds** [2] - 40:17, 79:18, 81:17
**speaking** [2] - 44:12, 60:24
**specific** [6] - 26:12, 26:17, 30:17, 49:17, 72:19, 77:13
**specifically** [3] - 63:8, 63:14, 72:3
**specifics** [1] - 18:11
**speedy** [3] - 25:18, 25:22, 25:25
**spell** [1] - 10:5
**spell-checked** [1] - 10:5
**spoken** [1] - 66:8
**spot** [2] - 38:5, 38:9
**spouse** [3] - 51:3, 51:5, 51:6
**staff** [1] - 42:2
**stage** [1] - 31:4
**stand** [3] - 43:6, 45:16, 78:23
**standard** [1] - 11:9
**standby** [5] - 1:21, 3:12, 10:9, 13:14, 24:4
**standing** [1] - 73:25
**start** [4] - 8:1, 39:22, 41:7, 54:10
**starting** [1] - 3:5
**state** [4] - 3:5, 43:16, 43:18, 76:13
**statement** [16] - 41:8, 41:9, 42:21, 42:23, 43:15, 43:19, 46:12, 62:23, 63:1, 63:3, 64:5, 64:18,

64:23, 65:17, 79:1, 79:10
**statements** [3] - 41:7, 41:15, 42:9
**STATES** [5] - 1:1, 1:3, 1:10, 1:14, 1:17
**states** [3] - 22:8, 31:4, 75:11
**States** [15] - 1:17, 2:2, 3:2, 3:6, 3:8, 17:9, 24:5, 30:18, 30:20, 63:4, 63:6, 69:6, 70:14, 78:16, 84:13
**station** [1] - 58:17
**statistic** [1] - 55:22
**statue** [1] - 74:12
**statues** [4] - 73:9, 74:5, 74:6, 74:8
**status** [4] - 12:25, 23:3, 26:17, 82:15
**statute** [1] - 76:24
**stays** [2] - 22:22, 23:4
**Steal** [2] - 56:1, 57:18
**stem** [1] - 57:7
**stenographic** [1] - 84:5
**sticking** [1] - 49:1
**still** [6] - 32:11, 40:17, 52:10, 68:23, 69:4, 81:11
**stole** [1] - 15:11
**Stop** [2] - 56:1, 57:18
**stop** [1] - 44:20
**stopped** [1] - 4:25
**stopping** [2] - 11:2, 73:4
**strategic** [1] - 26:3
**Street** [2] - 1:15, 1:18
**streets** [1] - 76:20
**strike** [7] - 33:24, 34:7, 34:25, 35:3, 35:10, 37:15, 65:15
**strikes** [5] - 9:17, 35:1, 35:2, 35:7, 80:8
**strong** [1] - 60:22
**stronghold** [1] - 55:16
**strongly** [1] - 14:22
**struck** [2] - 34:6, 34:18
**struggled** [1] - 23:23
**studied** [1] - 6:8
**studies** [1] - 49:4
**study** [2] - 55:15, 55:19
**stuff** [8] - 5:15, 6:6, 14:25, 15:8, 15:21,

67:7, 72:13, 82:1
**submit** [2] - 61:21, 82:1
**subpoena** [1] - 40:12
**subpoenaed** [1] - 5:25
**subpoenaing** [1] - 40:10
**subsequent** [2] - 56:1, 57:19
**subset** [2] - 60:2, 60:14
**substantial** [1] - 24:22
**substantially** [2] - 30:17, 31:6
**subsumed** [1] - 57:16
**subtract** [1] - 49:18
**sue** [1] - 9:21
**sufficient** [1] - 34:22
**suggest** [4] - 37:9, 37:14, 39:17, 65:19
**suggested** [2] - 36:4, 43:25
**suggesting** [4] - 37:15, 39:16, 45:21, 78:5
**suggestion** [1] - 59:3
**suggestions** [1] - 51:24
**suggests** [1] - 30:25
**Suite** [1] - 1:19
**suite** [1] - 76:1
**summarize** [2] - 17:2, 19:21
**supervised** [1] - 28:20
**supervising** [2] - 26:14, 26:22
**supervisor** [1] - 17:8
**support** [9] - 61:1, 61:4, 61:8, 61:9, 61:11, 61:12, 61:13, 61:17
**supported** [1] - 61:17
**supporting** [1] - 45:9
**suppose** [1] - 61:15
**supposed** [3] - 70:20, 70:21, 71:7
**survey** [1] - 55:20
**sweep** [1] - 71:6
**switch** [1] - 29:9
**syndrome** [1] - 48:14
**system** [1] - 14:11
**systems** [1] - 70:24

# T

**table** [2] - 3:9, 33:12
**targeted** [1] - 53:3
**targeting** [1] - 49:5
**taxpayers'** [1] - 16:23
**teachers** [1] - 76:12
**technology** [2] - 42:1, 42:2
**telephone** [2] - 34:1, 34:5
**telephones** [1] - 33:12
**temporary** [1] - 11:22
**tempting** [1] - 10:24
**ten** [5] - 4:23, 5:15, 17:21, 35:1, 38:7
**tend** [1] - 42:24
**tenders** [1] - 64:12
**Tenders** [1] - 36:16
**terms** [11] - 21:13, 21:16, 31:12, 31:13, 31:22, 31:23, 37:13, 42:20, 43:2, 61:8, 66:7
**terribly** [1] - 9:19
**terrorism** [2] - 31:14, 31:19
**test** [3] - 50:5, 50:8, 50:21
**testified** [1] - 45:16
**testify** [9] - 42:13, 42:25, 43:2, 44:2, 44:3, 44:4, 44:9, 44:11, 44:22
**testifying** [3] - 42:12, 42:15
**testimony** [4] - 13:10, 30:13, 50:11, 74:2
**THE** [288] - 1:1, 1:10, 1:13, 1:21, 3:1, 3:10, 3:14, 3:23, 4:1, 4:6, 4:7, 4:8, 8:4, 8:8, 8:10, 8:13, 8:14, 8:16, 9:8, 9:11, 9:16, 10:1, 10:2, 12:19, 12:20, 12:24, 13:6, 14:14, 14:17, 15:15, 15:17, 16:5, 16:7, 17:1, 17:22, 18:6, 18:16, 19:4, 19:13, 19:17, 19:21, 20:13, 20:16, 20:25, 21:3, 21:5, 21:18, 21:24, 22:12, 22:22, 23:3, 23:7, 23:10, 23:12, 32:9,

32:13, 32:14, 32:19, 32:22, 35:20, 35:22, 36:1, 36:9, 36:13, 36:15, 36:17, 36:23, 37:9, 37:15, 37:19, 38:2, 38:8, 38:15, 38:17, 38:23, 39:4, 39:5, 39:11, 39:14, 39:15, 40:6, 40:12, 41:23, 42:7, 43:13, 44:8, 44:9, 44:15, 44:17, 45:3, 45:25, 46:1, 46:22, 46:23, 47:1, 47:3, 47:6, 47:11, 47:14, 47:19, 47:22, 47:23, 47:25, 48:3, 48:5, 48:8, 48:9, 48:11, 48:12, 49:15, 49:20, 49:23, 49:24, 50:1, 50:3, 50:7, 50:8, 50:17, 50:20, 51:5, 51:6, 51:7, 51:8, 51:10, 51:12, 51:17, 51:21, 51:22, 51:24, 51:25, 52:2, 52:6, 52:8, 52:11, 52:15, 52:23, 53:1, 53:2, 53:4, 53:7, 53:8, 53:10, 53:11, 53:12, 53:13, 53:14, 53:18, 53:19, 53:21, 53:25, 54:2, 54:10, 54:12, 54:16, 54:17, 54:21, 54:25, 55:3, 55:8, 55:10, 55:11, 55:12, 55:24, 56:4, 56:5, 56:7, 56:9, 56:13, 56:14, 56:15, 56:22, 56:23, 57:3, 57:4, 57:5, 57:11, 57:16, 57:21, 57:23, 57:24, 58:6, 58:11, 58:15, 58:16, 58:20, 58:22, 58:24, 59:6, 59:10, 59:18, 59:21, 59:23, 60:4, 60:5, 60:6, 60:7, 60:10, 60:16, 60:19, 60:20, 61:3, 61:5, 61:6, 61:13, 61:15, 61:16, 61:19, 61:22, 62:3, 62:5, 62:10, 62:14, 62:19, 62:21, 62:25, 63:1, 63:2, 63:3, 63:19, 63:24, 64:1, 64:3, 64:7, 64:9, 64:11, 64:13, 64:16, 64:20, 64:22, 65:1, 65:4, 65:6, 65:7, 65:13, 65:20, 65:22, 65:23, 66:1, 66:5, 66:14, 66:19, 66:24,

67:1, 67:4, 67:6, 67:10, 67:11, 67:13, 68:5, 68:15, 69:1, 69:2, 70:2, 70:3, 71:21, 71:23, 73:1, 73:6, 73:21, 73:24, 74:18, 74:23, 75:5, 75:8, 77:2, 77:5, 77:21, 78:5, 78:9, 79:2, 79:9, 79:14, 79:15, 79:16, 80:22, 80:24, 81:2, 81:4, 81:5, 81:17, 81:24, 81:25, 82:4, 82:5, 82:10, 82:25, 83:1, 83:2
**theirs** [1] - 41:10
**themselves** [1] - 20:10
**therefore** [1] - 56:20
**Thereupon** [1] - 47:17
**they've** [6] - 7:10, 14:13, 15:4, 59:11, 70:4, 75:12
**thinking** [4] - 10:19, 12:13, 50:1, 57:10
**third** [4] - 23:18, 24:10, 29:8, 63:11
**threat** [1] - 9:5
**three** [11] - 6:4, 10:8, 19:2, 23:12, 28:17, 55:4, 57:21, 57:22, 70:13, 72:8, 74:19
**threshold** [1] - 66:23
**throughout** [1] - 70:5
**thumbs** [3] - 72:12, 73:4, 74:20
**thumbs-up** [3] - 72:12, 73:4, 74:20
**time-served** [2] - 10:12, 81:14
**timely** [1] - 82:12
**today** [9] - 4:20, 8:25, 32:4, 32:8, 32:15, 36:6, 38:10, 43:12, 77:24
**together** [1] - 11:8
**tons** [3] - 70:24, 72:11, 76:13
**took** [3] - 6:10, 11:14, 72:1
**top** [4] - 11:24, 21:25, 23:5, 27:5
**Torralba** [1] - 30:19
**Torralba-Mendia** [1] - 30:19
**total** [1] - 39:5
**tourism** [1] - 54:8
**towards** [2] - 51:13,

58:3
town [1] - 52:24
track [1] - 28:19
TRANSCRIPT [1] - 1:9
transcript [4] - 12:11, 13:11, 84:5, 84:6
transfer [1] - 27:2
transferred [4] - 17:15, 18:1, 23:25, 26:21
transfers [2] - 28:24, 29:1
transit [1] - 17:18
travel [1] - 19:2
treason [2] - 31:13, 31:15
Treniss [1] - 55:23
trespassed [2] - 75:10, 78:8
trespassing [4] - 65:2, 75:9, 75:13, 75:14
TREVOR [1] - 1:10
trial [62] - 3:17, 6:22, 10:11, 10:25, 11:13, 13:4, 14:16, 14:19, 14:21, 15:13, 16:11, 16:19, 16:24, 19:5, 22:1, 23:4, 23:14, 23:22, 24:1, 24:7, 24:25, 25:1, 25:3, 25:9, 25:16, 25:18, 25:20, 25:21, 25:22, 25:23, 25:25, 28:2, 28:24, 30:1, 30:17, 32:7, 32:12, 32:18, 40:1, 40:5, 40:21, 41:11, 41:24, 42:9, 42:19, 43:3, 43:23, 46:2, 48:21, 48:24, 66:17, 67:17, 67:21, 69:20, 79:12, 80:15, 82:14, 82:17, 82:19
trials [3] - 29:14, 31:22, 40:24
tricky [1] - 43:8
tried [3] - 5:9, 48:25, 70:16
trouble [3] - 11:15, 64:7, 76:15
true [3] - 68:22, 84:4, 84:5
truism [1] - 29:14
Trump [6] - 48:14, 51:16, 60:22, 60:25, 61:4, 61:14
Trump's [1] - 69:9
trusted [1] - 52:10

truth [5] - 10:16, 10:24, 12:4, 16:22, 81:15
truth-seeking [1] - 12:4
try [11] - 7:16, 7:18, 18:14, 24:17, 34:13, 36:6, 38:21, 47:7, 49:11, 61:20, 66:20
trying [19] - 11:4, 12:22, 15:1, 16:9, 16:18, 25:9, 39:11, 41:16, 52:23, 53:3, 55:24, 67:9, 71:1, 78:15, 78:16, 78:17, 79:6, 82:1
turn [2] - 33:13, 78:17
turned [1] - 6:6
tweaks [2] - 47:20, 47:23
twice [3] - 22:14, 25:2, 29:18
two [32] - 4:12, 6:4, 9:22, 10:15, 12:5, 12:14, 17:10, 20:3, 20:9, 20:18, 20:23, 22:14, 22:17, 22:21, 22:23, 27:3, 29:10, 35:8, 35:12, 36:2, 41:21, 42:19, 57:4, 58:12, 70:12, 73:6, 78:21, 83:2
two-page [1] - 9:22
two-week [1] - 22:21
type [5] - 5:11, 18:12, 67:9, 69:17, 73:3
typed [3] - 39:14, 39:15, 40:3
typed-up [1] - 39:15
typically [6] - 5:10, 27:21, 39:23, 42:20, 75:14, 76:14
typing [1] - 38:25

U

U.S [5] - 18:19, 37:4, 37:22, 47:3, 47:11
unable [2] - 5:7, 24:2
under [3] - 50:13, 76:24, 80:25
understandings [1] - 66:12
understood [3] - 32:9, 42:4, 75:6
unfair [1] - 31:6
unfortunately [5] -

4:13, 5:5, 7:16, 12:12, 13:13
unique [3] - 27:12, 30:3, 76:12
unit [1] - 7:23
UNITED [5] - 1:1, 1:3, 1:10, 1:14, 1:17
united [1] - 2:2
United [14] - 1:17, 3:2, 3:6, 3:8, 17:8, 24:5, 30:18, 30:20, 63:4, 63:6, 69:6, 70:14, 78:15, 84:13
unless [1] - 30:14
unlike [1] - 75:21
unlikely [1] - 33:3
unnecessarily [1] - 31:1
unsure [1] - 41:12
unusual [2] - 9:19, 25:14
up [52] - 4:10, 4:21, 5:1, 5:12, 5:14, 5:17, 5:23, 6:13, 6:17, 6:25, 7:11, 9:12, 10:3, 10:11, 11:7, 11:9, 11:14, 11:18, 11:24, 13:15, 13:24, 15:10, 15:22, 19:2, 20:18, 28:16, 32:17, 33:20, 34:4, 37:1, 39:1, 39:14, 39:15, 40:4, 40:25, 42:25, 43:22, 44:1, 44:5, 49:1, 51:3, 52:18, 54:6, 54:18, 67:8, 67:9, 72:12, 73:4, 74:20, 79:3, 79:11, 82:9
upcoming [1] - 23:4
upset [1] - 62:18
urge [1] - 82:13
USB [3] - 15:12, 15:18, 71:24

V

vague [1] - 66:12
valuable [2] - 6:3, 13:11
value [1] - 31:5
venire [1] - 57:15
version [8] - 10:8, 10:9, 44:13, 44:23, 45:8, 45:10, 65:16, 74:14
versus [8] - 3:2, 24:5, 30:19, 30:20, 59:12, 69:5, 70:14, 71:13

via [1] - 34:5
victim [1] - 49:9
video [14] - 7:20, 15:6, 18:23, 18:24, 23:16, 23:24, 30:14, 37:3, 37:11, 59:5, 59:8, 72:1, 72:22, 73:22
videos [3] - 5:24, 60:11, 69:23
Vietnam [1] - 70:15
view [7] - 7:8, 7:24, 8:1, 23:1, 23:2, 50:12, 69:10
viewing [1] - 37:11
violation [1] - 5:15
violations [2] - 11:11, 18:7
violence [1] - 61:10
Virginia [1] - 1:19
voice [3] - 39:10, 39:12, 39:18
voir [2] - 32:1, 32:22, 34:24, 36:4, 36:7, 39:20, 41:19, 46:15, 47:21, 47:23, 61:19, 62:22
voluminous [1] - 30:2
vote [1] - 63:9
vs [1] - 1:5

W

waited [1] - 16:15
waiver [6] - 9:10, 9:21, 9:22, 21:6, 21:8, 27:19
wake [1] - 27:11
walked [2] - 11:14, 73:18
walking [1] - 76:2
wants [1] - 12:17
War [1] - 70:15
warn [2] - 71:8, 76:21
warned [2] - 28:6, 28:11
warning [1] - 48:22
warnings [3] - 29:23, 70:21, 74:19
Washington [4] - 1:6, 1:15, 2:4, 84:14
waste [1] - 16:23
watch [2] - 58:13, 58:17
watched [2] - 37:3, 60:15
watching [1] - 59:4,

59:8
waving [1] - 72:12
ways [3] - 28:14, 61:17, 76:5
Wednesday [1] - 22:3
weed [1] - 72:15
week [2] - 22:14, 22:21
weeks [3] - 22:17, 22:23, 25:21
weird [1] - 76:13
Weko [1] - 3:9
welcome [4] - 39:20, 44:23, 46:3, 82:11
well-documented [1] - 16:25
West [1] - 1:19
Wheeling [1] - 1:19
whole [1] - 10:10
William [2] - 3:11, 69:7
WILLIAM [2] - 1:21, 1:21
window [4] - 73:19, 74:17, 75:7, 76:2
wisdom [1] - 29:23
wise [2] - 6:2, 6:7
wish [6] - 3:21, 9:2, 35:3, 35:23, 60:15, 77:3
wished [1] - 74:13
wishes [1] - 28:2
witness [8] - 6:19, 16:1, 23:16, 30:13, 30:15, 39:25, 40:1, 41:14
witnessed [1] - 72:16
witnesses [5] - 14:5, 15:20, 24:11, 40:4, 40:8
wondering [1] - 37:6
word [2] - 50:25, 52:3
Word [1] - 7:21
wording [1] - 8:22
words [5] - 19:1, 23:19, 30:25, 45:21, 50:14
works [1] - 51:2
worried [1] - 62:17
Worth [1] - 17:17
wreaks [1] - 25:23
write [3] - 33:17, 47:2, 56:7
writing [1] - 61:20
written [4] - 20:16, 37:7, 58:4, 62:10
wronged [1] - 14:11

**wrote** [5] - 4:10, 6:21, 9:12, 9:13, 67:8

## Y

**year** [4] - 7:7, 17:15, 25:4, 67:9
**years** [7] - 4:12, 10:15, 12:5, 12:14, 17:11, 27:16, 29:10
**younger** [1] - 14:9
**yourself** [2] - 32:12, 44:13