```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
2
     - - - - - - - - - - - - - - - x
3    THE UNITED STATES OF AMERICA,
                                      Criminal Action No.
4                 Plaintiff,          21-CR-83
                                      Wednesday, February 3, 2021
5    vs.                              1:50 p.m.

6    BRANDON FELLOWS,

7                 Defendant.
     - - - - - - - - - - - - - - - x
8

9    _____

10           TRANSCRIPT OF INITIAL APPEARANCE BY VIDEO
          HELD BEFORE THE HONORABLE ROBIN M. MERIWEATHER
11                UNITED STATES MAGISTRATE JUDGE
     _____
12

13   APPEARANCES:


14   For the United States:      KELLY SMITH, AUSA
                                  U.S. ATTORNEY'S OFFICE FOR THE
15                                   DISTRICT OF COLUMBIA
                                  555 4th Street, NW
16                                Washington, D.C. 20530
                                  202.252.7786
17
     For the Defendant:          CARA KURTZ HALVERSON, ESQ.
18                                FEDERAL PUBLIC DEFENDER
                                  625 Indiana Avenue NW, Suite 550
19                                Washington, D.C. 20004
                                  202.208.7500
20

21

22

23               Kathleen Silva, RPR, CRR
                 E-mail: kathysilva@verizon.net
24
        Digitally recorded and stenographically transcribed
25
```

1                    P R O C E E D I N G S

2           THE COURTROOM DEPUTY:  Your Honor, now I'm going

3     to call all of the initial appearance cases together.

4           THE COURT:  Thank you.

5           THE COURTROOM DEPUTY:  Magistrate Case Number

6     2021-74M, the United States of America v. Felipe Marquez.

7     Kelly Smith standing in for Jeffrey Nestler as government

8     counsel.  Cara Halverson is defense counsel.  The defendant

9     is appearing by video.  This case is being called for an

10    initial appearance.

11          Magistrate Case Number 2021-80M, the United States

12    of America v. Brandon Fellows.  Kelly Smith standing in for

13    Melissa Jackson as government counsel.  Cara Halverson is

14    defense counsel.  The defendant is appearing by video.  This

15    case is called for an initial appearance.

16          Magistrate Case Number 21-84M, the United States

17    of America v. Nicholas Anthony Moncada.  Kelly Smith

18    standing in for Emory Cole as government counsel.  Kira Anne

19    West is defense counsel.  Also Mario F. Gallucii is counsel

20    for the defendant as well.  The defendant is appearing by

21    video.  This case is called for an initial appearance.

22          Criminal Case Number 2021-67, the United States of

23    America v. Mark Simon.  Kelly Smith standing in for Brenda

24    Johnson as government counsel.  Cara Halverson is defense

25    counsel.  The defendant is appearing by video.  Mr. Simon's

1     case is called for an initial appearance and an arraignment.

2              The Pretrial Services officer is Shay Holman.

3              THE COURT:  Thank you.  Just for all of the

4     counsel and the defendants' awareness, let me briefly tell

5     you how today's hearings will go.  We have just called all

6     of these cases for the initial appearance.  Given that there

7     are a lot of things that I need to say that apply to all of

8     you, I will do those at the beginning while we are all --

9     all the cases have been called.  That will include telling

10    you about some general warnings about release conditions,

11    giving your counsel some guidance on what will happen next.

12             Then I will individually call the cases one by

13    one.  And at that time, we will go over your release

14    conditions.  We will go over -- make sure that you have

15    lawyers to represent you.  If I need to determine your

16    financial eligibility to have a court-appointed lawyer, I

17    will resolve that when I call your case one by one.  And

18    then we will also set the next court date for your case.

19             So that is how today will be structured.  We found

20    that that is the most efficient way to move through these

21    cases, given the number of people who are here for similar

22    type of proceedings.

23             So a few things.  When I do call the cases one by

24    one, I would just ask that defense counsel state your name,

25    who you represent, and whether your client reserves --

1    waives their right to appear in person and is agreeing to

2    appear by video in the Zoom hearing today, and also whether

3    you need to be appointed or whether you are retained

4    counsel.

5            Now, a few things to say to all of the defendants.

6    I believe that for all of you, your most serious offense is

7    a class A misdemeanor.  Because you are charged with a

8    misdemeanor, you have a right to have your trial and

9    sentencing, the judgment before a district judge.  Those are

10   the Article III judges.  I am a magistrate judge, an Article I

11   judge.  You do have the option, for class A misdemeanors, to

12   consent to have a magistrate judge handle your case.  If an

13   information is filed in your case by the prosecution, a

14   district judge will be randomly assigned and if you then opt

15   to consent to have a magistrate judge preside instead, a

16   magistrate judge will be randomly assigned at that time.

17           I anticipate that in these cases, the United

18   States will not be asking that you be held in jail while

19   you're waiting for trial and instead will be recommending

20   some type of release conditions.  I will hear and resolve

21   any objection from your counsel when we call your case one

22   by one to any conditions that are being requested.  Those

23   conditions may differ from any conditions that the Court in

24   your home jurisdiction where you were arrested may have set.

25           I would just advise defense counsel that if

1    there's an order from another court that sets different

2    conditions than from what I set, you need to follow up with

3    that court or somehow have those conditions vacated so that

4    your client is not subject to two competing release orders.

5            Also, if I do order that you be released as

6    defendants while you're waiting for your trial, I do want to

7    make sure you understand a few things.

8            First of all, those conditions will be binding on

9    you.  If you violate -- and when your case is called one by

10   one, my courtroom deputy will have you swear that you agree

11   to follow those conditions.  Because you're appearing

12   virtually, I can't give you a piece of paper today to sign

13   but we will make sure -- I will list what all the conditions

14   are orally and we will get the paperwork to your lawyer

15   after the hearing and send it electronically so you have a

16   document that tells you what your release conditions are.

17           If you violate your release conditions, that could

18   lead to serious consequences, including finding yourself

19   arrested.  I could be asked to issue a warrant for your

20   arrest.  Your release could be revoked.  I could get a

21   request that you be held in custody while you're waiting for

22   trial instead of being out in the community or residing at

23   home.  You could also be held in contempt of court.  So it

24   is very serious -- these conditions are a serious thing and

25   it's critical that you follow them.

1          If you commit any crime while you are on pretrial

2     release, that could also have serious consequences.  Again,

3     including being arrested, having the release revoked.  You

4     could also face an additional prison sentence for having

5     committed this crime while on release that would be in

6     addition to any sentence for the crime.

7          Finally, you are required to appear at all court

8     proceedings while you are on release.  And if you fail to

9     appear, that would also be a violation that could lead to

10     contempt proceedings, a warrant for your arrest, the

11     revocation of your release.

12          I anticipate, at least for most of the judges on

13     this court in the near term, future hearings will be

14     telephonic or video in the near future, particularly for

15     those of you who reside outside of the D.C. area.  That

16     should facilitate your ability to participate in the

17     hearings but if you have any conflicts, you really must

18     notify your counsel so they can try to have things

19     rescheduled so that you do not find yourself in this

20     contempt situation that I have described.

21          I would also ask that -- hopefully this has

22     already happened, but defense counsel and the prosecution

23     should confer about possible next dates so that when I get

24     to your case individually, we can promptly get the next date

25     set.  If the case already has a district judge assigned, we

1   may have information from that judge about when your next

2   court date will be.

3          Finally, I would just like to remind the United

4   States of your obligations under Rule 5(f) to provide *Brady*

5   material and that there could be adverse consequences if you

6   fail to do so.

7          THE COURTROOM DEPUTY:  Your Honor --

8          THE COURT:  One last --

9          THE COURTROOM DEPUTY:  Go ahead.  You finish and

10  then I have something to say.  Go ahead.

11         THE COURT:  Okay.  And then one last thing is,

12  when I am setting the next court date, setting it before the

13  criminal magistrate judge, we will be setting it for

14  1:00 p.m. on whichever date that has been proposed so that

15  it can be handled along with any other Capitol cases that we

16  have coming in.

17         Also, just a housekeeping matter.  For future

18  hearings if you are anticipating that you would like to seek

19  a continuance, we would ask that you file a motion in

20  advance of the hearing instead of connecting to the video

21  and being on the hearings simply to orally ask for a

22  continuance.  It is a lot more efficient for the court to

23  deal with the scheduling matters through motions.

24         Yes, Ms. Kay.

25         THE COURTROOM DEPUTY:  Thank you, Your Honor.

```
 1              Would the defendant who I can see -- I can't

 2    remember your name.  I see you eating on camera.  Could you

 3    raise your hand, please.

 4              Sir, if you don't mind, so we don't see you eating

 5    on camera, you can turn off your camera and when you need to

 6    speak, turn it on.  But right now we really should not see

 7    you eating while the judge is addressing you.  Thank you

 8    very much.

 9              THE COURT:  Thank you, Ms. Kay.

10              Okay.  At this time we will start calling the

11    cases individually.  I would ask that once -- if your case

12    is not the case being called, please turn off your camera

13    and remain in mute.  That way we can focus on the parties

14    who are appearing before us.  And when you hear your case

15    called, please turn your camera back on.

16              (A recess was taken.)

17              THE COURTROOM DEPUTY:  Re-calling Magistrate Case

18    No. 2021-80M, the United States of America v. Brandon

19    Fellows.  Shay Holman is the Pretrial Services officer.  The

20    defendant is appearing -- oh, I see Mr. -- okay, I see

21    Mr. Fellows now.  The defendant is appearing by video.  This

22    case is called for an initial appearance.

23              Counsel, would you please state your names for the

24    record.

25              MS. SMITH:  Kelly Smith on behalf of the United
```

 1   States.

 2          MS. HALVERSON:  Cara Halverson on behalf of

 3   Mr. Fellows.

 4          THE COURTROOM DEPUTY:  Mr. Fellows, would you

 5   please raise your right hand.

 6                   BRANDON FELLOWS, sworn

 7          THE COURT:  Thank you.

 8          Ms. Smith already stated her appearance for the

 9   record and Ms. Halverson did as well.

10          Ms. Halverson, could you address the CARES Act and

11   any appointment of counsel issues, please.

12          MS. HALVERSON:  Yes, Your Honor.

13          So I've gone over the fact that there's a pandemic

14   going on and, as authorized under the CARES Act, we

15   participate in this initial appearance via video.  I believe

16   that Mr. Fellows is in agreement with that.

17          As far as the appointment of counsel, my

18   understanding is that an affidavit was submitted by

19   Ms. Peterson to the court and that he does qualify for

20   services, but please let me know if you do not have that.

21          THE COURT:  Let me check one other location.  My

22   notes indicate that it was filed but that it didn't make its

23   way to me, but I think he was found eligible in New York.

24   Let me just check one other network location to see if it

25   might have come in.

1          Yes, I have it.  Okay.  Based on the information

2     in the financial affidavit, which I will docket under seal,

3     I will -- I find that Mr. Fellows is eligible for court-

4     appointed counsel, and I appoint Ms. Halverson as counsel

5     for Mr. Fellows in this case.  Thank you.

6          It looks like we're still proceeding on a criminal

7     complaint in this case.  Is that correct, Ms. Smith?

8          MS. SMITH:  That is correct, Your Honor.

9          THE COURT:  All right.  Thank you.

10         Is the United States seeking detention or any

11     particular release conditions?

12         MS. SMITH:  Your Honor, the government is not

13     seeking defendant's detention in this case.  However, we are

14     seeking far more stringent conditions than we have in other

15     cases.

16         The government sent along to Your Honor, as well

17     as defense counsel, and I believe it's been circulated in

18     other ways as well, Mr. Fellows's release conditions, which

19     were out of the Northern District of New York.  I'm happy to

20     read those onto the record now.  The government is

21     requesting an extension of those conditions for this case

22     and to be imposed in the D.C. case.

23         THE COURT:  Would that include the bond that was

24     set in the Northern District of New York?

25         MS. SMITH:  I apologize, Your Honor.  The

1    government would not be seeking to extend the bond in this

2    case.  We believe that, based on the home detention and GPS

3    monitoring device, that that would sufficiently ensure

4    Mr. Fellows's participation in the next court proceeding and

5    throughout the pendency of the case.

6              And just to note for the record, Your Honor, the

7    government is seeking, based on the conditions we are

8    seeking, we are requesting courtesy supervision by the

9    Northern District of New York.

10             THE COURT:  Does the defense object to the

11   government's proposal to continue the conditions that were

12   set by the Northern District of New York?

13             (Audio distortion.)

14             THE COURT:  I'm sorry.  I'm not sure -- maybe,

15   Mr. Fellows, could you try muting yourself.  I'm getting

16   some background noise.

17             THE DEPUTY CLERK:  I think that did it.

18             THE COURT:  Okay.  Ms. Halverson, could you repeat

19   yourself, please.

20             MS. HALVERSON:  Yes.  We are objecting to the

21   conditions as proffered by the government.  I'm ready to

22   make argument whenever you're ready.

23             THE COURT:  Okay.  I'm prepared to hear it.  Thank

24   you.  You can proceed.

25             MS. HALVERSON:  Thank you, Your Honor.

1          So I believe -- you know, I feel the thunder from

2    Ms. Smith, but I believe sort of the basis for the more

3    stringent conditions is the allegation that Mr. Fellows

4    wasn't completely cooperative with FBI agents when they told

5    him he had an arrest warrant.

6          However, after speaking with Mr. Fellows, he

7    informed me, and I understand, that the FBI agents that

8    contacted him originally in this case did not tell him that

9    he had a warrant for his arrest.  He was unaware he had a

10   warrant for his arrest.  The FBI agents just stated that

11   they would like to speak with him.  He declined speaking

12   with them on the advice of counsel; not me but another

13   attorney.  And he was not aware that they were seeking to

14   arrest him pursuant to an arrest warrant.  And that was the

15   reason why he did not -- he was not cooperative with the FBI

16   agents and did not meet with them.

17          Mr. Fellows contends that had he known that there

18   was an active arrest warrant for him, he would have turned

19   himself in, but that the FBI agent that contacted him did

20   not tell him that.

21          And so for those reasons -- you know, I don't

22   believe he really has any substantial criminal history.

23   They're misdemeanor cases again.

24          You know, Mr. Fellows is the owner of his own

25   business.  He needs to be able to have freedom to move about

1    and not be confined.

2         There's also a bit of an issue with the particular

3    address that he has been confined to, which is his mother's

4    address.  I don't know that his mother is willing to

5    continue to house him at that location.  So that's another

6    sort of complication with having him on those home

7    confinement conditions.

8         MS. SMITH:  Your Honor, may I respond?

9         THE COURT:  Yes.

10        MS. SMITH:  Thank you, Your Honor.

11        The government would argue that Mr. Fellows's

12   behavior in this case belies representations with respect to

13   his -- that had he known that there was a warrant for his

14   arrest, that he would have complied with it.  Instead, it's

15   the understanding of the government that the defendant

16   repeatedly attempted to evade law enforcement once being

17   alerted that they had a warrant for his arrest, indicating

18   that he would be home at a certain time or generally stating

19   he was in Pennsylvania but refusing to provide any

20   additional information.

21        Moreover, speaking with FBI agents who, as I

22   understand it, specifically stated that they did have a

23   warrant for his arrest and agreed to turn himself in.  He

24   ended up being found at a random hotel near a shopping mall.

25   In addition, they had found his phone wrapped in tinfoil

1    which allegedly had been hid near a candy dispenser at the

2    hotel.

3         It's also the government's understanding that the

4    defendant ditched his vehicle the day he was arrested or the

5    day he was to be arrested, and has since learned that the

6    defendant remotely had erased the contents of his phone

7    after it was seized by law enforcement.

8         For those reasons, we strongly contend,

9    specifically in this case, that the defendant should be on

10   home detention and home monitoring.

11        Should the issue arise with respect to his mother

12   not allowing him to stay at her home, I think that can be

13   addressed then but, at least from my reading of the Pretrial

14   Services report, it doesn't seem to suggest that he has been

15   ousted, for lack of a better term, from his mother's house

16   yet.  It does sound like she does not want him to stay

17   longer than two weeks but at the present time that is an

18   approved address and he should remain on home detention as

19   previously ordered by the Northern District of New York.

20        THE COURT:  Thank you.  Ms. Halverson, do you want

21   to speak with your client in a breakout room?  It looks like

22   he's trying to raise his hand.

23        MS. HALVERSON:  Sure, Your Honor.  That would be

24   helpful.  Thank you.

25        THE COURT:  Thank you.

```
1              THE DEFENDANT:  How do I go into the breakout

2     room?

3              THE COURT:  You should get a prompt from our

4     system.  It may just take a minute.

5              THE COURTROOM DEPUTY:  Yes.  Give me one moment.

6     I have to set it up.

7              THE DEFENDANT:  Okay.  Gotcha.

8              (Discussion held off the record.)

9              MS. HALVERSON:  Your Honor, this is Cara

10    Halverson.  Obviously Mr. Fellows is not back from the

11    breakout room.

12             (Pause.)

13             THE COURT:  Okay.  It looks like Mr. Fellows is

14    back.

15             MS. HALVERSON:  All right.  Thank you.  And,

16    again, I appreciate your indulgence and your patience with

17    this.

18             One thing that I think might be a good compromise

19    that Mr. Fellows brought to my attention is that there --

20    you know, I think Mr. Fellows would be okay with the

21    condition of GPS monitoring.  I think the difficult thing

22    for him is to be confined in a particular location.  So he,

23    I think, would agree to be on GPS monitoring and I think he

24    would agree (audio distortion) the Northern District of New

25    York, unless he got permission otherwise.  But we do feel
```

1    that the additional condition of home confinement is just

2    too stringent based on (audio distortion.)

3          I understood the government's representation about

4    why they feel he was being evasive with law enforcement.

5    Without having that FBI agent here -- you know, Mr. Fellows

6    has a completely different side of the story.  So it's very

7    difficult to try to get a handle on -- you know, maybe

8    there's a little bit of gray.  Maybe there's a little bit of

9    truth to both sides, but I think without really knowing and

10   having personal knowledge of what happened between

11   Mr. Fellows and the FBI agent, it's very difficult for us to

12   ascertain exactly what the FBI agent told him.

13         We would request to have the standard conditions

14   imposed on him, but if Your Honor believes that more

15   stringent conditions are necessary, we would ask for the GPS

16   monitoring and we would be fine with the current conditions

17   in the Northern District of New York.  But we would ask that

18   he not be confined to any one location.

19         THE COURT:  So I guess this is probably a

20   logistics -- when you say "not confined," you mean he would

21   have an address but it would be GPS without home confinement

22   or I guess home detention?

23         MS. HALVERSON:  Correct.  Correct.

24         PRETRIAL SERVICES:  Your Honor, this is

25   Ms. Holman.  That would be -- I believe, Ms. Kay, I think

```
 1    you need to mute.  So that would be if she's asking for GPS
 2    with no standard address, and that would be GPS only with no
 3    curfew?
 4              MS. HALVERSON:  That would be what we're asking
 5    for.
 6              PRETRIAL SERVICES:  Because if he doesn't have an
 7    address, a stable address, then there's not an address that
 8    we can attach a curfew to.  So if Your Honor grants that,
 9    then it would be GPS only.
10              THE COURT:  That's what I was going to ask you,
11    Ms. Holman, is my understanding was for the curfew, there
12    needs to be an address that it's tied to so that pretrial
13    can tell whether a person has come back to that address in
14    time.
15              PRETRIAL SERVICES:  Correct, Your Honor.
16              MS. SMITH:  And Your Honor, for all of the reasons
17    previously stated with respect to Mr. Fellows's evasiveness
18    as represented by the government, as well as his general
19    conduct in this matter, the government vehemently opposes
20    that and would, again, request home confinement with GPS.
21    Thank you.
22              THE COURT:  Ms. Holman, is GPS only even possible
23    from -- with supervision from New York?
24              PRETRIAL SERVICES:  This is the Northern District
25    of New York.  Your Honor, we've worked with them before.  I
```

1    don't think GPS only would be an issue, but I would have to,

2    you know, speak with them directly, but it should not be an

3    issue.  They've done GPS for us before.

4              THE COURT:  Okay.  Thank you.

5              Just for clarification, Ms. Halverson, does that

6    mean you are asking that he not be required to live with his

7    mother?

8              MS. HALVERSON:  That is correct.

9              PRETRIAL SERVICES:  And Your Honor, just for

10   clarification because of the static issues, I couldn't hear

11   everything Ms. Halverson said.

12             Was that just he agreed to GPS and would that be

13   the Northern District, or are there other districts that

14   she's asking he be permitted to travel to?

15             MS. HALVERSON:  Ms. Holman, this is Ms. Halverson.

16   I'm not sure if you can hear me now, but my original request

17   to the magistrate was to keep him confined to the Northern

18   District of New York unless --

19             PRETRIAL SERVICES:  Okay.

20             MS. HALVERSON:  -- for pretrial.  Otherwise --

21             PRETRIAL SERVICES:  Okay.  That's fine.  I just

22   didn't hear that part.  That's fine.

23             THE COURT:  Okay.  Thank you.

24             I heard argument from the government, the defense,

25   as well as input from pretrial about what the release

19

1    conditions for Mr. Fellows should be.  The United States is

2    asking that I extend the conditions, except for the bond

3    that was set by the Northern District of New York.  The

4    defense is asking that I impose less stringent conditions,

5    and particularly objects to the condition that that court

6    set of home detention, as well as objects to the requirement

7    that he reside with his mother.

8         Having considered all the representations by

9    counsel, as well as having looked at the record, including

10   the fairly detailed report from Pretrial Services in the

11   Northern District of New York, I am going to largely grant

12   the government's request, but not in its entirety, regarding

13   release conditions.

14        As an overview, and then I'll go through the

15   specific conditions, because there seem to be quite a few

16   from the other jurisdiction, I will require Mr. Fellows to

17   continue to reside with his mother.  We've provided an

18   option that he get pretrial approval of any change in

19   address, because I am sensitive to these representations

20   from that court that his mother may have some issues with

21   him being able to live with her long term.  So I don't want

22   to set a condition that cannot be followed and that only has

23   a short shelf life.

24        Also, on the question of GPS monitoring, I am

25   going to do GPS monitoring with a curfew.  I am not going to

1    grant the government's request for GPS monitoring with home

2    detention and a curfew.  So the home detention part is the

3    piece that I am not granting.

4            I don't want to take the time to repeat everything

5    that's been said on the record, but I do think there are

6    definitely concerns here that warrant more stringent

7    conditions than those we have imposed in a lot of these

8    other cases with people facing similar charges, but I think

9    that a curfew and a stable address and GPS monitoring will

10   be sufficient without the additional requirement of home

11   detention.

12           So I will order that Mr. Fellows be released with

13   no monetary bond, that he is subject to courtesy supervision

14   by Pretrial in the Northern District of New York, that he

15   report to that Pretrial Services as directed, that he

16   maintain any employment, that -- their report indicates that

17   he did not have a passport.  So it will be that he not

18   obtain any new passport and travel documents.  That his

19   travel is restricted to the Northern District of New York,

20   unless approved by Pretrial Services or the Court; that he

21   reside with his mother at the address provided to Pretrial;

22   that he obtain advance approval from Pretrial before

23   changing any -- changing the residence; that he refrain from

24   excessive use of alcohol; that he not possess, use,

25   distribute or import controlled substance, except as

1    properly prescribed by a licensed medical practitioner; that

2    if Pretrial Services in that jurisdiction decides that

3    substance abuse testing is necessary, that he comply with

4    any testing requirements that they impose; that he likewise,

5    if that pretrial deems that any substance abuse treatment or

6    counseling is necessary, that he comply with that

7    requirement; he not obstruct or attempt to obstruct or

8    tamper with any electronic monitoring device or substance

9    abuse testing; that he be restricted to his residence

10   between 10:00 p.m. and 6:00 a.m. as a curfew; that he be

11   subject to GPS monitoring, or GPS location monitoring; that

12   he report to pretrial and the Court within 72 hours any

13   arrest, traffic stop; that he not commit any state or

14   federal crimes.

15           I believe that covers what I see in the release

16   order from the other jurisdiction, the parts that I'm

17   carrying forward.

18           Ms. Smith, was there anything else that you think

19   I didn't say I was expressly rejecting that I may have

20   overlooked?

21           MS. SMITH:  No, Your Honor.  The government would

22   just alternatively, based on Your Honor's imposition of the

23   supervision requirements, would just request that the curfew

24   actually be from 6:00 p.m. to 6:00 a.m. rather than

25   10:00 p.m. to 6:00 a.m.

```
1            THE COURT:  Ms. Halverson, is there any objection
2    to that?
3            MS. HALVERSON:  Yes, Your Honor.  I think given
4    Mr. Fellows's job, I don't think that his job is really
5    something that can be scheduled 9:00 to 5:00.  He meets with
6    people and other consultants at a variety of different times
7    that meets their schedules.  So I think that would be unduly
8    burdensome.  10:00 p.m. is sufficient -- -- 10:00 to
9    6:00 a.m. is sufficient.
10           THE COURT:  Would 9:00 p.m. -- if I moved it up to
11   9:00 p.m., would that interfere with his job; 9:00 p.m. to
12   6:00 a.m.?
13           MS. HALVERSON:  He's giving me a wonky wave, so I
14   think -- I think he might be agreeable to the 9:00 p.m.,
15   Your Honor.
16           THE COURT:  Okay.  I'll partially modify the
17   curfew to be 9:00 p.m. to 6:00 a.m.
18           MS. HALVERSON:  If I can just ask something of
19   (indiscernible) while I've got her on the phone, if the
20   parties don't mind.  If he wants to adjust his address at a
21   later date, that would be through the Northern District of
22   New York, so he would need to contact the Pretrial Services
23   Office in the Northern District of New York, and they would
24   verify the address; is that correct?
25           PRETRIAL SERVICES:  That's correct.
```

1          MS. HALVERSON:  Okay.  You understand that,

2   Mr. Fellows?

3          PRETRIAL SERVICES:  Your Honor, did you state the

4   firearms condition?

5          THE COURT:  I think.

6          PRETRIAL SERVICES:  Do not possess firearms or

7   illegal firearms?

8          THE COURT:  Hold on.  Let me go back to the

9   conditions from the other jurisdiction.  I think it was --

10   hold on.

11          PRETRIAL SERVICES:  Maybe it's not in here.  Let

12   me see.

13          THE COURT:  I don't think there was a firearm

14   condition in the other jurisdiction's conditions.  So I will

15   make that, not possess any illegal firearms.

16          MS. SMITH:  We would just ask, Your Honor, that it

17   be not possess any firearms altogether, given that the

18   national standard, as far as I understand it, is not possess

19   any firearms, especially given that the Northern District of

20   New York will be the agency that will be monitoring him.

21   And to the extent that they need to make home visits or

22   anything with respect to that, we just would want to impose

23   I think what has become our standard, which is do not

24   possess any illegal firearms, but I would defer, actually,

25   to pretrial on that, but the government would be requesting

1    no firearms altogether.

2              PRETRIAL SERVICES:  That's correct, Your Honor.

3    We've been requesting no firearms in courtesy supervision

4    cases to secure the -- for the safety of the other

5    jurisdiction.

6              THE COURT:  And I now see it's -- their form is a

7    little different than ours.  So it actually follows on to

8    another one.  So I think I just didn't read that piece of

9    it.  But their condition did say refrain from possessing a

10   firearm, destructive device or other dangerous weapon.  That

11   is 7A on their release conditions.  It's just at the end of

12   7A.

13             So I will -- since my plan was to carry forward

14   their conditions, since we are asking for courtesy

15   supervision, I will impose the requirement that he not

16   possess any firearm.

17             Thank you, Ms. Holman, for asking.

18             Okay.  Ms. Halverson, are there any of these

19   conditions that you need me to further explain?

20             You're not listed as muted but we can't hear you

21   at all.

22             MS. HALVERSON:  Can you hear me now?

23             THE COURT:  Yes.

24             MS. HALVERSON:  Okay.  I just wanted to clarify

25   with Mr. Fellows, you understand that you have to live with

 1     your mom, but that if there's an alternative address, that

 2     you can get Pretrial Services in Northern District of New

 3     York to verify that, but you cannot leave your mom's address

 4     until they verify that new address.  Do you understand that?

 5                    THE DEFENDANT:  Yes.

 6                    MS. HALVERSON:  Okay.  All right.  That was the

 7     only thing I just wanted to clarify.  Thank you.

 8                    THE COURT:  Okay.  Thank you.  Ms. Kay, could you

 9     please swear Mr. Fellows to these conditions?

10                    (Pause.)

11                    THE COURTROOM DEPUTY:  Thank you.  Thank you for

12     your patience.

13                    Mr. Fellows, would you please raise your right

14     hand.

15                    Do you solemnly swear that you will abide by the

16     conditions of your release as set forth by this Court, so

17     help you God?

18                    THE DEFENDANT:  I do.

19                    THE COURTROOM DEPUTY:  Thank you.

20                    THE COURT:  Thank you.  And then Mr. Fellows,

21     could you just confirm that you heard and understood the

22     conditions you just agreed to follow?

23                    THE DEFENDANT:  I understood and agree to the

24     conditions.

25                    THE COURT:  Thank you.

1          THE DEFENDANT:  Do we happen to know when the next

2     court date is?

3          THE COURT:  Have we set the next court date?

4          MS. HALVERSON:  Your Honor, I believe since he's

5     charged via criminal complaint at this time, he does reserve

6     the right to have a preliminary hearing.  We would request

7     that it be set on the same date as the other one, which was

8     February 24.  And I spoke with Ms. Smith about that date

9     prior.

10          THE COURT:  Okay.  I will set a preliminary

11     hearing for February 24 at 1:00 p.m.  If this hearing goes

12     forward, we may need to make some adjustments on the

13     calendar, since that is the time we will be hearing any

14     initial appearances for Capitol cases as well.

15          Is there a speedy trial request?

16          MS. SMITH:  Yes, Your Honor.  The parties have

17     agreed to toll speedy trial in the interim, given the

18     voluminous discovery in these cases, as well as to allow for

19     the parties to speak further about this specific case.  We

20     believe it is in the interest of justice to do so.

21          MS. HALVERSON:  That's correct, Your Honor.

22          THE COURT:  Okay.  Thank you.  I will toll the

23     time between today and February 24, 2021, exclude it from

24     any speedy trial calculations.  I find, based on the

25     representations of the parties, that this exclusion of time

1   would best serve the ends of justice, outweigh the interest

2   of the defendant and public and a speedy trial as it will

3   provide time for the parties to review and discuss the

4   voluminous discovery in this case.

5           Are there any -- I should note -- I'm not going to

6   repeat them in the interest of time, but I did give warnings

7   at the very beginning of these hearings today about the

8   consequences for failing to follow release conditions.  They

9   will also be repeated in the written release conditions,

10  which we will sign and send to defense counsel so that a

11  copy can be provided to Mr. Fellows.

12          Are there any other issues that need to be

13  presented to me before we adjourn?

14          MS. SMITH:  Nothing from the government, Your

15  Honor.

16          MS. HALVERSON:  Nothing from the defense, Your

17  Honor.  Thank you.

18          THE COURT:  Okay.  Thank you.  That concludes this

19  matter.  That concludes these initial appearances.

20          Ms. Kay, I'll connect again at 4:00 for that

21  hearing.

22          THE COURTROOM DEPUTY:  I'm sorry, Your Honor, can

23  you repeat the Court date for pretrial.

24          THE COURT:  Yes.  February 24 at 1:00 p.m.

25          THE COURTROOM DEPUTY:  Okay.  Thank you.

```
 1              THE COURT:  Okay.  Thank you.
 2              MS. SMITH:  Your Honor, just quickly, I have one
 3    housekeeping thing that does not require anything with
 4    respect to tomorrow.  I just wanted to make Your Honor
 5    aware.
 6              THE COURT:  Okay.  So should we have the other
 7    people disconnect and then you can --
 8              MS. SMITH:  Yes, and then Ms. Halverson can stay
 9    if she'd like.
10              THE COURT:  Thank you.  You're free to go,
11    Mr. Fellows.
12    (Proceedings adjourned at 3:44 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          **<u>CERTIFICATE OF TRANSCRIBER</u>**

2

3

4                    I, KATHLEEN SILVA, RPR, CRR, do hereby certify

5     that the above and foregoing constitutes a true and accurate

6     transcript transcribed from the audio recording and is a

7     full, true and complete transcript of the proceedings to the

8     best of my ability.

9                    Please note:  This hearing occurred during the

10    COVID-19 pandemic and is therefore subject to the

11    Technological limitations of reporting remotely.

12

13                    Dated this 24th day of August, 2023.

14

15

16

17                                        <u>/s/Kathleen Silva, RPR, CRR</u>

                                         Kathleen Silva, RPR, CRR
18

19

20

21

22

23

24

25