```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA



UNITED STATES OF AMERICA,        :
                                 :          Docket No. CR 21-83
                                 :
            vs.                  :          Washington, D.C.
                                 :          Thursday, May 6, 2021
BRANDON FELLOWS,                 :             10:00 a.m.
                                 :
            Defendant.           :
----------------------------x




             TRANSCRIPT OF STATUS CONFERENCE (IN-PERSON)
              BEFORE THE HONORABLE TREVOR N. MCFADDEN
                   UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:    AMANDA FRETTO, Esquire
                       MONA FURST (via telephone)
                       Assistant United States Attorneys
                       555 Fourth Street, NW
                       Washington, DC  20530

For the Defendant:     CARA KURTZ HALVERSON, Esquire
                       Assistant Federal Public Defender
                       625 Indiana Avenue, NW
                       Suite 550
                       Washington, DC  20004

Court Reporter:        CRYSTAL M. PILGRIM, FCRR, RMR
                       Official Court Reporter
                       United States District Court
                       District of Columbia
                       333 Constitution Avenue, NW
                       Washington, DC  20001
```

```
 1                      P-R-O-C-E-E-D-I-N-G-S
 2              THE DEPUTY CLERK:  Your Honor, this is criminal case
 3    21-83.  United States of America versus Brandon Fellows.
 4    Counsel please come forward to identify yourselves for the
 5    record.
 6              MS. FRETTO:  Good morning, Your Honor.  I'm Amanda
 7    Fretto on behalf of the United States.  I'm appearing in-person
 8    and while I am not the assigned AUSA, AUSA Mona Furst is on the
 9    phone today.
10              THE COURT:  Good morning, Ms. Fretto.
11              MS. FRETTO:  Good morning.
12              MS. HALVERSON:  Good morning, Your Honor.  Cara
13    Halverson appearing for Mr. Fellows who's here in-person as
14    well.
15              THE COURT:  Good morning, Ms. Halverson and good
16    morning, Mr. Fellows.  All right, we're here for a status
17    conference in this criminal case. Ms. Fretto where do things
18    stand?
19              MS. FRETTO:  Your Honor, the government would like to
20    address two matters today.
21         First, we would like to address the defendant's
22    noncompliance with pretrial conditions; the Pretrial Services
23    report of noncompliance and the government's motion to revoke
24    release.
25              THE COURT:  Actually, why don't we handle that
```

1  afterwards.

2        MS. FRETTO:  Yes, Your Honor.

3      And next I would like to try to provide an update on

4  discovery, plea negotiations and request a 60 day continuance

5  and exclusion of time under the Speedy Trial Act.

6        So far in discovery, as is reflected on the docket,

7  there have been 11 rounds of preliminary discovery to include

8  body-worn camera and surveillance video.

9        In addition, I understand the parties have already begun

10 discussions, have already begun plea negotiations.  The

11 government is requesting a 60 day continuance to continue

12 providing discovery and to continue those plea negotiations.

13        THE COURT:  Does that mean you've provided a plea

14 offer?

15        MS. FRETTO:  Your Honor, I believe an informal plea

16 offer has been provided.  However, the parties are still

17 discussing that.

18        THE COURT:  Okay, so 60-days feels like a long time.

19    Why is that necessary?

20        MS. FRETTO:  Your Honor, it's my understanding that

21 should the defendant, and of course Ms. Halverson will correct

22 me if I'm not correct; that should Mr. Fellows remain on

23 release, the defense will consent to the 60 day continuance as

24 well, to provide time for the parties to work through

25 additional discovery and plea negotiations.  Of course, if the

1  Court would like us to come back earlier we would be happy to

2  do so.

3           THE COURT:  I guess I'm trying to understand what two

4  months is going to accomplish that a month wouldn't?

5           MS. FRETTO:  Two months is our best estimate when we

6  can reach a potential resolution or provide substantial

7  additional discovery for us to take active next steps.  Of

8  course, if the Court would like us to come back earlier, we

9  would be happy to do so.

10          THE COURT:  Okay, thank you, Ms. Fretto.  It sounds

11  like Ms. Halverson your perspective on this is going to hinge

12  on where your client is.

13      Ms. Valentine-Lewis, are you on the line?

14          MS. VALENTINE-LEWIS:  Yes.

15          THE COURT:  Good morning, ma'am.

16      Could you address the defendant's compliance today?

17          MS. VALENTINE-LEWIS:  Good morning.  I also have the

18  actual officer on the line from New York Ms. Kendra Rennie.

19      As stated, Pretrial Services would -- I received some

20  information from Ms. Rennie late last week, earlier this week

21  pertaining to the defendant's non compliance regarding curfew

22  violations which appears has been two that has been noted.  And

23  his status report directed, as well as, he was rearrested in

24  New York and given a court date.

25      However, he has not notified us of the contact with law

1  enforcement and he hasn't had the prior conversations with

2  them.  It is for those reasons that Pretrial Services will

3  request revocation.

4       THE COURT:  All right.  Why don't you believe a

5  lesser penalty would be appropriate here, ma'am?

6       MS. VALENTINE-LEWIS:  If the Court is not inclined to

7  remove the defendant, we would ask that he be placed on home

8  confinement.

9       THE COURT:  All right, thank you, ma'am.

10    Ms. Fretto, I'll hear from you.

11       MS. FRETTO:  Your Honor, prior to the hearing today,

12  the government submitted its argument in a motion to revoke

13  which was filed on the docket.

14       THE COURT:  I have read that.

15       MS. FRETTO:  In addition to the substantial numerous

16  violations and Mr. Fellows' action and an indication that he

17  will not comply with pretrial release conditions, we are asking

18  that he be revoked.  If the Court does not see fit to revoke

19  Mr. Fellows probation today, we would join in the request for

20  home confinement.

21       THE COURT:  I'll tell you, I obviously want to hear

22  from defense.  There's a number of violations which troubles

23  me.  It seems like he has explanations for a number of them.

24  And Pretrial Services has been able to confirm at least a

25  couple of cases for instance that he broke down that type of

1    thing.  So I guess I'm not really sure where that leaves us.

2        Is your concern that he presents a danger to the

3    community at this point?  Is your concern that he's just not

4    going to report, not going to abide by release conditions?

5    Tell me a bit about what's motivating your revocation request?

6        MS. FRETTO:  As Your Honor knows, when this case was

7    initially presented the government did raise its concerns about

8    Mr. Fellows being a flight risk.  Since then he has showed that

9    he will not abide by the conditions of release.

10        It's the government's position today that even if placed

11    on home confinement, he will still not follow those conditions.

12    As he has already indicated that he will not report to Pretrial

13    Services as directed.  He had two failures to report and even

14    while on curfew, he did not arrive home prior to the curfew

15    deadline of 9 p.m.  Of course there was the new rearrest and

16    his failure to report that to his Pretrial Services officer.

17        THE COURT:  Okay.  Thank you, Ms. Fretto.

18    Ms. Halverson.

19        MS. HALVERSON:  Good morning, Your Honor.  So I guess

20    I'll just address the bond situation first and leave the status

21    to another part of this hearing.

22        THE COURT:  Sure.

23        MS. HALVERSON:  So I respect that the Pretrial

24    Services agency told the Court about these violations or

25    alleged violations.  I do think there's quite a lot of

1   explanation that goes along with them.  I'm not sure that these

2   violations rise to the level of him being a flight risk.

3       Mr. Fellows has been on pretrial release now for a couple

4   of months.  Two times where he didn't report on a Friday.  One

5   of those times, he would contend that it was a misunderstanding

6   about whether or not he needed to report in-person.  He's

7   reported since; has not had any other violations as far as

8   reporting.  So every Friday Mr. Fellows reports to the Pretrial

9   Service office in Albany, New York.

10      Additionally, the curfew violations I don't think are

11  indicative of flight either considering the fact that he did

12  attempt to call Pretrial Services.  I understand that Pretrial

13  Services told him that he needed to call the emergency line.  I

14  understand that they didn't have a record of him leaving a

15  voice mail.  I do have records from Mr. Fellows showing that he

16  did in fact make the phone call himself.

17      So I don't think this is a willful noncompliance

18  situation.  I think these are life situations that happen.  And

19  over the course of a couple of months that he's been on

20  Pretrial Services, he's actually done relatively well with sort

21  of the strict conditions that have been placed on him.

22      As far as the new arrest is concerned, Your Honor.  My

23  understanding and I don't have the court documents.  I don't

24  have access to the court documents.  So I'm making this just

25  based on an understanding with my conversation with

1    Mr. Fellows; is that court case actually originates around the

2    time of Mr. Fellows' arrest in this case.

3         Apparently, the contract dispute happened because

4    Mr. Fellows was suppose to perform work on the weekend that he

5    was arrested in this case.  And he was in detention in the

6    federal jail up in New York when he was suppose to complete

7    that contract.  Additionally, his phones were seized by the FBI

8    following his arrest.  So he wasn't able to make contact with

9    the person he had contracted with.

10        However, it's my understanding that on May 12th, which

11   is the court date that's been set in that misdemeanor case,

12   it's very likely to resolve.  It does appear from the

13   representations that were made to me that this is really about

14   money.  And I have full faith and confidence after speaking

15   with my client that the wronged individual in that case will be

16   made whole on May 12th and we fully expect the charges to not

17   stand.

18        So I think that there's explanations for these. I don't

19   think again that this is sort of a willful failure on

20   Mr. Fellows part to sort of flap his nose at the Court.  I

21   think he's trying his best.  The conditions are strict.  He's

22   got a strict curfew.  He's reporting to Pretrial Services every

23   Friday.  He's submitting to drug and alcohol tests.  He's not

24   had any infractions on that level.

25        So I think he at least deserves the chance to show Your

1   Honor that he understands the seriousness of the situation.

2   And understands that it is important for him to continue to

3   comply with Pretrial Services.

4       I'll just point out as well, Your Honor, that if you were

5   to incarcerate him today, that court case up in New York will

6   obviously become problematic if he's detained down here.

7       So I think in the interest of justice all around actually

8   would favor his release today.  I understand the sort of midway

9   point that putting him on home detention.  But again, if he's

10  on home detention, I don't know how that makes him any more or

11  any less of a problem.

12      I think he's doing his best to comply with the curfew.

13  And I think that the conditions as they are, for the most part,

14  he actually had done relatively well.  So I would ask that the

15  conditions stay.

16      I would ask Your Honor to speak with Mr. Fellows about the

17  importance of continuing to abide by those conditions.  In the

18  alternative home detention is obviously an option if the

19  government is worried about him being a flight risk.

20      I will point out as well that Mr. Fellows is here

21  in-person.  He obviously believes and understands the

22  importance of coming to court.

23          THE COURT:  Ms. Halverson, I think one thing you

24  didn't address was his failure to report contact with law

25  enforcement.

1            MS. HALVERSON:  Correct, and to be fair, Your Honor,

2   to Mr. Fellows, I think that I've now sort of fallen my sword

3   with that.  I did send Mr. Fellows his release conditions from

4   the district court, but I did not go over the fact that he

5   needed to report talks with law enforcement.  So he was under

6   the impression that he needed to report arrests from law

7   enforcement, which he did do.  But he didn't understand until

8   we talked about it in regards to this new report that he needed

9   to report his contacts with law enforcement.

10           THE COURT:  I'm sorry, you're saying because I

11   believe he was arrested by the state police.

12           MS. HALVERSON:  He was and he did let Pretrial

13   Services know that he was arrested.

14           THE COURT:  Okay.

15           MS. RENNIE:  Excuse me, Your Honor.  Kendra Rennie

16   from probation in Albany.  May I add information to the court

17   record?

18           THE COURT:  Yes, ma'am.

19           MS. RENNIE:  Okay, in terms of notifying of police

20   contact. I did review all of the conditions set by Your Honor

21   with the defendant.  And he was totally aware that he needed to

22   notify me of any conduct in terms of questioning if pulled over

23   by law enforcement.  And he had police contact on three

24   occasions; two in February and one in March in relation to the

25   petty larceny charge and he failed to notify me of all of them.

1   So I find that to be problematic.

2       In addition, he is on curfew.  The first time he violated

3   curfew, he did not make any effort to contact me, to notify me.

4   He had an emergency number.  He was provided with an emergency

5   number and he did not notify me.

6       In terms of his curfew violation on May 1st.  He left his

7   residence at about 7:15 p.m. and drove about a half hour to a

8   bar tavern in another area.  And in terms of him taking the

9   conditions seriously, he needed to be home at 9 p.m. I think

10  that that is not good planning on his part.  When he found out

11  that the car, the battery was drained, he indicates he did make

12  an attempt to contact emergency, not the emergency number, the

13  main probation number.  I don't have any record of that.

14      In addition, he should have had the emergency number on

15  him.  So I do feel it's a willful disregard to the conditions

16  and he does not take them seriously.  In terms of him missing

17  appointments, he needed to come every Friday.  He was told

18  numerous times he needed to come every Friday.  He made the

19  choice not to come.  At one point, he advised me that he was

20  reaching out to an attorney because he felt as though he didn't

21  need to come.

22      In terms of his employment.  He has submitted applications

23  and we're hopeful that he will continue to seek employment, but

24  at this point he has not been working.  So in terms of him

25  being a flight risk and not being able to comply with the

1  conditions, we feel strongly his conditions should be revoked.

2  as he has continued to show noncompliance.

3          THE COURT:  Thank you, ma'am.  Does your client wish

4  to say something?  It looks like he does.  Do you want to speak

5  with him?

6          MS. HALVERSON:  If I could have a brief indulgence.

7          (Pause.)

8          MS. HALVERSON:  Thank you, Your Honor.

9      Mr. Fellows just sort of wanted to reiterate that he did

10  contact the probation officer when he was running late on those

11  two instances of curfew.  He did provide me with screen shots

12  from his phone showing that he called the main number prior to

13  his curfew, prior to the 9 p.m. time.  I do have those.

14      I don't know if the Court would like to see those screen

15  shots or if my representations are enough.  But he does

16  understand and I understand the probation's point about he

17  should have called the emergency number.

18      I think this is a new experience for Mr. Fellows.  I think

19  that this is sort of a situation for him where he's not

20  familiar with the court system.  This is his first real entry

21  especially into federal court and to these very, very strict

22  conditions.  So I think he should be allowed to have a little

23  bit of leeway.  Of course he forgot the number to the emergency

24  line.  Does that make him a flight risk?  I would argue it

25  doesn't.

1    I would also argue he mentioned to me that he very much

2  disputes one of the times that Pretrial Services says he didn't

3  show up on a Friday.  He said that he was running late and the

4  officer told him to just not bother showing up at that point.

5    So he was willing to comply, but he had car trouble and

6  wasn't able to make it on time and was told to not bother

7  showing up.  So again it's not a willful flapping of his nose

8  at these conditions.  He is mindful of them.

9    Court's indulgence.

10    (Pause.)

11    MS. HALVERSON:  Mr. Fellows very much disputes that

12  he was cognizant of the fact that he needed to report

13  interactions with law enforcement.  I understand that Pretrial

14  Services may have gone over that with him.  I can represent to

15  the court that I did not orally go over that with him.  I gave

16  him his paper work and asked him if there were any questions he

17  said no.

18    But again, I think in this sort of world of federal court

19  being new to it and not realizing sort of all of the minute

20  detail of things he needed to follow.  I think that must have

21  slipped his mind.  He did report his arrest within 72 hours as

22  directed.  So I think this is again a gentleman who is trying

23  to comply.  He made some mistakes, but he's trying to comply.

24  I don't think his mistakes make him a flight risk or danger to

25  the community.

1          THE COURT:  Thank you, Ms. Halverson. Ms. Fretto,

2  anything additionally you want to say?

3          MS. FRETTO:  Your Honor, we would just reiterate that

4  the government has serious concerns about Mr. Fellows'

5  compliance.  That he does not take these conditions of the

6  Court seriously and our concern that he will continue to not

7  abide by conditions if he is on release.  For all of those

8  reasons, and the reasons stated by the Pretrial Services

9  officer in Albany, we would ask the Court to revoke

10  Mr. Fellows' release.  Thank you.

11          THE COURT:  Thank you, Ms. Fretto.

12      Mr. Fellows, will you approach the stand please.

13          Sir, I am pretty concerned that you haven't been taking

14  this seriously.  The reason why we're here today in person is

15  because at our last video conference, you were drinking coffee,

16  walking around in your kitchen in your sweatpants or whatever

17  and it did not seem like this was a big deal to you.  And I

18  think a lot of what I'm hearing from Pretrial Services is

19  reflective of that.  I agree with Ms. Fretto on that.

20          I agree with Ms. Halverson though that I'm not sure what

21  I've seen to date convinces me that you're a flight risk.  I

22  got to say, it's pretty unusual for Pretrial Services to ask to

23  have someone revoked.  You've clearly frustrated them

24  considerably and you are losing out.  I forget if I told you

25  before, but I'm certainly telling you now that someone's

1  behavior while on pretrial release does affect or can affect my

2  sentencing.  And maybe we'll never get there, maybe you'll be

3  found not guilty.

4      Maybe the government will dismiss the case.  Maybe there

5  never will be a sentencing.  But if you do come to a sentencing

6  hearing, this is your last opportunity to show me what sort of

7  person you are and you haven't been doing a great job thus far

8  on it.  I think some of the things here are excusable, but I'm

9  not at all convinced that they all are.

10      I'm going to order you on home detention.  I don't think

11  it's appropriate to revoke your release at this point, but I am

12  ordering you on home detention.  We'll talk about what that

13  entails in a moment.

14      Yes, sir.

15          THE DEFENDANT:  I was hoping before that if I could

16  speak before that's finalized, if I could just bring up a

17  couple of key points of things you brought up to me.

18          THE COURT:  Have you talked with Ms. Halverson about

19  that?  I mean, obviously you're free to do what you want to do.

20          MS. HALVERSON:  Court's indulgence.

21          (Pause.)

22          THE DEFENDANT:  Thank you, Your Honor.  I just want

23  to bring up a couple of things.  I know the last court case you

24  mentioned what you viewed as a lack of respect.  I guess, I

25  just would like to bring up I submitted the forms to show that

1  I have been diagnosed with a minor form of autism and that does

2  make me less aware of some social situations especially this

3  being my first time in federal court, especially being on home

4  detention or not home detention, on video.

5     I was under the impression if it was on video there were

6  less, you know, it was less I guess you have to dress up less.

7     On top of this -- I'm losing my train of thought. I would

8  like to also mention that I did in fact contact law

9  enforcement. I did send Kendra the proof of the screen shots

10  they're for two different numbers that I sent.

11     This has also been very tough for me.  Since 18 I've lived

12  on my own.  This has been tough having to go -- my mom is fine

13  now.  But I do have a history of abuse of her so that was

14  definitely tough to undergo those changes and being mostly

15  independent.  I like small spaces.  Like my bus that I've in,

16  buses and RVs for years, so this is definitely a lot to undergo

17  as far as change.

18     Also smiling, early on I'm sure maybe you saw.  That's

19  something that I've done in uncomfortable situations.  So I

20  don't think that it's indicative of my respect.  But this has,

21  I will say that this has been definitely tough to adjust to in

22  which sometimes it may have had an influence on my facial

23  and/or verbal reactions in some instances.

24     So I like small spaces, but I really do mentally thrive on

25  being able to go outdoors, exercise and see people.  Even just

1  the two weeks of not being able to be really in contact with

2  people.  My family as a result of this, a lot of my family has

3  left, friends have left.  I've lost business contracts.  It has

4  been a very tough time for me.  I think in time with the video

5  evidence it will prove that I was innocent of these things.

6      I would just like to get another chance and not have these

7  past instances have you -- I would just like another chance to

8  be able to prove in time that I can not even have these mess

9  ups which I just would like to mention was two out of a 134

10 days of which I did notify them.  But I was unaware, it was a

11 lot of stress to take in. I got a ton of paper work.  I was

12 aware that I was suppose to call for arrests.

13      When I was talking to the officer on February, March about

14 this case which was out of my control.  I've never stolen money

15 from a customer.  I really wanted to contact them, but I have

16 that happening. I also have tax, the IRS reaching out to me and

17 I can't do anything because my tax documents are on my phone

18 that the FBI still has. So I've been getting problems with

19 these areas. It's just very stressful.  So I would just like to

20 ask for another chance and please not revoke my ability to be

21 out there.  It's going to severely affect me mentally.

22      THE COURT:  All right, I appreciate what you said,

23 sir.  You've been charged with a federal felony.  Nobody feels

24 sorry for you right now.  This is serious.  And frankly most

25 defendants who appear in front of me are coming from that door

1 and are in chains.

2      So I'm not worried about your respect for me.  I'm very

3 concerned about you taking this seriously and recognizing that

4 this is a big deal for you.  It's a big deal for the society.

5 I don't mean to be flippant at all, but there is a small space

6 that you can be in that will perhaps be better for your mental

7 health.  Although I doubt it, but it would certainly ensure

8 that you turn up and certainly ensure that I know that I don't

9 have to worry about you abiding by my release conditions.

10      You are going to be on home detention.  I can assure you

11 if there are further issues, I will revoke your release

12 conditions.  And you're asking for another chance.  This is

13 your chance, last remaining chance to show that you understand

14 the gravity of the situation here.  And that you're someone I

15 can trust when it comes to sentencing, and if and when you're

16 before me again to talk about what should come of this case.

17      All right, sir, you may have a seat.

18           THE DEFENDANT:  May I ask one more?

19           THE COURT:  Yes.

20           THE DEFENDANT:  I was just hoping, I'm just hoping

21 that maybe we could at least, there might be some hope at the

22 end of the tunnel.  Obviously I'm going to obey these things,

23 but maybe in time, 30 or 60 days there could at least be the

24 potential to gain these privileges and/or some privileges back

25 upon showing the Court that I am obeying these things.

```
 1              THE COURT:  Potentially, we're not going to discuss
 2  that now.  All right.
 3              THE DEFENDANT:  May I work?
 4              THE COURT:  I beg your pardon?
 5              THE DEFENDANT:  Am I allowed to work?
 6              THE COURT:  You may have a seat, sir.
 7         Ms. Valentine-Lewis, are you still there?
 8              MS. VALENTINE-LEWIS:  Yes, Your Honor.
 9              THE COURT:  All right, I understand this is not the
10  result that you believed was best, but can you tell me what we
11  need to do for the defendant to be put on home detention?
12              MS. VALENTINE-LEWIS:  Honestly, you can issue an
13  order, a minute order.  Let me just confirm.  Court's
14  indulgence.
15         (Pause.)
16          MS. VALENTINE-LEWIS:  Judge McFadden, you can do a
17  minute order and I will get the information to you while the
18  probation officer is on the line.
19              THE COURT:  Okay, what are your standard -- under
20  home detention, I know that he can leave for court cases, for
21  medical issues.  What are the other provisos for that?  I want
22  to make sure he understands those now.
23              MS. VALENTINE-LEWIS:  That is correct.  So we're
24  going to do home detention?
25              THE COURT:  That's correct.
```

1        MS. VALENTINE-LEWIS:  Okay.

2        MS. RENNIE:  Your Honor, may I provide information on

3   the employment situation?

4        THE COURT:  Yes, that would be great.

5        MS. RENNIE:  In terms of employment, he will be

6   allowed out for employment, but it has to be verifiable

7   employment, legal employment, where he's receiving a paystub or

8   he's providing verification of his income.

9        In the past, he indicated that he wanted to rebuild his

10  chimney business and when I asked him for any kind of

11  verification of that he insinuated that he wasn't going to

12  provide that because he didn't want to file taxes on the

13  income.  So I instructed him he needs to get verifiable

14  employment on the books.

15       So we are requesting that everyone is on board with him

16  providing verification of his income.  He also will be allowed

17  out to go to church, any medical appointments he may have,

18  social services appointments, attorney appointments, but that

19  would be it at this point.

20       THE COURT:  Okay, thank you, ma'am.

21       Mr. Fellows, home detention means that you need to stay in

22  your residence at all times except for employment and you heard

23  from the probation officer that you are going to need to be

24  able to provide verification of any employment that you have.

25       Education, religious services, medical, substance abuse or

1  mental health treatment, attorney visits, court appearances of

2  course that would include your state case as well; court

3  ordered obligations or other activities approved in advance by

4  the Pretrial Services office or supervising officer.

5      So if there's anything else you think you need to do, you

6  need to get that cleared with your Pretrial Services officer

7  before you go out, not afterwards.  Do you understand all of

8  that, sir?

9           THE DEFENDANT:  Yes.

10           THE COURT:  Okay.  Ms. Halverson, I'll hear you

11  regarding next steps.

12           MS. HALVERSON:  Thank you, Your Honor.

13      Considering your generous offer to not revoke his bond

14  today, we are in agreement with the U.S. Attorneys office that

15  60 days would be sufficient.  I can make a little bit more

16  representation about why that's needed.

17      So my understanding and again I'm not privy to all of the

18  discussion at the U.S. Attorneys office, but I want to be

19  candid with the Court.  My understanding is that at this time

20  the U.S. Attorneys office is not really giving, not really open

21  to addressing creative plea offers.  And the understanding is

22  that moving forward that that may start to change.  So that's

23  one reason why we appreciate the ability to have a little bit

24  more time to have those discussions.

25      The other reason is the amount of data that is in these

1    cases, just from footage alone.  I know that Ms. Furst, the

2    AUSA, has provided me with a lot of discovery so far, but not

3    all of it.  My office is working with the U.S. Attorneys office

4    and of course to be able to get access to sort of the more

5    global discovery that's available, and it's not expected that

6    that discovery will become available until at least the

7    summertime because they haven't even worked out the system yet

8    in which it will be provided.

9        So I think 60 days is appropriate to check in with you.  I

10   don't know again and you may be irritated with us if we come

11   back and say we need more time again.  But I do think that

12   given sort of the data, the amount of discovery in these cases,

13   given our ongoing negotiations that 60 days is appropriate and

14   we would agree to toll the Speedy Trial clock.

15           THE COURT:  I appreciate all of that Ms. Halverson.

16   I'll tell you, I would think that in 60 days we would know

17   where this case is going.

18           MS. HALVERSON:  I would hope so as well.

19           THE COURT:  And tell me if this doesn't make sense to

20   you, but realizing that maybe not every last piece of discovery

21   would have been turned over kind of global discovery wise, I

22   think it probably already is pretty obvious what is most

23   relevant to your client.  And that you all should be able to

24   decide by then whether he wants to go to trial or not.  And

25   obviously if he does, I'd like to get a trial date scheduled

1  and move toward that.  And we can talk about appropriate

2  deadlines for discovery to be turned over to you.  Obviously

3  you need time to prepare for trial.  I'm not just going to wait

4  indefinitely for the government to trickle it over.

5          MS. HALVERSON:  I appreciate that, Your Honor.

6          THE COURT:  So let's look at early July then.

7      How about Wednesday, July 14th 10 a.m.  Does that work for

8  the government, Ms. Fretto?

9          MS. FRETTO:  Yes, Your Honor.  AUSA Mona Furst is on

10  the line, but that's a good date.

11          THE COURT:  Okay, Ms. Halverson?

12          MS. HALVERSON:  That's fine for the defense, thank

13  you.

14          THE COURT:  Okay, let's plan to be in-person

15  Wednesday, July 14 at 10 a.m.

16      I do believe it's appropriate to toll the speedy trial

17  clock in the interim, not so much on the basis of plea

18  negotiations, but I do think the defense's ability to review

19  and digest all of the discovery that has come and is coming is

20  sufficient justification for tolling the speedy trial clock.

21  And I do think that outweighs the interest of the public and

22  the defendant in a speedy trial to toll until then.

23      As I suggested, I would expect we are entering a plea at

24  that point if that's what the defendant wants to do and

25  obviously he's certainly welcome to go to trial.  But if we're

1    not entering a plea, then the attorneys should come with their

2    calendars and anticipate picking a trial date at that time and

3    the other appropriate deadlines.

4        Ms. Fretto, anything further for the government?

5            MS. FRETTO:  Would the Court be amenable to the

6    assigned AUSA Mona Furst appearing for that next status hearing

7    telephonically or through video as AUSA Mona Furst is the

8    assigned attorney and she'll be able to address case specific

9    questions that Your Honor has at that time?

10            THE COURT:  I think it's appropriate that a

11   prosecutor be here in the courtroom. Obviously she's free to

12   listen.  I mean certainly this is a plea, I think we need to

13   have a prosecutor here be that her or somebody else.

14       If it's not much to report, even if it's not much to

15   report I think we'll pick a trial date.  We may need her

16   involvement more.  It's going to be July, we can get a

17   prosecutor here.

18            MS. FRETTO:  Yes, Your Honor.

19            THE COURT:  Ms. Halverson anything further from

20   defense?

21            MS. HALVERSON:  No, Your Honor, thank you.

22            THE COURT:  Thanks folks, see you in a couple of

23   months.

24            (Proceedings adjourned at 10:45 a.m.)

25                        -oOo-

CERTIFICATE

1      I, Crystal M. Pilgrim, Official Court Reporter, certify that the foregoing is a true and accurate transcript, to the best of my ability, of the proceedings reported in the above-entitled matter.

_____    _____

/s/Crystal M. Pilgrim, RPR, FCRR, RMR    April 12, 2023